IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PROMEGA CORPORATION,

                                            OPINION AND ORDER

                Plaintiff,

        and                                  10-cv-281-bbc

MAX-PLANCK-GESELLSCHAFT zur
FORDERUNG der WIESSENSCAFTEN E.V.,

                Involuntary Plaintiff,

        v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC. and
APPLIED BIOSYSTEMS, INC.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This case is barely out of the starting gate, but it is already one of the most contentious disputes proceeding in this court. In the last few months, the parties have filed approximately 20 different motions and generated a docket sheet approaching 100 entries. Five motions are before the court now: (1) plaintiff Promega Corporation's "motion to Deny Arbitration or, in the Alternative, Stay Arbitration Pending Determination of Arbitrability,"

1

dkt. #61; (2) defendant Invitrogen IP Holdings, Inc.'s "Cross-Motion for Order Compelling Arbitration of the Original Dispute and Claims 11-17 and 21-25 of the Amended Complaint," dkt. #64; (3) defendant Life Technologies Corporation's "Motion to Dismiss Claims 9 and 19 of the Amended Complaint," dkt. #66; (4) plaintiff's motion for leave to file a surreply brief in opposition to defendant IP Holdings's motion to compel arbitration, dkt. #86; and (5) defendant IP Holdings's motion for leave to file a "sur-surreply" brief in support of its motion to compel arbitration.  Dkt. #88.

The parties' motions for leave to file supplemental briefs are unopposed and will be granted. The remaining motions raise two primary questions: (1) whether plaintiff should be compelled to arbitrate certain claims arising out of the 1996 license agreement; and (2) whether plaintiff's claims for infringement of U.S. Patent No. Re 37,984 must be dismissed because plaintiff failed to follow the proper procedure for joining the owner of that patent, Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V.  With respect to the first question, I conclude that plaintiff is entitled to complete discovery to determine whether defendant IP Holdings is the rightful owner of the 1996 agreement.  With respect to the second question, I conclude that plaintiff's claims under the '984 patent must be dismissed, but I will give plaintiff an opportunity to file an amended complaint that complies with Fed. R. Civ. P. 19.

BACKGROUND

The impetus for the lawsuit seems to be a letter that defendant Life Technologies sent to plaintiff Promega Corporation in October 2009.  Life Technologies claimed that it was the owner of the rights to a license agreement that plaintiff had entered into with Research Genetics, Inc. in 1996 and that plaintiff owed Life Technologies $50 million because plaintiff had been miscalculating the royalty payments since 1996.  Life Technologies followed up in May 2010 with an arbitration demand under a provision of the 1996 agreement.

Plaintiff responded almost immediately with this lawsuit, asserting 14 claims against Life Technologies.  These included not only requests for declaratory relief regarding Life Technologies's arbitration demand, but also claims for infringement of  five different patents and breaches of contract of the 1996 agreement as well as a 2006 agreement between plaintiff and Applera Corporation, now known as Applied Biosystems, Inc.  Accompanying plaintiff's complaint was a motion for a preliminary injunction, dkt. #6, and a "Motion to Stay Arbitration Pending Determination of Arbitrability." Dkt. #3. (Plaintiff later withdrew its motion for a preliminary injunction.  Dkt. #17.)  Life Technologies counterattacked by filing a motion to compel arbitration of the claims relating to the 1996 agreement.  Dkt. #27.  In addition, Life Technologies filed a motion to dismiss on the ground that plaintiff's claims should have been brought against Life Technologies' subsidiaries. Dkt. #36.

In an order dated August 9, 2010, dkt. #47, I concluded that defendant Life

3

Technologies could not compel plaintiff to arbitrate because it was undisputed that Life Technologies was neither a party to the 1996 agreement nor a valid assignee. With respect to the motion to dismiss, I concluded that some claims were nonjusticiable, but the claims for patent infringement and breach of contract could proceed against Life Technologies.

In the meantime, plaintiff received a new arbitration demand, this time in IP Holdings' name, which defendants identify as the current assignee of the 1996 license agreement. A few weeks later, plaintiff filed an amended complaint, which included 20 claims and added two new defendants, IP Holdings and Applied Biosystems, both of which are subsidiaries of Life Technologies. Dkt. #60. Accompanying the amended complaint was plaintiff's new motion to "deny arbitration." The other motions now before the court soon followed. Defendants have answered the complaint, denying liability for each of plaintiff's claims and asserting five counterclaims of their own. Dkt. #68

OPINION

A. <u>Arbitration</u>

On its face, the language of the arbitration provision in the 1996 agreement seems relatively clear: "All controversies or disputes arising out of or relating to this Agreement, or relating to the breach thereof, shall be resolved by arbitration conducted in Chicago, Illinois, in accordance with the procedure set forth in Appendix E." Dimond Decl., dkt. #5, exh. F,

§ 22.1.  Plaintiff devotes much effort to arguing that the question is not as straightforward as it may seem. In fact, plaintiff identifies what seems like an almost endless litany of arguments for denying or staying arbitration:

- defendants have failed to show that the 1996 agreement was assigned to IP Holdings;

-  IP Holdings lost its rights under the 1996 agreement when it attempted to reassign them to Life Technologies;

- IP Holdings no longer exists;

- even if IP Holdings still exists, it is just a "sham" company without any enforceable rights under the 1996 agreement;

- the arbitration clause in the 1996 agreement does not apply to any of the claims in this case;

- the claims arising out of the 1996 agreement are too interrelated with the 2006 agreement, which does not include an arbitration clause;

- IP Holdings waived its right to invoke the arbitration clause;

- the 1996 agreement leaves all matters of "equity" for a court to decide;

- IP Holdings's arbitration demand is barred by the doctrine of laches;

- Invotrogen's arbitration demand is barred by the parties' course of dealing;

- it would be inequitable to allow IP Holdings to invoke the arbitration clause because Life Technologies breached a confidentiality agreement with plaintiff;

- it would be inequitable to allow IP Holdings to invoke the arbitration clause because Life Technologies and Applied Biosystems have infringed plaintiff's patents;

- defendants will be unjustly enriched if the arbitration clause is enforced;

- principles of estoppel preclude enforcement of the arbitration clause;

- claim preclusion precludes enforcement of the arbitration clause;

- arbitration cannot be ordered until plaintiff's infringement claims are resolved;

- arbitration cannot be ordered until plaintiff's claim for "unclean hands" is resolved.

The merit of many of these arguments is questionable, but I conclude that plaintiff is entitled to obtain limited discovery on the questions whether defendant IP Holdings is in fact the current assignee of the 1996 agreement and whether IP Holdings maintains its legal existence. Although the current record suggests that the answer to both of these questions is "yes," some doubt remains because defendants did not disclose many of the documents on which they now rely until after briefing began on the current motions. This left plaintiff without an adequate opportunity to challenge the documents or obtain additional evidence that could undermine them.

Obtaining any needed information on these two narrow questions should not take long. In fact, plaintiff says that it served defendants with discovery requests on these issues in September. Plt.'s Br., dkt. #74, at 19 n.9. Thus, plaintiff should have any information it needs soon, if it does not have it already. Accordingly, I will grant plaintiff's motion to stay arbitration and deny defendant IP Holdings' motion to compel arbitration without

6

prejudice.  The parties may have until December 8, 2010 to renew their motions regarding arbitration.

The new motions should be limited to the two issues identified above, with two exceptions.  The parties should address whether summary judgment should be granted on the parties' claims for declarations regarding the arbitrability of other claims.  In addition, the parties should discuss what should happen if the court grants the motion to compel arbitration in full or in part.  Should the claims going to arbitration be dismissed without prejudice or simply stayed?  And if they are stayed, should those claims be severed from this case to allow the claims not being arbitrated to move forward?  If necessary, I will consider plaintiff's other arguments for denying or staying arbitration in the order addressing the parties' renewed motions.

## B.  Standing

The parties agree that Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V. owns U.S. Patent No. Re 37,984, one of three patents of which defendants are accused of infringing.  In addition, the parties agree that Max Planck is a necessary party to bring the claims under the '984 patent.  Independent Wireless Telegraph Co. v. Radio Corporation of America, 269 U.S. 459, 468 (1926) ("The presence of the owner of the patent as a party is indispensable.").  The question is whether, in joining Max Planck as an involuntary

plaintiff, plaintiff used the proper procedure for joining this party.

The use of "involuntary plaintiffs" in federal court is governed by Fed. R. Civ. P. 19. Under Rule 19(a)(2), "[a] person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff."  I have noted that "[t]he use of Rule 19 in a federal case to join an involuntary plaintiff is rare."  Elborough v. Evansville Community School District, 636 F. Supp. 2d 812, 826 (W.D. Wis. 2009).  This is because a party who wishes to name an involuntary plaintiff must show that the absent party has refused to be joined as a plaintiff *and* is outside the court's jurisdiction.   7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 1606, at 73 (3d ed. 2001) ("A party may be made an involuntary plaintiff only if the person is beyond the jurisdiction of the court, and is notified of the action, but refuses to join.").  See also Murray v. Mississippi Farm Bureau Casualty Insurance Co., 251 F.R.D. 361, 364 (W.D. Wis. 2008) ("Traditionally, a 'proper case' is one in which the involuntary plaintiff is outside the court's jurisdiction and is under some obligation to join the plaintiff's lawsuit but has refused to do so.").  Otherwise, the absent party must be joined and served as a defendant and then realigned if necessary.  4 Moore's Federal Practice § 19.04[4][a] (3d ed. 2010) ("If the absentee is subject to personal jurisdiction, the court will order the absentee joined and served *as a defendant*.") (emphasis in original).

The situations in which parties may be made involuntary plaintiffs are limited  under

8

the rules out of fairness to the absent party:

> These limitations are necessary because the involuntary plaintiff procedure allows a person to be made a party to the action without service of process and permits the court to enter a judgment that has preclusive effect as to the involuntary plaintiff. There is no justification for resorting to it when the party actually is subject to the jurisdiction of the court.

Wright, supra, at 74-75.  In other words, if a plaintiff is permitted to name anyone it wants as an involuntary plaintiff, without following a particular procedure, there is a danger that the absent party will not have sufficient notice or an adequate opportunity to protect its rights.

In this case, plaintiff has not shown that it satisfied either of the requirements under Rule 19.  With respect to notice, plaintiff's vice-president avers that Max Planck did not respond when plaintiff "provided . . . notice . . . concerning the present litigation," Dimond Decl. ¶ 9, dkt. #83, but plaintiff did not file the notice with the court or describe the information in the notice, the form the notice took or even the date notice was provided. Plaintiff says nothing about the jurisdictional question.

Plaintiff's response to defendants' motion is that "there was no need to make a motion under Rule 19" because it "named the patent owner" in the complaint.  Plt.'s Br., dkt. #82, at 1.  This would be true if Max Planck had joined the lawsuit voluntarily as a plaintiff, but that is not sufficient to name an involuntary plaintiff, as discussed above.

Plaintiff also quotes the following passage from Propat International Corp. v. Rpost,

9

Inc., 473 F.3d 1187, 1193 (Fed. Cir. 2007):

> This court has characterized the rule in <u>Independent Wireless</u> as meaning that an exclusive licensee has a sufficient interest in the patent to have standing to sue under Article III of the Constitution. We explained that the requirement that the exclusive licensee must normally join the patent owner in any suit on the patent is a "prudential" requirement, not a constitutional requirement based on Article III limitations, and that an action brought by the exclusive licensee alone may be maintained as long as the licensee joins the patent owner in the course of the litigation

This passage does not help plaintiff. It addresses a question on which there is no dispute, (whether plaintiff must join Max Planck), but it does not address the question of *how* Max Planck must be joined.

Accordingly, I conclude that defendants' motion to dismiss the complaint as to plaintiff's claims under the '984 patent must be granted. I will give plaintiff an opportunity to file an amended complaint that either: (1) names Max Planck as a voluntary plaintiff (and is signed by counsel for Max Planck); (2) names Max Planck as a defendant (and is accompanied by proof of service); or (3) names Max Planck as an involuntary plaintiff and is accompanied by a motion demonstrating that plaintiff has satisfied the requirements of Rule 19.

C.  <u>Other Matters</u>

Two other matters require attention. The first is the large number of documents that

have been filed under seal in this case, including the complaint and the amended complaint.

I discussed this issue in the August 9 order:

> Although the parties may have a legitimate interest in keeping many of their filings secret, I believe that it is a rare case in which the document that begins the lawsuit may be kept entirely out of the public eye. Courts do not serve as the private arbiters of the parties; "the presumption [is] that judicial proceedings are public." In re Cudahy, 294 F.3d 947, 952 (7th Cir. 2002). It is particularly inappropriate to conceal the complaint because it serves not only the purpose of giving notice to the defendant, but also to other parties who may have an interest in the lawsuit. Further, because a complaint need not contain "detailed factual allegations," Twombly, 550 U.S. at 555, there should be few cases in which a plaintiff is forced to include confidential information. In any event, "[i]nformation that affects the disposition of litigation belongs in the public record unless a statute or privilege justifies nondisclosure." United States v. Foster, 564 F.3d 852, 853 (7th Cir. 2009). Because I relied on the complaint in this opinion, this rule applies to the complaint.

Dkt. #47, at 11-12.  I informed plaintiff that I would unseal the complaint unless it showed that it could satisfy the standard under Foster *and* submitted a redacted, unsealed version of the complaint.

Plaintiff complied with the order and submitted a redacted a complaint. Dkt. #55. However, four days later plaintiff filed an amended complaint under seal without submitting a redacted version.  Since that time, almost every document filed by either side has been filed under seal.

It is ironic that plaintiff is fighting to avoid arbitration (where it would be free to keep the dispute private) and yet is insisting in this court on keeping all information hidden, even

11

to the point of violating a court order.  This complete secrecy has no place in federal court and must end.  Plaintiff may have until November 20, 2010, to submit a redacted, unsealed version of its complaint.  Further, if the parties wish to file anything under seal in the future, the sealed document must be accompanied by a redacted, unsealed version.

The second matter relates to the tone of the briefs that have been filed thus far.  Too often the parties have been relying on hyperbole, inflammatory language and name calling when making their arguments.  <u>E.g.</u>, dkt. #62, at 6 (accusing other side of using "improper and illegal methods"); <u>id.</u> at 6-7 (accusing other side of "duplicitous use of its power"); dkt. #74, at 4 (accusing other side of "misleading the Court"); <u>id.</u> at 13 (calling other side's position "nonsense"); dkt. #78, at 33 (accusing other side of seeking "unjust and unconscionable result"); <u>id.</u> at 36 (calling other side's conduct "egregious"); dkt. #86-2 (other side has "clearly misled this Court.").  In my view, none of these attacks are fair or necessary.  Although I realize that the parties have had "a particularly contentious history," Plt.'s Br., dkt. #62, at 6, language like this does not help to persuade and may actually detract from the substance of an argument.  In the future, I anticipate that counsel will focus on the facts and the law in their briefs rather than on demonizing their opponent.

ORDER

IT IS ORDERED that

1.  Plaintiff Promega Coporation's motion for leave to file a surreply brief, dkt. #86, and defendant Invitrogen IP Holdings' motion for leave to file a "sur-surreply" brief, dkt. #88, are GRANTED.

2. Plaintiff's "motion to Deny Arbitration or, in the Alternative, Stay Arbitration Pending Determination of Arbitrability," dkt. #61, is GRANTED IN PART.   A ruling on arbitration will be stayed to allow the parties to complete discovery on the questions whether defendant IP Holdings is in fact the current assignee of the 1996 agreement and whether IP Holdings maintains its legal existence.

3.  Defendant Invitrogen IP Holdings, Inc.'s "Cross-Motion for Order Compelling Arbitration of the Original Dispute and Claims 11-17 and 21-25 of the Amended Complaint," dkt. #64, is DENIED WITHOUT PREJUDICE. The parties may have until December 10, 2010, to filed renewed motions regarding arbitration.

4.  Defendant Life Technologies Corporation's "Motion to Dismiss Claims 9 and 19 Amended Complaint," dkt. #66, is GRANTED.  Plaintiff may have until December 10, 2010, to file an amended complaint that complies with Fed. R. Civ. P. 19, as described in this order.

5.  Plaintiff may have until November 22, 2010, to file a redacted, unsealed version

of its amended complaint.  All future filings under seal must be accompanied by a redacted,

unsealed version.

Entered this 10th day of November, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

14