# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

PROMEGA CORPORATION
a Wisconsin Corporation
2800 Woods Hollow Road
Madison, Wisconsin 53711,

       Plaintiff,

Case No.: 10-CV-281

MAX-PLANCK-GESELLSCHAFT ZUR
FORDERUNG DER WISSENSCHAFTEN
E.V.
Hofgartenstr. 8,
80539 München Germany,

       Involuntary Plaintiff,

    v.

LIFE TECHNOLOGIES CORPORATION
a Delaware Corporation
5791 Van Allen Way
Carlsbad, California 92008,

APPLIED BIOSYSTEMS, LLC
852 Lincoln Centre Drive
Fosters City, CA  94404,

INVITROGEN IP HOLDINGS, INC.
a Delaware Corporation
5791 Van Allen Way
Carlsbad, CA  92008

       Defendants.

---

REDACTED | **SECOND AMENDED COMPLAINT**

---

Plaintiff, Promega Corporation ("Promega"), by its attorneys, Troupis Law Office, LLC,

states for its Amended Complaint against defendants Life Technologies Corporation

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

("Life Technologies"), Applied Biosystems, LLC, and Invitrogen IP Holdings, Inc. ("IP

Holdings"), the following:

## NATURE OF THE ACTION

1.      Promega brings this action for patent infringement arising from Life

Technologies' infringement of U.S. Patent No. 5,843,660 (the "'660 Patent"), U.S. Patent

No. 6,221,598 (the "'598 Patent"), 6,479,235 (the "'235 Patent"), 7,008,771 (the "'771 Patent"),

and U.S. Patent No. Re 37,984 (the "'984 Patent") (together "Promega Patents") by the

manufacture and sale of certain products by Applied Biosystems, LLC, and by Life Technologies

directly or through its wholly-owned subsidiary Applied Biosystems, LLC, by the manufacture

and sale of certain products by Life Technologies.

2.      Promega seeks damages and injunctive relief for Applied Biosystems, LLC's and

Life Technologies' intentional infringement of the Promega Patents, each being valid patents

owned or controlled by Promega.  Life Technologies is infringing (among other patents) the

Tautz patent (RE 37,984), which is licensed to Promega in the very agreement Life Technologies

now seeks to arbitrate.

3.      Promega was granted ███████ rights to the '984 Patent in certain fields of use,

pursuant to a license agreement dated June 19, 1996 (the "1996 License Agreement") between

Promega and Research Genetics, Inc. ("Research Genetics").

4.      Promega and Research Genetics agreed that Promega had ████████████

████████████████████████████████████████████████

████████████████████████████████████

██████ In disregard of Promega's patent rights and the 1996 License Agreement, Applied

Biosystems, LLC, and Life Technologies have been using, making, and offering for sale products

2

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

embraced by the '984 Patent within the human clinical market and/or the human genetic identity market.

5.    Promega raised the issue of the infringement of the Promega Patents during a meeting with Life Technologies' executives in January 2010. In part to address the infringement, as well as other concerns, the parties agreed to conduct a review and audit of various agreements. After a series of delays and meetings, Life Technologies has now refused to provide further information and in an attempt to avoid the consequences of its infringement and the consequences of other written agreements, has demanded arbitration of a royalty dispute under the 1996 License Agreement. Life Technologies has taken the position that this royalty dispute may entitle it to terminate the 1996 License Agreement.

6.    In addition to seeking redress for patent infringement, Promega also brings this action to declare the parties' rights and responsibilities under the 1996 License Agreement and a cross license dated August 29, 2006, between Promega and Applera Corporation (the "ABI Cross License"). Applera Corporation was renamed Applied Biosystems, Inc. on or about June 30, 2008 (collectively "Applied Biosystems"). An actual controversy has developed between Promega, Life Technologies, Applied Biosystems, LLC, and IP Holdings concerning the 1996 License Agreement and ABI Cross License.

7.    Promega further asks the Court to enjoin Life Technologies and IP Holdings from terminating the 1996 License Agreement pending resolution of the parties' disputes. Termination of the 1996 License Agreement would irreparably harm Promega by stripping it of intellectual property rights that form the backbone of its business operations, and is intended to or would have the effect of precluding Promega from enforcing its patent rights against Life Technologies. Moreover, Life Technologies' theories regarding the 1996 RGI License should not be heard,

3

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

since Life Technologies comes with unclean hands by virtue of infringing the Tautz patent (RE 37,984), the patent licensed to Promega from the very agreement Life Technologies now seeks to arbitrate.

8.      Promega also seeks redress for the breach of the ABI Cross License and the breach of the 1996 License Agreement.

9.      For more than a decade, Promega and Research Genetics (including certain successors in interest to Research Genetics) performed their obligations under the 1996 License Agreement with a common understanding of the royalty calculations. Promega calculated royalties consistent with the parties' intent and in a manner that made economic sense. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

the parties have been operating under that interpretation of the 1996 License Agreement's plain language for more than 13 years.

10.     Research Genetics was acquired in February 2000 by Invitrogen Corporation ("Invitrogen"). In November 2008, Invitrogen also acquired Applied Biosystems through a merger with another Invitrogen wholly owned subsidiary which then changed its name to Applied Biosystems, LLC. Invitrogen then changed its name to Life Technologies Corporation.

11.     Promega never consented to an assignment of the 1996 License Agreement to Life Technologies. Nonetheless, following multiple changes in ownership, in October 2009, Life Technologies asserted a new interpretation of the 1996 License Agreement, which would require Promega to pay, retroactively, more than twenty times what it had previously paid under the 1996 License Agreement.

4

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

12.    Life Technologies, asserted that it was a successor in interest to Research Genetics

to the 1996 License Agreement, and demanded that Promega pay ███████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████ not

coincidentally, from Applied Biosystems (like Research Genetics, a company also now owned by

Life Technologies) with some relatively small amounts from other sublicensees. The amounts

demanded by Life Technologies as sublicense royalties, far exceed even Promega's own

sublicense revenue.

13.    ████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

███████████████████████████████████'s premised

on Life Technologies' own product sales prior to and then under the ABI Cross License. In a

letter dated February 3, 2010, Life Technologies conceded it has no documentary evidence to

support its novel claim.

14.    After receiving Life Technologies' October 2009 correspondence, Life

Technologies agreed to stay any cure obligation while the parties conducted an investigation and

held face-to-face discussions. As the overall dispute involves multiple licenses and multiple

patents, the parties each notified the other of an intent to conduct audits of the various licenses

between the parties. Due to Life Technologies' actions, however, the audit process has stalled.

15.    Ignoring the parties' agreement to audit the interrelated licenses and patents, the

obvious essential importance of the ABI Cross License, the critical issues surrounding Life

5

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

Technologies' patent infringement and, if and to the extent that Life Technologies is a successor

in interest to the 1996 License Agreement, Life Technologies' own breach of the 1996 License

Agreement, Life Technologies contacted Promega by a letter dated May 4, 2010 demanding

arbitration of a supposed royalty dispute purportedly under the 1996 License Agreement.

16. ███████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████. Promega has no

choice except to seek this Court's immediate intervention. Promega seeks a declaration that:

(1) Life Technologies and Applied Biosystems, LLC, have, by selling outside permitted fields,

willfully infringed the '660 Patent, the '598 Patent, the '235 Patent, the '771 Patent, and the

'984 Patent; (2) Life Technologies and Applied Biosystems, LLC, are enjoined from making,

using, selling or offering to sell any product outside the permitted fields that infringes the

'660 Patent, the '598 Patent, the '235 Patent, the '711 Patent and the '984 Patent; (3)████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████(4) Promega has properly shared

all royalties due under the 1996 License Agreement; (5) Life Technologies and IP Holdings have

no good-faith claim that Promega has breached its obligation to share royalties under the

1996 License Agreement; (6)████████████████████████████████

████████████████████████████████████████

██████████████████████████(7) by virtue of the applicable statute of limitations, no unpaid

royalties under the 1996 License Agreement arising more than six years before the filing of this

Complaint may be recovered; (8) Promega is entitled to a judgment for the Defendants' breach of

6

the ABI Cross License; (9) Promega is entitled to a judgment for IP Holdings' and Life

Technologies' and (to the extent that Life Technologies is determined to be a successor in interest

to the 1996 License Agreement) breach of the 1996 License Agreement; and (10) Promega is

entitled to a judgment for the Defendants' breach of the 1996 License Agreement covenant of

good faith and fair dealing; (11) Defendants come with unclean hands and shall be given no

relief; (12) Defendants are liable for damages for torts committed against Promega; (13) the

Defendants have waived any right to arbitration; (14) Defendants' conduct bars any arbitration

request or any other relief by doctrines of laches, estoppel, unjust enrichment, reformation and

other principles of equity; and (15) the issues arising here are not arbitrable.

## PARTIES

17.     Promega is a corporation organized under the laws of the State of Wisconsin, with

a principal place of business located at 2800 Woods Hollow Road, Madison, Wisconsin 53711.

18.     Max-Planck-Gesellschaft zur Forderung der Wissenschaften e.V. ("Max-Planck")

is a non-profit research institute organized and existing under the laws of Germany, with its

principal offices located at Hofgartenstr. 8, 80539 München Germany.  Max-Planck is named as

an involuntary plaintiff because it has been the owner of the '984 Patent and may have an interest

therein. Max Planck has refused to join in this action and is outside the Court's jurisdiction.

19.     Life Technologies is a corporation organized under the laws of the State of

Delaware, with a principal place of business located at 5791 Van Allen Way, Carlsbad,

California 92008.  Records on file with the State of Delaware Division of Corporations show that

Life Technologies' registered agent authorized to accept service of process is Corporation

Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

7

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

20.     On information and belief, Applied Biosystems, LLC, is a part of Life
Technologies, with its principal place of business located at 850 Lincoln Centre Drive, Foster
City, California.

21.     On information and belief, Invitrogen IP Holdings, Inc., claims to be a corporation
organized under the laws of the State of Delaware with a principal place of business located at
5791 Van Allen Way, Carlsbad, California.

## JURISDICTION AND VENUE

22.     This is an action for patent infringement founded upon the patent laws of the
United States. Jurisdiction and venue are based on 28 U.S.C. §§ 1338, 1391 and 1400.

23.     The court also has jurisdiction based upon diversity of citizenship existing
between the parties pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum of
$75,000.00, exclusive of interest and costs.

24.     This is an action, in part, pursuant to the Federal Declaratory Judgment Act,
28 U.S.C. §§ 2201 and 2202. This Court may enter a declaratory judgment under 28 U.S.C.
§ 2201 and Federal Rule of Civil Procedure 57 because an actual and justiciable controversy
exists concerning the rights of, and legal relations between, Promega, Life Technologies,
IP Holdings, and Applied Biosystems, LLC.

25.     This Court has personal jurisdiction over Life Technologies because, among other
things, it transacts business within this judicial district, including, according to the AT&T
February 2010 Phone Directory, through Invitrogen at 501 Charmany Drive in Madison,
Wisconsin, and therefore has substantial and continuous contacts within this judicial district.
Life Technologies has purposefully availed itself to the privileges of conducting business in this
judicial district.

8

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

26.     On information and belief, this Court has personal jurisdiction over Applied Biosystems, LLC, because it is a part of Life Technologies and because it transacts business within this judicial district.

27.     On information and belief, this Court has personal jurisdiction over IP Holdings because, among other things, Life Technologies has stated that IP Holdings transacts business in this judicial district by the terms of the 1996 License Agreement referred to below, and transacts business in this district by its relationship with Life Technologies.

## FACTS

### Life Technologies' Patent Infringement

### U.S. Patent No. 5,843,660 (the "'660 Patent")

28.     On December 1, 1998, the '660 Patent was duly and legally issued to James W. Schumm, Katherine A. Micka, and Dawn R. Rabbach for an invention entitled "Multiplex Amplification of Short Tandem Repeat Loci." A copy of the '660 Patent was attached as Exhibit A to the Complaint at Docket #1, and is made a part of this Amended Complaint.

29.     Promega is the owner by assignment of the '660 Patent.

30.     Upon information and belief, Life Technologies is directly infringing, inducing infringement, and contributorily infringing Promega's exclusive rights in the patents-in-suit by manufacturing, importing, using, offering for sale, and/or selling products that embody the inventions of and are within the scope of the patents-in-suit and by causing others to offer for sale, sell, and use the infringing products into the clinical diagnostics, clinical research and research markets thereby infringing the '660 Patent.

31.     Upon information and belief, Life Technologies has infringed and continues to infringe Plaintiffs' rights under the '660 Patent by manufacturing, using, offering for sale and/or

9

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
FILED UNDER SEAL

selling a number of products, including at least the following product which Life Technologies describes as:

AmpFℓSTR® Identifiler® PCR Amplification Kit

Such products (collectively referred to herein as the "'660 Patent infringing products") embody the invention of, and are within the scope of, the '660 Patent.

32.      Among the purchasers and distributors of Life Technologies' infringing products into the clinical diagnostics, clinical research and research markets  are parties not licensed or otherwise authorized by Plaintiff to use or sell the invention claimed in the '660 Patent into the clinical diagnostics, clinical research, and research markets.

33.      By virtue of its aforementioned conduct, Life Technologies has induced the infringement of the '660 Patent in violation of 35 U.S.C. § 271(b).

34.      By virtue of its sales and distribution of the infringing products into the clinical diagnostics, clinical research and research markets as described herein, Life Technologies has knowingly contributed to the infringement of the '660 Patent in violation of 35 U.S.C. § 271(c).

35.      Life Technologies acted despite an objectively high likelihood that its actions constituted infringement of Promega's valid rights in the '660 Patent when it knew or should have known that its actions constituted infringement of Promega's rights in the '660 Patent.

36.      As a direct and proximate result of the Life Technologies' patent infringement, Promega has suffered injury and damage, which continue to accrue in an amount to be determined at trial.

37.      Upon information and belief, Applied Biosystems, LLC, is directly infringing, inducing infringement, and contributorily infringing Promega's exclusive rights in the patents-in-suit by manufacturing, importing, using, offering for sale, and/or selling products that embody

10

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
FILED UNDER SEAL

the inventions of and are within the scope of the patents-in-suit and by causing others to offer for

sale, sell, and use the infringing products into the clinical diagnostics, clinical research and

research markets thereby infringing the '660 Patent.

38.     Upon information and belief, Applied Biosystems, LLC, has infringed and

continues to infringe Plaintiffs' rights under the '660 Patent by manufacturing, using, offering for

sale and/or selling a number of products, including at least the following product which Applied

Biosystems, LLC, describes as:

AmpFℓSTR® Identifiler® PCR Amplification Kit

Such products (collectively referred to herein as the "'660 Patent infringing products") embody the

invention of, and are within the scope of, the '660 Patent.

39.     Among the purchasers and distributors of Applied Biosystems, LLC's infringing

products into the clinical diagnostics, clinical research and research markets  are parties not

licensed or otherwise authorized by Plaintiff to use or sell the invention claimed in the '660

Patent into the clinical diagnostics, clinical research, and research markets.

40.     By virtue of its aforementioned conduct, Applied Biosystems, LLC, has induced

the infringement of the '660 Patent in violation of 35 U.S.C. § 271(b).

41.     By virtue of its sales and distribution of the infringing products into the clinical

diagnostics, clinical research and research markets as described herein, Applied Biosystems,

LLC, has knowingly contributed to the infringement of the '660 Patent in violation of 35 U.S.C.

§ 271(c).

42.     Applied Biosystems, LLC, acted despite an objectively high likelihood that its

actions constituted infringement of Promega's valid rights in the '660 Patent when it knew or

11

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

should have known that its actions constituted infringement of Promega's rights in the '660 Patent.

43.     As a direct and proximate result of the Applied Biosystems, LLC's patent infringement, Promega has suffered injury and damage, which continue to accrue in an amount to be determined at trial.

### U.S. Patent No. 6,221,598 (the "'598 Patent")

44.     On April 24, 2001, the '598 Patent was duly and legally issued to James W. Schumm, Cynthia J. Sprecher, and Ann M. Lins for an invention entitled "Multiplex Amplification of Short Tandem Repeat Loci." A copy of the '598 Patent was attached as Exhibit B to the Complaint at Docket #1, and is made a part of this Amended Complaint.

45.     Promega is the owner by assignment of the '598 Patent.

46.     Upon information and belief, Life Technologies is directly infringing, inducing infringement, and contributorily infringing Promega's exclusive rights in the patents-in-suit by manufacturing, importing, using, offering for sale, and/or selling products that embody the inventions of and are within the scope of the patents-in-suit and by causing others to offer for sale, sell, and use the infringing products into the clinical diagnostics, clinical research and research markets, which are not permitted fields, thereby infringing the '598 Patent.

47.     Upon information and belief, Life Technologies has infringed and continues to infringe Plaintiffs' rights under the '598 Patent by manufacturing, using, offering for sale and/or selling a number of products, including at least the following products which Life Technologies describes as:

> AmpFℓSTR® COfiler® PCR Amplification Kit
> AmpFℓSTR® Profiler® PCR Amplification Kit
> AmpFℓSTR® Identifiler® PCR Amplification Kit
> AmpFℓSTR® Green™ I PCR Amplification Kit

12

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

Such products (collectively referred to herein as the "'598 Patent infringing products") embody the invention of, and are within the scope of, the '598 Patent.

48.      Among the purchasers and distributors of Life Technologies' infringing products into the clinical diagnostics, clinical research and research markets are parties not licensed or otherwise authorized by Plaintiff to use or sell the invention claimed in the '598 Patent into the clinical diagnostics, clinical research, and research markets.

49.      By virtue of its aforementioned conduct, Life Technologies has induced the infringement of the '598 Patent in violation of 35 U.S.C. § 271(b).

50.      By virtue of its sales and distribution of the infringing products into the clinical diagnostics, clinical research and research markets as described herein, Life Technologies has knowingly contributed to the infringement of the '598 Patent in violation of 35 U.S.C. § 271(c).

51.      Life Technologies acted despite an objectively high likelihood that its actions constituted infringement of Promega's valid rights in the '598 Patent when it knew or should have known that its actions constituted infringement of Promega's rights in the '598 Patent.

52.      As a direct and proximate result of the Life Technologies' patent infringement, Promega has suffered injury and damage, which continue to accrue in an amount to be determined at trial.

53.      Upon information and belief, Applied Biosystems, LLC, is directly infringing, inducing infringement, and contributorily infringing Promega's exclusive rights in the patents-in-suit by manufacturing, importing, using, offering for sale, and/or selling products that embody the inventions of and are within the scope of the patents-in-suit and by causing others to offer for sale, sell, and use the infringing products into the clinical diagnostics, clinical research and research markets, which are not permitted fields, thereby infringing the '598 Patent.

13

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

54.     Upon information and belief, Applied Biosystems, LLC, has infringed and continues to infringe Plaintiffs' rights under the '598 Patent by manufacturing, using, offering for sale and/or selling a number of products, including at least the following products which Applied Biosystems describes as:

> AmpFℓSTR® COfiler® PCR Amplification Kit
> AmpFℓSTR® Profiler® PCR Amplification Kit
> AmpFℓSTR® Identifiler®PCR Amplification Kit
> AmpFℓSTR® Green™ I PCR Amplification Kit

Such products (collectively referred to herein as the "'598 Patent infringing products") embody the invention of, and are within the scope of, the '598 Patent.

55.     Among the purchasers and distributors of Applied Biosystems, LLC's infringing products into the clinical diagnostics, clinical research and research markets are parties not licensed or otherwise authorized by Plaintiff to use or sell the invention claimed in the '598 Patent into the clinical diagnostics, clinical research, and research markets.

56.     By virtue of its aforementioned conduct, Applied Biosystems, LLC, has induced the infringement of the '598 Patent in violation of 35 U.S.C. § 271(b).

57.     By virtue of its sales and distribution of the infringing products into the clinical diagnostics, clinical research and research markets as described herein, Applied Biosystems, LLC, has knowingly contributed to the infringement of the '598 Patent in violation of 35 U.S.C. § 271(c).

58.     Applied Biosystems, LLC, acted despite an objectively high likelihood that its actions constituted infringement of Promega's valid rights in the '598 Patent when it knew or should have known that its actions constituted infringement of Promega's rights in the '598 Patent.

14

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

59.     As a direct and proximate result of the Applied Biosystems, LLC's patent infringement, Promega has suffered injury and damage, which continue to accrue in an amount to be determined at trial.

### U.S. Patent No. 6,479,235 (the "'235 Patent")

60.     On November 12, 2002, the '235 Patent was duly and legally issued to James W. Schumm and Cynthia J. Sprecher for an invention entitled "Multiplex Amplification of Short Tandem Repeat Loci." A copy of the '235 Patent was attached as Exhibit C to the Complaint at Docket #1, and is made a part of this Amended Complaint.

61.     Promega is the owner by assignment of the '235 Patent.

62.     Upon information and belief, Life Technologies is directly infringing, inducing infringement, and contributorily infringing Promega's exclusive rights in the patents-in-suit by manufacturing, importing, using, offering for sale, and/or selling products that embody the inventions of and are within the scope of the patents-in-suit and by causing others to offer for sale, sell, and use the infringing products into the clinical diagnostics, clinical research and research markets, which were not permitted fields, thereby infringing the '235 Patent.

63.     Upon information and belief, Life Technologies has infringed and continues to infringe Plaintiffs' rights under the '235 Patent by manufacturing, using, offering for sale and/or selling a number of products, including at least the following products which Life Technologies describes as:

AmpFℓSTR® Identifiler® PCR Amplification Kit

Such products (collectively referred to herein as the "'235 Patent infringing products") embody the invention of, and are within the scope of, the '235 Patent.

15

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

64.     Among the purchasers and distributors of Life Technologies' infringing products into the clinical diagnostics, clinical research and research markets are parties not licensed or otherwise authorized by Plaintiff to use or sell the invention claimed in the '235 Patent into the clinical diagnostics, clinical research and research markets.

65.     By virtue of its aforementioned conduct, Life Technologies has induced the infringement of the '235 Patent in violation of 35 U.S.C. § 271(b).

66.     By virtue of its sales and distribution of the infringing products into the clinical diagnostics, clinical research and research markets as described herein, Life Technologies has knowingly contributed to the infringement of the '235 Patent in violation of 35 U.S.C. § 271(c).

67.     Life Technologies acted despite an objectively high likelihood that its actions constituted infringement of Promega's valid rights in the '235 Patent when it knew or should have known that its actions constituted infringement of Promega's rights in the '235 Patent.

68.     As a direct and proximate result of the Life Technologies' patent infringement, Promega has suffered injury and damage, which continue to accrue in an amount to be determined at trial.

69.     Upon information and belief, Applied Biosystems, LLC, is directly infringing, inducing infringement, and contributorily infringing Promega's exclusive rights in the patents-in-suit by manufacturing, importing, using, offering for sale, and/or selling products that embody the inventions of and are within the scope of the patents-in-suit and by causing others to offer for sale, sell, and use the infringing products into the clinical diagnostics, clinical research and research markets, which are not permitted fields, thereby infringing the '235 Patent.

70.     Upon information and belief, Applied Biosystems, LLC, has infringed and continues to infringe Plaintiffs' rights under the '235 Patent by manufacturing, using, offering for

16

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
FILED UNDER SEAL

sale and/or selling a number of products, including at least the following products which Applied Biosystems, LLC, describes as:

AmpFℓSTR® Identifiler® PCR Amplification Kit

Such products (collectively referred to herein as the "'235 Patent infringing products") embody the invention of, and are within the scope of, the '235 Patent.

71.     Among the purchasers and distributors of Applied Biosystems, LLC's infringing products into the clinical diagnostics, clinical research and research markets are parties not licensed or otherwise authorized by Plaintiff to use or sell the invention claimed in the '235 Patent into the clinical diagnostics, clinical research and research markets.

72.     By virtue of its aforementioned conduct, Applied Biosystems, LLC, has induced the infringement of the '235 Patent in violation of 35 U.S.C. § 271(b).

73.     By virtue of its sales and distribution of the infringing products into the clinical diagnostics, clinical research and research markets as described herein, Applied Biosystems, LLC, has knowingly contributed to the infringement of the '235 Patent in violation of 35 U.S.C. § 271(c).

74.     Applied Biosystems, LLC, acted despite an objectively high likelihood that its actions constituted infringement of Promega's valid rights in the '235 Patent when it knew or should have known that its actions constituted infringement of Promega's rights in the '235 Patent.

75.     As a direct and proximate result of the Applied Biosystems, LLC's patent infringement, Promega has suffered injury and damage, which continue to accrue in an amount to be determined at trial.

17

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

### U.S. Patent No. 7,008,771 (the "'771 Patent")

76.     On March 7, 2006, the '771 Patent was duly and legally issued to James W. Schumm and Cynthia J. Sprecher for an invention entitled "Multiplex Amplification of Short Tandem Repeat Loci." A copy of the '771 Patent was attached as <u>Exhibit D</u> to the Complaint at Docket #1, and is made a part of this Amended Complaint.

77.     Promega is the owner by assignment of the '771 Patent.

78.     Upon information and belief, Life Technologies is directly infringing, inducing infringement, and contributorily infringing Promega's exclusive rights in the patents-in-suit by manufacturing, importing, using, offering for sale, and/or selling products that embody the inventions of and are within the scope of the patents-in-suit and by causing others to offer for sale, sell, and use the infringing products into the clinical diagnostics, clinical research and research markets, which are not permitted fields, thereby infringing the '771 Patent.

79.     Upon information and belief, Life Technologies has infringed and continues to infringe Plaintiffs' rights under the '771 Patent by manufacturing, using, offering for sale and/or selling a number of products, including at least the following products which Life Technologies describes as:

AmpFℓSTR® Identifiler® PCR Amplification Kit

Such products (collectively referred to herein as the "'771 Patent infringing products") embody the invention of, and are within the scope of, the '771 Patent.

80.     Among the purchasers and distributors of Life Technologies' infringing products into the clinical diagnostics and clinical research markets are parties not licensed or otherwise authorized by Plaintiff to use or sell the invention claimed in the '771 Patent into the clinical diagnostics, clinical research and research markets.

18

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

81. By virtue of its aforementioned conduct, Life Technologies has induced the infringement of the '598 Patent in violation of 35 U.S.C. § 271(b).

82. By virtue of its sales and distribution of the infringing products into the clinical diagnostics, clinical research and research markets as described herein, Life Technologies has knowingly contributed to the infringement of the '771 Patent in violation of 35 U.S.C. § 271(c).

83. Life Technologies acted despite an objectively high likelihood that its actions constituted infringement of Promega's valid rights in the '771 Patent when it knew or should have known that its actions constituted infringement of Promega's rights in the '771 Patent.

84. As a direct and proximate result of the Life Technologies' patent infringement, Promega has suffered injury and damage, which continue to accrue in an amount to be determined at trial.

85. Upon information and belief, Applied Biosystems, LLC, is directly infringing, inducing infringement, and contributorily infringing Promega's exclusive rights in the patents-in-suit by manufacturing, importing, using, offering for sale, and/or selling products that embody the inventions of and are within the scope of the patents-in-suit and by causing others to offer for sale, sell, and use the infringing products into the clinical diagnostics, clinical research and research markets, which are not permitted fields, thereby infringing the '771 Patent.

86. Upon information and belief, Applied Biosystems, LLC, has infringed and continues to infringe Plaintiffs' rights under the '771 Patent by manufacturing, using, offering for sale and/or selling a number of products, including at least the following products which Applied Biosystems, LLC, describes as:

AmpFℓSTR® Identifiler® PCR Amplification Kit

19

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

Such products (collectively referred to herein as the "'771 Patent infringing products") embody the invention of, and are within the scope of, the '771 Patent.

87.     Among the purchasers and distributors of Applied Biosystems, LLC's infringing products into the clinical diagnostics and clinical research markets are parties not licensed or otherwise authorized by Plaintiff to use or sell the invention claimed in the '771 Patent into the clinical diagnostics, clinical research and research markets.

88.     By virtue of its aforementioned conduct, Applied Biosystems, LLC, has induced the infringement of the '598 Patent in violation of 35 U.S.C. § 271(b).

89.     By virtue of its sales and distribution of the infringing products into the clinical diagnostics, clinical research and research markets as described herein, Applied Biosystems, LLC, has knowingly contributed to the infringement of the '771 Patent in violation of 35 U.S.C. § 271(c).

90.     Applied Biosystems, LLC, acted despite an objectively high likelihood that its actions constituted infringement of Promega's valid rights in the '771 Patent when it knew or should have known that its actions constituted infringement of Promega's rights in the '771 Patent.

91.     As a direct and proximate result of the Applied Biosystems, LLC's patent infringement, Promega has suffered injury and damage, which continue to accrue in an amount to be determined at trial.

### U.S. Patent No. Re 37,984 (the "'984 Patent")

92.     On February 11, 2003, the '984 Patent was duly and legally issued to Herbert Jäckle and Diethard Tautz for an invention entitled "Process for Analyzing Length

20

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
FILED UNDER SEAL

Polymorphism in DNA Regions." A copy of the '984 Patent was attached hereto as Exhibit E to the Complaint at Docket #1, and is made a part of this Amended Complaint.

93.     Max-Planck is the owner by assignment of the '984 Patent. Max Planck Innovation (called Garching Instruments GmbH until 1993; and from 1993 to the end of 2006 called Garching Innovation GmbH ("Garching"), a 100% subsidiary and technology transfer agency of Max-Planck, organized and existing under the laws of Germany, with its principal offices located at Amalienstr. 33, 80799, München, Germany, has the right through Max-Planck to license technology owned by Max-Planck, including the '984 Patent.

94.     ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████

95.     By the terms of the 1996 License Agreement, Promega ████████████████
████████████████████████████████████████████
████████████

96.     Upon information and belief, Life Technologies is directly infringing, inducing infringement, and contributorily infringing Promega's ████████ rights in the patents-in-suit by manufacturing, importing, using, offering for sale, and/or selling products that embody the inventions of and are within the scope of the patents-in-suit and by causing others to offer for sale, sell, and use the infringing products into the clinical diagnostics, clinical research and research markets, ████████████████████ thereby infringing the '984 Patent.

21

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

97.    Upon information and belief, Life Technologies has infringed and continues to infringe Plaintiffs' rights under the '984 Patent by manufacturing, using, offering for sale and/or selling a number of products, including at least the following products which Life Technologies describes as:

> AmpFℓSTR® Profiler Plus® PCR Amplification Kit
> AmpFℓSTR® COfiler® PCR Amplification Kit
> AmpFℓSTR® Profiler® PCR Amplification Kit
> AmpFℓSTR® Identifiler®PCR Amplification Kit
> AmpFℓSTR® Yfiler® PCR Amplification Kit
> AmpFℓSTR® Green™ I PCR Amplification Kit

Such products (collectively referred to herein as the "'984 Patent infringing products") embody the invention of, and are within the scope of, the '984 Patent.

98.    Among the purchasers and distributors of Life Technologies' infringing products into the clinical diagnostics, clinical research and research markets are parties not licensed or otherwise authorized by Plaintiff to use or sell the invention claimed in the '984 Patent into the clinical diagnostics, clinical research and research markets.

99.    By virtue of its aforementioned conduct, Life Technologies has induced the infringement of the '984 Patent in violation of 35 U.S.C. § 271(b).

100.    By virtue of its sales and distribution of the infringing products into the clinical diagnostics, clinical research markets and research markets as described herein, Life Technologies has knowingly contributed to the infringement of the '984 Patent in violation of 35 U.S.C. § 271(c).

101.    Life Technologies acted despite an objectively high likelihood that its actions constituted infringement of Promega's valid rights in the '984 Patent when it knew or should have known that its actions constituted infringement of Promega's rights in the '984 Patent.

22

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

102. As a direct and proximate result of the Life Technologies' patent infringement, Promega has suffered injury and damage, which continue to accrue in an amount to be determined at trial.

103. Upon information and belief, Applied Biosystems, LLC, is directly infringing, inducing infringement, and contributorily infringing Promega's▇▇▇▇▇ rights in the patents-in-suit by manufacturing, importing, using, offering for sale, and/or selling products that embody the inventions of and are within the scope of the patents-in-suit and by causing others to offer for sale, sell, and use the infringing products into the clinical diagnostics, clinical research and research markets, ▇▇▇▇▇▇▇▇▇▇▇▇ thereby infringing the '984 Patent.

104. Upon information and belief, Applied Biosystems, LLC, has infringed and continues to infringe Plaintiffs' rights under the '984 Patent by manufacturing, using, offering for sale and/or selling a number of products, including at least the following products which Applied Biosystems describes as:

> AmpFℓSTR® Profiler Plus® PCR Amplification Kit
> AmpFℓSTR® COfiler® PCR Amplification Kit
> AmpFℓSTR® Profiler® PCR Amplification Kit
> AmpFℓSTR® Identifiler®PCR Amplification Kit
> AmpFℓSTR® Yfiler® PCR Amplification Kit
> AmpFℓSTR® Green™ I PCR Amplification Kit

Such products (collectively referred to herein as the "'984 Patent infringing products") embody the invention of, and are within the scope of, the '984 Patent.

105. Among the purchasers and distributors of Applied Biosystems, LLC's infringing products into the clinical diagnostics, clinical research and research markets are parties not licensed or otherwise authorized by Plaintiff to use or sell the invention claimed in the '984 Patent into the clinical diagnostics, clinical research and research markets.

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

106.    By virtue of its aforementioned conduct, Applied Biosystems, LLC, has induced the infringement of the '984 Patent in violation of 35 U.S.C. § 271(b).

107.    By virtue of its sales and distribution of the infringing products into the clinical diagnostics, clinical research markets and research markets as described herein, Applied Biosystems, LLC, has knowingly contributed to the infringement of the '984 Patent in violation of 35 U.S.C. § 271(c).

108.    Applied Biosystems, LLC, acted despite an objectively high likelihood that its actions constituted infringement of Promega's valid rights in the '984 Patent when it knew or should have known that its actions constituted infringement of Promega's rights in the '984 Patent.

109.    As a direct and proximate result of the Applied Biosystems, LLC's patent infringement, Promega has suffered injury and damage, which continue to accrue in an amount to be determined at trial.

**The Promega/Research Genetics 1996 License Agreement**

110.    Promega, Research Genetics, and Garching Innovation GmbH ("Garching") executed the 1996 License Agreement on June 19, 1996. A true and correct copy of the 1996 License Agreement was attached as Exhibit F to the Complaint at Docket #1, and is made a part of this Amended Complaint.

111.    Pursuant to the terms of the 1996 License Agreement, Research Genetics granted to Promega a license in certain of Research Genetics' patent rights ("Promega License"). Promega also conferred a license to Research Genetics in certain of Promega's patent rights ("RGI License").

24

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
FILED UNDER SEAL

112.     The patents involved in the 1996 License Agreement relate to genetic identification. Genetic identification has a host of applications in research, forensics, paternity determination, and medicine and the patents involved in this 1996 License Agreement are considered among the foundational patents in genetic identification.  As a result, government agencies, universities, courts, hospitals and many other public and private institutions utilize products that require those rights.

113.     The 1996 License Agreement explicitly grants ███████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████

114.     While the 1996 License Agreement was primarily a vehicle to develop its own products, ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████
████████████████████████████████
████████████████████████████████████████
██████████████████

115.     Following the execution of the 1996 License Agreement and in reliance on the plain language of the 1996 License Agreement, as well as its ongoing interpretation of the royalty provisions, Promega undertook the development of products and markets throughout the world.

25

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

116.    Promega has developed a worldwide business in reliance on that 1996 License Agreement and other intellectual property.  From time to time the parties entered into additional understandings, particularly as related to the non-exclusive fields of use.

117.    ██████████████████████████████████████████

██████████████████████████████████  On information and belief, Research Genetics and Garching are parties to a different agreement related to division of proceeds received by Research Genetics under the 1996 License Agreement.

118.    ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

119.    ██████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

██  ███████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████

██  ██████████████████████

███████████████████████████████

██████████████████████████████

███████████

██  █████████████████████████

███████████████████████████████

█████████████████████████████████

████████████████████████████████

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*



120.

121.

122.

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████

123.   ████████████████████████████████████████

████████████████████████████████████

124.   Promega has shared and Research Genetics and its successors have accepted royalties consistent with this interpretation for more than thirteen (13) years without objection. This course of dealing and course of performance established how the parties viewed the Agreement. Moroever, the 1996 License Agreement contained audit provisions which were never exercised.

125.   ██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

126.   Promega continued to sell genetic identity products and develop its forensic and genetic identity business after 1996 utilizing, in part, the ███████patent rights it obtained under the 1996 License Agreement. Promega protected its exclusive fields with litigation and patent prosecution, including legal action against Applied Biosystems in the Western District of Wisconsin. Subsequently, in 2006, those actions, among others, were settled. Simultaneously with that settlement, ████████████████████████████████████████████████

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

Promega also entered into the ABI Cross License agreement, dated August 29, 2006, with

Applied Biosystems.

### The Promega/Applied Biosystems Cross License Agreement

127. ███████████████████████████████████████████████

███████████████████████████████████ (A true and correct copy of the

ABI Cross License was attached as <u>Exhibit G</u> to the Complaint at Docket #1, and is made a part

of this Amended Complaint.)

128. ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████

129. ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

130.     Promega has never granted Applied Biosystems authority to disclose the terms of

the ABI Cross License to others.

131.     None of the matters concerning the ABI Cross License are arbitrable.  This Court

in an Order dated August 9, 2010, so found.

### Life Technologies Acquired Both Research Genetics and Applied Biosystems

132.     On or around February 2, 2000, Research Genetics was acquired by Invitrogen.

133.     On or around November 2008, Applied Biosystems was acquired by Invitrogen.

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

134.    As part of the acquisition of Applied Biosystems, on or around November 2008, Invitrogen's name was changed to Life Technologies Corporation.

135.    Accordingly, Life Technologies now claims to own and/or control both Research Genetics and Applied Biosystems and by extension claims it succeeded to the rights and obligations of the 1996 License Agreement and ABI Cross License.

136.    By acquiring ABI, Life Technologies rendered moot any claim that Promega had not extracted sufficient monies from ABI at the time of the ABI Cross License. Whatever alleged monies were not paid by ABI were part of the assets acquired by Life Technologies and its related companies, including IP Holdings, thereby making Life Technologies whole.

137.    Life Technologies, has never obtained Promega's consent to any assignment to Life Technologies of the 1996 License Agreement, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓

### The Life Technologies Notice Letter

138.    In a letter dated October 20, 2009 ("10/20/2009 Letter"), Life Technologies asserted that Promega has underpaid its sublicense royalty obligations ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

139.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

30

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*



140.    Life Technologies' interpretation is entirely self-serving by the fact that Life Technologies is itself one of Promega's sublicensees by way of the ABI Cross License and so this new interpretation will provide it with an enormous financial windfall.

141.    The ABI Cross License relates to numerous Promega patents in addition to the Promega License patents, and the ABI Cross License sublicensed not only the Promega License patents, but licensed other Promega patents as well.

142.

143.

31

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
*FILED UNDER SEAL*

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████

144.   The result of adopting the Defendants' interpretation of the 1996 License Agreement would be unconscionable.

145.   Life Technologies is a direct competitor of Promega in genetic identity and forensic testing. Life Technologies is much larger with significantly higher sales. Life Technologies reading would cause Promega to directly subsidize its largest and most significant competitor based on ████████████████████████

146.   Life Technologies' counsel concedes in a letter dated February 3, 2010, that Life Technologies has no documentary support for its interpretation of the 1996 License Agreement.

147.   Life Technologies affirms in the 10/2009/09 Letter that it learned of the alleged underpayment only by reviewing the otherwise confidential ABI Cross License.

148.   ████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

32

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
FILED UNDER SEAL

[REDACTED]

### The Life Technologies Demand for Arbitration

149.   After receiving the 10/20/2009 Letter, Promega and Life Technologies agreed to meet and discuss their differences.  Given the numerous disputes covering multiple license agreements, and the issues surrounding infringing sales by Life Technologies, the parties agreed at a January 2010 meeting to conduct audits to determine the scope of Life Technologies' infringement and the extent of the parties' disagreement about royalty payments.

150.   After numerous delays and disagreements occasioned by Life Technologies, without warning, Life Technologies delivered by e-mail a letter dated May 4, 2010 ("5/4/2010 Letter"), to Promega with a Demand for Arbitration [REDACTED]

151.   [REDACTED]

152.   In a July 7, 2010, letter on Life Technologies Stationery from the same address as the earlier notice, and signed by the same person, it was represented that Invitrogen IP Holdings, Inc., was now demanding arbitration of the same dispute for which Life Technologies previously demanded arbitration.

33

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
FILED UNDER SEAL

### Life Technologies Violated Its Duty of Good Faith

153.    If and to the extent Life Technologies is determined to be a successor in interest to the 1996 License Agreement, Life Technologies has violated the duty of good faith and fair dealing by its failure to comply with the terms of the 1996 License Agreement.

154.    If and to the extent IP Holdings is determined to be a successor in interest to the 1996 License Agreement, IP Holdings has violated the duty of good faith and fair dealing by its failure to comply with the terms of the 1996 License Agreement.

155.    Wisconsin law imposes an obligation on Life Technologies and/or IP Holdings to perform all obligations under the 1996 License Agreement in good faith, including operating under and interpreting the 1996 License Agreement. ███████████████████

██████████████████████████████

███████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

██████████████████████████

156.    Life Technologies' and/or IP Holdings' interpretation of the 1996 License Agreement lacks any basis in objective reasonableness and is wholly without support in fact or in law, as it is directly contrary to the express language of the 1996 License Agreement, the intent of the parties at the time they executed the 1996 License Agreement and the parties' course of dealing.

157.    Life Technologies' and/or IP Holdings' independent post hoc interpretation of the 1996 License Agreement is irrelevant, as it is not an original party to the 1996 License

34

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
*FILED UNDER SEAL*

Agreement. The original party to the 1996 License Agreement, Research Genetics, never raised this issue with Promega, nor did any of Life Technologies' or IP Holdings' predecessors.

158.     Life Technologies and IP Holdings seek to coerce Promega into accepting its self-serving interpretation which is contrary to the language of the 1996 License Agreement, the intent of the parties who negotiated and executed the 1996 License Agreement and the way that the 1996 License Agreement has been performed for more than thirteen (13) years.

159.     The rights granted to Promega by the 1996 License Agreement have been critical to its worldwide genetic identity and forensic business. Government agencies around the world, including the FBI, numerous state law enforcement agencies, and U.S. Department of Defense purchase products from Promega in reliance on those rights. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

160.     Life Technologies' and/or IP Holdings' demand is a blatant attempt to extort a windfall from Promega by forcing Promega into (a) an arbitration with Life Technologies, a non-signatory to the 1996 License Agreement that Promega never intended or consented to arbitrate with and to which Promega never consented to any assignment of the 1996 License Agreement;

(b) ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ (c) an

arbitration of rights that relate to different agreements, including the ABI Cross License, and that relate to patent infringement, breach of contract and torts ████████████████

35

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

███████████████████████(d)█████████████████████████████

████████████████████████████████████████████████████████

(e)███████████████████████████████████████████████████

███████Accordingly, Life Technologies and IP Holdings are estopped or otherwise barred

from using the 1996 License Agreement to further their improper and unlawful conduct.

161.    Moreover, Life Technologies and/or Applied Biosystems, LLC, have themselves

infringed the '984 Patent and/or made, used and sold or induced the making, using or offering to

sell products in direct violation of the████████rights granted Promega by the1996 License

Agreement. If and to the extent that Life Technologies and/or IP Holdings is determined to be a

successor in interest to the 1996 License Agreement, it is itself in breach of the 1996 License

Agreement, and so cannot seek to enforce it.

162.    Upon information and belief, Life Technologies has recently devised broad

policies and procedures as evidenced by███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████ Life Technologies lacks a good faith basis in fact, in

law or in equity for its inquiries or demands.

163.    Based upon the forgoing, Life Technologies' and IP Holdings' interpretation of

the 1996 License Agreement and their demands to Promega based thereon evidence Life

Technologies'████████████████████████████████████████████████

████████████████████████████████████ and they are therefore estopped or

otherwise barred from using or relying on the 1996 License Agreement in furtherance of its

coercive scheme.

36

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
*FILED UNDER SEAL*

164.  Further yet, Life Technologies has disclosed certain of the confidential
information in the ABI Cross License to Garching, in direct violation of the confidentiality clause
in the ABI Cross License█████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████

165.  Life Technologies has disclosed confidential information in the ABI Cross
License to certain others including Invitrogen, IP Holdings, and their related entities, in direct
violation of████████████████████████████████and apparently in an attempt to
put further pressure on Promega to pay Life Technologies or IP Holdings███████████to
which it has no right under the 1996 License Agreement or otherwise.

166.  Life Technologies concedes that its claim asserted as part of the 1996 License
Agreement is premised on the knowledge it gained from the ABI Cross License. The obligations,
payments and rights of the ABI Cross License control the payments to be made to Promega on
which Life Technologies now relies for its███████financial claim and claim of breach.
Accordingly, compliance with and interpretation of that ABI Cross License are integral to the
asserted claim for which it now seeks arbitration. However, while the 1996 License Agreement
████████████████ the ABI Cross License has████████████████████
██████████████████████████████████████████████████from
which Life Technologies asserts its claims are derived.

167.  Based upon Life Technologies' and IP Holdings' unsupported and unreasonable
interpretation of the 1996 License Agreement, Promega has a reasonable likelihood of
succeeding on the merits.

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

168.   Absent the issuance of an injunction, Life Technologies ██████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████

169.   ██████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████

### FIRST CAUSE OF ACTION
Infringement of U.S. Patent No. 5,843,660

170.   Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

171.   The acts of Life Technologies complained of herein constitute willful infringement of the '660 Patent in violation of 35 U.S.C. § 271.

172.   More specifically, Promega asserts willful infringement of claims 2-5, 16-17, 19-21, 23-25, and 27-31 of the '660 Patent by the Life Technologies products identified herein.

### SECOND CAUSE OF ACTION
Infringement of U.S. Patent No. 5,843,660

173.   Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

174.   The acts of Applied Biosystems, LLC, complained of herein constitute willful infringement of the '660 Patent in violation of 35 U.S.C. § 271.

175.   More specifically, Promega asserts willful infringement of claims 2-5, 16-17, 19-21, 23-25, and 27-31 of the '660 Patent by the Applied Biosystems, LLC products identified herein.

38

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

### THIRD CAUSE OF ACTION
Infringement of U.S. Patent No. 6,221,598

176.   Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

177.   The acts of Life Technologies complained of herein constitute willful infringement of the '598 Patent in violation of 35 U.S.C. § 271.

178.   More specifically, Promega asserts infringement of claims 1-2, 4-5, 7-10, 12, 15, 19, 21-24, 27-28 and 31-33 of the '598 Patent by the Life Technologies products identified herein.

### FOURTH CAUSE OF ACTION
Infringement of U.S. Patent No. 6,221,598

179.   Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

180.   The acts of Applied Biosystems, LLC, complained of herein constitute willful infringement of the '598 Patent in violation of 35 U.S.C. § 271.

181.   More specifically, Promega asserts infringement of claims 1-2, 4-5, 7-10, 12, 15, 19, 21-24, 27-28 and 31-33 of the '598 Patent by the Applied Biosystems, LLC products identified herein.

### FIFTH CAUSE OF ACTION
Infringement of U.S. Patent No. 6,479,235

182.   Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

183.   The acts of Life Technologies complained of herein constitute willful infringement of the '235 Patent in violation of 35 U.S.C. § 271.

39

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

184.    More specifically, Promega asserts infringement of claims 1, 4, 6-13, 15-19, and

21-23 of the '235 Patent by the Life Technologies products identified herein.

### SIXTH CAUSE OF ACTION
Infringement of U.S. Patent No. 6,479,235

185.    Promega repeats and incorporates by reference the allegations contained in the

foregoing paragraphs as though fully set forth herein.

186.    The acts of Applied Biosystems, LLC, complained of herein constitute willful

infringement of the '235 Patent in violation of 35 U.S.C. § 271.

187.    More specifically, Promega asserts infringement of claims 1, 4, 6-13, 15-19, and

21-23 of the '235 Patent by the Applied Biosystems, LLC products identified herein.

### SEVENTH CAUSE OF ACTION
Infringement of U.S. Patent No. 7,008,771

188.    Promega repeats and incorporates by reference the allegations contained in the

foregoing paragraphs as though fully set forth herein.

189.    The acts of Life Technologies complained of herein constitute willful

infringement of the '771 Patent in violation of 35 U.S.C. § 271.

190.    More specifically, Promega asserts infringement of claim 5 of the '771 Patent by

the Life Technologies' products identified herein.

### EIGHTH CAUSE OF ACTION
Infringement of U.S. Patent No. 7,008,771

191.    Promega repeats and incorporates by reference the allegations contained in the

foregoing paragraphs as though fully set forth herein.

192.    The acts of Applied Biosystems, LLC, complained of herein constitute willful

infringement of the '771 Patent in violation of 35 U.S.C. § 271.

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

193.    More specifically, Promega asserts infringement of claim 5 of the '771 Patent by

the Applied Biosystems, LLC's products identified herein.

### NINTH CAUSE OF ACTION
Infringement of U.S. Patent No. Re 37,984

194.    Promega repeats and incorporates by reference the allegations contained in the

foregoing paragraphs as though fully set forth herein.

195.    The acts of Life Technologies complained of herein constitute willful

infringement of the '984 Patent in violation of 35 U.S.C. § 271.

196.    More specifically, Promega asserts infringement of claims 15-16, 18, 23, 25,

27-28 and 41 of the '984 Patent by the Life Technologies products identified herein.

### TENTH CAUSE OF ACTION
Infringement of U.S. Patent No. Re 37,984

197.    Promega repeats and incorporates by reference the allegations contained in the

foregoing paragraphs as though fully set forth herein.

198.    The acts of Applied Biosystems, LLC, complained of herein constitute willful

infringement of the '984 Patent in violation of 35 U.S.C. § 271.

199.    More specifically, Promega asserts infringement of claims 15-16, 18, 23, 25,

27-28 and 41 of the '984 Patent by the Applied Biosystems, LLC's products identified herein.

### ELEVENTH CAUSE OF ACTION
Declaratory Judgment (Sublicense Royalty Obligations)

200.    Promega repeats and incorporates by reference the allegations contained in the

foregoing paragraphs as though fully set forth herein.

201.    Based upon Life Technologies' and IP Holdings' bad-faith attempt to extort

money from Promega, an actual controversy exists between Promega and Life Technologies

regarding Promega's sublicense royalty obligations under the 1996 License Agreement.

41

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
FILED UNDER SEAL

202. ███████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████

## TWELFTH CAUSE OF ACTION
Declaratory Judgment (Non-Arbitrability of IP Holdings
1996 License Agreement Claims)

203. Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

204. An actual controversy exists between Promega and IP Holdings regarding the arbitrability of IP Holdings' claims under the 1996 License Agreement against Promega for at least the following distinct reasons: (i) IP Holdings' demand for arbitration of the 1996 License Agreement to which it was not a signatory (nor, on information and belief, a properly assigned party); (ii)██████████████████████████████████████ (iii) its request for an interpretation that cannot be finally resolved without first addressing the intent and meaning of the ABI Cross License (which are not subject to arbitration); (iv) the thirteen-year delay of any assertion of arbitration rights; (v) if and to the extent that IP Holdings is determined to be a successor in interest to the 1996 License Agreement, IP Holdings' and Life Technologies' breach of the 1996 License Agreement; and, (vi) the arbitration is barred by principles of equity.

205. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, et seq., Promega requests a declaration that the claims herein and as asserted by IP Holdings are not arbitrable.

42

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

### THIRTEENTH CAUSE OF ACTION
Declaratory Judgment (Absolute Limitation of Damages)

206.    Promega repeats and incorporates by reference the allegations contained in the

foregoing paragraphs as though fully set forth herein.

207.    An actual controversy exists between Promega, Life Technologies and

IP Holdings regarding the period of time for which unpaid royalties under the 1996 License

Agreement may be recovered.

208.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

Promega requests a declaration that, pursuant to Wis. Stat. § 893.43, no unpaid royalties under

the 1996 License Agreement arising more than six years before the filing of this Complaint  may

be recovered due to the applicable statute of limitations.

### FOURTEENTH CAUSE OF ACTION
Declaratory Judgment (Three-year Limitation of any Royalty Sharing)

209.    Promega repeats and incorporates by reference the allegations contained in the

foregoing paragraphs as though fully set forth herein.

210.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

Promega requests a declaration that, in any event, no unpaid royalties under the 1996 License

Agreement arising██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███

43

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

### FIFTEENTH CAUSE OF ACTION
Breach of Contract (1996 License Agreement)

211.    Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

212.    If and to the extent Life Technologies or IP Holdings is determined to be a successor in interest to the 1996 License Agreement, it has breached that 1996 License Agreement by its or a related company's sale of products into certain fields of use ███████ granted to Promega.

213.    By reason of the breach of the 1996 License Agreement, Promega has been injured, suffered, and will continue to suffer pecuniary loss.

214.    The breach has caused Promega to sustain monetary damages in an amount to be determined at trial, plus costs, interest, and attorneys' fees.

### SIXTEENTH CAUSE OF ACTION
Breach of the Duty of Good Faith and Fair Dealing

215.    Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

216.    If and to the extent either Life Technologies or IP Holdings is determined to be a successor in interest to the 1996 License Agreement, by reason of the conduct alleged herein, each has intentionally breached the implied covenant of good faith and fair dealing found in every contract under Wisconsin law.

217.    By reason of the breach of the 1996 License Agreement, Promega has been injured, suffered, and will continue to suffer pecuniary loss.

44

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

218.    As a result of the breach of the implied covenant of good faith and fair dealing, the

Defendants have caused Promega to sustain monetary damages in an amount to be determined at

trial, plus costs, interest, and attorneys' fees.

### SEVENTEENTH CAUSE OF ACTION
Economic Duress

219.    Promega repeats and incorporates by reference the allegations contained in the

foregoing paragraphs as though fully set forth herein.

220.    The Defendants' wrongful acts and threats alleged herein have deprived Promega

of its unfettered will; namely, the Defendants are forcing Promega to bring or defend an action,

address customer concerns and to potentially pay█████████████████████████████████████████

█████████████████████

221.    Such wrongful acts and threats are compelling Promega to make a

disproportionate exchange of value or to give up something for nothing.

222.    There is no adequate remedy at law.

223.    Promega is entitled to recoup such amounts as are determined at trial plus costs,

interest and attorneys' fees.

### EIGHTEENTH CAUSE OF ACTION
Breach of the ABI Cross License Agreement

224.    Promega repeats and incorporates by reference the allegations contained in the

foregoing paragraphs as though fully set forth herein.

225.    Promega has performed fully all of the terms and conditions of the ABI Cross

License agreement.

226.    Life Technologies, without Promega's consent, disclosed certain of the terms in

the ABI Cross License to Garching, who is not a party to the ABI Cross License agreement.

45

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
FILED UNDER SEAL

227.   Life Technologies, without Promega's consent, disclosed certain of the terms in
the ABI Cross License to Invitrogen and IP Holdings, who are not a party to the ABI Cross
License agreement.

228.   Life Technologies breached the terms of the ABI Cross License agreement.

229.   As a result of Life Technologies' breach of the ABI Cross License agreement, the
Defendants have caused Promega to sustain monetary damages in an amount to be determined at
trial, plus costs, additional interest, and attorneys' fees.

## NINETEENTH CAUSE OF ACTION
Estoppel and/or Unjust Enrichment

230.   Promega repeats and incorporates by reference the allegations contained in the
foregoing paragraphs as though fully set forth herein.

231.   Life Technologies claims to be the successor in interest or otherwise wholly in
control of Applied Biosystems.

232.   Life Technologies further claims that it is the successor in interest or otherwise
controls Research Genetics, Invitrogen and IP Holdings.  In that capacity, Life Technologies
asserts that Promega improperly calculated royalty obligations due from Applied Biosystems as
part of the ABI Cross License to the effect that Applied Biosystems paid much less royalty than
otherwise due on sublicenses given by rights generated in the 1996 License Agreement.

233.   To the extent the interpretation of the ABI Cross License and 1996 License
Agreement conforms to that proposed by Life Technologies or IP Holdings, Life Technologies
would be unjustly enriched by receiving both the value of Applied Biosystems' underpayment at
the time it acquired Applied Biosystems and an amount it would receive from Promega for
payment of otherwise unpaid Applied Biosystems royalties.  Whatever alleged monies Applied

46

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
FILED UNDER SEAL

Biosystems did not pay were part of the assets when Life Technologies made the acquisition, thereby making Life Technologies and its related companies, including IP Holdings, whole.

234.    In the alternative, Life Technologies and its related companies, including IP Holdings, by reason of the benefit and value it has already received, is estopped or otherwise barred from receiving any further amount or seeking any further benefit.

### TWENTIETH CAUSE OF ACTION
Unclean Hands

235.    Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

236.    Life Technologies and IP Holdings have sought to arbitrate the 1996 License Agreement. Yet, Life Technologies and its related companies infringed the Tautz patent, a patent licensed to Promega through the very agreement Life Technologies has sought to arbitrate. Thus, Life Technologies comes with unclean hands and must be denied all relief, including arbitration.

237.    Life Technologies and its related companies have infringed other patents, violated provisions of agreements, sought to use the courts to achieve unjust advantage, acted in bad faith, and otherwise come to this Court with unclean hands. As a consequence of their conduct, the Defendants must be denied all relief, including enforcement of any rights otherwise existing for arbitration, and any right to additional payments under the 1996 License Agreement.

47

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

## TWENTY-FIRST CAUSE OF ACTION
Waiver

238.    Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

239.    Promega has paid royalties under the 1996 License Agreement for 13 years without any complaint from Research Genetics or its successors in interest. This course of dealing establishes the parties' understanding as to the 1996 License Agreement.

240.    This conduct and other actions constitute a waiver of any right to arbitration or right to for any amounts not previously paid.

## TWENTY-SECOND CAUSE OF ACTION
(Declaratory Judgment Concerning Arbitration)

241.    Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

242.    An actual controversy exists between Promega and IP Holdings ███████ ███████████████████████████████████████████████ as a result of IP Holdings and Life Technologies' demand for arbitration.

243.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, *et. seq.*, Promega requests a declaration ███████████████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████████ and this court has the power to exercise equity in this matter.

## TWENTY-THIRD CAUSE OF ACTION
(Laches)

244.    Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

245. As a consequence of the actions of the Defendants, the Defendants are barred by laches █████████████████████████████████████████████████████████████████

████████████████████

### TWENTY-FOURTH CAUSE OF ACTION
(Unenforceability, Unconscionable Acts and Effect)

246. Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

247. As a consequence of the actions of the Defendants, the Defendants are barred from claiming a right to arbitration by their acts which would effect an unconscionable and unjust result, and accordingly the provisions of the 1996 License Agreement will not be enforced by order of this Court, and the Defendants shall be prohibited from receiving any additional amounts under the 1996 License Agreement.

### TWENTY-FIFTH CAUSE OF ACTION
(Reformation)

248. Promega repeats and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

249. As a consequence of the actions of the Defendants, the Defendants are barred from claiming a right to arbitration by their acts which would affect an inequitable and unjust result. Accordingly █████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ and the Defendants shall be prohibited from seeking any additional amounts under the 1996 License Agreement.

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

REQUEST FOR RELIEF

WHEREFORE, plaintiff Promega Corporation respectfully requests that this Court grant

judgment in its favor and against the Defendants as follows:

A.  A finding that Life Technologies has infringed, induced others to infringe, and/or contributed to the infringement of the '660 Patent by selling products outside of the permitted fields of the ABI Cross License;

B.  A finding that Life Technologies' infringement of the '660 Patent was willful;

C.  An award of damages to Promega with interest and costs for Life Technologies' infringement of the '660 Patent;

D.  A permanent injunction enjoining Life Technologies, its officers, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting or participating with them, from manufacturing, making, selling, offering for sale, importing, or using a product outside the permitted fields of the ABI Cross License, that infringes the '660 Patent;

E.  A finding that Life Technologies has infringed, induced others to infringe, and/or contributed to the infringement of the '598 Patent by selling products outside the permitted fields of the ABI Cross License;

F.  A finding that Life Technologies' infringement of the '598 Patent was willful;

G.  An award of damages to Promega with interest and costs for Life Technologies' infringement of the '598 Patent;

H.  A permanent injunction enjoining Life Technologies, its officers, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting or participating with them, from manufacturing, making, selling, offering for sale, importing, or using a product outside the permitted fields of the ABI Cross License, that infringes the '598 Patent;

I.  A finding that Life Technologies has infringed, induced others to infringe, and/or contributed to the infringement of the '235 Patent by selling products outside the permitted fields of the ABI Cross License;

J.  A finding that Life Technologies' infringement of the '235 Patent was willful;

K.  An award of damages to Promega with interest and costs for Life Technologies' infringement of the '235 Patent;

L.  A permanent injunction enjoining Life Technologies, its officers, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting or participating with them, from manufacturing, making, selling, offering for sale,

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

importing, or using a product outside the permitted fields of the ABI Cross License, that infringes the '235 Patent;

M.  A finding that Life Technologies has infringed, induced others to infringe, and/or contributed to the infringement of the '771 Patent by selling products outside the permitted fields of the ABI Cross License;

N.  A finding that Life Technologies' infringement of the '771 Patent was willful;

O.  An award of damages to Promega with interest and costs for Life Technologies' infringement of the '771 Patent;

P.  A permanent injunction enjoining Life Technologies, its officers, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting or participating with them, from manufacturing, making, selling, offering for sale, importing, or using a product outside the permitted fields of the ABI Cross License, that infringes the '771 Patent;

Q.  A finding that Life Technologies has infringed, induced others to infringe, and/or contributed to the infringement of the '984 Patent by selling products outside the permitted fields of the ABI Cross License;

R.  A finding that Life Technologies' infringement of the '984 Patent was willful;

S.  An award of damages to Promega with interest and costs for Life Technologies' infringement of the '984 Patent;

T.  A permanent injunction enjoining Life Technologies, its officers, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting or participating with them, from manufacturing, making, selling, offering for sale, importing, or using a product outside the permitted fields of the ABI Cross License, that infringes the '984 Patent;

U.  A finding that Applied Biosystems, LLC, has infringed, induced others to infringe, and/or contributed to the infringement of the '660 Patent by selling products outside the fields of the ABI Cross License;

V.  A finding that Applied Biosystems, LLC's infringement of the '660 Patent was willful;

W.  An award of damages to Promega with interest and costs for Applied Biosystems, LLC's infringement of the '660 Patent;

X.  A permanent injunction enjoining Applied Biosystems, LLC, its officers, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting or participating with them, from manufacturing, making, selling, offering for sale, importing, or using a product outside the fields of the ABI Cross License, that infringes the '660 Patent;

Case: 3:10-cv-00281-bbc   Document #: 00   Filed: 00/00/2010   Page 52 of 54

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
FILED UNDER SEAL

Y.    A finding that Applied Biosystems, LLC, has infringed, induced others to infringe, and/or contributed to the infringement of the '598 Patent by selling products outside the fields of use of the ABI Cross License;

Z.    A finding that Applied Biosystems, LLC's infringement of the '598 Patent was willful;

AA.   An award of damages to Promega with interest and costs for Applied Biosystems, LLC's infringement of the '598 Patent;

BB.   A permanent injunction enjoining Applied Biosystems, LLC, its officers, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting or participating with them, from manufacturing, making, selling, offering for sale, importing, or using a product outside the fields of the ABI Cross License, that infringes the '598 Patent;

CC.   A finding that Applied Biosystems, LLC, has infringed, induced others to infringe, and/or contributed to the infringement of the '235 Patent by selling products outside the fields of the ABI Cross License;

DD.   A finding that Applied Biosystems, LLC's infringement of the '235 Patent was willful;

EE.   An award of damages to Promega with interest and costs for Applied Biosystems, LLC's infringement of the '235 Patent;

FF.   A permanent injunction enjoining Applied Biosystems, LLC, its officers, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting or participating with them, from manufacturing, making, selling, offering for sale, importing, or using a product outside the permitted fields of the ABI Cross License, that infringes the '235 Patent;

GG.   A finding that Applied Biosystems, LLC, has infringed, induced others to infringe, and/or contributed to the infringement of the '771 Patent by selling products outside the permitted fields of the ABI Cross License;

HH.   A finding that Applied Biosystems, LLC's infringement of the '771 Patent was willful;

II.   An award of damages to Promega with interest and costs for Applied Biosystems, LLC's infringement of the '771 Patent;

JJ.   A permanent injunction enjoining Applied Biosystems, LLC, its officers, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting or participating with them, from manufacturing, making, selling, offering for sale, importing, or using a product outside the permitted fields of the ABI Cross License, that infringes the '771 Patent;

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*FILED UNDER SEAL*

KK.    A finding that Applied Biosystems, LLC, has infringed, induced others to infringe, and/or contributed to the infringement of the '984 Patent by selling products outside the permitted fields of the ABI Cross License;

LL.    A finding that Applied Biosystems, LLC's infringement of the '984 Patent was willful;

MM.    An award of damages to Promega with interest and costs for Applied Biosystems, LLC's infringement of the '984 Patent;

NN.    A permanent injunction enjoining Applied Biosystems, LLC, its officers, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting or participating with them, from manufacturing, making, selling, offering for sale, importing, or using a product outside the permitted fields of the ABI Cross License, that infringes the '984 Patent;

OO.    An injunction staying ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

PP.    A declaration that the claims herein and as asserted by Life Technologies and IP Holdings are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

QQ.    A declaration that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

RR.    A declaration that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

SS.    A declaration that Promega has not breached its obligation to pay royalties under the 1996 License Agreement;

TT.    A declaration that, under the terms of the 1996 License Agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

UU.    A declaration that, pursuant to the applicable statute of limitations, no recovery may be had of any unpaid royalties arising more than six years before the filing of this Complaint;

VV.    A finding and order that the Defendants have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



WW.  An order barring arbitration for equitable reasons, including but not limited to laches, reformation and unenforceability;

XX.  An order ██████████████████████████████████████████████████████

YY.  A money judgment against the Defendants for all of their breaches and economic duress in an amount to be determined at trial, plus interest, costs, and attorneys' fees;

ZZ.  An award of all attorneys' fees and costs incurred by Promega in defending the Defendants' bad faith claims that Promega breached the 1996 License Agreement;

AAA.  With each and every finding of willful infringement, an appropriate award of damages, fees and costs, increased to the maximum degree allowed;

BBB.  In the alternative, for a judicial determination that the Defendants are estopped from seeking any amount or other relief under the 1996 License Agreement;

CCC.  In the alternative, that a judgment be entered against the Defendants in an amount sufficient to disgorge all amounts unjustly received by it; and

DDD.  Such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Promega requests a trial by jury of all issues so triable.

Dated this 24th day of February, 2011.

**TROUPIS LAW OFFICE LLC**

By:  __/s/ James R. Troupis__
     James R. Troupis, SBN 1005341
     Peter G. Carroll
     *Pro Hac Vice* Motion Filed
     Stewart W. Karge
     *Pro Hac Vice* Motion Filed
     7609 Elmwood Avenue, Suite 102
     Middleton, WI  53562
     (608) 807-4096
     jrtroupis@troupislawoffice.com

Attorneys for Plaintiff Promega Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2011, I caused true and correct copies of Plaintiff's

Redacted Second Amended Complaint to be served on the following via the ECF System:

Francis M. Wikstrom
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City , UT 84111
Email: fwikstrom@parsonsbehle.com

Kristine E. Johnson
Parsons Behle Latimer
201 South Main Street, Suite 1800
Salt Lake City , UT 84111
Email: kjohnson@parsonsbehle.com

Michael R. McCarthy
Parsons Behle Latimer
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Email: mmccarthy@parsonsbehle.com

Amy Sun
Life Technologies Corporation
5791 Van Allen Way
Carlsbad, CA 92008
Email: amy.sun@lifetech.com

Steven Streck
Axley Brynelson, LLP
P.O. Box 1767
Madison , WI 53701
Email: sstreck@axley.com

Andrew Clarkowski
Axley Brynelson, LLP
2 E. Mifflin St., Ste. 200
Madison , WI 53703
Email: aclarkowski@axley.com

Michael J. Modl
Axley Brynelson, LLP
P.O. Box 1767
Madison , WI 53701
Email: mmodl@axley.com


___/s/ James R. Troupis_____
James R. Troupis