CONFIDENTIAL – FILED UNDER SEAL

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

PROMEGA CORPORATION,

    Plaintiff,

MAX-PLANCK-GESELLSCHAFT ZUR
FORDERUNG DER WISSENSCHAFTEN
E.V.,

    Involuntary Plaintiff,

    v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC., and
APPLIED BIOSYSTEMS, LLC,

    Defendants.

Case No.: 10-CV-281

**PLAINTIFF PROMEGA CORPORATION'S MOTION *IN LIMINE* NO. 2:  TO PRECLUDE REFERENCES TO DEFENDANTS' ARGUMENTS ON SCOPE OF EMPLOYMENT AND RESPONDEAT SUPERIOR**

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 26 and Federal Rules of Evidence 402 and 403, Promega Corporation ("Promega") hereby moves *in limine* to preclude the defendants from offering any evidence or testimony relating to, or otherwise referring in front of the jury to the issues of the scope of employment and *respondeat superior* with regard to Lisa Ortuno.

## ARGUMENT

**I. This Court's Summary Judgment Ruling Necessarily Acts as a Finding that Lisa Ortuno Acted Within the Scope of Her Employment.**

On September 2, 2011, Promega filed its Motion for Summary Judgment. On September 21, 2011, Defendants filed an opposition to that motion ("Opposition"). Among the arguments raised by Defendants in their Opposition was the argument that a former employee of Defendants, Lisa Ortuno, was acting "outside the scope of her employment" and therefore a question of fact that could not be decided on summary judgment. (Opposition, pp. 29-30 (Dkt. #253)). While the Court did not directly address this topic in its summary judgment opinion, that Order necessarily encompassed a holding that Ms. Ortuno had not acted outside the scope of her employment.

If the Court had a question as to whether Ms. Ortuno was acting outside the scope of her employment, the question of whether infringement could lie would still remain – which, per the Court's summary judgment opinion, it does not. Put differently, were this Court to determine that Ms. Ortuno had been acting outside her scope of employment at this stage, it would necessitate looking back at all of the decisions made in summary judgment. If Ms. Ortuno was acting outside of her scope of employment, then Defendants' infringement could have been entirely justified – *i.e.*, that her actions as a rogue employee were the only reason that Defendants had infringed the patents at issue in this case. This is not the finding on summary judgment, and on that basis alone, this Court should find that Ms. Ortuno was acting within the scope of her employment.

**II. Defendants' Failure to Produce Evidence Supporting or Denying This Defense, Despite Repeated Attempts By Promega to Obtain Such Evidence, Precludes Defendants From Raising These Issues at Trial.**

Under the doctrine of *respondeat superior*, employers may be liable for the actions of their employees committed while acting within the scope of their employment. *See Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1958 (2009) (*citing* Restatement (Third) of Agency § 2.04 (2005)). Employees act within the scope of their employment if their actions (1) are of the kind they are employed to perform, (2) occur substantially within the authorized time and space limits, and (3) are actuated, at least in part, by a purpose to serve the master. *Shockley v. Svoboda*, 342 F.3d 736, 740 (7th Cir. 2003) (*citing* Restatement (Second) of Agency § 228 (1958); *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989); *Duffy v. United States,* 966 F.2d 307, 314 (7th Cir.1992)). Conversely, conduct of an employee is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master. *Id*. (citing Restatement (Second) of Agency § 228); *Duffy*, 966 F.2d at 314.[1]

---

[1] It is this nuance – that an employee can act outside the scope of his or her employment, thus negating any responsibility of the employer for those actions – that has been the subject of Defendants' statements on this point. In their Opposition, Defendants cited two cases in support of their position. *Puskala v. Koss Corp.*, 799 F.Supp.2d 941, 946-47 (E.D. Wis. 2011); *Barry v. Stevenson*, 965 F.Supp. 1220, 1223 (E.D. Wis. 1997). However, when reading the cases, the holdings of each only serve to help Promega's position: that Ms. Ortuno was acting well within the scope of her employment when she was performing her work duties.
 In *Puskala*, the Court stated, "Under respondeat superior, a 'master' (employer) is liable for the torts of a 'servant' (employee) done while the servant is acting within the scope of employment. . . . However, when the servant does not act for the purpose of furthering his master's goals but is on a 'frolic of his own,' the master is not liable." *Puskala*, 799 F.Supp.2d at 947. Defendants have never suggested either that Ms. Ortuno was committing tortious acts while under their employ, nor that she was committing these acts supposedly outside the scope of her employment while on a frolic of her own.
 In *Barry*, the Court noted that "'[A]n employee may be found to have acted within the scope of his or her employment as long as the employee was at least partially actuated by a purpose to serve the employer. There is no requirement that serving the employer must be the employee's only purpose or even the employee's primary purpose. Rather, an employee's conduct is not within the scope of his or her employment if it is too little actuated by a purpose to serve the employer or if it is motivated entirely by the employee's own purposes (that is, the employee stepped aside from the prosecution of the employer's business to accomplish an independent purpose of his or her own).'" *Barry*, 965 F.Supp. at 1223 (quoting *Olson v. Connerly*, 156 Wis.2d 488, 499-500, 457 N.W.2d 479 (1990). There has never been a suggestion that Ms. Ortuno was not acting to serve her employer as is required under the

Once Promega had knowledge of Defendants' asserted defense through its notice in the Opposition, Promega began discovery into the issues of *respondeat superior*, in particular by delving into the parameters of Ms. Ortuno's employment to determine her scope of employment and the duties which Defendants expected of her. On October 28, 2011, Promega took the deposition of Ms. Ortuno. (*See also* Deposition of Lisa Ortuno ("Ortuno Dep.") (Dkt. #348). During that deposition, Ms. Ortuno testified that she had received excellent reviews from her superiors, and stated that a review of those files would show this. (Ortuno Dep., page 330, lines 8-10 (Dkt. #348) ("I was commended in my reviews repeatedly, which exist in the databases, for my support of these customers . . . .").

Knowing that Ms. Ortuno believed that she had received commendation for her work, on October 31, 2011, three days after taking Ms. Ortuno's deposition, Promega submitted requests for production of documents related to Ms. Ortuno's employment, asking Defendants to "Produce any and all documents relating to evaluation(s) of the job performance of Lisa Ortuno. This includes, but is not limited to her personnel file, any and all documents pertaining to a periodic (*e.g.*, quarterly, semiannual, or annual) review of the job performance of Lisa Ortuno for at least the period 2006 to present."[2] (Promega Corporation's Fourth Set of Requests for Production of Documents, Request for Production #1 (Attached as Exhibit C to the Declaration of Sarah E. Troupis in Support of Promega Corporation's Motions in Limine ("Troupis Decl.")).

Before a response to that request was due, Promega continued to inquire as to Defendants' potential production of any of these documents. On December 3, 2011, Stewart

---

standard; the most Defendants have averred is that she was not using the "validated protocol." (Defendants' Brief in Opposition to Promega Corporation's Motion for Summary Judgment, pp. 29-30 (Dkt. #253)).
    Thus, even under the proposed standards suggested by Defendants, Ms. Ortuno's acts cannot rise to the standard required by *respondeat superior*.

[2] In these same requests, Promega also asked Defendants to provide documents relating to Ms. Ortuno's employment that may have been in the employment files of other employees of Defendants. (*See* Response to Promega's Fourth Set of Requests to Produce Documents, Response Nos. 2 – 5 (Troupis Decl., Exhibit D)). Defendants refused to provide such documents. (*Id.*).

Karge, an attorney for Promega, sent an email to counsel for Defendants, which stated: "Also, during the deposition of Lisa Ortuno, a request was made for her employee personnel files and her employee reviews. Please advise when we will be receiving those as well." (Email from Stewart W. Karge to Kristine E. Johnson dated Dec. 3, 2011. (Troupis Decl., Exhibit E)). In a follow-up email, counsel for Defendants stated that they would be responding to the request for Ms. Ortuno's documents as part of their Response to Promega's Fourth Set of Requests to Produce Documents. (Troupis Decl., Exhibit D)).

In their formal response to Promega's Request #1 from Promega's Fourth Set of Requests to Produce Documents, Defendants refused to produce the documents Promega had requested: "Defendants object to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Further, the private records sought contain highly confidential personal information, and Promega has failed to demonstrate a compelling need for such information." (Defendants' Responses to Promega Corporation's Fourth Set of Requests for Production of Documents (Troupis Decl., Exhibit D)).

The parties continued to discuss the production of these documents; on December 29, 2011, Defendants again stated that they would not produce these documents: "First, with respect to Promega's request for documents pertaining to personnel records of Lisa Ortuno, as I mentioned [in a conference call between the parties], it is my understanding that such information is subject to a greater standard of protection under the law of California and certain other jurisdictions. Ms. Ortuno's personnel file is likely to contain information of a sensitive and personal nature. As her former employer, Life Technologies is legally obligated to vigorously protect any rights that she has with respect to such information and cannot produce Ms. Ortuno's

personnel records absent some compelling need." (Letter from Kristine Johnson to Stewart W. Karge dated December 29, 2011 (Troupis Decl., Exhibit F)).

In other words, despite repeated attempts from Promega, Defendants have never provided any documents to Promega regarding Ms. Ortuno's employment, including even the most basic information on her job duties, despite previously asserting that this was an issue in the case. Such documents and evidence is necessary to meet the standard, set forth above, to determine the parameters of Ms. Ortuno's employment, and thus whether she was acting within, or without, her scope of employment. Further, Defendants are the party that made this an issue and are the party controlling the documents on this issue. Because of their failure to provide such evidence, despite repeated requests for such information from Promega – which is not only necessary for Promega to argue with regard to such a defense, but also necessary for Defendants to even make such an argument – Defendants should be precluded from introducing any evidence related to their argument, initially presented during the summary judgment phase of this case, that Ms. Ortuno was acting outside of her scope of employment at any time during her employment with Defendants.

Further, because Defendants are in a position to produce such information, and are the party to have asserted this as a potential defense, Promega should be allowed at trial to draw the inference that the files contain the information that Ms. Ortuno testified to – *i.e.*, that she was not only authorized to do what she was doing, but that her superiors commended her for her actions. The Seventh Circuit has recognized that "in certain circumstances, a negative inference arises from a defendant's failure to produce documents shown to have been in his possession. The inference is that the documents would have been damaging to the defendant." *Evans v. Robbins*,

897 F.2d 966, 970 (7th Cir. 1990). This is often referred to as the "adverse inference" rule, which:

> is applicable when the following factors are present: (1) it appears that the documentary evidence exists or existed; (2) the suppressing party has possession or control of the evidence; (3) the evidence is available to the suppressing party, but not to the party seeking production; (4) it appears that there has been actual suppression or withholding of evidence. . . . The unfavorable inference resulting from refusal to produce documents is applicable when the withholding party has been called on in the interest of the truth to produce the documents.

*Id*.

Each of the factors listed by the Seventh Circuit as requirements before the adverse inference rule can be applied is present here. First, from Ms. Ortuno's testimony, it appears that evidence on her authority to act as she did exists, and that she was commended for her actions. Second, this information is in the control of Defendants, presumably as part of Ms. Ortuno's personnel file, or otherwise. Third, this evidence is part of Defendants' records, and is not otherwise available to Promega. Fourth, Promega has, as set forth above, requested this information, yet Defendants have not produced anything as a result of this request; indeed, Defendants have refused to provide such information. Promega has asked for these documents as a result of the testimony of Ms. Ortuno, to verify – or contradict – her testimony. The requirements to meet the adverse inference rule are present here, and Promega should therefore be allowed to draw the inference, adverse to the position taken by Defendants, that the requested documents back up Ms. Ortuno's testimony that she was authorized to perform her job as she did, and that she was commended for her actions.

**III.    That Evidence Promega Has Obtained Shows That No Material Fact on This Question Exists and the Court Should Exclude it From Trial.**

Because Defendants have failed to provide any evidence – despite repeated requests – with regard to Ms. Ortuno's employment, Promega has been forced to obtain that information

through other sources. In this case, those sources have been depositions, as well as certain discovery provided by Defendants in response to other discovery requests. That evidence overwhelmingly and unequivocally states that Ms. Ortuno was acting within the scope of her employment at all times during her employment with Defendants, such as when she promoted the products that are the subject of this litigation in uses outside Defendants' allowed uses, and was an exemplary employee.

First and foremost, as Ms. Ortuno has testified, she was "commended in my reviews repeatedly, which exist in the databases, for my support of these customers . . . ." (Ortuno Dep., page 330, lines 8-10 (Dkt. #348)). At no time did any other employee of Defendants testify that Ms. Ortuno performed her job duties in a manner that was anything different. Further, no employee of Defendants – including Ms. Ortuno's direct superior, Michelle Shepherd – has testified that Ms. Ortuno was acting outside the scope of her employment.

Second, this is backed up by the discovery that Defendants have provided to Promega. There are significant numbers of emails produced in this matter on infringing uses, in which other employees of Defendants not only are copied, but actively participate in the conversations in a manner that can have no conclusion other than that the participants knew the uses to which the customers were putting the products; if Ms. Ortuno was acting outside the scope of her employment, then these other employees were doing so as well, and Defendants have never asserted this defense with regard to any other of their employees. *See, e.g.*, LIFE-0023210 – LIFE-0023211 (Troupis Decl., Exh. G); LIFE-0453342 (Troupis Decl., Exh. H); LIFE-0151328 (Troupis Decl., Exh. I).

Moreover, and consistent with Ms. Ortuno's own testimony, emails on Defendants' other employees even compliment her for her good work, including in the areas Defendants have

claimed are outside the scope of her employment. In an email with the subject line, "Potential Cell Line Authentication Seminar at MD Anderson," Ms. Ortuno informed six of Defendants' employees – Phillip Czar, Gabriel Feltner, Michelle Shepherd, Joseph Varlaro, Jaiprakash Shewale and Timothy Mcmahon – that she was working with an individual at M.D. Anderson Cancer Center on their cell line authentication program, including a potential seminar "to explain how cell line authentication can be done and the basics of how to read the output." LIFE-0023210 – LIFE-0023211 (Troupis Decl., Exh. G). In response, one of the individuals to whom the email was sent, Joseph Varlaro, replied, "Thanks for the message, and the great news re: cell line authentication at MD Anderson . . . that's fantastic!" *Id*. The same individuals as were on the initial email sent to Ms. Ortuno were also listed as receiving this email. *Id*. None of these individuals asserts that this was a problem, or that Ms. Ortuno should not have been engaging in this behavior as part of her job duties, as one would expect if this were somehow outside the scope of her employment. Indeed, the exact opposite reaction occurs: Ms. Ortuno is praised for her behavior.

Ellen Bishop, another employee of Defendants, stated in her deposition that Ms. Ortuno was good at her job:

> Q: Could you evaluate [Lisa Ortuno's] knowledge on tech support?
> A: Could I evaluate her knowledge on tech support? If you're asking me was she a good tech support specialist, yes.
> Q: Smart?
> A: Yes.
> Q: Reliable?
> A: Yes.
> Q: Did her job well?
> A: Yes.

Deposition of Ellen Bishop, p. 118, line 25 – p. 119, line 10 (Dkt. #361). Once again, there is nothing that suggests Ms. Ortuno was acting outside the scope of her employment; time and

again, the evidence shows that Ms. Ortuno was not only doing her job as she was supposed to, but that she was being commended for the work she was doing.

## Conclusion

The Court's Order on summary judgment precludes further consideration of an assertion that Lisa Ortuno's actions were outside the scope of her employment. Moreover, the Defendants' failure to provide Promega with any evidence, despite repeated requests, with regard to the personnel documents of Ms. Ortuno should act as a bar to Defendants being allowed to argue any issues with regard to *respondeat superior* at trial. Finally, even absent those preclusive events in this case, the failure to produce records combined with the contrary evidence Promega has obtained without the help of Defendants, shows that Ms. Ortuno was acting within the scope of her employment and her actions were known to other employees of Defendants, who never acted on such knowledge.

Dated:  January 18, 2012              RESPECTFULLY SUBMITTED,

**TROUPIS LAW OFFICE, LLC**

By:     /s/ Sarah E. Troupis
James R. Troupis, SBN 1005341
Peter G. Carroll (Admitted *Pro Hac*)
Stewart W. Karge (Admitted *Pro Hac*)
Sarah E. Troupis, SBN 1061515
Brandon M. Lewis, SBN 1086824
8500 Greenway Blvd., Suite 200
Middleton, Wisconsin 53562
ph. 608-807-4096
jrtroupis@troupislawoffice.com

*Attorneys for Plaintiff Promega Corporation*