## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| PROMEGA CORPORATION, ET AL.<br><br>      Plaintiffs,<br><br>vs.<br><br>LIFE TECHNOLOGIES CORPORATION, ET AL.<br><br>      Defendants. | Civil Action No. 3:10-CV-281 |

## DEFENDANTS' PROPOSED FINAL SET OF JURY INSTRUCTIONS

## I.     PROPOSED INTRODUCTORY INSTRUCTIONS

**LIFE'S PROPOSED INSTRUCTION NO. 1.1**

Members of the jury, we are about to begin the trial of the case.  Before it begins, I will give you some instructions to help you understand how the trial will proceed, how you should evaluate the evidence, and how you should conduct yourselves during the trial.

The part<u>ies</u> [party] who <u>began</u> [begins] the lawsuit <u>are</u> [is] called the plaintiff<u>s</u> [plaintiff]. In this action, the plaintiff<u>s</u> [plaintiff] <u>are</u> [is] <u>Promega Corporation ("Promega") and Max-Planck-Gesellschaft Zur Forderung Der Wissen Schaften E.V. ("Max-Planck").  The plaintiffs may be referred to during the trial together as "Promega."</u> The parties against whom the suit is brought are called the defendants.   In this action, the defendants are <u>Life Technologies Corporation ("Life Tech"), Applied Biosystems, LLC ("Applied Biosystems"), and Invitrogen IP Holdings ("Invitrogen").  The Defendants may be referred to during the trial collectively as "Life."</u>

This is a patent case.  <u>The patents involved in this case relate to DNA, which is a chemical structure that provides a "blueprint" or set of instructions for the development, growth, structure and function of all living organisms.  A DNA molecule is made up of many individual subunits, called "bases," that are connected one to another in a long string – sometimes thousands or even millions of individual bases.  In general there are four bases that are found in DNA molecules, designated  "A," "T," "C," and "G."  The sequence, or order, of the As, Ts, Cs, and Gs in the DNA molecule is what encodes the instructions for life.</u>[1]

<u>DNA molecules can have special sequences of bases called "short tandem repeats" or "STRs."  STRs are regions of DNA containing repeats of particular, short nucleotide sequences. For example, the sequence A-T-T may be repeated a number of times in a row, for example "ATTATTATT." The number of repeats in an STR can vary widely in the DNA of individual organisms.  For example, some may have 11 repeats and others may have 14.  Also, there are typically many separate STR locations, or "locis," in an individual's DNA.    By looking at multiple STR locis, and determining the number of repeats in each, the DNA of different individuals can be distinguished from one another.</u>[2]

<u>Tests have been developed for determining the number of repeats in STRs.   As an example, STR testing can identify whether DNA from a crime scene matches the DNA of a criminal suspect.  As another example, by looking at similarity in the STRs of two people, STR</u>

---

[1] This paragraph is taken from the AIPLA 2008 instructions and modified based on the facts of this case.

[2] This paragraph is taken from the AIPLA 2008 instructions and modified based on the facts of this case.

testing can be used to determine whether a person is a parent of a child. [BRIEFLY DESCRIBE THE TECHNOLOGY INVOLVED].[3]

During the trial, the parties will offer testimony to familiarize you with this technology.[4]

Promega either owns or has rights to several patents, which are identified by the Patent Office numbers:  5,843,660 ("the '660 patent"), 6,221,598 ("the '598 patent"), 6,479,235 ("the '235 patent"), 7,008,771 ("the '771 patent"), and Re 37,984 ("the '984 patent" or "Tautz patent").  These patents may also be referred to as a group as "the Promega patents."  Life sells a family of STR testing kits that it calls AmpFℓSTR® kits.

Patent infringement occurs when one, without authority, makes, uses, sells, offers to sell, or imports a patented invention within the United States.  In 2006, Promega and Life entered into a cross license, which the parties may refer to as the 2006 cross license.  Promega granted Life the authority, in the form of that license, to make, use, sell, offer to sell, or import the AmpFℓSTR® kits in particular fields.  I have already determined that some of the uses of the AmpFℓSTR® kits sold by Life are not authorized under that license agreement because those uses are outside of the particular fields set forth in that license agreement.[5]

Promega has alleged that Life has indirectly infringed the Promega patents by inducing others to use Life's kits without authority under the 2006 cross license. You must determine whether Promega has proven by a preponderance of the evidence that Life indirectly infringed the Promega patents.

Some of Life's sales of its products were authorized by the 2006 cross license from Promega. Promega is not entitled to damages as a result of such authorized sales.  You will need to determine if Promega is entitled to damages for AmpFℓSTR® kits sold without authority by Life and used by customers outside of the scope of the 2006 cross license and the amount of those damages.  If you find that Promega is entitled to damages, you will need to determine the number of Life's sales for which Promega is entitled to receive damages and the amount of the damages for those sales.

Promega asserts that Life willfully infringed these patents.  You must determine whether Promega has proved by clear and convincing evidence that Life willfully sold AmpFℓSTR® kits without authorization to customers to use outside the scope of the 2006 cross license.  The doctrine of willfulness will be explained in detail later.[6]

The case will proceed as follows:

---

[3] This paragraph is taken from the AIPLA 2008 instructions and modified based on the facts of this case.  The bracketed language from the AIPLA's instructions is included although it may be deleted because a description of the technology involved has been included.

[4] This paragraph is taken from the AIPLA 2008 instructions unmodified.

[5] This modification conforms the instruction to the facts of the case and is based on the Court's summary judgment order.

[6] These additional paragraphs describe the claims and basic legal elements of the claims and defenses as requested.

First, Promega's [plaintiff's] counsel will make an opening statement outlining Promega's [plaintiff's] case. Immediately after Promega's [plaintiff's] statement, Life's [defendant's] counsel will also make an opening statement outlining Life's [defendant's] case. What is said in opening statements is not evidence; it is simply a guide to help you understand what each party expects the evidence to show.

Second, after the opening statements, Promega [the plaintiff] will introduce evidence in support of its claim. At the conclusion of Promega's [the plaintiff's] case, Life [the defendants] will introduce evidence. Life [the defendants] is not required to introduce any evidence or to call any witnesses. If Life [the defendant] introduces evidence, Promega [the plaintiff] may then introduce rebuttal evidence.

Third, after the evidence is presented, the parties will make closing arguments explaining what they believe the evidence has shown and what inferences you should draw from the evidence. What is said in closing argument is not evidence. Promega [the plaintiff] has the right to give the first closing argument and to make a short rebuttal argument after Life's [the defendant's] closing argument.

Fourth, I will instruct you on the law that you are to apply in reaching your verdict.

Fifth, you will retire to the jury room and begin your deliberations.

You will hear the term "burden of proof" used during this trial. In simple terms, the phrase "burden of proof" means that the party who makes a claim has the obligation of proving that claim. At the end of the trial, I will instruct you on the proper burden of proof to be applied in this case.

The trial day will run from 9:00 a.m. until 5:30 p.m. You will have at least an hour for lunch and two additional short breaks, one in the morning and one in the afternoon.

During recesses you should keep in mind the following instructions:

First, do not discuss the case either among yourselves or with anyone else during the course of the trial. The parties to this lawsuit have a right to expect from you that you will keep an open mind throughout the trial. You should not reach a conclusion until you have heard all of the evidence and you have heard the lawyers' closing arguments and my instructions to you on the law, and have retired to deliberate with the other members of the jury.

Second, do not permit any third person to discuss the case in your presence. If anyone tries to talk to you despite your telling him not to, report that fact to the court as soon as you are able. Do not discuss the event with your fellow jurors or discuss with them any other fact that you believe you should bring to the attention of the court.

Third, although it is a normal human tendency to converse with people with whom one is thrown in contact, please do not talk to any of the parties or their attorneys or witnesses. By this I mean not only do not talk about the case, but do not talk at all, even to pass the time of day. In

no other way can all parties be assured of the absolute impartiality they are entitled to expect from you <u>as</u> [are [sic]] jurors.

<u>Fourth</u>, do not read about the case in the newspapers, or listen to radio or television broadcasts about the trial.  If a newspaper headline catches your eye, do not examine the article further.  Media accounts may be inaccurate and may contain matters that are not proper for your consideration.  You must base your verdict solely on the evidence produced in court.

<u>Fifth</u>, no matter how interested you may become in the facts of the case, you must not do any independent research, investigation or experimentation.  Do not look up materials on the internet or in other sources.  Again, you must base your verdict solely on the evidence produced in court.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil; AIPLA's Model Patent Jury Instructions (2008), Preliminary Jury Instruction I (modified)

**LIFE'S PROPOSED INSTRUCTION NO. 1.2**

## CREDIBILITY OF WITNESSES

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, part of it, or none of it.  In considering the testimony of any witness, you may take into account many factors, including the witness's opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness's memory; the witness's appearance and manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness's testimony; and the reasonableness of the witness' testimony in light of all the evidence.  The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 1.3**

## DEPOSITIONS

During the course of a trial the lawyers will often refer to and read from depositions. Depositions are transcripts of testimony taken while the parties are preparing for trial. Deposition testimony is given under oath just like testimony on the trial.  You should give it the same consideration you would give it had the witnesses testified here in court.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 1.4**

## OBJECTIONS

During the trial, you will hear the lawyers make objections to certain questions or to certain answers of the witnesses.  When they do so, it is because they believe the question or answer is legally improper and they want me to rule on it.  Do not try to guess why the objection is being made or what the answer would have been if the witness had been allowed to answer it.

If I tell you not to consider a particular statement that has already been made, put that statement out of your mind and remember that you may not refer to it during your deliberations.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 1.5**

## QUESTIONS

During the trial, I may sometimes ask a witness questions. Please do not assume that I have any opinion about the subject matter of my questions.

If you wish to ask a question about something you do not understand, write it down on a separate slip of paper. If, when the lawyers have finished all of their questioning of the witness, the question is still unanswered to your satisfaction, raise your hand, and I will take the written question from you, show it to counsel, and decide whether it is a question that can be asked. If it cannot, I will tell you that. I will try to remember to ask about questions after each witness has testified.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 1.6**

## NOTE TAKING

The clerk will give each of you a notepad and pencil for taking notes. This does not mean you have to take notes; take them only if you want to and if you think they will help you to recall the evidence during your deliberations.  Do not let note taking interfere with your important duties of listening carefully to all of the evidence and of evaluating the credibility of the witnesses.  Keep in mind that just because you have written something down it does not mean that the written note is more accurate than another juror's mental recollection of the same thing. No one of you is the "secretary" for the jury, charged with the responsibility of recording evidence.  Each of you is responsible for recalling the testimony and other evidence.

Although you can see that the trial is being reported, you should not expect to be able to use trial transcripts in your deliberations.  You will have to rely on your own memories.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 1.7**

## EVIDENCE

Evidence at a trial includes the sworn testimony of the witnesses, exhibits admitted into the record, facts judicially noticed, and facts stipulated by counsel.  You may consider only evidence that is admitted into the record.

In deciding the facts of this case, you are not to consider the following as evidence: statements and arguments of the lawyers, questions and objections of the lawyers, testimony that I instruct you to disregard, and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

Evidence may be either direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 1.8**

### CONTRADICTORY OR IMPEACHING EVIDENCE

A witness may be discredited by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony.

If you believe any witness has been discredited, it is up to you to decide how much of the testimony of that witness you believe.

If a witness is shown to have given false testimony knowingly, that is, voluntarily and intentionally, about any important matter, you have a right to distrust the witness's testimony about other matters. You may reject all the testimony of that witness or you may choose to believe some or all of it.

The general rule is that if you find that a witness said something before the trial that is different from what the witness said at trial you are to consider the earlier statements only as an aid in evaluating the truthfulness of the witness's testimony at trial. You cannot consider as evidence in this trial what was said earlier before the trial began.

There is an exception to this general rule for witnesses who are the actual parties in the case. If you find that any of the parties made statements before the trial began that are different from the statements they made at trial, you may consider as evidence in the case whichever statement you find more believable.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 1.9**

## DRAWING OF INFERENCES

You are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from facts you find have been proved, such reasonable conclusions as seem justified in the light of your own experience and common sense.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 1.10**

**EXPERTS**

A person's training and experience may make him or her a true expert in a technical field. The law allows that person to state an opinion here about matters in that particular field.  It is up to you to decide whether you believe the expert's testimony and choose to rely upon it.  Part of that decision will depend on your judgment about whether the expert's background of training and experience is sufficient for him or her to give the expert opinion that you heard, and whether the expert's opinions are based on sound reasons, judgment, and information.

During the trial, an expert witness may be asked a question based on assumptions that certain facts are true and then asked for his or her opinion based upon that assumption.  Such an opinion is of use to you only if the opinion is based on assumed facts that are proven later.  If you find that the assumptions stated in the question have not been proven, then you should not give any weight to the answer the expert gave to the question.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 1.11**

**UNITED STATES PATENTS AND PATENT LITIGATION**

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO"). A patent gives the owner the right to exclude others from making, using, offering to sell, or selling the patented invention [a product made by the patented process] within the United States or importing it into the United States. [During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a general background here.][7]

Someone is said to be infringing on claims of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the patented invention [a product made by the patented process], as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing on the exclusive rights of the patent may bring a lawsuit like this to stop the alleged infringing acts and recover damages, which generally is money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the need for damages.

A person who is authorized by the patent holder to practice the invention, for example, because he or she had a license from the patent holder, cannot infringe that patent when he or she makes, uses, sells, or offers to sale a patented product within the scope of the license.[8]

AIPLA's Model Patent Jury Instructions (2008), Preliminary Jury Instruction I(A) and I(B) (Modified)

---

[7] The next four paragraphs of the AIPLA Preliminary Jury Instruction 1(A) are removed to conform this instruction to the issues before the jury in light of the Court's summary judgment order.

[8] This modification is based on Life Technologies' defense to infringement. *See* 35 U.S.C. § 271(a). The paragraphs regarding validity of patents and regarding the parties' basic contentions have been removed. Validity is not at issue here and the parties' contentions have already been summarized in the first proposed instruction.

## II.     PROPOSED POST-TRIAL INSTRUCTIONS

**LIFE'S PROPOSED INSTRUCTION NO. 2.1**

### INTRODUCTION

Ladies and Gentlemen of the Jury:

Now that you have heard the evidence and the arguments, I will give you the instructions that will govern your deliberations in the jury room. It is my job to decide what rules of law apply to the case and to explain those rules to you. It is your job to follow the rules, even if you disagree with them or don't understand the reasons for them. You must follow all of the rules; you may not follow some and ignore others.

The decision you reach in the jury room must be unanimous. In other words, you must all agree on the answer to each question.

Your deliberations will be secret. You will never have to explain your verdict to anyone. If you have formed any idea that I have an opinion about how the case should be decided, disregard that idea. It is your job, not mine, to decide the facts of this case.

The case will be submitted to you in the form of a special verdict consisting of____ questions. In answering the questions, you should consider only the evidence that has been received at this trial. Do not concern yourselves with whether your answers will be favorable to one side or another, or with what the final result of this lawsuit may be.

Note that certain questions in the verdict are to be answered only if you answer a preceding question in a certain manner. Read the introductory portion of each question very carefully before you undertake to answer it. Do not answer questions needlessly.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 2.2**

**BURDEN OF PROOF**

When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true.  You should base your decision on all of the evidence, regardless of which party presented it.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 2.3**

**CLEAR AND CONVICING BURDEN OF PROOF [MIDDLE BURDEN OF PROOF]**

      In answering question _____ on the issue of willful infringement <u>in the special verdict form</u>, you are instructed that the burden is on the plaintiff to convince you [to a reasonable certainty  by evidence that is clear, satisfactory, and convincing that the answer should be yes] by <u>"clear and convincing evidence."</u>[9] <u>"Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true.</u>[10]

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

---

[9] This modification most clearly recites the burden for willful infringement.  *See In re Seagate Technology, LLC.*, 497 F.3d 1360, 1370-72 (Fed. Cir.2007) (*en banc*).

[10] This language is taken from the Seventh Circuit Pattern Instruction 11.2.14.

**LIFE'S PROPOSED INSTRUCTION NO. 2.4**

### ANSWERS NOT BASED ON GUESSWORK

If, after you have discussed the testimony and all other evidence that bears upon a particular question, you find that the evidence is so uncertain or inadequate that you have to guess what the answer should be, then the party having the burden of proof as to that question has not met the required burden of proof. Your answers are not to be based on guesswork or speculation. They are to be based upon credible evidence from which you can find the existence of the facts that the party must prove in order to satisfy the burden of proof on the question under consideration.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 2.5**

**SELECTION OF PRESIDING JUROR; COMMUNICATION WITH THE JUDGE; VERDICT**

When you go to the jury room to begin considering the evidence in this case you should first select one of the members of the jury to act as your presiding juror. This person will help to guide your discussions in the jury room.

You are free to deliberate in any way you decide or select whomever you like as a presiding juror. However, I am going to provide some general suggestions on the process to help you get started. When thinking about who should be presiding juror, you may want to consider the role that the presiding juror usually plays. He or she serves as the chairperson during the deliberations and has the responsibility of ensuring that all jurors who desire to speak have a chance to do so before any vote. The presiding juror should guide the discussion and encourage all jurors to participate.

Once you are in the jury room, if you need to communicate with me, the presiding juror will send a written message to me. However, don't tell me how you stand as to your verdict.

As I have mentioned before, the decision you reach must be unanimous; you must all agree.

When you have reached a decision, the presiding juror will sign the verdict form, put a date on it, and all of you will return with the verdict into the court.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 2.6**

**SUGGESTIONS FOR CONDUCTING DELIBERATIONS**

In order to help you determine the facts, you may want to consider discussing one claim at a time, and use my instructions to the jury as a guide to determine whether there is sufficient evidence to prove all the necessary legal elements for each claim or defense. I also suggest that any public votes on a verdict be delayed until everyone can have a chance to say what they think without worrying what others on the panel might think of their opinion. I also suggest that you assign separate tasks, such as note taking, time keeping and recording votes to more than one person to help break up the workload during your deliberations. I encourage you at all times to keep an open mind if you ever disagree or come to conclusions that are different from those of your fellow jurors. Listening carefully and thinking about the other juror's point of view may help you understand that juror's position better or give you a better way to explain why you think your position is correct.

Judge Barbara B. Crabb's Standard Jury Instructions—Civil

**LIFE'S PROPOSED INSTRUCTION NO. 3.1**

**SUMMARY OF THE ISSUES**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following <u>five [three]</u> main issues:

1.   Whether <u>Promega</u> [the Plaintiff] has proved that <u>Life</u> [the Defendant] <u>induced the</u> <u>infringement</u> of the <u>following</u> [of the] <u>Promega</u> [abbreviated patent number] patents <u>and claims</u> <u>by selling without authority AmpFℓSTR® Kits to customers who used them outside the scope of</u> <u>the 2006 cross license:</u>

- <u>'660 Patent:  Claims 2-5, 16-17, 19-21, 23-24;</u>

- <u>'598 Patent: Claims 1-2, 4-5, 7-10, 12, 15, 19, 21-24, 27, 28, 31-32;</u>

- <u>'235 Patent: Claims 1, 4, 6-13, 15-19;</u>

- <u>'771 Patent: Claim 5</u>

- <u>'984 Patent: Claims 15-16, 18, 23, 25, 27-28, 41, 42;</u>

2.   <u>Whether Promega has established the number of Life's sales for which it is entitled to</u> <u>damages, in light of the fact that some of Life's sales were authorized by the 2006 License</u> <u>of these patents to Life.</u>

3.   <u>Whether Promega has by clear and convincing evidence proved that Life willfully sold its</u> <u>kits without authority to customers for uses outside the scope of the 2006 License.</u>[11]

4.   What amount of damages, if any, <u>Promega</u> [the Plaintiff] has proved.

5.   <u>Whether Life breached the 2006 License</u>

AIPLA's Model Patent Jury Instructions (2008), Post Trial Instruction 1

---

[11]This modification conforms to the issues in the case and uses language from the Court's stock instruction defining "clear and convincing evidence."

**LIFE'S PROPOSED INSTRUCTION NO. 3.2**

## INFRINGEMENT – GENERALLY

Questions _____ through _____ of the Verdict Form read as follows:  [READ TEXT OF INFRINGEMENT VERDICT QUESTIONS].

I will now instruct you as to the rules you must follow when deciding whether <u>Promega</u> [the Plaintiff] has proven <u>that Life</u> [the Defendant] sold [infringed] <u>AmpFℓSTR® kits without authority under the 2006 License, thus exceeding the scope of the license Promega granted with respect to</u> [any of the] claims of the [abbreviated patent number] <u>'984, '598, '235, and '771 patents.</u>[12]

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention [a product made by a patented method] within the United States during the term of the patent.  Any person or business entity that has engaged in any of those acts <u>within the United States</u> without the patent owner's permission infringes the patent.  <u>Generally speaking, a person or business entity that engages in those acts outside of the United States does not infringe the patent.</u>[13]  <u>A person or business entity has permission if, for example, they have a license under the patent.</u>[14] [Here, [the Plaintiff] alleges that [the Defendant]'s [allegedly infringing product] infringes claim[s] [claims in dispute] of [the Plaintiff]'s [abbreviated patent number] patent.]

A patent may be infringed directly or indirectly.  Direct infringement results if the accused product is covered by at least one claim of the patent.  Indirect infringement results if the defendant induces another to infringe a patent or contributes to the infringement of a patent by another.

[You have heard evidence about both [the Plaintiff]'s commercial [[product] [method]] and [the Defendant]'s accused [[product] [method]].  However, in deciding the issue of infringement you may not compare [the Defendant]'s accused [[product] [method]] to [the Plaintiff]'s commercial [[product] [method]].  Rather, you must compare the [Defendant]'s accused [[product] [method]] to the claims of the [abbreviated patent number] patent when making your decision regarding infringement.][15]

<u>Here, I have already decided that some uses of Life's AmpFℓSTR® PCR Amplification Kits are not authorized under the 2006 cross license between the parties.  Those claims and patents include:</u>

- <u>Claim 42 of the '984 Patent</u>

---

[12] These modifications conform the instruction to the facts of the case.

[13] This modification emphasizes the territoriality of patent law and is supported by *Microsoft Corp. v. AT&T,* 550 U.S. 437, 442 (2007).

[14] This modification conforms the instruction to the facts of the case.

[15] This paragraph is omitted as the Court has decided  which uses are outside the scope of the 2006 License.

- Claims 10, 23-24, 27 and 33 of the '598 Patent
- Claims 18-19 and 21-23 of the '235 Patent
- Claim 5 of the '771 Patent[16]

Below, you will be instructed on how to determine if Life induced infringement of Promega's patents by selling AmpFℓSTR® kits without authority to customers whose uses were outside the scope of the 2006 cross license between Promega and Life.[17]

AIPLA's Model Patent Jury Instructions (2008), Post Trial Instruction 3.0
35 U.S.C. § 271; *Microsoft Corp. v. AT&T,* 550 U.S. 437, 442 (2007); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1313 (Fed. Cir. 2005).

---

[16] This addition is based on the Court's summary judgment order.

[17] This addition aims to tell the jury what its task will be.

**LIFE'S PROPOSED INSTRUCTION NO. 3.3**

**DIRECT INFRINGEMENT**

To determine <u>direct</u> [literal] infringement, you must compare the accused products and methods with each claim that Promega [the Plaintiff] asserts is infringed [,using my instructions as to the meaning of the claims.]

A <u>method</u> [patent] claim is <u>directly</u> [literally] infringed only if <u>Life's customers using Life's AmpFℓSTR® kits</u> [the Defendant's product/method includes each and every element in that patent claim] or if someone] <u>perform each and every step of the "method" in that patent claim and does so outside the scope of Life's license.</u>[18] [If the Defendant's product/ method does not contain one or more elements recited in a claim, that product does not literally infringe that claim. If [the Plaintiff] alleges infringement of a method claim, and there are others apart from [the Defendant] that performed one or more method steps of the claim, there can be no infringement unless [the Plaintiff] has proven that [the Defendant] controlled or directed the activity of the others who performed the method steps.][19] <u>Similarly, if the customer does not perform the "method" recited in a claim, that patent has not been infringed.</u>[20]

You must determine <u>direct</u> [literal] infringement with respect to each patent claim individually.

The use of the <u>AmpFℓSTR® kits</u> [accused product <u>or</u> method] should be compared to the invention or method described in each patent claim it is alleged to infringe, not to Promega's Promega's [the Plaintiff's] preferred or commercial embodiment of the claimed invention.  The same element [method step] of the accused products [method] may satisfy more than one element of a claim.

AIPLA's Model Patent Jury Instructions (2008), Post Trial Instruction 3.2 (modified)
*Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 13222 (Fed. Cir. 2009); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004); *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986.

---

[18] These modifications conform the instruction to the facts of the case, including the Court's summary judgment order.

[19] These parts of the instruction do not apply.

[20] This addition clarifies that a finding of direct infringement is required for indirect infringement.  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004); *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986).

**LIFE'S PROPOSED INSTRUCTION NO. 3.4**

**INDUCING PATENT INFRINGEMENT**

Promega [Plaintiff] contends that Life [Defendant] induced its customers [someone; *name of alleged direct infringer*] to infringe the following claims of [claims __, __, __ of] Promega's [Plaintiff's] patents:

- '660 Patent: Claims 2-5, 16-17, 19-21, 23-24;

- '598 Patent: Claims 1-2, 4-5, 7-10, 12, 15, 19, 21-24, 27, 28, 31-33;

- '235 Patent: Claims 1, 4, 6-13, 15-19, 21-23;

- '771 Patent: Claim 5 and

- '984 Patent: Claims 15-16, 18, 23, 25, 27-28, 41, 42.[21]

To succeed on this contention, Promega [Plaintiff] must prove the following are more probably true than not true[22] [by a preponderance of the evidence]:

1. Life [Defendant] knew of Promega's [Plaintiff's] patents;[23]

2. Life [Defendant] intentionally took actions that actually induced its U.S.-based customers [acted; encouraged; instructed] [*insert name or other description of direct infringer*] to use the AmpFℓSTR® kits [/make a product; perform a process] without authority under the 2006 License;[24] and

3. Life [Defendant] knew [or should have known] that its acts would cause its customers [*insert name or other description of direct infringer*] to use the AmpFℓSTR® kits without authority under the 2006 License.

If Life did not know or believe that the acts it was inducing were infringing, *i.e,* that Life's sales were without authority to customers who used the kits outside the scope of the 2006 cross license, then it cannot be liable for inducement unless it actually believed that it was highly probable its actions would encourage use outside the scope of the license and it took intentional acts to avoid learning the truth.  It is not enough that Life was merely indifferent to the possibility that it might encourage use outside the scope of the 2006 cross license.  Nor is it enough that Life took a risk that was substantial and unjustified.

---

[21] This addition conforms the instruction to the facts of the case.

[22] This change tracks Judge Crabb's standard instruction on what preponderance of the evidence means.

[23] These changes conform the instruction to the facts of the case.

[24] These changes are based on Model Patent Jury Instructions, N.D. Cal., Nov. 2011, Instruction 3.9 which takes into account the Federal Circuit's en banc holding in *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006).

If you find that Life was aware of the Promega patents but believed that the acts it encouraged were not outside the scope of the 2006 cross license, then Life cannot be liable for inducement.  Life's reliance on advice given by their lawyers is one factor you may consider in deciding whether they believed that they were not encouraging use outside the scope of the 2006 license.[25]

Pattern Jury Instruction, Seventh Circuit Civil, Instruction 11.2.12 (2008 ver.)
*Global-Tech Appliances, Inc. et al. v. SEB S.A.*, 131. S.Ct. 2060 (2011); *DSU Medical Corp v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006); *Manville Sales Corp. v. Paramount Systems, Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990); *Water Tech. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 n.7 (Fed. Cir. 1988).

---

[25] These two additional paragraphs are modifications of Patent Jury Instructions, N.D. Cal., Nov. 2011, Instruction 3.9 which takes into account the holding of *Global-Tech Appliances, Inc. et al. v. SEB S.A.*, 131. S.Ct. 2060 (2011), and which makes clear that the defendant must be willfully blind to a risk that it is inducing infringement.

**LIFE'S PROPOSED JURY INSTRUCTION NO. 3.5**

**WILLFUL INFRINGEMENT**

If you determine that Life sold kits without authority under the 2006 cross license and those kits were used outside the scope of the 2006 cross license, then you must determine whether those unauthorized sales were willful.[26] Promega [Plaintiff] contends that Life [Defendant] infringed Promega's [Plaintiff's] patents willfully.  You are required to decide this issue because it may be relevant to other issues that I may have to consider.

[You are to consider the issue of willful infringement only if you have found that Defendant infringed Plaintiff's patent. Not all infringement is willful.][27]

The standard of proof for willful infringement is higher than the standard for infringement generally.  Specifically, Promega [Plaintiff] must prove willful infringement by clear and convincing evidence. "Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true. [You also may have heard of a burden of proof used in criminal cases called "beyond a reasonable doubt," which is a higher burden of proof than "clear and convincing" evidence. You should not apply the criminal standard in this case.]

To succeed on its contention that Life [Defendant] infringed the Promega patents willfully, Promega must persuade you that it is highly probable that, before May 26, 2010 [before the filing date of the complaint], Life acted with reckless disregard of the claims of Promega's patents. To demonstrate "reckless disregard," [28]  Promega [Plaintiff] must prove two things by clear and convincing evidence:

1.  There was a high likelihood that Life's [Defendant's] actions constituted infringement of a valid patent. In making this determination, you may not consider Life's [Defendant's] actual state of mind. Rather, the appropriate inquiry is whether the defenses put forth by Life [alleged infringer]  fail to raise any substantial question with regard to whether its sales were authorized and its customers' use was outside the scope of the 2006 cross license [infringement or validity].[29]   In particular, you should consider whether Life objectively believed that its unauthorized sales were within the scope of the 2006 cross license. [30] You may also consider the normal standards of fair commerce. Only if you conclude that the defenses fail to raise any substantial question with regard to whether its

---

[26] This additional language conforms with the Court's summary judgment order.

[27] This paragraph has been deleted since the Court has already determined which uses are outside the scope of the 2006 cross license.

[28] This modification taken from the  Model Patent Jury Instructions, N.D. Cal. (Nov. 2011), Instruction 3.10, which is based on *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007).

[29] This modification is taken from the Model Patent Jury Instructions, N.D. Cal. (Nov. 2011), Instruction 3.10 for clarity

[30] This instruction is supported by *Wisconsin Alumni Research Foundation v. Intel Corp.*, 656 F. Supp. 2d 898,  923-24 (W.D. Wis. 2009)

sales were authorized and its customers' use was outside the scope of the 2006 cross license [infringement or validity], do you need to consider the second part of the test.[31]

2. Life [Defendant] knew of the high likelihood that its sales were unauthorized and its customers were using the kits outside the scope of the 2006 cross license [it was infringing a valid patent], or this likelihood was so apparent that Life [Defendant] should have known of it.

Pattern Jury Instruction, Seventh Circuit Civil, Instruction 11.2.14 (2008 ver.)
*Section 284; Powell v. Home Depot U.S.A., Inc.*, 2010-1409, -1416, Slip Op. *20-*23 (Fed. Cir., Nov. 14. 2011); *In re Seagate Technology, LLC.,* 497 F.3d 1360, 1370-72 (Fed. Cir. 2007).

---

[31] This modification taken from the Model Patent Jury Instructions, N.D. Cal. (Nov. 2011), Instruction 3.10 for clarity.

**LIFE'S PROPOSED INSTRUCTION NO. 4.1**
**BREACH OF LICENSE AGREEMENT**

Promega [Name of plaintiff] claims that [he/she/it and ] Life [name of defendant] entered into the 2006 License [a contract for [insert brief summary of alleged contract]].  Promega [name of plaintiff] claims that Life [name of defendant] breached the 2006 License [this contract] by disclosing, without Promega's consent, certain terms of the 2006 License to Garching Innovation GmbH, and Invitrogen IP Holdings [briefly state the alleged breach].  Promega [name of plaintiff] also claims that Life's [name of defendant's] breach of the license [this contract] caused them harm for which Life [name of defendant] should pay.  Life [name of defendant's] denies that it breached the license [insert denials of any of the above claims]. [[Name of defendant] also claims [insert affirmative defense.]]

To recover damages from Life [name of defendant] for breach of the license agreement [contract], Promega [name of plaintiff] must prove all of the following:

(1) That Promega [name of plaintiff] entered into a license agreement with Life [name of defendant],

(2) That Promega [name of plaintiff] did all, or substantially all, of the significant things that the license agreement required it to do;

(3) That all conditions required by the license agreement for Life's [name of defendant's] performance had occurred,

(4) That Life [name of defendant] did something that the contract prohibited it from doing, and

(5) That Promega [name of plaintiff] was harmed by that failure.[32]

Judicial Council of California— Civil Jury Instructions 300 and 303 (2012) (Modified) Cal. Civ. Code Section 1549; *Robinson v. Magee,* 9 Cal. 81, 83 (1858); *Acoustics, Inc. v. Trepte, Construction Co.* 14 Cal. App. 3d 887, 913(1971); *Consolidated World Investments, Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380  (1992); *Troyk v. Farmers Group, Inc.* 171 Cal. App. 4th 1305, 1352 (2009); Restatement (Second) of Contracts, § 235(2).

---

[32] These modifications conform the instruction to the facts of the case.

**LIFE'S PROPOSED INSTRUCTION NO. 5.1.**

**DAMAGES GENERALLY**

On the damages question, the party asking for damages has the burden of convincing you, by a preponderance of the evidence, both that he or she has been injured or damaged and the amount of the damages.

Determining damages involves the consideration of many different factors that cannot be measured precisely. In determining the damages you must base your answer on evidence that reasonably supports your determination of damages under all of the circumstances of the case. You should award as damages the amount of money that you find fairly and reasonably compensates the named party for his or her injuries.

Do not measure damages by what the lawyers ask for in their arguments. Their opinions as to what damages should be awarded should not influence you unless their opinions are supported by the evidence. It is your job to determine the amount of the damages sustained from the evidence you have seen and heard. Examine that evidence carefully and impartially. Do not add to the damage award or subtract anything from it because of sympathy to one side or because of hostility to one side. Do not make any deductions because of a doubt in your minds about the liability of any of the parties.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that Life's sales were unauthorized and its customers used Life's kits outside the scope of the 2006 cross license, you are to award Promega damages adequate to compensate Promega for that infringement. Your damage award should put Promega in approximately the financial position it would have been in had the unauthorized sales not occurred; but, in no event may the damage award be less than a reasonable royalty.[33] The damages you award are intended to compensate the patent holder, not to punish the infringer.[34]

Judge Barbara B. Crabb's Standard Jury Instructions—Civil; Pattern Jury Instruction, Seventh Circuit Civil, Instruction 11.4.1 (2008 ver.); AIPLA's Model Patent Jury Instructions (2008), Post Trial Instruction 12.0
35 U.S.C. § 284 (2006); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003), *vacated on other grounds*, 545 U.S. 193 (2005); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed. Cir. 1987); *Lam Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

---

[33] This addition is taken from the AIPLA Model Patent Jury, Instruction 12.0.
[34] This addition is taken from Federal Civil Jury Instructions of the Seventh Circuit, Instruction 11.4.1.

**LIFE'S PROPOSED INSTRUCTION NO. 5.2**

## DATE DAMAGES BEGIN

The date that <u>Promega</u> [the plaintiff] first gave notice to <u>Life</u> [the defendant] of its claim of patent infringement is the date at which patent damages begin to be calculated. That date has been agreed to by the parties to be <u>August 29, 2006</u> [infringement notice date].

AIPLA's Model Patent Jury Instructions (2008), Post Trial Instruction 12.1
35 U.S.C. § 287(a); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987).

**LIFE'S PROPOSED INSTRUCTION NO. 5.3.**

**TWO TYPES OF DAMAGES—LOST PROFITS & REASONABLE ROYALTY**

There are two types of damages that Promega may be entitled to recover: lost profits, or a reasonable royalty.

Lost profits consist of any actual reduction in business profits Promega [Plaintiff] suffered as a result of Life's unauthorized sales to customers who used the AmpFℓSTR® kits outside the scope of the 2006 cross license [Defendant's infringement]. A reasonable royalty is defined as the amount the patent owner and someone wanting to use the patented invention would agree upon as a fee for use of the invention. I will describe shortly what Promega [Plaintiff] must prove to recover either type of damages.

Promega [Plaintiff] is entitled to recover no less than a reasonable royalty for each sale made by Life of an AmpFℓSTR® kit without authority and that was used by a customer outside the scope of the 2006 cross license [infringing sale; fill in other infringing act], even if Promega [Plaintiff] cannot prove that it suffered lost profits in connection with that sale [;fill in other infringing act].

Pattern Jury Instruction, Seventh Circuit Civil, Instruction 11.4.2 (2008 ver.)
35 U.S.C. §§271(a);  284 (2006); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545-46 (Fed. Cir. 1995) (*en banc*).

**LIFE'S PROPOSED INSTRUCTION NO. 5.4**

**CALCULATING DAMAGES IN CASES OF INDUCEMENT**

In order to recover damages for <u>inducement</u> [induced infringement], <u>Promega</u> [patent holder] must [either prove that the [accused product] necessarily infringes the [patent in suit] or] prove <u>customer uses outside the scope of the 2006 cross license</u>  [acts of direct infringement by others] that were induced by <u>Life's unauthorized sales of the AmpFℓSTR® kits</u> [accused infringer].  Because the amount of damages for <u>inducement</u> [induced infringement] is limited by the number of instances of <u>unauthorized sales</u>, <u>Promega</u> [patent holder] must further prove the number <u>of unauthorized sales to customers that used the kits outside the scope of the 2006 cross license</u> [direct acts of infringement of] under the <u>Promega patents</u> [patent in suit], for example, by showing individual <u>uses without authority outside the scope of the 2006 cross license</u> [acts of direct infringement] or by showing that a particular class of [products or] products <u>are always used outside the scope of the 2006 cross license </u>[directly infringes].

Model Patent Instruction, N.D. Cal. (Nov. 2011), Instruction 5.9
*Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263 (Fed. Cir. 2004); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348 (Fed. Cir. 2009).

**LIFE'S PROPOSED INSTRUCTION NO. 5.5.1**

### LOST PROFITS

<u>Promega is seeking its lost profits as its patent damages.</u>[35] To recover lost profits, <u>Promega</u> [Plaintiff] must prove two [three] things:

1.   A reasonable probability that, if <u>Life</u> [Defendant] had not made <u>unauthorized sales</u> [infringed], Promega [Plaintiff] would have made additional sales of the patented product [process] that <u>Life</u> [Defendant] made.

2.   The amount of profit <u>Promega</u> [Plaintiff] would have made on those sales. <u>Promega</u> [Plaintiff] [does not need to] <u>must</u> prove this amount with <u>reasonable probability but not with absolute</u> precision. [, and if there are uncertainties regarding the specific amount of lost profits, you may resolve those uncertainties against Defendant].

[3.   <u>Life</u> [Defendant] reasonably should have foreseen that Promega [Plaintiff] would have lost profits.][36]

<u>You must determine what the customers who purchased the AmpFℓSTR® kits from Life would have done if unauthorized sale had not occurred.  The profits I have been referring to are the profits allegedly lost by Promega, not the profits, if any, made by Life. The only sales at issue for damages purposes are those unauthorized sales of Life's AmpFℓSTR® kits in which the kits were used outside the scope of the 2006 cross license.  Promega has the burden of proving which of Life's customers bought [used] AmpFℓSTR® kits outside the scope of Life's license.</u>[37]

Pattern Jury Instruction, Seventh Circuit Civil, Instruction 11.4.3 (2008 ver.)
AIPLA's Model Patent Jury Instructions (2008), Post Trial Instruction 12.3

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Ferguson Beauregard/Logic Controls v. Mega Sys., L.L.C.*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003) *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Smithkline Diagnostics, Inc. v. Helena Lab. Corp*., 926 F.2d 1161, 1162-1167 (Fed. Cir. 1991); *Ryco, Inc. v. Ag-Bag Corp.,* 857 F.2d 1418, 1428 (Fed. Cir. 1988); *Yarway Corp. v. Eur-Control USA, Inc*., 775 F.2d 268, 275 (Fed. Cir. 1985) ; *Paper Converting Mach. Co. v. Magna-Graphics Corp.* 745 F.2d 11, 21 (Fed. Cir. 1984); *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.,* 739 F.2d 604, 616, 222 USPQ 654, 664 (Fed.Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984).

---

[35] This addition is from the AIPLA instruction 12.3.

[36] These modifications confirm the instruction to the facts of the case.

[37] This language is based on the AIPLA instruction 12.3.

**LIFE'S PROPOSED INSTRUCTION NO. 5.5.2**

## LOST PROFITS—*PANDUIT* TEST

[One way that] <u>Promega</u> [Plaintiff] may establish that it is reasonably probable that it would have made additional sales of the patented [competing] product [process] is by proving four [three] things:

1. There was a demand for <u>uses of</u> the patented [or competing] product <u>in fields beyond those authorized under the 2006 License,</u>

2. There was no acceptable, non-infringing substitute for the <u>uses of the</u> patented product <u>beyond the scope of the 2006 License,</u>

3. Promega [Plaintiff] was capable of satisfying the demand for <u>uses of the patented product beyond the scope of the 2006 License, and</u>

4. <u>Promega presented a detailed computation of the amount of profits it would have made.</u>[38]

Pattern Jury Instruction, Seventh Circuit Civil, Instruction 11.4.3.1 (2008 ver.)
*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-79 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1577 (Fed. Cir. 1989); *Yarway Corp. v. Eur-Control USA, Inc.,* 775 F.2d 268, 275 (Fed. Cir. 1985); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

---

[38] This additional element is based on the fourth Panduit factor.  See *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978); see also *Smithkline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1162-1167 (Fed. Cir. 1991).

**LIFE'S PROPOSED INSTRUCTION NO. 5.5.3.**

## LOST PROFITS – PANDUIT FACTORS – DEMAND

Demand for the <u>uses of the</u> patented product <u>without authority under the 2006 cross license</u> can be proven by significant sales of <u>Promega's</u> [Plaintiff's] patented product.  Demand for the patented product can also be proven by significant sales of <u>Life's</u> [defendant's] <u>AmpFℓSTR® kits</u> containing the patented features <u>without authority from Promega</u>. <u>The patented features must provide the basis for the demand, not other features.</u> However, if you find that <u>Life</u> [the Defendant] generated new or different markets by sales or marketing efforts because of features other than those claim<u>ed in the</u> <u>Promega patents</u> [Plaintiff], the sales of <u>Life's</u> [Defendant's] products cannot establish a demand for the patented product.

AIPLA's Model Patent Jury Instructions (2008), Post Trial Instruction 12.5
*Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 n.3 (Fed. Cir. 1991); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 552 (Fed. Cir. 1984).

**LIFE'S PROPOSED INSTRUCTION NO. 5.5.4**

**LOST PROFITS – PANDUIT FACTORS – ACCEPTABLE NON-INFRINGING SUBSTITUTES**

In order to be an acceptable substitute, the product must have one or more of the advantages of the patented invention that were important to customers.  [If, however, the realities of the marketplace are that competitors other than [the Plaintiff] would likely have captured some or all of the sales made by the infringer, even despite a difference in the products, then [the Plaintiff]  is not entitled to lost profits on those sales.]  An acceptable non-infringing substitute must be a product that does not infringe the patent.  A product does not infringe a patent when it either (a) is sold based on a license under that patent or (b) does not include all the features required by the patent.

Acceptable non-infringing substitutes include alternative actions that the Life reasonably could have taken to avoid unauthorized sales.  Thus, an acceptable non-infringing substitute does not need to be a product that is actually produced and sold during the damages period.  For example, an acceptable non-infringing substitute can be an alternative product, different than either of the parties' products, that was not on the market but that was nevertheless available during the damages period.[39] Alternatively, if Life could have manufactured its AmpFℓSTR® kits outside the United States, the kits would be non-infringing alternatives.[40]

An acceptable non-infringing substitute is available if, during the damages period, Life [a competitor or the Defendant] had all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and sell such substitute instead of its infringing sales at the time those infringing sales were made.  If you determine that Life's [the Defendant's] customers would just as likely have purchased a non-infringing alternative [acceptable] product, then Promega [the Plaintiff] has not shown it lost that sale but for Life's [Defendant's] sales.

In order to assess whether there is an absence of acceptable non-infringing substitutes, you must consider whether non-infringing substitutes existed or were readily commercializable and that were acceptable to the *specific* purchasers of the AmpFℓSTR® kits who used them without authority from Promega, [infringing products,] not "purchasers" generally. The test is whether purchasers of Life's [the Defendant's] AmpFℓSTR® kits who used them without authority were motivated to make their purchase by features of Life's [the Defendant's] product that were attributable to the claimed invention.  If so, non-infringing products without those features would not be "acceptable non-infringing substitutes," even if they otherwise competed in the marketplace with the patented and Life's [the Defendant's] products.

---

[39] This modification is based upon *Siemens Medical Solutions USA, Inc., v. Saint-Gobain Ceramics & Plastics, Inc.,* 637 F.3d 1269, 1288 (Fed. Cir. 2011); *DePuy Spine, Inc. v. Medtronic Sofamer Danek, Inc.,* 567 F.3d 1314, 1331 (Fed. Cir. 2009); *Micro Chemical, Inc. v. Lextron, Inc.,* 318 F.3d 1119, 1122 (Fed. Cir. 2003).

[40] This language is based on *Medtronic Vascular, Inc. v. Abbot Cardiovascular*, No. C 06-1066-PJH, 2009 U.S. Dist. LEXIS 41685, at *9-*13 (N.D. Cal. May 15, 2009).

AIPLA's Model Patent Jury Instructions (2008), Post Trial Instruction 12.6
*Siemens Medical Solutions USA, Inc., v. Saint-Gobain Ceramics & Plastics, Inc.,* 637 F.3d 1269, 1288 (Fed. Cir. 2011); *DePuy Spine, Inc. v. Medtronic Sofamer Danek, Inc.,* 567 F.3d 1314, 1331 (Fed. Cir. 2009); *Cohesive Tech. v. Waters*, 543 F.3d 1351, 1373 (Fed. Cir. 2008); *Micro Chemical, Inc. v. Lextron, Inc.,* 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997); *Uniroyal, Inc. v. Rudkin-Wiley Corp.,* 939 F.2d 1540, 1545-46 (Fed. Cir. 1991); *Standard Havens Prods., Inc. v. Gencor Indus.,* 953 F.2d 1360, 1373 (Fed. Cir. 1991); *Kaufman Co. v. Lantech, Inc.,* 926 F.2d 1136, 1142-43, 1143 n.17 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.,* 926 F.2d 1161, 1166 (Fed. Cir. 1991); *TWM Mfg. Co. v. Dura Corp.,* 789 F.2d 895, 901-902 (Fed. Cir. 1986); *Medtronic Vascular, Inc. v. Abbot Cardiovascular*, No. C 06-1066-PJH, 2009 U.S. Dist. LEXIS 41685, at *9-*13 (N.D. Cal. May 15, 2009).

**LIFE'S PROPOSED INSTRUCTION NO. 5.5.5**

**LOST PROFITS – PANDUIT FACTORS – CAPACITY**

<u>Promega</u> [the Plaintiff] is only entitled to lost profits for sales it could have actually made. You should consider whether <u>Promega</u> [the Plaintiff] has proven that it had the manufacturing capacity and the marketing capability to make the sales it says it lost. <u>Promega</u> [the Plaintiff] must prove that it was more probable than not that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for the infringement. <u>Promega</u> [the Plaintiff] also must prove that it had the capability to market and sell the additional patented products.

AIPLA's Model Patent Jury Instructions (2008), Post Trial Instruction 12.7
*Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997); *Fonar Corp. v. Gen. Elec. Co*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir. 1994); *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 825 (Fed. Cir. 1989); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 554 (Fed. Cir. 1984).

**LIFE'S PROPOSED INSTRUCTION NO. 5.5.6**

## LOST PROFITS – PANDUIT FACTORS – AMOUNT OF PROFIT INCREMENTAL INCOME APPROACH

Promega [the Plaintiff] may calculate its lost profits on lost sales by computing the lost revenue for its patented product and subtracting from that figure the amount of additional costs or expenses that it would have incurred in making those lost sales, including but not limited to cost of goods, sales costs, packaging, shipping, etc. Certain fixed costs such as taxes, insurance, rent and administrative overhead may not vary with increases in production or scale. These are called fixed costs. Any costs, which do not vary with increased production or scale, should not be subtracted from the lost revenue when determining damages. Thus, in determining Promega's [the Plaintiff's] lost profits, you are not to subtract from its lost revenue the amount of any fixed costs. The amount of lost profits cannot be speculative but it need not be proved with unerring certainty.

AIPLA's Model Patent Jury Instructions (2008), Post Trial Instruction 12.8
*Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1578-79 (Fed. Cir. 1991); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482-1483 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579-1580 (Fed. Cir. 1989); *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065-66 (Fed. Cir. 1983).

**LIFE'S PROPOSED INSTRUCTION NO. 5.5.7**

**LOST PROFITS—AMOUNT**

If you conclude that Promega has proved that it lost profits because of <u>Life's unauthorized sales into fields outside the scope of the 2006 cross license</u> [Defendant's infringement], the lost profits that you award should be the amount that <u>Promega</u> [the Plaintiff] would have made on any sales that <u>Promega</u> [Plaintiff] lost because of those <u>unauthorized sales into fields outside the scope of the license</u> [the infringement], minus the additional costs that <u>Promega</u> [Plaintiff] would have incurred in making those sales. [, plus the amount by which Plaintiff's profits on its own sales were decreased as a result of reduced prices or increased costs caused by Defendant's infringement.]

<u>Promega</u> [Plaintiff] is required to prove the amount of its lost profits to a reasonable probability and may not recover amounts that are speculative. However, mathematical certainty is not required, and if the reason <u>Promega</u> [Plaintiff] has difficulty proving the amount of its lost profits is that Life [Defendant] did not maintain adequate records, then you should resolve any doubts as to the amount of lost profits in <u>Promega's</u> [Plaintiff's] favor.

Pattern Jury Instruction, Seventh Circuit Civil, Instruction 11.4.3.6 (2008 ver.)

*Paper Converting Mach. Co. v. Magna-Graphics Co.*, 745 F.2d 11, 22 (Fed. Cir. 1984); *Grain Processing Corp. v. Am-Maize Products Co.*, 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *Del Mar Amonics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030-31 (Fed. Cir. 1996); *Lam*, 718 F.2d at 1066; *Ryco Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988).

**LIFE'S PROPOSED INSTRUCTION NO. 5.6.**

### REASONABLE ROYALTY

[Plaintiff seeks to recover a reasonable royalty.]

Promega [Plaintiff] is entitled to recover a reasonable royalty for any of Life's unauthorized sales into fields outside the scope of the 2006 cross license [Defendant's infringing sales] for which Promega [Plaintiff] did not prove lost profits.  Just as was the case for lost profits, because Life had authority to make, use, sell, offer to sell, and import kits in particular fields,  the only sales at issue for damages purposes are those sales of Life's kits in which the customer ultimately used the kits outside the scope of the 2006 cross license.   Part of Promega's burden of proving that it is entitled to recover a reasonable royalty is to prove which kits sales, if any, were ultimately used outside of the scope of the 2006 cross license.

A royalty is a payment made to the owner of a patent by someone else so that he can make, use, sell, or import the patented invention. A "reasonable royalty" is the amount Promega [Plaintiff] and Life [Defendant] would have agreed upon as a royalty at the time Life's [Defendant's] infringement began.

In determining a reasonable royalty, you should assume that Promega [Plaintiff] would have been willing to allow Defendant to make, use, sell, or import the patented invention with authority in all fields and that Life [Defendant] would have been willing to pay Promega to do so. You should take into account what Promega's [Plaintiff's] and Life's [Defendant's] expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. You should assume that both Promega [Plaintiff] and Life [Defendant] would have believed that Promega's [Plaintiff's] patents were valid and infringed. You should also assume that Life [Defendant] would have been willing to pay, and Promega [Plaintiff] would have been willing to accept, the reasonable royalty they negotiated. Your role is to determine what Promega [Plaintiff] and Life [Defendant] would have agreed upon if they had negotiated in this manner, not just what either Promega [Plaintiff] or Life [Defendant] would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

- Royalties that others paid to Promega [Plaintiff] for the patented invention;

- Royalties that Life [Defendant] paid to others for comparable patents;

- Whether Promega [Plaintiff] had a policy of licensing or not licensing the patents;

- Whether Promega [Plaintiff] and Life [Defendant] are competitors;

- Whether use of the patented invention without authority helps to make sales of other products or services;

- Whether the <u>unauthorized</u> product made using the patent is commercially successful <u>outside the scope of the 2006 cross license,</u> as well as its profitability;

- The advantages of using the patented invention <u>without authority</u> <u>and outside the scope of the 2006 cross license</u> over products not covered by the patent;

- The extent of <u>Life's</u> [Defendant's] <u>unauthorized sale</u> [use] of the patented invention <u>and use by customers outside the scope of the 2006 cross license</u> and the value of that use to Defendants;

- Any royalty amounts that are customary for similar or comparable patented inventions;

- The portion of the profit on sales<u> made without authority where the uses were outside the scope of the 2006 cross license</u> that is due to the patented invention, as opposed to other factors, such as unpatented elements or processes, features, or improvements developed by <u>Life</u> [Defendant];

- Expert opinions regarding what would be a reasonable royalty.

Pattern Jury Instruction, Seventh Circuit Civil, Instruction 11.4.4 (2008 ver.)
35 U.S.C. 284; *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574-79 (Fed. Cir. 1998), *overruled on other grounds, Knorr-Bremse Systeme Fuer Nutsfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (en banc); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

**LIFE'S PROPOSED INSTRUCTION NO. 5.7**

## TOTALING THE DAMAGE AWARD

Any amounts that you award for lost profits and for reasonable royalties should be set out separately on the verdict form that I will give you.

Pattern Jury Instruction, Seventh Circuit Civil, Instruction 11.4.7 (2008 ver.)

DATED:  January 18, 2012.          By: /s/ Francis M. Wikstrom

    Francis M. Wikstrom (admitted *pro hac vice*)
    Kristine Edde Johnson (admitted *pro hac vice*)
    Michael R. McCarthy (admitted *pro hac vice*)
    Parsons Behle & Latimer
    201 South Main Street, Suite 1800
    Salt Lake City, UT 84111
    Ph:  801-532-1234
    F:  801-536-6111
    fwikstrom@parsonsbehle.com
    kjohnson@parsonsbehle.com
    mmccarthy@parsonsbehle.com

    Michael J. Modl
    Steven M. Streck
    Andrew J. Clarkowski
    Axley Brynelson, LLP
    2 E. Mifflin Street, Suite 200
    Madison, WI 53703
    Ph:  608-283-6705
    F:  608-257-5444

    Amy Sun (admitted *pro hac vice*)
    Life Technologies Corporation
    5791 Van Allen Way
    Carlsbad, CA 92008
    Ph:  760-603-7200
    amy.sun@lifetech.com

    Attorneys for Defendant