# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WISCONSIN

PROMEGA CORPORATION,

                      Plaintiff,

      and

MAX-PLANCK-GESELLSCHAFT zur
FORDERUNG der WISSENSCHAFTEN E.V.,

                Involuntary Plaintiff,

      v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC., and
APPLIED BIOSYSTEMS, LLC,

                Defendants.

Case No. 10-cv-281-bbc

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS PROPOSED SPECIAL NON-STOCK JURY INSTRUCTIONS AND SPECIAL VERDICT FORM**

## INTRODUCTION

Pursuant to the Court's December 20, 2011 Order (Docket No. 354), Defendants Life Technologies Corp., Applied Biosystems LLC, and Invitrogen IP Holdings, Inc. (collectively "Life") submit this Memorandum of Law in support of their proposed jury instructions and proposed special verdict form.

### I.      LIFE'S PROPOSED NON-STOCK JURY INSTRUCTIONS

For instructions not covered by this Court's standard civil jury instructions, Life's proposed instructions are based primarily on the Seventh Circuit, Civil Pattern Instructions for patent cases, last revised in 2008 ("Seventh Circuit Instructions").  Where appropriate, Life modified these instructions to reflect the particular issues in this case, including the Court's summary judgment order (Docket No. 345) and recent case law developments.  For state law claims related to the 2006 License between Promega and Life, Life relies on the 2012 Judicial Council of California—Civil Jury Instructions ("California Instructions"), which are the official instructions of the state of California.

### A.  LIFE'S PROPOSED INTRODUCTORY INSTRUCTIONS

**LIFE'S PROPOSED INSTRUCTION NO. 1.1**

Life has modified this Court's stock jury instruction based on a corresponding instruction from AIPLA's Model Patent Jury Instructions (2008) ("AIPLA Instructions") and the facts of the case.

The AIPLA Instructions call for educating the jury generally about the technology at issue in the case.  Life has provided a brief explanation of DNA, short tandem repeats ("STRs"),

2

the general type of kits at issue, and how these kits might be used.  Further, Life's proposed instruction introduces the specific patents at issue and Life's family of accused products.

Life has further modified the AIPLA Instructions based on the Court's summary judgment order.  Life proposes instructing the jury at the outset that the parties entered into a license agreement that governs what products Life is authorized to make, use, sell, offer to sell, and import.  This is a key issue in the case: whether the sales for which Promega seeks damages were authorized and whether Life's customers actually used those STR kits in a manner outside the scope of the license.  Informing the jury of this issue at the beginning ensures that the jury will focus on the key issues in the case.  Under 35 U.S.C. § 271(a), infringement is restricted only to "unauthorized" activities: "Except as otherwise provided in this title, whoever *without authority* makes, uses, offers to sell, or sells a patented invention, within the United States, or imports into the United States and patented invention during the term of the patent therefor, infringes the patent." (emphasis added).  Licensed activities are, therefore, "authorized" and do not constitute infringement.  Where a customer uses one of Life's STR kits within the scope of the 2006 cross license, such a use is authorized.  Only when a customer buys a kit *and uses* it outside the licensed fields does liability for infringement attach.  Until the kit is used, it cannot be determined whether the sale was outside the scope of the 2006 cross license.  By analogy to joint infringement, because Life has no contractual or principal/agent relationship with its customers, Life cannot be charged with knowing whether its customers will use the STR kits outside of the scope of Life's license with Promega.  *See, e.g.*, *Akamai Techs. v. Limelight Networks, Inc.*, 629 F.3d 1311 (Fed. Cir. 2010) (requiring principal/agent relationship between

accused infringement and third-party performing method step);[1] *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1330 (Fed. Cir. 2008) (absent vicarious liability over actions of users joint infringement liability does not attach); BMC *Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) (requiring control or direction over third-party actions to support finding of direct infringement). Thus, liability here requires a two-step analysis:  (1) determining whether Life's sale of a kit was authorized; and (2) determining whether the customer used the kit within the scope of the 2006 cross license. Life can be held liable only if the answer to both questions is "No."[2]

Life's proposed instruction also introduces the jury to the specific issues they will be asked to resolve in order to focus them on those issues before the presentation of evidence.

The remainder of the proposed instruction beginning on the bottom of page 3 is taken from the Court's stock instruction and is only modified to insert the names of the parties.

**LIFE'S PROPOSED INSTRUCTION NO. 1.11: UNITED STATES PATENTS AND PATENT LITIGATION**

Life's proposed instruction tracks the AIPLA Instructions modified only to reflect the issues in this case.  Specifically, Life deletes several paragraphs of the AIPLA Instructions that are not applicable here based on the Court's summary judgment order.  Life proposes adding the final paragraph to make clear that an authorized use of a product under a license does not constitute infringement.  *See* 35 U.S.C. § 271(a) ("Except as otherwise provided in this title, whoever **without authority** makes, uses, offers to sell, or sells a patented invention, within the

---

[1] The Federal Circuit granted en banc review of *Akamai* to determine liability for direct infringement by separate entities and vacated this opinion.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 419 Fed. Appx. 989 (Fed. Cir. 2011).

[2] This analysis applies to the changes throughout Life's proposed jury instructions that include language related to "without authority" and "outside the scope of the 2006 cross license." For brevity, this argument is not repeated and is incorporated by reference for all the relevant proposed instructions.

4

United States, or imports into the United States and patented invention during the term of the patent therefor, infringes the patent." (emphasis added)).

## B. **LIFE'S PROPOSED POST-TRIAL INSTRUCTIONS**

**LIFE'S PROPOSED INSTRUCTION NO. 2.3: CLEAR AND CONVINCING BURDEN OF PROOF**

Life modified the Court's stock instruction to make clear to the jury that the "clear and convincing" burden of proof requires a higher probability that the particular proposition is true compared to the Court's preponderance instructions (Proposed Instruction 2.2). Life's instruction tracks the Seventh Circuit Instruction for willful infringement, premised on *In re Seagate Technology, LLC.,* 497 F.3d 1360, 1370-72 (Fed. Cir. 2007) (*en banc*). The proposed instruction better articulates what "clear and convincing" means. "Highly probable" is preferable to "satisfactory" as a reference to evidence; "satisfactory" could lead the jury to confuse the "clear and convincing" standard of proof applicable to certain issues in this case with the preponderance of the evidence standard.

**LIFE'S PROPOSED INSTRUCTION NO. 3.1:  SUMMARY OF THE ISSUES**

Life's proposed instruction follows the corresponding AIPLA Instruction and briefly informs the jury of the issues that it must decide. The proposed instruction helps ground the jury so that they know their tasks and why the following instructions are relevant.

**LIFE'S PROPOSED INSTRUCTION NO. 3.2:  INFRINGEMENT –GENERALLY**

Life's proposed instruction largely tracks AIPLA Post-Trial Instruction 3.0, with several modifications.

The first modification clarifies, based on 35 U.S.C. § 271, that only unauthorized sales of Life's products are at issue where their use is outside the scope of the 2006 cross license. This

modification comports with the Court's summary judgment order which determined the fields of use for which Promega authorized Life to sell STR kits.[3]

The second modification adds the last two sentences of the third paragraph: "A person or business entity that engages in those acts outside of the United States does not infringe the patent.  A person or business entity has permission if, for example, they have a license under the patent."  The first sentence emphasizes the territoriality of patent law—action outside the borders of the U.S. is generally immune to patent infringement.  This additional sentence is necessary because Promega is claiming damages from sales of products made and sold outside the U.S. This addition is based on well-established law.  "It is the general rule under Unites States patent law that no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT&T*, 550 U.S. 437, 442 (2007); *see also NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1313 (Fed. Cir. 2005) ("Section 271(a) is only actionable against patent infringement that occurs within the United States.").  The second sentence reiterates that authorized uses are not infringing uses.  *See* 35 U.S.C. § 271(a).

Life's instruction then removes one paragraph in the AIPLA Instructions cautioning the jury against comparing Life's products to Promega's products.  Given the Court's summary judgment ruling, this paragraph is not relevant to issues before the jury.

The final modifications are the final two paragraphs that were added to the AIPLA Instruction.  The first added paragraph (sixth paragraph of the instruction) delineates for the jury the Court's findings on infringement and the relevant claims and products.  The second added paragraph (seventh paragraph of the instruction) gives the jury context for the remainder of the

---

[3] *See also* the discussion in connection with Life's Proposed Instruction  No. 1.1, *supra*.

jury instructions by telling them what they will be asked to find based on the Court's prior ruling. Both of the modifications aim to provide the jury with context for the following instructions.

## LIFE'S PROPOSED JURY INSTRUCTION NO. 3.3:  DIRECT INFRINGEMENT

Life proposes a modification of the AIPLA Instruction on literal infringement to instruct the jury on direct infringement.  In particular, the proposed instruction explains that the jury must first determine that someone directly infringed those claims before the jury can determine whether Life is liable for indirect infringement.

Apart from the second paragraph, the proposed instruction tracks the AIPLA Instruction and provides an accurate and concise explanation of the law for the jury.  Absent direct infringement, Life cannot be liable for inducement.  *See Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 13222 (Fed. Cir. 2009) ("a finding of inducement requires a threshold finding of direction infringement"); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275-76 (Fed. Cir. 2004) (holding that Dynacore must prove either specific instances of direct infringement or that a group of customers necessarily infringed the standard at issue; *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986) ("Absent direct infringement of the patent claims, there can be neither contributory infringement, nor inducement of infringement." (citations omitted)).

## LIFE'S PROPOSED JURY INSTRUCTION NO. 3.4: INDUCING PATENT INFRINGEMENT

This proposed instruction tracks the Seventh Circuit Pattern Instruction on inducement with additional language from Model Patent Jury Instructions for the Northern District of California, issued in November 2011 ("N.D. California Instructions").  Life Tech believes the combination instruction is more appropriate as the proposed instruction reflects recent developments in the law and is clear, straightforward, and easy for the jury to apply.

The Seventh Circuit Instruction is an accurate summary of the inducement standard.  To prove inducement, the plaintiff must establish that the defendant possessed specific intent to encourage infringement by others.  *DSU Medical Corp v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006); *Manville Sales Corp. v. Paramount Systems, Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990). Absent a finding of direct infringement, there can be no inducement. *Water Tech. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 n.7 (Fed. Cir. 1988).

The first set of modifications merely conform the Seventh Circuit Instruction to the facts of the case by identifying the patents and claims at issue, the parties, and clarifying that inducement is limited to unauthorized uses of Life's products.  *See* 35 U.S.C. § 271(a).  In addition, the proposed instruction replaces the words "preponderance of the evidence" with the Court's stock instruction for this burden.  The second modification to the instruction emphasizes that the underlying direct infringement must occur within the United States.  This proposition is well-established.  *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (affirming district court's jury instructions on induced infringement which stated "Unlike direct infringement, which must take place within the United States, induced infringement does not require any activity by the indirect infringer in this country, as long as the direct infringement occurs here.")  Based upon Promega's attempt to claim damages based on products made and sold abroad, this emphasis is appropriate.

The final modification adds the last two paragraphs based on the N.D. California Instruction on inducing patent infringement.  The first additional paragraph accounts for the Supreme Court's decision *in Global-Tech Appliances, Inc., v. SEB S.A.*, -- U.S. --, 131. S.Ct. 2060 (2011).  That decision clarified that deliberate indifference to a risk that the induced acts are infringing is not sufficient to support inducement.  *Id.* at 2071.  The proper standard requires

willful blindness to that risk.  *Id.*  According to the Supreme Court, that standard is satisfied when "(1) the defendant . . . subjectively believe[s] that there is a high probability that a fact exists and (2) the defendant . . . take[s] deliberate actions to avoid learning of that fact."  The proposed instruction explains that standard to the jury in clear language.  The additional modification to this paragraph takes into account that only unauthorized sales of kits to customers who use them outside the scope of the parties' 2006 cross license can form the basis for inducement.   The second paragraph informs the jury that Life's subjective belief as to whether it was encouraging infringement may defeat a claim for inducement.

**LIFE'S PROPOSED JURY INSTRUCTION NO. 3.5: WILLFUL INFRINGEMENT**

Life's proposed instruction is based on the Seventh Circuit Instruction for willful infringement, with minor modifications taken from the N. D. California Instructions.

The Seventh Circuit Instruction is modified at the outset based on the Court's summary judgment order to emphasize that only unauthorized sales may be found to be willful.  *See* 35 U.S.C. § 271(a).   Further, additional modifications throughout the instruction conform the proposed instruction to the facts of the case (including deletion of one paragraph), substituting party names, and inserting the date on which Promega filed this action.

The substantive modifications may be found beginning in paragraph four ("To succeed…").  These modifications more precisely spell out the burdens of proof for willful infringement and the two-part test.  *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371-72 (Fed. Cir. 2007).  Under *Powell v. Home Depot, U.S.A., Inc*., if the infringer's defenses on the issue of objectively high risk of infringement are questions of law, then the Court may only send willfulness to the jury if it finds the first prong is met.  Case Nos. 2010-1409, -16, Slip Op. at *20-*21 (Fed. Cir. Nov. 14, 2011).  If the defenses presented on the issue of objectively high risk of infringement are questions of fact, then the first prong may be addressed by the jury.  *Id.* at

9

*21. If the defenses present mix questions of fact and law, they require analysis by the Court and the jury. *Id.* Only if the first prong is met by clear and convincing evidence—*i.e.*, that, objectively, Life's defenses fail to raise any substantial question regarding infringement—should the jury address the second prong. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Further, Life proposed additional language based on this Court's decision in *Wisconsin Alumni Research Foundation v. Intel Corp.*, 656 F. Supp. 2d 898, 923-24 (W.D. Wis. 2009). In that case, the Court granted summary judgment of no willful infringement based on the defendant's licensing defense. Although the Court determined that no reasonable jury would find an express or implied license to practice the patents at issue, the Court held that the licensing defenses were not "an open-and-shut question." *Id.* at 915-916, 924. Accordingly, the Court held that the defendant's licensing defense was objectively reasonable. *Id.* at 924.

The proposed construction accurately summarizes the test and burdens for willful infringement.

## LIFE'S PROPOSED JURY INSTRUCTION NO. 4:1: BREACH OF LICENSE AGREEMENT

Life's proposed instruction is based on the California instructions. Promega and Life chose California law to govern construction of the 2006 License; thus use of the civil jury instructions related to breach of contract and approved by the California court system is both warranted and appropriate.

The California instructions succinctly state the elements of breach of contract in a manner accessible to the jury. California Civil Code Section 1549 states: "A contract is an agreement to do or not to do a certain thing." *See also Robinson v. Magee,* 9 Cal. 81, 83 (1858) ("A contract is a voluntary and lawful agreement, by competent parties, for a good consideration, to do or not to do a specified thing. The only end and object of the contract, is the doing or not doing the

particular thing mentioned." The elements of breach of contract are well established. *See, e.g.*, *Acoustics, Inc. v. Trepte Construction Co.* 14 Cal. App. 3d 887, 913 (1971); *Consolidated World Investments, Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992); *Troyk v. Farmers Group, Inc.* 171 Cal. App. 4th 1305, 1352 (2009); Restatement (Second) of Contracts, § 235(2).

The modifications to the California instructions are two-fold: First, the proposed instruction combines two separate instructions that lay out the elements of breach of contract. Combining the two instructions streamlines the instruction to aid the jury in understanding its task. Second, the proposed instruction replaces the word "contract" in the California instructions with "license," which better reflects the issue before the jury, and fills in the parties and a brief description of the breach of contract issue for the jury.

## LIFE'S PROPOSED JURY INSTRUCTION NO. 5.1: DAMAGES GENERALLY

Life's proposed instruction departs from this Court's standard instruction by adding one paragraph, largely taken from the Seventh Circuit Instructions.

The additional paragraph provides a framework for computing damages. First, Promega should be compensated for infringement. 35 U.S.C. §284 (2006); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *Del Mar Amonics, Inc. v. Quinton Instr. Co.*, 835 F.2d 1320, 1326-28 (Fed. Cir. 1987); *Lam Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983). Second, the lowest damages that the jury may award is a reasonable royalty. 35 U.S.C. §284 (2006). The damage award must be intended to compensate the patent holder, not to punish the infringer. *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003), *vacated on other grounds*, 545 U.S. 193 (2005).

11

The modifications to this additional paragraph conform the Seventh Circuit Instruction to the facts of the case, including whether sales were authorized and uses were outside the scope of the license.  *See* 35 U.S.C. § 271(a).

**LIFE'S PROPOSED JURY INSTRUCTION NO. 5.2: DATE DAMAGES BEGIN**

Life Tech's proposed instruction modifies the AIPLA Instruction only to specify the parties' names and the stipulated date at which patent damages begin.

The AIPLA Instruction is based on 35 U.S.C. § 287(a).  Under that section, "[w]hen a patented article has been produced by a patentee or its licensee, the amount of damages the patentee can recover in an infringement suit is statutorily limited to those acts of infringement that occurred after the patentee gave the alleged infringer 'notice of infringement.'" *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *see also Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001) ("knowledge of the patentee's identity facilitates avoidance of infringement with design changes, negotiations for licenses, and even early resolution of rights in a declaratory judgment proceeding."); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001) (affirming a jury's calculation of lost profits to the date the infringer had notice of infringement); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184-87 (Fed. Cir. 1994) (vacating a jury's damage award and remanding for a recalculation of damages from the date of notice of infringement); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987) (affirming a jury's verdict of no damages because the patentee "failed to carry its burden of convincing the jury that it had performed affirmative acts in compliance with § 287.").

12

**LIFE'S PROPOSED JURY INSTRUCTION NO. 5.3: TWO TYPES OF DAMAGES—LOST PROFITS & REASONABLE ROYALTY**

Life proposes the Seventh Circuit Instruction with minor, non-substantive modifications to conform it to the facts of the case.  Informing the jury that they will be asked to decide between two types of damages provides context for the instructions that follow.  The test articulated in the proposed instruction is well recognized. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545-46 (Fed. Cir. 1995) (*en banc*).  The only substantive modification to this instruction adds that damages are limited here to sales by Life "without authority" and to customers that used the kits outside the scope of the 2006 cross license. *See* 35 U.S.C. § 271(a).

**LIFE'S PROPOSED JURY INSTRUCTION NO. 5.4: CALCULATING DAMAGES IN CASES OF INDUCEMENT**

Life Tech proposes that the Court instruct the jury on how to calculate damages for inducement, based on N.D. California Instruction 5.9.

The instruction is based on *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263 (Fed. Cir. 2004) and *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348 (Fed. Cir. 2009).  In *Dynacore Holdings*, the Federal Circuit stated:  "[a] defendant's liability for indirect infringement must be related to the identified instances of direct infringement.  Plaintiffs who identify ***individual*** acts of direct infringement must restrict their theories of vicarious liability—and tie their claims for damages or injunctive relief—to ***the identified act.*** Plaintiffs who identify an entire category of infringers (*e.g.*, the defendant's customers) may cast their theories of vicarious liability more broadly, and may consequently seek damages or injunctions across the entire category."   363 F.3d at 1274 (citations omitted, emphasis in original). Similarly, in *Cardiac Pacemakers*, the Federal Circuit affirmed the district court's ruling that limited damages to devices that performed the steps of the claimed method.  576 F.3d at 1358. The Federal Circuit stated that "it cannot be said that St. Jude has somehow 'supplied' all of the

13

elements of Cardiac's patented method through its devices unless those devices actually performed all of the steps required by the claims." *Id.* at 1359. Accordingly, damages were properly limited to devices that "actually performed" the patented method.

The only substantive modification to this instruction limits recovery for damages to unauthorized sales made by Life where a customer used the kits outside the scope of the license. *See* 35 U.S.C. § 271(a).

## LIFE'S PROPOSED JURY INSTRUCTION NO. 5.5.1: LOST PROFITS

Life's proposed instruction is largely based on the Seventh Circuit Pattern Instruction with modifications to make the analysis more accessible to the jury.

The Seventh Circuit Instruction is based on well-established law that requires the plaintiff to "show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *see also Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir.1999). Life Tech has omitted the foreseeability elements (number 3) because it is not at issue here.

The additional modifications clarify the issues for the jury and conform the instruction to the facts of the case. First, Life Tech inserts a sentence from the AIPLA Instructions at the beginning of the instruction to inform the jury why they are asked to determine if Promega is entitled to lost profits. This additional sentence focuses the jury on its task and reminds them that the burden of proof is on Promega.

Second, Life Tech adds the language "reasonable probability but not absolute precision" to the end of the second element. This language is based on *Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 275 (Fed. Cir. 1985) and *Bio-Rad Laboratories, Inc. v. Nicolet Instrument*

14

*Corp.,* 739 F.2d 604, 616, 222 USPQ 654, 664 (Fed.Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984). In *Yarway,* the Federal Circuit stated: "It is well settled that proof of lost profits need not be absolute but may not be speculative; lost profits must be proven to a reasonable probability." 775 F.2d 268 at 275 (citing *Paper Converting Machine Co. v. Magna-Graphics Corp.,* 745 F.2d 11, 22, 223 USPQ 591, 598 (Fed. Cir. 1984)). In *Bio-Rad,* the Federal Circuit clarified that lost profits need not be proved with absolute precision. *Bio-Rad Labs.,* 739 F.2d 604, 616 ("The amount of lost profits awarded cannot be speculative but the amount need not be proven with unerring precision."); *see also Ryco, Inc. v. Ag-Bag Corp.,* 857 F.2d 1418, 1428 (Fed. Cir. 1988).

Finally, Life Tech adds an additional paragraph, modeled after the AIPLA Instruction and on 35 U.S.C. § 271, to instruct focus the jury on its task. The lost profits analysis focuses on what would have occurred but for the infringement. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). The analysis is properly restricted to the profits lost by Promega, not those made by Life. *Ferguson Beauregard/Logic Controls v. Mega Sys., L.L.C.*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003). Finally, lost profits may only be attributed here to unauthorized activities outside the scope of the parties' 2006 License. *See* 35 U.S.C. § 271(a).

## LIFE'S PROPOSED JURY INSTRUCTION NO. 5.5.2: LOST PROFITS—*PANDUIT* TEST

Life's proposed instruction modifies the Seventh Circuit Instruction on the *Panduit* test based on the facts of the case.

The test itself derives from the Sixth Circuit case *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). Although not the only method of proving lost

profits, the use of the *Panduit* test has been approved in numerous cases.  *See, e.g.*, *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000) (affirming an award of lost profits based on the *Panduit* test); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-79 (Fed. Cir. 1997) (reversing an award of lost profits based on the *Panduit* test because the patentee failed to prove it had sufficient manufacturing capacity and because of the existence of acceptable non-infringing substitutes); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996) (affirming an award of lost profits based on the *Panduit* test despite infringer's contention that there were acceptable non-infringing substitutes available at the time of the initial infringement and throughout the period of infringement); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (affirming an award of lost profits based on the *Panduit* test); *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1577 (Fed. Cir. 1989) (finding sufficient evidence to support damages award based on the *Panduit* factors); *Yarway Corp. v. Eur-Control USA, Inc.,* 775 F.2d 268, 275 (Fed. Cir. 1985) (affirming an award of lost profits based on the *Panduit* test).

Life Tech amended the Seventh Circuit Instruction to include the fourth element, that the plaintiff must provide a detailed computation of the amount of profits claimed.  In particular, the additional language makes clear to the jury that the total amount of lost profits claimed by Promega cannot be speculative. *See, e.g.*, *Smithkline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1162-1167 (Fed. Cir. 1991) (the plaintiff failed to establish the fourth *Panduit* factor where the district court properly "found incredible" plaintiff's use of a 50% profit margin).  Even if the other Panduit factor are met, if the total amount of profits claimed is not reasonable, the plaintiff cannot prove entitlement to lost profits.

16

The remaining modifications make clear to the jury that the award of damages is limited to those uses of the patented product that were not authorized under the 2006 License.  *See* 35 U.S.C. § 271(a).  This modification conforms the instruction to the facts presented in the case.

**LIFE'S PROPOSED JURY INSTRUCTION NO. 5.5.3: LOST PROFITS—PANDUIT FACTORS—DEMAND**

Life's proposed instruction modifies the AIPLA Instruction on for the demand for the patented product prong of the *Panduit* test based on the facts of the case.

The AIPLA Instruction accurately summarizes the law in terms the jury can understand. This prong "presupposes that the demand for the infringer's and the patent owner's products is interchangeable."  *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1218-19 (Fed. Cir. 1993).  Thus, sales of the infringing product may be sufficient to prove demand.  *Id.*; *see SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 n.3 (Fed. Cir. 1991) (same).  However, demand must be tied to the patented features.  *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003) (vacating damages where demand included features attributed to patent not in suit).  Where the defendant generated new and/or different markets because of non-patented features, such sales cannot form the basis of a lost profits award.  *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1218-19 (Fed. Cir. 1993) (holding district court erred where parties' products competed in different markets based on form and price).

**LIFE'S PROPOSED JURY INSTRUCTION NO. 5.5.4: LOST PROFITS—*PANDUIT* FACTORS—ACCEPTABLE NON-INFRINGING SUBSTITUTES**

Life's proposed instruction modifies the AIPLA Instruction on acceptable, non-infringing substitutes factor of *Panduit* test based on the facts of the case.

The AIPLA Instruction relies on *Grain Processing Corp. v. American Maize-Productss. Co.*, 185 F.3d 1341 (Fed. Cir. 1999).  In that case, the Federal Circuit stated that "an accurate

reconstruction of the hypothetical 'but for' market takes into account any alternatives available to the infringer." *Id.* at 1351 (*citing Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964) (plurality opinion)).   Accordingly, the reconstruction of the 'but for' market should account for "alternative actions the infringer foreseeably would have undertaken had he not infringed.  Without the infringing product, a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether." *Id.* at 1350-51.  Potential noninfringing alternatives include manufacturing accused products overseas.  *Medtronic Vascular, Inc. v. Abbot Cardiovascular*, No. C 06-1066-PJH, 2009 U.S. Dist. LEXIS 41685, at *9-*13 (N.D. Cal. May 15, 2009) (denying summary judgment of no lost profits due to issue of material fact whether defendant could have moved accused product production to Ireland during the relevant time period).

To prove that there are no acceptable, noninfringing alternatives, the patent owner must show either: (1) purchasers in the marketplace generally were willing to buy the patented product for its advantages; or (2) the specific purchasers of the infringing product purchased the product because of those advantages.  *Cohesive Tech. v. Waters*, 543 F.3d 1351, 1373 (Fed. Cir. 2008); *Standard Havens Prods. v. Gencor Indust.*, *Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991).

Life's proposed instruction adds a paragraph to make clear that an alternative need not be actually "on the market" rather need only be "available." *Grain Processing Corp.*, 185 F.3d at 1351.  "[O]nly by comparing the patented invention to its next-best available alternative(s)— regardless of whether the alternative(s)were actually produced and sold during the infringement—can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward." *Id.*  If material and know-how for the alleged substitute is readily available, the alternative may be considered available.  *Micro Chem., Inc. v. Lextron,*

*Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Siemens Medical Solutions USA, Inc., v. Saint-Gobain Ceramics & Plastics, Inc.,* 637 F.3d 1269, 1288 (Fed. Cir. 2011).

The additional modifications to the AIPLA Instruction are based on the facts of the case. In particular, the modifications identify the family of accused products ("AmpFℓSTR® kits") and make clear that it is only the unauthorized sale of these kits for uses outside the scope of the license that are relevant to the lost profits analysis.  *See* 35 U.S.C. § 271(a).

## LIFE'S PROPOSED JURY INSTRUCTION NO. 5.5.5: LOST PROFITS—*PANDUIT* FACTORS—CAPACITY

Life's proposed instruction modifies the AIPLA Instruction on the capacity factor of *Panduit* test based on the facts of the case.

The AIPLA instruction provides a succinct, accurate statement of the law regarding capacity.  The patent holder must show that it had the manufacturing capability to satisfy the sales it claims to have lost.  *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997) (affirming the lower court's denial of lost profits because the patentee had not proven sufficient capacity to produce the at-issue eyewear); *Fonar Corp. v. Gen. Elec. Co*, 107 F.3d 1543, 1553 (Fed. Cir. 1997) (affirming a jury award of lost profits because the patentee had the capacity to manufacture machines whose sales it lost); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir. 1994) (holding that the patentee was not entitled to lost profits because he lacked the capacity to manufacture, market, and sell electronic intermittent windshield wipers). The patent holder must also show that it had the marketing capability to capture the sales its claims to have lost.  *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 825 (Fed. Cir. 1989) (affirming the lower court's denial of lost profits because it had not met its burden of proving manufacturing and marketing capability).

The remaining changes merely substitute Promega for "the Plaintiff."

**LIFE'S PROPOSED INSTRUCTION NO. 5.5.6:   LOST PROFITS – PANDUIT FACTORS – AMOUNT OF PROFIT INCREMENTAL INCOME APPROACH**

Life's proposed instruction substitutes "Promega" for the "the Plaintiff" in the AIPLA Instruction on incremental profit under the *Panduit* test.

The AIPLA Instruction provides a concise and accurate statement of the law on incremental income.  Lost profits are properly calculated by computing the patent holder's lost revenue for its patent product less the amount of addition costs or expenses incurred in making such sales.  *See, e.g.*, *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1579 (Fed. Cir. 1991) (overturning trebling of damages for destruction of documents but affirming actual damages where based on adjusted profit margins).   Likewise, the incremental approach to determining lost profits is well established.  *See, e.g.*, *Paper Converting Mach. Co. v. Magna-Graphics Corp.,* 745 F.2d 11, 22 (Fed. Cir. 1984) ("the approach recognizes that it does not cost as much to produce unit N + 1 if the first N (or fewer) units produced already have paid the fixed costs.  Thus fixed costs—those costs which do not vary with increase in production … are excluded when determining profits."); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482-1483 (Fed. Cir. 1990) (holding district court erred in subtracting out taxes from damages award); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579-1580 (Fed. Cir. 1989) (holding district court did not abuse its discretion by concluding minimal increases in fixed costs and award of incremental profits was appropriate); *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1065-66 (Fed. Cir. 1983) (findings of fact were not clearly erroneous where district court considered testimony from both sides on incremental profit).  It is axiomatic that the amount of lost profits cannot be speculative but need not be proved with unerring precision.  *See, e.g.*, *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996); *Ryco, Inc. v. Ag-Bag Corp.,* 857 F.2d 1418, 1428 (Fed. Cir. 1988).

20

Accordingly, Life's instruction provides a succinct, correct statement of the law.

**LIFE'S PROPOSED JURY INSTRUCTION NO. 5.5.7: LOST PROFITS—AMOUNT**

Life's proposed instruction modifies the Seventh Circuit Instruction only to specify the parties' names and to delete language related to price erosion, which Promega has not claimed.

The Seventh Circuit's instruction provides a clear and accurate statement of the law that will help the jury understand its task. A patent holder's recovery is limited to the net profits it lost as a result of defendant's infringement. *Paper Converting Mach. Co. v. Magna-Graphics Co.*, 745 F.2d 11, 22 (Fed. Cir. 1984). Further, the patent holder must prove the amount of its lost profits by a reasonable probability. *Grain Processing Corp. v. Am-Maize Products Co.*, 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*) ("A patentee need not negate every possibility that the purchase might not have purchase a product other than its own, absent the infringement. The patentee need only show that there was a reasonable probability that the sales would have been made "but for" the infringement." (citations omitted)). Although mathematic certainty is not required, *Del Mar Amonics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983), the amount cannot be based on gross extrapolation. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029-31 (Fed. Cir. 1996) (reversing denial of JMOL on no lost profits, stating "[t]his evidence adds vague estimation and gross extrapolation to unsupported presumption. At every step, this damages calculation is fraught with speculation. . . . Oiness invents the jury to engage in rapt speculation."). Doubts resulting from an infringer's failure to retain appropriate records are resolved in the plaintiff's favor. *Lam*, 718 F.2d at 1066; *Ryco Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988) (affirming

4844-9799-1950.1

district court's findings and conclusions because infringer advanced different numbers of accused devices sold at different stages in the litigation).

**LIFE'S PROPOSED INSTRUCTION NO. 5.6: REASONABLE ROYALTY**

Life's proposed instruction modifies the Seventh Circuit Instruction on a reasonable royalty only to specify the parties' names and to add language relating to the 1996 License Agreement.

In determining a reasonable royalty, courts have consistently looked to the *Georgia-Pacific* factors. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified* 446 F.2d 295 (2d Cir. 1971); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011): *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538 (Fed. Cir. 1995); *Smith Kline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161 (Fed. Cir. 1991).

The proposed instruction sets for the *Georgia-Pacific* factors with modifications to reflect 2006 License Agreement. Under 35 U.S.C. § 271(a), infringement is restricted to unauthorized activities coupled with sales outside the scope of the license. *See* 35 U.S.C. § 271(a) ("Except as otherwise provided in this title, whoever **without authority** makes, uses, offers to sell, or sells a patented invention, within the United States, or imports into the United States and patented invention during the term of the patent therefor, infringes the patent." (emphasis added)). Consequently, analysis of the *Georgia-Pacific* factors is properly restricted to activities performed "without authority."

4844-9799-1950.1

**LIFE'S PROPOSED JURY INSTRUCTION NO. 5.7: TOTALING THE DAMAGE AWARD**

Life Tech proposes using the Seventh Circuit's instruction directing the jury to separately set out its lost profits award (if any) and reasonable royalty award.  Inclusion of this instruction ensures that the jury properly fills in the special verdict form.

## II.      LIFE'S PROPOSED VERDICT FORM

Life's proposed **Question No. 1** asks the jury whether Promega has proven that Life is liable for inducement for selling STR kits without authorization to customer who used those kits outside the scope of the 2006 cross license.  As explained above, liability may only attach to unauthorized sales of products used outside the scope of the 2006 cross license.

Life's proposed **Question No. 2** limits the scope of damages to sales made by Life without authority and used by customers outside the scope of the 2006 cross license.  As discussed above, under 35 U.S.C. § 271(a), infringement is limited to unauthorized sales of Life's STR kits where customers used those kits outside the scope of the license.  Accordingly, before calculating damages, the jury must first determine the amount of sales made both without authority and outside of the licensed fields.

Life's proposed **Question No. 3** asks the jury whether Promega is entitled to lost profits for unauthorized STK kit sales that were used outside the scope of the 2006 cross license.  If the answer is no, the proposed question instructs the jury to proceed to Question No. 4.  This direction ensures that the jury awards Promega no less than a reasonable royalty.  *See* 35 U.S.C. § 284.  If the answer is yes, the proposed question instructs the jury to proceed to Question No. 3.

Life's proposed **Question No. 4** seeks the total dollar amount of lost profits that Promega has proven by a preponderance of the evidence where Life's sales were without authority and outside the scope of the license.  *See* 35 U.S.C. § 271.

Life's proposed **Question No. 5** properly frames the damages as a choice between lost profits and reasonable royalty.  Promega has not argued that it is entitled to both lost profits and a reasonable royalty.  Accordingly, the jury should only answer Question No. 4 if it has already determined that lost profits are not applicable.  The question properly frames the jury's task as determining the royalty rate for sales without authority.  *See* 35 U.S.C. § 271.

Life's proposed **Question No. 6** asks whether Promega has proven by clear and convincing evidence  that Life's unauthorized sales of STR kits to customers who used them outside the scope of the 2006 cross license were willful.  As stated above, liability only attaches where the sales were without authority and the uses exceeded the scope of the 2006 cross license.

4844-9799-1950.1

DATED:  January 18, 2012.          By: /s/ Francis M. Wikstrom_____

Francis M. Wikstrom (admitted *pro hac vice*)
Kristine Edde Johnson (admitted *pro hac vice*)
Michael R. McCarthy (admitted *pro hac vice*)
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Ph:  801-532-1234
F:  801-536-6111
fwikstrom@parsonsbehle.com
kjohnson@parsonsbehle.com
mmccarthy@parsonsbehle.com

Michael J. Modl
Steven M. Streck
Andrew J. Clarkowski
Axley Brynelson, LLP
2 E. Mifflin Street, Suite 200
Madison, WI 53703
Ph:  608-283-6705
F:  608-257-5444
mmodl@axley.com
sstreck@axley.com
aclarkowski@axley.com

Amy Sun (admitted *pro hac vice*)
Life Technologies Corporation
5791 Van Allen Way
Carlsbad, CA 92008
Ph:  (760) 603-7200
Amy.sun@lifetech.com

Attorneys for Defendants