UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

PROMEGA CORPORATION,

    Plaintiff,

MAX-PLANCK-GESELLSCHAFT ZUR
FORDERUNG DER WISSENSCHAFTEN     Case No.: 10-CV-281
E.V.,

    Involuntary Plaintiff,

    v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC., and
APPLIED BIOSYSTEMS, LLC,

    Defendants.

**PLAINTIFF PROMEGA CORPORATION'S BRIEF IN SUPPORT OF
MOTION TO STRIKE DEFENDANTS' NEWLY SUBMITTED
SUPPLEMENTAL EXPERT REPORT OF JONATHAN TOMLIN**

## INTRODUCTION

The last date for the exchange of damage expert reports in this case was November 22, 2011 – the date on which any rebuttal expert reports were due to this Court.[1] (Order, Oct. 19, 2011 (Dkt. #305)). On January 18, 2012 – nearly two full months after the date for submission of final expert reports – Defendants submitted the Supplemental Expert Report of Jonathan T. Tomlin, PhD ("Supplemental Tomlin Report" or "Supplemental Report"). The problems with the timing of the Supplemental Tomlin Report are myriad, to say the least.

---

[1] The Order followed a stipulation by the parties agreeing to a change in the originally set dates for filing the expert reports. (Stipulated Motion for Extension of Time for Damages Expert Reports (Dkt. #303)).

First, although this Court requires any supplements to an expert report to be filed at least five days before any deposition of that expert, Defendants submitted the Supplemental Tomlin Report to Promega mere *hours* before the deposition of Dr. Tomlin, on the night before his deposition. This is in direct violation of this Court's Preliminary Pretrial Conference Order, and on its own, requires the Court to strike the Supplemental Tomlin Report in its entirety.

Second, that the Supplemental Tomlin Report came the night before the deposition of Dr. Tomlin was bad enough, but that problem was exacerbated because it came on the same date that all initial pretrial filings were due from the parties. Moreover, it came after the close of the business day, and after Promega had filed significant portions of its pretrial filings, including two Motions *in Limine* regarding Dr. Tomlin's prior expert report. As this Court is aware, this is also less than three weeks before the trial in this case is scheduled to begin.

The Supplemental Tomlin should be stricken from this case as untimely, under the Federal Rules of Civil Procedures and this Court's own Preliminary Pretrial Conference Order. Moreover, Defendants' continued and repeated behavior with regard to not only untimely filings, but discovery in general merits significant further sanctions beyond merely striking the Supplemental Tomlin Report.

## **ARGUMENT**

### I. The Supplemental Tomlin Report Is Untimely and Should Be Stricken in Entirety from the Case.

From the beginning of this case, this Court has been clear as to the requirements of the parties with regard to discovery. Among the items set forth in the Preliminary Pretrial Conference Report were the requirements with regard to expert witnesses, including a requirement of timeliness of the report.

Here, not only did Defendants submit a supplement to the report of their damages expert over a month after the close of discovery, two months after the last filing date for expert reports set by the Court, but they filed that supplement a mere few hours before the deposition of their damages expert. Any one of these timing issues could be enough to strike the Supplemental Expert Report, but together, there can be no adequate explanation for Defendants for their failure to timely file the report.

### A. Expert Reports, Including Supplemental Expert Reports, Must Be Submitted in in a Timely Manner.

In the Preliminary Pretrial Conference Order, this Court was clear in the requirements of expert reports:

> All disclosures mandated by this paragraph must comply with the requirements of Rule 26(a)(2)(A), (B) and (C). There shall be no third round of rebuttal expert reports. Supplementation pursuant to Rule 26(e)(1) is limited to matters raised in an expert's first report, must be in writing **and must be served not later than five calendar days before the expert's deposition**, or before the general discovery cutoff if no one deposes the expert. Any employee of a party who will be offering expert opinions during any phase of this case must comply with all of these disclosure requirements.
>
> Failure to comply with these deadlines and procedures could result in the court striking the testimony of a party's experts pursuant to Rule 37.

Preliminary Pretrial Conference Order, §§ 3, 5 (Dkt. #69) (emphasis added).

Neither this Court nor the Seventh Circuit has any issue with excluding supplemental reports for failure to meet discovery obligations. *See Nutra-Sweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785-86 (7th Cir. 2000); *Citgo Petroleum Corp. v. Ranger Enterprises, Inc.*, 632 F.Supp.2d 878, 885 (W.D. Wis. 2009) (excluding late supplemental report with timing issues). Indeed, the Seventh Circuit has noted that the language of the Federal Rules on exclusion with regard to untimely reporting is not optional, but "automatic and mandatory":

> The Federal Rules of Civil Procedure require parties to file reports of expert witnesses they intend to use at trial. *See* Fed.R.Civ.P. 26(a)(2). If a party does not timely file his reports, the district court may exclude the party's expert from testifying at trial on the matters the party was required to disclose. *See* Fed.R.Civ.P. 37(c)(1). The sanction of exclusion is "automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless." *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir.1996).

*Nutra-Sweet Co.*, 227 F.3d at 785-86 (7th Cir. 2000).

To ensure that parties comply with these requirements, Rule 37 – as invoked by the Court in its Preliminary Pretrial Conference Order – imposes significant sanctions on a party for failure to comply with its supplementation requirements. Under Rule 37(c)(1), regarding the supplementation of a prior disclosure:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial; unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure,
> >
> > (B) may inform the jury of the party's failure; and
> >
> > (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[2]

As is explicit in the language of Rule 37, should supplementation not occur in a timely manner, the burden is on Defendants to show that their violation of the rules was justified or harmless. *Id*.

The Seventh Circuit has also stated that "'[a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to

---

[2] These six potential sanctions are: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party . . ." Rule 37(b)(2)(A).

- 4 -

disclose.'" *David*, 324 F.3d at 857 (quoting *Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)). However, the Seventh Circuit "has indicated that the following factors should guide the district court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David*, 324 F.3d at 857.

### B. The Untimely Filing of the Supplemental Tomlin Report Within Hours of His Deposition Should Be Enough to Strike the Supplemental Report.

In the Preliminary Pretrial Conference Order, this Court noted that "[s]upplementation pursuant to Rule 26(e)(1) . . . must be served not later than five calendar days before the expert's deposition." Despite the direct Order of the Court regarding supplementation and its filing at least five days prior to any deposition, Defendants did not serve Promega with the Supplemental Tomlin Report until January 18, 2012 – after the close of business on the day before Tomlin's scheduled deposition.[3] (Declaration of Sarah E. Troupis in Support of Promega Corporation's Motion to Strike Defendants' Newly Submitted Supplemental Expert Report of Dr. Jonathan Tomlin ("Troupis Decl."), ¶ A, B).

---

[3] With regard to the filing of the Supplemental Tomlin Report, Defendants failed to move the Court to submit discovery after the date of the discovery cutoff date, which would have, at the very least, provided the Court and Promega with a basis for their reasoning and justification behind this untimely filing. Instead, Promega is forced to file a Motion to Strike, and attempt to determine what, if any, justification exists for the filing of the Supplemental Tomlin Report.

Promega, for instance, expects to move the Court for leave to file a Supplemental Expert Report of its own damages expert, which will be used not to alter his methods for damages, but merely provide notice to the parties of a change in his damages calculations based solely on numbers he received on January 20, 2012 – a true supplement to his original expert report filed in October. The Court will thus be the arbiter of whether such a supplement should, or should not, be considered. This situation saves the parties from having to file continual motions – as Promega has been forced to do in this case – and taking up both the valuable time of the Court, and the time of attorneys whose time could be better spent at this point in the litigation preparing for trial.

On this basis alone – the filing of the Supplemental Tomlin Report on the evening before his deposition – this Court should exclude the Supplemental Tomlin Report pursuant to its own warnings to the parties.[4]

However, this is not the only timing issue that makes the filing of the Supplemental Tomlin Report problematic. The last date for the exchange of damage expert reports in this case was November 22, 2011 – the date on which any rebuttal expert reports were due to this Court.[5] (Order, Oct. 19, 2011 (Dkt. #305)). On December 15, 2011, discovery in this case closed. (Preliminary Pretrial Conference Order, § 7 (Dkt. #69)). On January 18, 2012 – two months after the date on which rebuttal expert reports were due to this Court and one month after the close of discovery – Defendants submitted the Supplemental Tomlin Report. As set forth above, this was the night before Tomlin's deposition. This was the same date that same date that all initial pretrial filings were due from the parties. Promega only received the Supplemental Tomlin Report *after* filing significant portions of its pretrial filings, including two Motions *in Limine* regarding Dr. Tomlin's prior expert report. As this Court is aware, this is also less than three weeks before the trial in this case is scheduled to begin.[6] Calling the Supplemental Tomlin Report "untimely" is being kind.

Looking at the specific factors outlined by the Seventh Circuit on the weighing of the burdens only serves to bolster the lack of timeliness with regard to the Supplemental Tomlin

---

[4] As will be set forth below, the remedy for this violation is, at a minimum, to strike the Supplemental Tomlin Report. However, this is much more serious. Promega was forced to alter its deposition of Dr. Tomlin based on the Supplemental Tomlin Report the night before and morning of his deposition. Indeed, for the second time in less than two weeks, Promega is asking the Court to strike Defendants' untimely filings, in the middle of trial preparation. Promega would request that the Court go further than that which is minimally required when fashioning a remedy in this situation.

[5] The Order followed a stipulation by the parties agreeing to a change in the originally set dates for filing the expert reports. (Stipulated Motion for Extension of Time for Damages Expert Reports (Dkt. #303)).

[6] Per this Court's requirement on discovery motions, on January 23, 2012, counsel for Promega contacted counsel for Defendants regarding this Motion in an attempt to solve the disagreement. (Troupis Decl., Exh. C). Opposing counsel did not accept the offer Promega made in this email, and Promega has filed this Motion to Strike. (Troupis Decl., Exh. D).

Report. The first factor – the prejudice or surprise to the party against whom the evidence is offered – is certainly present here. Promega was taking the deposition of Dr. Tomlin the day after his the Supplemental Report was received. The Supplemental Report arrived on the same date as Promega was required to submit its pretrial filings with the Court, after the close of business, and after Promega had already filed Motions *in Limine* with regard to Dr. Tomlin's previous Expert Report.

To say that the sudden arrival of the Supplemental Tomlin Report, coming as it did on the night before Tomlin's deposition, the same day that pretrial filings were due to this Court, while additionally in the midst of preparing for a trial beginning less than three weeks in the future, came as a surprise to Promega would be an understatement. The surprise and prejudice factor is bolstered by the fact that this Court's own Preliminary Pretrial Conference Order required Defendants to submit the Supplemental Report five days in advance of Tomlin's deposition and gave warning of potential sanctions if that deadline was not met. One reason such a requirement exists is surely to prevent prejudice against a party deposing an expert from having new information sprung on it at the last minute – just as Defendants did here.

The second factor is the ability of the party to cure the prejudice. Here, with trial less than three weeks away, the deposition having had to be taken with little to no time to prepare with the Supplemental Tomlin Report, Promega cannot cure the prejudice unless the Supplemental Report is stricken in its entirety. Further, that the timing of Defendants' filing requires Promega to oppose it in the midst of trial preparation is extremely prejudicial to Promega. Promega must devote time to not only this Motion and related filings, but still address the myriad issues that arise in preparation for trial. Any prejudice here falls against Promega.

The third factor – the likelihood of disruption to the trial – again goes against allowing Defendants to submit the Supplemental Tomlin Report. Promega had to depose Dr. Tomlin with very little time to prepare off of the Supplemental Report; the deposition could therefore not be entirely indicative of the true nature of Dr. Tomlin's opinions. This will require extra preparation for the trial, and, most likely, longer and more confusing testimony from Dr. Tomlin by Promega, as Promega attempts to determine exactly what he is testifying to.

The disruption to trial has, indeed, already begun. Promega already submitted its pretrial filings on January 18; Promega had already filed many of its filings without the benefit of the Supplemental Tomlin Report to guide those filings. Indeed, Promega had filed two Motions *in Limine* with regard to Dr. Tomlin's initial report. Promega had been preparing for trial based on the Initial Expert Report of Dr. Tomlin; the changes in the Supplemental Report, coming as they do within three weeks of trial, certainly disrupt Promega's preparation for trial, and ultimately the proceedings of that trial.

The final factor outlined by the Seventh Circuit – the bad faith or willfulness involved in not disclosing the evidence at an earlier date – is the factor that most cuts against Defendants. Defendants have been aware of the requirements of this Court with regard to expert witnesses since September 15, 2010, when the Court entered its Preliminary Pretrial Conference Order. Defendants either did not read, or ignored entirely, this Court's Order. To have done so in the manner that they did acts to significantly prejudice Promega on the eve of trial. The acts of Defendants sandbagging the very process the Court has implemented to conduct its proceedings, as it set forth at the outset of this case.[7]

---

[7] This factor is also seen in the added content of the Supplemental Tomlin Report. Among the additions was the addition of information from sales representatives for Defendants to whom Tomlin spoke in preparing his Supplemental Report. These sales representatives were in the control of Defendants from the beginning of the case (or the time when they came to work for Defendants during the pendency of the case); Defendants cannot say that

Should the Court allow Defendants to get away with this – *i.e.*, allowing Defendants to submit a Supplemental Expert Report two months after the due date for expert reports, one month after the close of discovery, after the close of the business day on the date on which pretrial filings were due and mere hours before the deposition of the expert for whom the supplemental report is being submitted – this will provide a great incentive for parties to neglect to submit supplemental expert reports until not only the literal eve a deposition, in direct violation of the Court's own edict, but well after the other party has any chance to meaningfully respond. Surely, this cannot be the purpose of either the Federal Rules of Civil Procedure or this Court's own stated rules, if they are to have any place in the discovery process.

**C. The Proper Remedy for Defendants' Untimely Submission of the Supplemental Tomlin Report is to Strike the Report in its Entirety.**

As set forth above, Defendants' submission of the Tomlin Expert Report on the night before the deposition of Dr. Tomlin, as well as two months after the due date for expert reports, one month after the close of discovery, and after the close of the business day and after Promega has made significant filings on the date on which pretrial filings were due, is directly contrary to the requirements of this Court's Preliminary Pretrial Conference Order and the Federal Rules of Civil Procedure. As this Court set forth in that Order, this Court can and should sanction Defendants by striking the Supplemental Tomlin Report.

Although Defendants may attempt to justify their failure to submit the Supplemental Tomlin Report, as set forth above, the damage caused by this late disclosure cannot allow any justification Defendants may present to stand. Striking the Supplemental Tomlin Report is the

---

these witnesses were unavailable to Dr. Tomlin, because they have been available to him at all times. Indeed, as much was admitted by Dr. Tomlin during his recent testimony. (Deposition of Tomlin, p. 210, lines 17-19 (Dkt. #427)). Promega should not be the party who is punished because Defendants did not utilize the resources that they have had at their disposal since the beginning of the case. Indeed, the very issues discussed by Dr. Tomlin in his Supplemental Report are the very same issues that have been known to Defendants since the filing of Dr. Beyer's Expert Report in October; Promega should not be doubly punished because Defendants later decided to address those issues in a new way.

proper, and mandated, course for this Court to take, and will help minimize the damage that this late filing has caused.[8]

## II. This Court Should Sanction Defendants for Continued and Multiple Violations of Discovery Rules.

As set forth above, in addition to striking the Supplemental Tomlin Report, the Federal Rules and this Court's statement in its Preliminary Pretrial Conference Order referencing those Rules allow further sanctions against a party who does not comply with discovery obligations beyond merely striking the Supplemental Tomlin Report, including the payment of reasonable expenses, including attorney's fees (Rule 37(c)(1)(A)), informing the jury of the failure of Defendants to disclose information (Rule 37(c)(1)(B)), or the appropriate sanctions of Rule 37(b)(2)(A)(i)-(vi).[9] Fed. R. Civ. P. 37(c)(1)(C).

As this Court is well-aware, this is not the first time that the parties to this case have been before the Court and asking for relief related to discovery. On three previous occasions, this Court has ordered Defendants to comply with Motions to Compel discovery. (Order, Nov. 24, 2010 (Dkt. #99); Order, July 20, 2011 (Dkt. #214); Order, Nov. 3, 2011 (Dkt. #330)). As part of the second Order to Compel discovery, this Court ordered sanctions against Defendants in the form of paying Promega's reasonable costs, including attorneys' fees, pursuant to Rule

---

[8] Promega uses the term "minimize," as there is already harm caused here, even if the Court acts to remedy the situation immediately. For instance, Promega filed significant pretrial filings without the benefit of the Supplemental Tomlin Report, had to conduct the deposition of Dr. Tomlin with virtually no chance to review the Supplemental Tomlin Report, and has to prepare responses to its filings with this new supplement in mind. Moreover, because of the new material contained in the Supplemental Tomlin Report, Promega has had to employ its expert on damages to prepare a response – that this Court may or may not agree to review. One member of Promega's litigation team has spent significant time since the filing of the Supplemental Tomlin Report preparing the Motion and its supporting materials. Moreover, until this matter is settled, Promega has to expend considerable energy and effort preparing for the potential newly disclosed material in the Supplemental Tomlin Report.

[9] These six potential sanctions are: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party . . ." Rule 37(b)(2)(A).

37(A)(5)(a). (Order, July 20, 2011 (Dkt. #214)). Thus, Defendants are not first time – or even second or third time – offenders when it comes to failing their basic discovery obligations. Moreover, Promega has also submitted a further Motion to Strike (Motion to Strike Newly Disclosed Rule 26(a)(1) Witnesses (Dkt. #268)), which may ultimately lead to further discovery sanctions against Defendants. Harsher sanctions than merely striking the Supplemental Tomlin Report from appearing in this Court are thus appropriate in this situation.

That sanctions are even more appropriate in this situation is due to the timing of the Supplemental Tomlin Report. As set forth already in this brief, the Supplemental Report comes two months after the filing of the expert reports, one month after the close of discovery, after the close of business on the day that pretrial filings were due, on the literal eve of the deposition of Dr. Tomlin and less than three weeks before trial. Counsel for Promega is also replying to Defendants' pretrial filings, which are to occur on Wednesday, January 25. Counsel has had to take valuable time away from its trial preparations to address yet another discovery issue created entirely by Defendants' own failures to act in a timely manner.[10]

This Court has made it clear that supplemental expert reports are to be done in a timely manner, and given to opposing counsel with enough time to prepare for any pending depositions. One point of such requirements is to provide the opposing party an opportunity to fully comprehend and determine the scope of a case before trial so that the Court and jury may have the full benefit of those facts, in a precise and clear manner. Here, Defendants have, by submitting the Supplemental Tomlin Report when they did, sandbagged the Court's very rules

---

[10] In fashioning any remedy, Promega requests that no sanction involved move the trial date. Promega has spent significant amounts of money in preparation for a trial to commence on February 6, including but not limited to arrangements for individual witnesses to appear in the midst of busy schedules (and often requiring those individuals to travel significant distances). Indeed, moving the trial date would inure to the benefit of Defendants, whose own actions would then allow them to garner extra time for preparation and dealing with the problems created solely by their own actions.

that go toward doing exactly this. Defendants were required to submit the Supplemental Tomlin Report in a timely matter. Requiring anything less denies the Plaintiff, Promega, fundamental due process as to these topics and the trial as a whole.

Thus, in addition to the required sanctions preventing the use of the Supplemental Tomlin Report, Promega would request that the Court take additional steps as allowed under Rule 37. One potential remedy would be to bar Tomlin's testimony entirely. Indeed, this would prevent any issues with those issues presented in Tomlin's Supplemental Report, versus his original report. Further, although Promega asks for its attorney's fees and costs as a monetary sanction against Defendants, as monetary sanctions have already been leveled at Defendants without seeming to have any effect on their willingness to comply with their discovery obligations, this sanction might impress upon Defendants that they must comply with those obligations.[11]

## CONCLUSION

For the reasons set forth above, Promega requests that this Court grant its motion to strike the Supplemental Tomlin Report, first disclosed to Promega on January 18, 2012. Promega further asks that, due to Defendants continuing untimely filings and general lack of compliance with discovery, that the Court exclude Tomlin from testifying entirely at trial, as well as granting

---

[11] Under Rule 37(b)(2)(A)(i) and (ii), the Court would be justified not only in doing this, but in finding in favor of Promega with regard to damages issues, should it wish to go this far in fashioning a remedy.

Promega the attorneys' fees necessary to draft this Motion, and whatever other relief this Court deems appropriate.

Dated:  January 25, 2012					RESPECTFULLY SUBMITTED,

**TROUPIS LAW OFFICE, LLC**

By:   /s/ Sarah E. Troupis
    James R. Troupis, SBN 1005341
    Peter G. Carroll (Admitted *Pro Hac*)
    Stewart W. Karge (Admitted *Pro Hac*)
    Sarah E. Troupis, SBN 1061515
    Brandon M. Lewis, SBN 1086824
    8500 Greenway Blvd., Suite 200
    Middleton, Wisconsin 53562
    ph. 608-807-4096
    jrtroupis@troupislawoffice.com

*Attorneys for Plaintiff Promega Corporation*