UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

PROMEGA CORPORATION,

        Plaintiff,

MAX-PLANCK-GESELLSCHAFT ZUR
FORDERUNG DER WISSENSCHAFTEN        Case No.: 10-CV-281
E.V.,

        Involuntary Plaintiff,

    v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC., and
APPLIED BIOSYSTEMS, LLC,

        Defendants.

**PLAINTIFF PROMEGA CORPORATION'S MOTION *IN LIMINE* NO. 11:
EXCLUDING NEWLY SUBMITTED SUPPLEMENTAL
EXPERT REPORT OF JONATHAN TOMLIN AND BARRING TESTIMONY OR
OTHER PROOFS ON THE NEW INFORMATION CONTAINED IN THAT REPORT**

## <u>INTRODUCTION</u>

      Pursuant to Federal Rules of Evidence 702 and 703, Promega Corporation ("Promega")

hereby moves *in limine* to preclude Defendants from offering evidence and testimony with

regard to the newly submitted Supplemental Expert Report of Jonathan Tomlin, first disclosed to

Promega on January 18, 2011. This Motion *in Limine* is based on, and hereby incorporates,

Promega's Motion to Strike the Newly Submitted Supplemental Expert Report of Jonathan

Tomlin submitted by Promega on January 25, 2011. (Dkt. # 435, 436, 437 & 438).

The last date for the Defendants to file a rebuttal expert report on damages in this case was November 22, 2011 – the date on which any rebuttal expert reports were due to this Court.[1] (Order, Oct. 19, 2011 (Dkt. #305)). Discovery closed on December 15, 2011. On January 18, 2012 – nearly two full months after the date for submission of final expert reports – Defendants submitted the Supplemental Expert Report of Jonathan T. Tomlin, PhD ("Supplemental Tomlin Report" or "Supplemental Report"). The problems with the timing of the Supplemental Tomlin Report are myriad, to say the least.

First, although this Court requires any supplements to an expert report to be filed at least five days before any deposition of that expert, Defendants submitted the Supplemental Tomlin Report to Promega mere *hours* before the deposition of Dr. Tomlin, on the night before his deposition. This is in direct violation of this Court's Preliminary Pretrial Conference Order, and on its own, requires the Court to strike the Supplemental Tomlin Report in its entirety.[2]

Second, that the Supplemental Tomlin Report came the night before the deposition of Dr. Tomlin was bad enough, but that problem was exacerbated because it came on the same date that all initial pretrial filings were due from the parties. Moreover, it came after the close of the business day, and after Promega had filed significant portions of its pretrial filings, including two

---

[1] The Order followed a stipulation by the parties agreeing to a change in the originally set dates for filing the expert reports. (Stipulated Motion for Extension of Time for Damages Expert Reports (Dkt. #303)).

[2] From reviewing the Supplemental Tomlin Expert Report, it appears the major change between Dr. Tomlin's Supplemental Report and his earlier Expert Report is that, since filing the earlier Expert Report, he spoke with numerous employees of Defendants. This will be explored further throughout this Motion in *Limine*; however, at the outset, it is important to keep several things in mind with regard to this change.

First, like the Supplemental Report, the employees were disclosed well past the discovery cutoff date. Indeed, most of the employees mentioned in the Supplemental Tomlin Expert Report are the subject of Promega's previous Motion to Strike Defendants' Newly Disclosed Rule 26(a)(1) Witnesses and Promega's Motion in *Limine* No. 10 (Dkt #387), on the same topic. Promega was unable to note the issue in either previous filing, as the Supplemental Tomlin Expert Report was only received after the filing of these documents.

Second, these individuals have been available for use since the beginning of this case, as they are employees of Defendants; they have certainly been available to interview since the filing of the October filing of Promega's expert reports on damages. Defendants have had the opportunity to interview these individuals throughout this case, and should have done so prior to the filing of the Supplemental Tomlin Expert Report. This is not a basis for filing a Supplemental Expert Report.

Motions *in Limine* regarding Dr. Tomlin's prior expert report. As this Court is aware, this is also less than three weeks before the trial in this case is scheduled to begin.

As set forth in the Motion to Strike the Supplemental Tomlin Report, the Supplemental Tomlin Expert Report should be stricken from this case as untimely, under the Federal Rules of Civil Procedures and this Court's own Preliminary Pretrial Conference Order. Accordingly, this Motion *in Limine* should be entered to ensure that this information is struck.

<u>**ARGUMENT**</u>

I.      **The Supplemental Tomlin Report Is Untimely and Should Be Struck in Entirety from the Case; This Motion *in Limine* Ensures This.**

From the beginning of this case, this Court has been clear as to the requirements of the parties with regard to discovery. Among the items set forth in the Preliminary Pretrial Conference Report were the requirements with regard to expert witnesses, including a requirement of timeliness of the report.

Here, not only did Defendants submit a supplement to the report of their damages expert over a month after the close of discovery, two months after the last filing date for expert reports set by the Court, but they filed that supplement a mere few hours before the deposition of their damages expert. Any one of these timing issues could be enough to strike the Supplemental Expert Report, but together, there can be no adequate explanation for Defendants for their failure to timely file the report. It must, therefore, be struck, including the use of the Supplemental Expert Report at trial.

A.      **Expert Reports, Including Supplemental Expert Reports, Must Be Submitted in in a Timely Manner.**

In the Preliminary Pretrial Conference Order, this Court was clear in the requirements of expert reports:

All disclosures mandated by this paragraph must comply with the requirements of Rule 26(a)(2)(A), (B) and (C). There shall be no third round of rebuttal expert reports. Supplementation pursuant to Rule 26(e)(1) is limited to matters raised in an expert's first report, must be in writing **and must be served not later than five calendar days before the expert's deposition**, or before the general discovery cutoff if no one deposes the expert. Any employee of a party who will be offering expert opinions during any phase of this case must comply with all of these disclosure requirements.

Failure to comply with these deadlines and procedures could result in the court striking the testimony of a party's experts pursuant to Rule 37.

Preliminary Pretrial Conference Order, §§ 3, 5 (Dkt. #69) (emphasis added).

Neither this Court nor the Seventh Circuit has any issue with excluding supplemental reports for failure to meet discovery obligations. *See Nutra-Sweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785-86 (7th Cir. 2000); *Citgo Petroleum Corp. v. Ranger Enterprises, Inc.*, 632 F.Supp.2d 878, 885 (W.D. Wis. 2009) (excluding late supplemental report with timing issues). Indeed, the Seventh Circuit has noted that the language of the Federal Rules on exclusion with regard to untimely reporting is not optional, but "automatic and mandatory":

The Federal Rules of Civil Procedure require parties to file reports of expert witnesses they intend to use at trial. *See* Fed.R.Civ.P. 26(a)(2). If a party does not timely file his reports, the district court may exclude the party's expert from testifying at trial on the matters the party was required to disclose. *See* Fed.R.Civ.P. 37(c)(1). The sanction of exclusion is "automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless." *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir.1996).

*Nutra-Sweet Co.*, 227 F.3d at 785-86 (7th Cir. 2000).

To ensure that parties comply with these requirements, Rule 37 – as invoked by the Court in its Preliminary Pretrial Conference Order – imposes significant sanctions on a party for failure to comply with its supplementation requirements. Under Rule 37(c)(1), regarding the supplementation of a prior disclosure:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial; unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure,

> (B) may inform the jury of the party's failure; and

> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[3]

As is explicit in the language of Rule 37, should supplementation not occur in a timely manner, the burden is on Defendants to show that their violation of the rules was justified or harmless. *Id.*

The Seventh Circuit has also stated that "'[a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose.'" *David*, 324 F.3d at 857 (quoting *Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)). However, the Seventh Circuit "has indicated that the following factors should guide the district court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David*, 324 F.3d at 857.

**B.  The Untimely Filing of the Supplemental Tomlin Report Within Hours of His Deposition Should Be Enough to Strike the Supplemental Report.**

In the Preliminary Pretrial Conference Order, this Court noted that "[s]upplementation pursuant to Rule 26(e)(1) . . .  must be served not later than five calendar days before the expert's

---

[3] These six potential sanctions are: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party . . ." Rule 37(b)(2)(A).

deposition." Despite the direct Order of the Court regarding supplementation and its filing at least five days prior to any deposition, Defendants did not serve Promega with the Supplemental Tomlin Report until January 18, 2012 – after the close of business on the day before Tomlin's scheduled deposition.[4] (Declaration of Sarah E. Troupis in Support of Promega Corporation's Motion to Strike Defendants' Newly Submitted Supplemental Expert Report of Dr. Jonathan Tomlin ("Troupis Decl."), ¶ A, B (Dkt. #437)).

On this basis alone – the filing of the Supplemental Tomlin Report on the evening before his deposition – this Court should exclude the Supplemental Tomlin Report pursuant to its own warnings to the parties.[5] This Motion *in Limine* ensures that the Supplemental Tomlin Report is excluded from trial.

However, this is not the only timing issue that makes the filing of the Supplemental Tomlin Report problematic. The last date for the exchange of damage expert reports in this case was November 22, 2011 – the date on which any rebuttal expert reports were due to this Court.[6] (Order, Oct. 19, 2011 (Dkt. #305)). On December 15, 2011, discovery in this case closed.

---

[4] With regard to the filing of the Supplemental Tomlin Report, Defendants failed to move the Court to submit discovery after the date of the discovery cutoff date, which would have, at the very least, provided the Court and Promega with a basis for their reasoning and justification behind this untimely filing. Instead, Promega is forced to file a Motion to Strike, and attempt to determine what, if any, justification exists for the filing of the Supplemental Tomlin Report.

Promega, for instance, may move the Court for leave to file a Supplemental Expert Report of its own damages expert, which will be used not to alter his methods for damages or depends on information long available (as the witnesses Tomlin interviewed were), but merely provide notice to the parties of a change in his damages calculations based solely on numbers he received on January 20, 2012 from the Defendants themselves – a true supplement to his original expert report filed in October. The Court will thus be the arbiter of whether such a supplement should, or should not, be considered. This situation saves the parties from having to file continual motions – as Promega has been forced to do in this case – and taking up both the valuable time of the Court, and the time of attorneys whose time could be better spent at this point in the litigation preparing for trial.

[5] As will be set forth below, the remedy for this violation is, at a minimum, to strike the Supplemental Tomlin Report. However, this is much more serious. Promega was forced to alter its deposition of Dr. Tomlin based on the Supplemental Tomlin Report the night before and morning of his deposition. Indeed, for the second time in less than two weeks, Promega is asking the Court to strike Defendants' untimely filings, in the middle of trial preparation. Promega would request that the Court go further than that which is minimally required when fashioning a remedy in this situation.

[6] The Order followed a stipulation by the parties agreeing to a change in the originally set dates for filing the expert reports. (Stipulated Motion for Extension of Time for Damages Expert Reports (Dkt. #303)).

(Preliminary Pretrial Conference Order, § 7 (Dkt. #69)). On January 18, 2012 – two months after the date on which rebuttal expert reports were due to this Court and one month after the close of discovery – Defendants submitted the Supplemental Tomlin Report. As set forth above, this was the night before Tomlin's deposition. This was the same date that same date that all initial pretrial filings were due from the parties. Promega only received the Supplemental Tomlin Report *after* filing significant portions of its pretrial filings, including two Motions *in Limine* regarding Dr. Tomlin's prior expert report. As this Court is aware, this is also less than three weeks before the trial in this case is scheduled to begin.[7] Calling the Supplemental Tomlin Report "untimely" is being kind.

Looking at the specific factors outlined by the Seventh Circuit on the weighing of the burdens only serves to bolster the lack of timeliness with regard to the Supplemental Tomlin Report. The first factor – the prejudice or surprise to the party against whom the evidence is offered – is certainly present here. Promega was taking the deposition of Dr. Tomlin the day after his the Supplemental Report was received. The Supplemental Report arrived on the same date as Promega was required to submit its pretrial filings with the Court, after the close of business, and after Promega had already filed Motions *in Limine* with regard to Dr. Tomlin's previous Expert Report.

To say that the sudden arrival of the Supplemental Tomlin Report, coming as it did on the night before Tomlin's deposition, the same day that pretrial filings were due to this Court, while additionally in the midst of preparing for a trial beginning less than three weeks in the future, came as a surprise to Promega would be an understatement. The surprise and prejudice factor is

---

[7] Per this Court's requirement on discovery motions, on January 23, 2012, counsel for Promega contacted counsel for Defendants regarding this Motion in an attempt to solve the disagreement. (Troupis Decl., Exh. C (Dkt. #437)). Opposing counsel did not accept the offer Promega made in this email, and Promega has filed this Motion to Strike. (Troupis Decl., Exh. D (Dkt. #437)).

bolstered by the fact that this Court's own Preliminary Pretrial Conference Order required Defendants to submit the Supplemental Report five days in advance of Tomlin's deposition and gave warning of potential sanctions if that deadline was not met. One reason such a requirement exists is surely to prevent prejudice against a party deposing an expert from having new information sprung on it at the last minute – just as Defendants did here.

The second factor is the ability of the party to cure the prejudice. Here, with trial less than three weeks away, the deposition having had to be taken with little to no time to prepare with the Supplemental Tomlin Report, Promega cannot cure the prejudice unless the Supplemental Report is struck in its entirety. Further, that the timing of Defendants' filing requires Promega to oppose it in the midst of trial preparation is extremely prejudicial to Promega. Promega must devote time to not only this Motion and related filings, but still address the myriad issues that arise in preparation for trial. Any prejudice here falls against Promega.

The third factor – the likelihood of disruption to the trial – again goes against allowing Defendants to submit the Supplemental Tomlin Report. Promega had to depose Dr. Tomlin with very little time to prepare off of the Supplemental Report; the deposition could therefore not be entirely indicative of the true nature of Dr. Tomlin's opinions. This will require extra preparation for the trial, and, most likely, longer and more confusing testimony from Dr. Tomlin by Promega, as Promega attempts to determine exactly what he is testifying to.

The disruption to trial has, indeed, already begun. Promega already submitted its pretrial filings on January 18; Promega had already filed many of its filings without the benefit of the Supplemental Tomlin Report to guide those filings. Indeed, Promega had filed two Motions *in Limine* with regard to Dr. Tomlin's initial report. Promega had been preparing for trial based on the Initial Expert Report of Dr. Tomlin; the changes in the Supplemental Report, coming as they

do within three weeks of trial, certainly disrupt Promega's preparation for trial, and ultimately the proceedings of that trial.

The final factor outlined by the Seventh Circuit – the bad faith or willfulness involved in not disclosing the evidence at an earlier date – is the factor that most cuts against Defendants. Defendants have been aware of the requirements of this Court with regard to expert witnesses since September 15, 2010, when the Court entered its Preliminary Pretrial Conference Order. Defendants either did not read, or ignored entirely, this Court's Order. To have done so in the manner that they did acts to significantly prejudice Promega on the eve of trial. The Defendants have known the complete list of customers involved and the methods of Dr. Beyer since his October, 2011 report, and so what Tomlin now does—interviews with Life Technology employees to review that customer list—evidences willfulness.  At a minimum, the Defendants reckless disregard of their obligation to seek evidence timely and report results of that effort in timely filed reports would rise to the level of willfulness. The acts of Defendants sandbagging the very process the Court has implemented to conduct its proceedings, as it set forth at the outset of this case.

This factor is also seen in the added content of the Supplemental Tomlin Expert Report. Among the additions to the Report was the addition of information from sales representatives for Defendants to whom Dr. Tomlin spoke in preparing his Supplemental Report. These sales representatives were in the control of Defendants from the beginning of the case (or the time when they came to work for Defendants during the pendency of the case); Defendants cannot say that these witnesses were unavailable to Dr. Tomlin, because they have been available to him at all times. Indeed, as much was admitted by Dr. Tomlin during his recent testimony. (Deposition of Tomlin, p. 210, lines 17-19 (Dkt. #427)). Promega should not be the party who is punished

because Defendants did not utilize the resources that they have had at their disposal since the beginning of the case. Indeed, the very issues discussed by Dr. Tomlin in his Supplemental Report are the very same issues that have been known to Defendants since the filing of Dr. Beyer's Expert Report in October; Promega should not be doubly punished because Defendants later decided to address those issues in a new way. These employees were previously subject of Promega's Motion in Limine No. 10, as well as the Motion to Strike Defendants' Newly Disclosed Rule 26(a)(1) Witnesses (Dkt. #368), and the reasons for excluding those witnesses in those findings are equally valid here.

Should the Court allow Defendants to get away with this – *i.e.*, allowing Defendants to submit a Supplemental Expert Report two months after the due date for expert reports, one month after the close of discovery, after the close of the business day on the date on which pretrial filings were due and mere hours before the deposition of the expert for whom the supplemental report is being submitted – this will provide a great incentive for parties to neglect to submit supplemental expert reports until not only the literal eve a deposition, in direct violation of the Court's own edict, but well after the other party has any chance to meaningfully respond. Surely, this cannot be the purpose of either the Federal Rules of Civil Procedure or this Court's own stated rules, if they are to have any place in the discovery process.

**C. The Proper Remedy for Defendants' Untimely Submission of the Supplemental Tomlin Report is to Strike the Report in its Entirety; Accordingly, the Court Should Enter this Motion *in Limine* to Ensure it is Struck.**

As set forth above, as well as in the Motion to Strike the Supplemental Tomlin Expert Report, Defendants' submission of the Tomlin Expert Report on the night before the deposition of Dr. Tomlin, as well as two months after the due date for expert reports, one month after the close of discovery, and after the close of the business day and after Promega has made

significant filings on the date on which pretrial filings were due, is directly contrary to the requirements of this Court's Preliminary Pretrial Conference Order and the Federal Rules of Civil Procedure. As this Court set forth in that Order, this Court can and should sanction Defendants by striking the Supplemental Tomlin Report.

Although Defendants may attempt to justify their failure to submit the Supplemental Tomlin Report, as set forth above, the damage caused by this late disclosure cannot allow any justification Defendants may present to stand.[8] Striking the Supplemental Tomlin Report and barring any testimony regarding the subjects of that Supplemental Report, is the proper, and mandated, course for this Court to take, and will help minimize the damage that this late filing has caused.[9] This Motion *in Limine* will ensure that it is struck, and prevented from being introduced as evidence, per this Court's prior orders and the Federal Rules.

## II. This Court Should Grant this Motion *in Limine* to the Extent it Grants the Motion to Strike.

As set forth above, in addition to striking the Supplemental Tomlin Report, the Federal Rules and this Court's statement in its Preliminary Pretrial Conference Order referencing those Rules allow further sanctions against a party who does not comply with discovery obligations beyond merely striking the Supplemental Tomlin Report. Promega has requested further sanctions as necessary and a bar to any testimony related to the newly disclosed information of that report, and further requests that this Court limit, through this Motion *in Limine*, the issues in

---

[8] Indeed, at the very least, Defendants should have been required to comply with this Court's five day deposition requirement.

[9] Promega uses the term "minimize," as there is already harm caused here, even if the Court acts to remedy the situation immediately. For instance, Promega filed significant pretrial filings without the benefit of the Supplemental Tomlin Report, had to conduct the deposition of Dr. Tomlin with virtually no chance to review the Supplemental Tomlin Report, and has to prepare responses to its filings with this new supplement in mind. Moreover, because of the new material contained in the Supplemental Tomlin Report, Promega has had to employ its expert on damages to prepare a response – that this Court may or may not agree to review. One member of Promega's litigation team has spent significant time since the filing of the Supplemental Tomlin Report preparing the Motion and its supporting materials. Moreover, until this matter is settled, Promega has to expend considerable energy and effort preparing for the potential newly disclosed material in the Supplemental Tomlin Report.

the case to the extent that they are limited by any ruling on the Motion to Strike the

Supplemental Expert Report.

## CONCLUSION

For the reasons set forth above, as well as in Promega's Motion to Strike the

Supplemental Expert Report of Jonathan Tomlin, Promega requests that this Court preclude

Defendants from offering evidence or testimony from the Supplemental Expert Report of

Jonathan Tomlin, or related to the subject of that report and to otherwise comport the trial

proceedings to the decision made on the Motion to Strike.

Dated:  January 25, 2012                RESPECTFULLY SUBMITTED,


**TROUPIS LAW OFFICE, LLC**


By:     /s/ Sarah E. Troupis
       James R. Troupis, SBN 1005341
       Peter G. Carroll (Admitted *Pro Hac*)
       Stewart W. Karge (Admitted *Pro Hac*)
       Sarah E. Troupis, SBN 1061515
       Brandon M. Lewis, SBN 1086824
       8500 Greenway Blvd., Suite 200
       Middleton, Wisconsin 53562
       ph. 608-807-4096
       jrtroupis@troupislawoffice.com

       *Attorneys for Plaintiff Promega Corporation*