*CONFIDENTIAL – FILED UNDER SEAL*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

PROMEGA CORPORATION,

        Plaintiff,

and

MAX-PLANCK-GESELLSCHAFT zur
FORDERUNG der WISSENSCHAFTEN E.V.,

        Involuntary Plaintiff,

v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC., and
APPLIED BIOSYSTEMS, LLC,

        Defendants.

Case No. 10-cv-281-bbc

**DEFENDANTS SUPPLEMENTAL BRIEFING IN SUPPORT OF *DAUBERT* MOTIONS
AS ORDERED BY THE COURT ON JANUARY 31, 2012 (DKT. NO. 483)**

    Defendants Life Technologies Corporation, Applied Biosystems, LLC, and Invitrogen IP Holdings, Inc., (collectively, "Life"), by and through counsel, respectfully submit this Supplemental Brief in support of *Daubert* Motions in response to the Court's January 31, 2012 Order (Dkt. No. 483).

## INTRODUCTION

    The Court has ruled on the applicability of the parties' 2006 Cross-License defense to the issue of infringement. In particular, the Court has ruled on summary judgment that uses of the accused products for applications of "chimerism in the context of bone marrow transplant monitoring, cell line authentication, classifying molar specimens and determinations of fetal sex"

1

are not within the scope of the parties' 2006 Cross-License. (November 29, 2011 Opinion and Order, Dkt. No. 345, at 23-25.) The Court thus granted "plaintiff's motion for summary judgment with respect to direct infringement of the asserted apparatus claims in the '235, '598, '660, and '771 patents" as to sales of AmpFℓSTR® Kits made by Applied Biosystems LLC ("AB") into the fields of use listed above. (*Id.* at 25.) The Court expressly did not rule on Plaintiff Promega Corporation's ("Promega's") induced infringement claim. (*Id.* at 3, 26, 32.) Now, the parties are proceeding to trial on indirect infringement, willfulness, and damages. The burdens of proving indirect infringement, willfulness, and Promega's damages for both direct and, if proven, indirect infringement, fall squarely on Promega, the patentee in this case.

The Court has requested supplemental briefing regarding two issues "(1) whether plaintiff or defendants have the burden of proof on the question whether defendants' sales to their customers fall within the scope of the license agreement;" and "(2) if defendants have the burden on this issue, the extent to which that moots defendants' motions to exclude the testimony of John Beyer and Randall Dimond." (Jan. 31, 2012 Order, Dkt. No. 483, at 3.) In the context of the January 31, 2012 Order, Life understands the Court's questions as related to Promega's proof of damages. However, the first question, regarding burdens of proof, also potentially relates to Promega's proof of indirect infringement, which was not decided on summary judgment. Life will address that issue briefly below for completeness.

Since issuing the January 31, 2012 Order, the Court has ruled on some of the issues raised in Life's motion to exclude the testimony of John Beyer. (Feb. 1, 2012 Op. and Order, Dkt. No. 486, at 13.) However, the Court specifically reserved its ruling on the motions to exclude testimony of Dr. Dimond regarding STR kit use by institution type and to exclude testimony of Dr. Beyer on the "quantum of infringing sales," until after the requested

supplemental briefing has been filed. (*Id.* at 12-13.) For the reasons discussed in this brief, Promega has the burden to prove its damages, including both the quantum of infringing sales as well as which of Life's customers' uses of STR kits fall outside the scope of the 2006 Cross-License. Further, Life's motions to exclude the testimony of John Beyer on the quantum of infringing sales, and Randall Dimond's testimony regarding STR kit use by institution type are not affected by the parties' relative burdens of proof, and are therefore not moot under any circumstances.

## ARGUMENT

### I. PROMEGA HAS THE BURDEN TO PROVE ITS DAMAGES, INCLUDING THE QUANTUM OF LIFE'S SALES THAT FALL OUTSIDE THE SCOPE OF THE LICENSE AGREEMENT.

The first question posed by the Court is "whether plaintiff or defendant has the burden of proof on the question whether defendants' sales to their customers fall within the scope of the license agreement." (Jan. 31, 2012 Order, Dkt. No. 483, at 3.) The short answer is that Promega squarely bears the burden of proof on damages, and must prove by a preponderance of the evidence the quantum of its injury in terms of the number of sales by Life and uses by Life's customers that were outside the licensed fields (*i.e.,* the magnitude of the infringement).

The cases cited in the Court's January 31, 2012 Order relate to shifting a burden of proof or production regarding infringement liability in the context of implied license defenses, which is not what is at issue here. Instead, the issue here is Promega's burden to prove its damages, including the number of infringing sales. Life will briefly discuss the issue of shifting burdens in the context of infringement liability, but only for context, for purposes of addressing Promega's burden of proving indirect infringement, and for explanation of why the cited cases are inapposite. The primary issues for trial about which Life understands the Court to be inquiring are discussed immediately thereafter, in the section relating to burdens for proof of damages.

3

As discussed below, Promega has the burden of proving indirect infringement, including the direct infringement elements thereof, and there is no basis for reversing the burden of proof and placing it on Life to prove the absence of infringement. Similarly, Promega squarely bears the burden of proving its damages and there is no basis for reversing the burden and placing the burden on Life to prove an absence of damages.

### A. Burdens On Infringement Liability.

#### 1. Promega Bears The Burden of Proving Infringement Liability.

A patent infringement suit is a statutorily created cause of action. Congress provided that "[e]xcept as otherwise provided in this title, whoever ***without authority*** makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (emphasis added). Congress determined that "without authority" is an element of the cause of action. On its face, this statute requires proof that each act of making, using, offering to sell, selling, or importing is "unauthorized" before such making, using, etc., is considered to be infringing.[1]

In the January 31, 2012 Order, the Court cites two cases for the proposition that "there is a plausible argument that defendants [Life] should have the burden to show that their sales fall within the agreement." (Jan. 31, 2012 Order, Dkt. No. 483, at 2-3.) Life respectfully submits that those cases are inapposite to the burdens of proof of infringement liability because they each

---

[1] Congress frequently uses the term "without authority" in criminal statutes and there is no question that the government has the burden of proving lack of authorization for each count charged under such a statute. *See, e.g.*, 18 U.S.C. § 500 ("whoever . . . without authority converts or disposes of any blank money order form . . .") and § 549 ("[w]hoever, without authority, willfully removes, breaks, injures, or defaces any customs seal . . . "), and Pattern Criminal Federal Jury Instructions for the Seventh Circuit for 18 U.S.C. §§ 500 and 549 (placing burden on government to show lack of authority).

4

dealt with the existence of an implied license, rather than the scope of an express license. In *Monsanto Co. v. Scruggs*, the Federal Circuit stated:

> Affirmative defenses to infringement include noninfringement, unenforceability, invalidity (e.g., failing to satisfy the written description or enablement requirements), *see* 35 U.S.C. § 282, patent misuse, *see Senza-GelCorp. v. Seiffhart*, 803 F.2d 661 (Fed. Cir. 1986), and the existence of an implied license, *see Carborundum Co. v. Molten Metal Equip. Innovations*, 72 F.3d 872, 878 (Fed. Cir. 1995).

*Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1334 (Fed. Cir. 2006). Although the Federal Circuit mentioned "implied license" as an affirmative defense,[2] it did not address express license, which is what is at issue in this case. Moreover, the above-quoted language appears to be dicta because the holding of the case did not turn on who had the burden of proof regarding the existence of the implied license; instead, the Federal Circuit reviewed the circumstances of the sales and concluded that there was no plain indication that the grant of a license should be inferred. *Id.* at 1336.

Similarly, in *Carborundum*, the Federal Circuit shifted the burden of proof (or production) regarding the *existence* of an implied license, not the *scope* of an express license defense. In particular, the Federal Circuit explained that "an implied license, like an express license, is a defense to patent infringement" (not characterizing either as an "affirmative defense") but then shifted the burden only as implied licenses: "As the alleged infringer, MMEI had the burden of establishing the existence of an implied license as an affirmative defense." *Carborundum Co. v. Molten Metal Equipment Innovations*, 72 F.3d 872, 878 (Fed. Cir. 1995).

---

[2] Life further respectfully notes that the Federal Circuit's citation to § 282 does not appear to necessarily support the description of "noninfringement" as an affirmative defense, at least to the extent that by "affirmative defense" the Federal Circuit was suggesting that the burden of proof or production shifted to the accused infringer. As discussed in the text, § 282 expressly shifts the burden to the accused infringer to prove invalidity, but does not do so as to noninfringement.

5

*Monsanto* and *Carborundum* are inapposite. Both cases turned on the existence of an implied license, not the scope of an express license, as in the present case. Nothing in these cases addresses the relative burdens on a patentee and an accused infringer regarding an express license. Moreover, to the extent that there is properly a shift in the burden of proof (or of production – the cases do not clearly distinguish these burdens) as to an implied license defense, there are practical reasons why the burden might more properly be placed on the accused infringer claiming an implied license. In the case of an express license, however, where the patentee affirmatively granted an express license to a licensee, the burden should remain on the patentee to prove the licensee was acting without authority, or outside the scope of the license. In other words, in the case of a claim of implied license, the accused party is trying to escape liability by proving that there was an unwritten license that should be inferred from the circumstances. In contrast, in the case of a claim of express license, the licensee already has express authority, so the patentee must prove the licensee was acting outside that authority.

Additionally, implied license defenses are intensively factual and dependent on a variety of factors, including whether the products that is sold has any non-infringing uses, whether the circumstances of the sale "plainly indicate that the grant of a license should be inferred," and, based on the circumstances of the sale, what the scope of the implied license was. *See, e.g., Carborundum,* 72 F.3d at 878-79 (citing *Met-Coil Systems Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684 (Fed. Cir. 1986); *Edison Elec. Light Co. v. Peninsular Light, Power & Heat Co.,* 101 F. 831, 836 (6th Cir. 1900), and *Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1559 (Fed. Cir. 1983)). In contrast, an express license defense asks relatively straightforward questions dependent primarily on the patentee's express actions –*i.e.,* did the patentee grant authority to the accused infringer by expressly granting a license and, if so, what is the scope of that express license?

Further, nothing in the *Monsanto* or *Carborundum* cases would excuse a patentee from the ultimate burden of demonstrating the statutory element of "without authority." For example, in the cases dealing with implied license defenses, the patentee would, as a practical matter, first offer evidence that the alleged infringer had no authority. Then, according to these cases, the burden of production shifts to the defendant who claims the existence of an implied license. But the cases did not rule that the patentee did not have to meet the ultimate burden of proving that the accused activities were "without authority."[3] More importantly, however, as discussed *infra,* the effect of the express license on the parties' relative burdens of proof or production regarding direct infringement liability here is not before the Court because the summary judgment order determines which fields are licensed and which fields are not licensed (*i.e.,* which categories of uses are considered infringing and which are not).

Regarding Promega's burden of proving indirect infringement, there are additional statutory elements that are squarely Promega's burden to prove at trial, such as knowledge and intent elements. *See* 35 U.S.C. §§ 271(b), (c). Moreover, proof of direct infringement by the customers who were "induced" to infringe by Life or whose infringement was "contributed" to by Life is an essential element of indirect infringement. *i4i Ltd P'ship v. Microsoft Corp.,* 598 F.3d 831, 850 (Fed. Cir. 2010) ("[t]o succeed on a theory of contributory or induced

---

[3] Similar to the *Monsanto* and *Carborundum* cases, the Supreme Court has also dealt with implied license scenarios. In *De Forest Radio Telephone Co. v. United States,* 273 U.S. 236, 239 (1927), the Supreme Court considered the effect of a statement by patent owner that it would "not interfere" with the United States' production of a product embodying the patented technology if it was understood that the patent owner "waived none of its claims" and that "all patent questions be reserved and later investigated, adjusted, and settled." The Court found that the "circumstances," including the statement and the patent owner's conduct in assisting the United States in the manufacturing of and using the product, indicated that the patent owner "was licensing [the technology], only postponing to subsequent settlement what reasonable compensation, if any, it might claim for its license." *Id.* at 242. The Court explained the common-sense notion that "[i]f a licensee be sued, he can escape liability to the patentee for the use of his invention by showing that the use is within his license." *Id.* In the context of the assertion of an implied license based on the circumstances, one might read into that statement a notion that the accused infringer bears some burden in proving that his acts were within the scope of the implied license, but the Supreme Court did not go that far and burdens of proof were not at issue in the case. More importantly, there is nothing to suggest any such burden would fall on the accused infringer for an express licensee.

infringement, i4i was required to show direct infringement of the '449 patent" and "[b]ecause the claims asserted by i4i are method claims, Microsoft's sale of Word, without more, did not infringe the '449 patent"). The *Monsanto* and *Carborundum* cases are inapposite to Promega's claims of indirect infringement not only because there is no issue of implied license, but also because those cases did not deal with indirect infringement and the statutory knowledge and intent elements. Promega squarely has the burden of proving indirect infringement, including the direct infringement elements thereof, and there is no basis for reversing the burden of proof and placing it on Life to prove the absence of infringement.

        2.        <u>The Court Ruled On Direct Infringement And The Allocations Of Burdens Of Proving Infringement Will Not Apply To Damages Issues At Trial.</u>

The *Monsanto* and *Carborundum* cases discuss the issues of defenses, "affirmative" defenses, and shifting burdens of proof (or production) in terms of defenses to infringement, not a patentee's proof of damages. Thus, any shift in the burden of proof (or production) on the express license defense would have been relevant at the summary judgment phase, when one of the issues was the scope of the 2006 Cross-License in terms of which fields were licensed and which fields were not licensed. To the extent the burden was shifted to Life, the Court recognized that Life met any applied burden as to "(a) use in, or preparation for, legal proceedings, or (b) analysis of biological specimens for the identification of individuals," and did not meet any applied burden as to "chimerism in the context of bone marrow transplant monitoring, cell line authentication, classifying molar specimens and determinations of fetal sex." (Nov. 29, 2011 Op. and Order, Dkt. No. 345, at 23-25.)

Although the fields in which Life's activities are and are not authorized by the 2006 Cross-License have been determined on summary judgment, Promega must nevertheless prove (1) the quantum or ***magnitude*** of its injury and damage for direct infringement (*e.g.,* sales by

8

Life into the unlicensed fields where the customer used the products for unlicensed purposes) (2) indirect infringement (*e.g.,* inducement or contributory infringement by Life), and (3) the quantum or *magnitude* of its injury and damage for indirect infringement (*e.g.,* customer uses in unlicensed fields that were induced or contributed to by Life). As discussed in the next section, Promega bears the burden of proving its damages, and Promega's lack of evidence is of its own making and not the fault or responsibility of Life.

### B. Burdens On Damages.

#### 1. Promega Has The Burden Of Proving Its Damages By A Preponderance Of The Evidence.

The Federal Circuit has recognized that a jury's verdict on infringement is only a "jury's implicit finding that at least one person performed the patented method one time in the United States sometime during the relevant period," and is not inherently a finding of "how many [of defendant's] users had ever performed the patented method or how many times." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334-35 (Fed. Cir. 2009). Thus, even after establishing infringement, a patentee "ha[s] the burden to prove that the *extent* to which the infringing method has been used." *Id.* at 1335 (emphasis added). In fact the Federal Circuit has recognized this many times. *See Transclean Corp. v. Bridgewood Servs.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002) ("[T]he patent owner bears the burden of proving by a preponderance of the evidence the quantum of damages."); *BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1217 (Fed. Cir. 1993) ("The finding of the amount of damages for patent infringement is a question of fact on which the patent owner bears the burden of proof."); *Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F.2d 1161 (Fed. Cir. 1991) ("[T]he amount of a prevailing party's damages [in a patent case] is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence.").

As discussed *supra*, the two cases cited by the Court in its January 31, 2012 Order relate to consideration of infringement, not to determination of damages amounts. *Monsanto*, 459 F.3d at 1334 ("Proceedings on damages were stayed pending this appeal."); *Carborundum*, 72 F.3d at 878 (Fed. Cir. 1995) ("the court held a bifurcated trial in which the issues of infringement and damages were tried separately," and "[a]t the close of the evidence in the liability phase of the trial, Metaullics moved for judgment as a matter of law. . . [t]he court granted Metaullics' motion and directed a verdict in favor of Metaullics on MMEI's implied license defense.").

Life is not aware of any case in which a court has shifted the burden of proof on ***damages*** to the alleged patent infringer just because a defense, affirmative or otherwise, was successful or not successful at the ***infringement*** phase. Neither is Life aware of any authority that would create a "presumption" that all sales are into unlicensed fields or that all customer uses are in unlicensed fields. The absence of such authority is not surprising considering the statutory mandate that "without authority" is an element of the cause of action. Promega is required to prove each act of making, using, offering to sell, selling, or importing is "unauthorized" before it is considered "infringing" and before Promega may recover damages for such making, using, selling, etc.

After a fact-finder determines what specific behaviors constitute patent infringement (regardless of what burdens are applied to reach those determinations) it is always the patentee's burden to show the amount of the specific behaviors that have occurred which fit the categories that were identified as infringing. For example, the Federal Circuit has noted that it is a patentee's burden to apportion infringing sales from non-infringing sales, emphasizing that "[t]he burden of proof on the number of infringing Readers used or sold by GIDS in the United States was on the plaintiff, and it was inappropriate for the district court to shift that burden to the

defendant, as it effectively did." *Avid Identification Sys. v. Global ID Sys.*, 29 Fed. Appx. 598, 602 (Fed. Cir. 2002). Similarly, after a liability determination that a party's sales of a specific headrest willfully infringed a patent, the Federal Circuit remanded that case to either reduce the damages award or offer a new trial on damages where the patentee "purported to meet its burden of proof" regarding the extent of sales "with mere speculation and guess work." *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030-31 (Fed. Cir. 1996). In the *Oiness* case, the Federal Circuit specifically noted that "[a]ny insufficiency in Walgreen's records cannot supplant Oiness's burden to prove lost profits by a preponderance of evidence." *Id.* at 1031.

In sum, Promega has and retains the burden of proof on damages – and should not be permitted to require Life to prove its damages for it.[4]

        2.    Promega Can Only Be Injured/Damaged For Sales And Uses In The Unlicensed Fields, And To Recover Damages It Must Prove Which Sales And Uses Were In The Unlicensed Fields.

Promega could not have been damaged by any sales that it had authorized Life to make. Because it has the burden of proving the actual damages it suffered, Promega must identify the sales that it asserts it would have made or for which it should have been paid a higher royalty rate –*i.e.,* the uses and sales that represent injury to it by having lost the royalty payment or the kit sale. *See Lam v. Johns-Manville*, 718 F.2d 1056, 1065 (Fed. Cir. 1983); *Smithkline Diagnostics*, 926 F.2d 1161 at 1164; *BIC*, 1 F.3d at 1218. Promega also needs to present "sound economic evidence" that Life caused it to suffer damages on some set of sales and customer

---

[4] Of course, as in any tort case, there can be a shift in the burden of **production** to a defendant after a plaintiff presents a *prima facie* case. *See, e.g., Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000); *In re Jung*, 637 F.3d 1356, 1362 (Fed. Cir. 2011). In this case, Life may have a burden to offer rebuttal evidence after Promega proves a reasonable probability that it is entitled to damages on some quantum of sales, but Promega always retains the burden of persuasion and the ultimate burden of proof. *See, e.g., Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (patent owner bears the initial burden to show a reasonable probability that "but for" the infringement, he would have made the sales and, once that reasonable probability is shown, the infringer must rebut to show that the "but for" causation analysis is unreasonable under the specific circumstances). But this routine shift in burden of production is not what Promega seeks. Instead, Promega seeks a wholesale reversal of the burden of proof on damages – and that is wholly improper.

uses. *See, e.g., Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l,* 246 F.3d 1336, 1355 (Fed. Cir. 2001) (market reconstruction, though hypothetical, requires "sound economic proof of the nature of the market"); *Grain Processing Corp. v. American Maize-Products Co.,* 185 F.3d 1341, 1350 (Fed. Cir. 1999) (need "sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture."); *Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302, 1311 (Fed. Cir. 2002) (need "sound economic and factual predicates").

Promega has the burden of showing how many unauthorized sales Life made to customers who then used the kits outside the licensed fields and how many customer uses were "induced" by Life or "contributed" to by Life. Thus, Promega must show which sales were made by Life "into" the unlicensed fields, how many customer uses were "induced" by Life to occur in the unlicensed fields, and how many unlicensed uses Life "contributed" to.

In the case of damages for sales, Promega has the burden to show both an unauthorized act by Life as well as unlicensed use by customer. For example, an unauthorized act would include targeting a product to a field that was determined to be outside the scope of the 2006 License-Agreement, or selling a product with knowledge that the product was going to be used in such a field. However, if a sale was authorized under the 2006 Cross-License, under principles of patent exhaustion future uses of the item could not infringe the patent. *See Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 636 (2008). In the case of damages for inducement or contributory infringement, Promega must show direct infringement, *e.g.*, the unlicensed customer uses. If the sale of the product the unlicensed use of which was "induced" or "contributed to" by Life was authorized under the 2006 Cross-License, under principles of patent exhaustion, the customer's use of the item could not directly infringe the patent.

To receive lost profits or a reasonable royalty, Promega has the burden to show the magnitude of its injury. Promega must also prove certain other facts such as that it had the ability to make the sale "but for" Life's sale and what a reasonable royalty would have been based on a hypothetical negotiation. In all events, Promega squarely bears the burden of proving its damages and there is no basis for reversing the burden and placing the burden on Life to prove an absence of damages.

        3.    Life's Record-Keeping Was Appropriate And Should Not Shift The Burden Of Proof.

Promega seems to be suggesting, at least implicitly, that Life should have acquired and maintained specific and detailed information from and about its customers and their specific uses of STR kits. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Dec. 8, 2011 Dimond Dep., Dkt. No. 413, at 22:5-23:23; 24:22-25:9.) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Accordingly, Life should not be penalized by shifting Promega's burden onto Life's back.

The Federal Circuit has noted that even if a "damages calculation may have been more accurate if [a defendant's] business records were not missing . . . . **In the absence of . . . bad faith**, it was inappropriate to shift the burden to [defendant] to prove that not all 569 [accused sales] were sold in the United States." *Avid*, 29 Fed. Appx. at 602 (emphasis added); *see also Oiness v. Walgreen Co.*, 88 F.3d 1025, 1031 (Fed. Cir. 1996) ("Any insufficiency in Walgreen's records cannot supplant Oiness's burden to prove lost profits by a preponderance of evidence."). Life has not acted in bad faith. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*See*

2006 Cross-License, Dkt. No. 252-61, at §§ 2.1, 3.2, and 3.6.) (Dec. 8, 2011 Dimond Dep., Dkt. No. 413, at 23:14-23.) (*Id.* at 22:7-8; 24:22-25:9.)

Thus, Life has not failed to keep proper records and so Promega's cited cases do not apply to Life. *See Lam*, 718 F.2d at 1065 ("[A]ny adverse consequences must rest on the infringer *when the inability to ascertain lost profits is due to the infringer's own failure* to keep accurate or complete records[.]") (emphasis added); *PalTalk Holdings, Inc.*, No. 2:06-CV-367 (DF), 2009 U.S. Dist. LEXIS 131093, at *7-8 (E.D. Tex. Mar. 8, 2009) ("this Court will not penalize PalTalk or its damage expert when Microsoft did not produce such data in a timely manner"); *see also Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996) (resolving doubt against an infringer after an "issue arose because [the infringer] had apparently destroyed its manufacturing records after this litigation began").

Here, Life's records are proper. ██████████████████████████
██████████████ Even if the "damages calculation may have been more accurate if" Life had attempted to track and record its customers' uses, there was no bad faith in the records Life chose to keep, and "[i]n the absence of such bad faith, it w[ould be] inappropriate to shift the burden to [Life] to prove" Promega's damages base. *See Avid*, 29 Fed. Appx. at 602. Promega should not be permitted to use the fact that Life and Promega both kept comparable information under the same obligations of the 2006 Cross-License to shift Promega's burden of proving damages to Life.

## II. BURDEN OF PROOF ALLOCATION DOES NOT RENDER LIFE'S *DAUBERT* MOTIONS MOOT.

The second question posed by the Court is "if defendants' have the burden on [the issue of whether defendants' sales to their customers fall within the scope of the license agreement] [what is] the extent to which that moots defendants' motions to exclude the testimony of John Beyer and Randall Dimond." (Jan. 31, 2012 Order, Dkt. No. 483, at 3.) The short answer is that Life's motion to exclude the testimony of John Beyer and Randall Dimond is not affected regardless of where the burden of proof lies. The allocation of burdens of proof will not affect whether the experts are qualified, whether they employ reliable methodologies, or whether their opinions will assist the jury.

In particular, regardless of which party bears the burden on any given issue, "[u]nder Federal Rule of Evidence 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony," which consists of determining "[1] whether the witness is qualified; [2] whether the expert's methodology is scientifically reliable; and [3] whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (citation omitted). "The

15

proponent of [an] expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CitGo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (citing Fed. R. Evid. 702 advisory committee's note (2000 Amends.)). Life has thus moved to exclude testimony by Randall Dimond regarding STR kit use by institution type because his opinions on this topic are speculative and lack foundation because he did not provide any methodology for his conclusions. (*See* Dimond *Daubert* Br., Dkt. No. 405.) Similarly, Life has moved to exclude testimony by John Beyer regarding the "quantum of infringing sales" because Dr. Beyer is not qualified to offer such testimony, applies unreliable methodologies, and his opinions would not assist the jury. (*See* Beyer *Daubert* Br., Dkt. No. 410, at 24-39). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert," not even an allocation of burdens of proof. *See First Years, Inc. v. Munchkin, Inc.*, 575 F. Supp. 2d 984, 995 (W.D. Wis. 2008) (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Allocations of burdens of proof would not change that Dr. Beyer is not qualified to offer these opinions, that both witnesses apply unreliable methodologies, or that Dr. Beyer's opinions on the quantum of infringing sales will not assist the jury. Accordingly, Life's *Daubert* challenges and the burden of proof issue are different questions that should be decided separately. Life's motions are not moot.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court find that (1) Promega has the burden to prove Life's sales to its customers fall outside the scope of the 2006 Cross-License, and that (2) the burdens of proof for infringement or damages do not affect whether Promega's proposed experts are qualified to render their opinions or whether they used

reliable methodology, and thus no parts of Life's motions to exclude the testimony of John Beyer and Randall Dimond are moot.

DATED: February 2, 2012.          By: /s/ Michael J. Modl

                                             Francis M. Wikstrom (admitted *pro hac vice*)
Kristine Edde Johnson (admitted *pro hac vice*)
Michael R. McCarthy (admitted *pro hac vice*)
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Ph: 801-532-1234
F: 801-536-6111
fwikstrom@parsonsbehle.com
kjohnson@parsonsbehle.com
mmccarthy@parsonsbehle.com

Michael J. Modl
Steven M. Streck
Andrew J. Clarkowski
Axley Brynelson, LLP
2 E. Mifflin Street, Suite 200
Madison, WI 53703
Ph: 608-283-6705
F: 608-257-5444
mmodl@axley.com
sstreck@axley.com
aclarkowski@axley.com

Amy Sun (admitted *pro hac vice*)
Life Technologies Corporation
5791 Van Allen Way
Carlsbad, CA 92008
Ph: (760) 603-7200
F: (760) 476-6048
amy.sun@lifetech.com

Attorneys for Defendants