IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PROMEGA CORPORATION,

                                                                      OPINION and ORDER

            Plaintiff,

      and                                                       10-cv-281-bbc

MAX-PLANCK-GESELLSCHAFT zur
FORDERUNG der WISSENSCHAFTEN E.V.,

           Involuntary Plaintiff,

   v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC. and
APPLIED BIOSYSTEMS, LLC,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In an order dated February 1, 2012, dkt. #486, I resolved the majority of the parties' motions in limine. This order addresses the remaining motions.

OPINION

A.  Burden of Proof

      One of the main issues for trial will be the extent to which defendants' sales of the

accused products are covered by a 2006 licensing agreement between the parties. A threshold question is which side has the burden of proof. I asked the parties to submit supplemental briefing on this issue so that it could be resolved before trial.

Having reviewed the parties' submissions, I conclude that the burden is properly placed on defendants. The Court of Appeals for the Federal Circuit consistently and repeatedly has described a license as an affirmative defense to a claim for infringement, which the defendant has the burden to prove. Monsanto Co. v. Scruggs, 459 F.3d 1328, 1334 (Fed. Cir. 2006); Chamberlain Group, Inc. v. Skylink Technologies, Inc., 381 F.3d 1178, 1193 (Fed. Cir. 2004); State Contracting & Engineering Corp. v. Condotte America, Inc., 346 F.3d 1057, 1065 (Fed. Cir. 2003); Augustine Medical, Inc. v. Progressive Dynamics, Inc., 194 F.3d 1367, 1370 (Fed. Cir. 1999); In re Cambridge Biotech Corp., 186 F.3d 1356, 1364 (Fed. Cir. 1999); Glass Equipment Development, Inc. v. Besten, Inc., 174 F.3d 1337, 1342 (Fed. Cir. 1999); Carborundum Co. v. Molten Metal Equipment Innovations, Inc., 72 F.3d 872, 878 (Fed. Cir. 1995); Intel Corp. v. US International Trade Commission, 946 F.2d 821, 828 (Fed. Cir. 1991); Met-Coil Systems Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 687 (Fed. Cir. 1986); Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903, 924 (Fed. Cir. 1984); Kansas Jack, Inc. v. Kuhn, 719 F.2d 1144, 1148 (Fed. Cir. 1983); Stickle v. Heublein, Inc., 716 F.2d 1550, 1556 (Fed. Cir. 1983). See also Fed. R. Civ. P. 8(c) (listing "license" as affirmative defense). Defendants cite no cases in

which the court of appeals characterized licenses differently or placed the burden on the plaintiff.

Defendants say that the cases discussing licenses relate to the question whether the defendant has the burden to prove the existence of a license rather than its scope. Although many of the cases dealt with the existence of a license, others use more general language. For example, in Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft, 903 F.2d 1568, 1576 (Fed. Cir. 1990), the court rejected the defendant's argument that "the district court improperly placed on it the burden of proving that its actions were justified by [a] license." The court reasoned that "[t]he license . . was asserted as a defense to what otherwise would be infringement. As the proponents of the defense, it was incumbent upon [the defendants] to show that the license authorized the sale of the infringing machines in the United States." See also Rockwell International Corp. v. United States, 31 Fed. Cl. 70, 77 (Fed. Cl. 1994) ("[D]efendant has the burden of proof to show the existence of a license and the scope of any such license."); Technical Development Corp. v. United States, 597 F.2d 733, 746 (Ct. Cl. 1979) ("The defendant bears the burden of proof on the license defense."). In addition, plaintiff cites several district court cases in which the court placed the burden on the defendant to prove a license defense. A. Natterman & Cie Gmbh v. Bayer Corp., 428 F. Supp. 2d 253, 258 (E.D. Pa. 2006); Ciena Corp. v. Corvis Corp., 334 F. Supp. 2d 610, 613 (D. Del. 2004); Cyrix Corp. v. Intel Corp.,

3

846 F. Supp. 522, 535 (E.D. Tex. 1994); CIVIX-DDI, LLC v. Nat'l Ass'n of Realtors, Case No. 05 C 6869, 2006 WL 3210504 (N.D. Ill. Nov. 6, 2006). Defendants cite no contrary authority. In fact, defendants acknowledge a case in which the Supreme Court stated, "[i]f a licensee be sued, he can escape liability to the patentee for the use of his invention by showing that the use is within his license." De Forest Radio Telephone & Telegraph Co. v. United States, 273 U.S. 236, 242 (1927).

In any event, defendants identify no persuasive reason for distinguishing between the burden with respect to the existence of a license and its scope. They cite no other examples in which the defendant has the burden to prove certain aspects of an affirmative defense, but the plaintiff has the burden with respect to others. The point of an affirmative defense is that the defendant has the burden to prove that it is entitled to the defense.

In support of their argument that plaintiff should have the burden of proof, defendants rely almost entirely on language in 35 U.S.C. § 271(a) that makes it unlawful to use a patented invention "without authority." However, defendants cites no authority for the proposition that the phrase in § 271(a) places the burden of proof on plaintiff and they fail to reconcile their argument with the many cases in which courts have characterized a license as an affirmative defense to infringement. If it were the plaintiff's burden to show that the defendant acted "without authority" to practice a patent, then it would also be the plaintiff's burden to show that no license existed, whether express or implied.

4

Further, it simply makes sense to put the burden on defendants to show that their uses of the patent are protected by the license because they have the best access to that information. Metzl v. Leininger, 57 F.3d 618, 622 (7th Cir. 1995) ("Economy in litigation also requires that burdens of presenting evidence be assigned to the parties that can produce the necessary evidence at least cost."). See also Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 96 (2000) ("where fairness so requires, burden of proof of a particular fact may be assigned to 'party who presumably has peculiar means of knowledge' of the fact") (quoting 9 J. Wigmore, Evidence § 2486 (J. Chadbourn rev. ed.1981)). It was defendants, not plaintiff, who determined how defendants would sell their products. Placing the burden on the patent owner would require the owner to undergo intensive investigations to police the license and would give infringers an incentive to keep poor records or no records on their sales in an attempt to hide their infringing activities. If defendants have the burden, they have every incentive to keep their records detailed and clear.

Defendants devote much of their brief to citing cases in which courts have stated that the plaintiff has "ha[s] the burden to prove the extent to which the infringing method has been used." Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301, 1334-35 (Fed. Cir. 2009). This is true but irrelevant. Of course, plaintiff will have the burden to prove which sales are *infringing*, but that is a different question from which sales fall within the scope of the license. Although I understand defendants' wish to conflate the two questions, I believe

5

they are separate. Once plaintiff has proven that defendants sold an infringing product or induced a third party to practice the patented method, it will be defendants' burden to show that a particular sale was protected by the license agreement.

### B. Plaintiff's Motions

1. Motion for leave to file supplemental report of John Beyer, dkt. #463

Plaintiff seeks leave to supplement Beyer's report to account for data that defendants recently produced. Defendants do not oppose this request, so I will grant it. Plaintiff asks for sanctions as well, but I am denying that request because plaintiff failed to make any showing that defendants violated Rule 26 or a court order. In addition, I am denying defendants' request in their response brief to file a rebuttal to this new report because they have failed to show that this request is justified.

2. Motion to strike supplemental report of Jonathan Tomlin, dkt. ## 436 and 450

It is undisputed that defendants produced Tomlin's supplemental report several weeks after the close of discovery and the night before his deposition, in violation of this court's scheduling order. Defendants justify the untimely report on the grounds that it was "submitted only in response to a rebuttal report submitted by Dr. John Beyer on the last day of discovery" and that plaintiff was given an "unrestricted opportunity to depose Dr. Tomlin

6

about his supplemental report."

Defendants' first argument is a nonsequitur. As I explained in the order granting plaintiff's motion to strike 18 of defendants' witnesses for untimeliness, "[t]o the extent defendants believed that they were unfairly surprised by opinions in Beyer's report, the proper response would have been to file a motion to strike those opinions or seek leave to file a supplemental report from their own expert." Dkt. #486, at 10. Defendants did neither and it is too late to seek permission to file a report now.

Defendants' second argument is not much better. Although plaintiff was able to depose Tomlin, this was less than 24 hours after receiving the report, leaving plaintiff little time to prepare. As defendants acknowledge, this court's scheduling order required the parties to provide expert reports at least five days in advance of the deposition. Defendants do not even attempt to explain why they failed to comply with that requirement. If I accepted defendants' argument that plaintiff was not prejudiced simply because it had the opportunity to depose Tomlin, this would encourage parties to sandbag their opponents with last minute supplemental reports just before a deposition. Because defendants have not shown that the late report was justified or harmless, I am granting this motion.

### C. Defendants' Motions

1. Motion to exclude testimony of Randall Dimond regarding STR kit use by institution

<u>type, dkt. #404</u>

I reserved a ruling on this motion in the February 1 order to allow the parties to file supplemental briefs on the burden of proof issue. Now that I have resolved that issue in favor of plaintiff, this motion becomes less important, but I agree with defendants that it is not necessarily moot if plaintiff still intends to rely on this opinion.

In his report, plaintiff's expert Randall Dimond offers the opinion that "the nature of each institution permits one to infer how the kits will be employed." Dkt. #316, at 25. He then goes on to list the ways various types of institutions, such as hospitals and universities, "would be expected" to use the accused products. <u>Id.</u> at 26-29. Defendants do not argue that it is inappropriate as a general matter to use expert testimony this way, but they say that the opinion should be excluded because Dimond "does not disclose any methodology that he employed to reach his conclusions." Dkt. #404, at 4.

Under Fed. R. Evid. 702, the court must decide whether the proffered expert testimony is "based upon sufficient facts or data" and is "the product of reliable principles and methods." Although Dimond could have done a better job explaining exactly how he reached his conclusions, it is clear enough from his various expert reports that he was relying on his extensive personal experience working with these different institutions and his review of the literature regarding the institutions to support his opinions. That is enough to allow Dimond to testify. Defendants are free to present contrary evidence or challenge Dimond's

8

testimony on cross examination.

2. Motion to exclude "certain testimony" of John Beyer, dkt. #408

I resolved several parts of this motion in the February 1, order, but I reserved a ruling with respect to Beyer's opinions on defendants' "quantum of infringing sales." Again, because I have concluded that defendants should have the burden of proof regarding the sales that were permitted by the license, Beyer's opinion on this issue may be less important, but I will resolve the motion to the extent plaintiff intends to rely on this testimony.

Beyer set forth three damages estimates that he called "lower bound," "alternative" and "upper bound." Defendants devoted 40 pages of their brief to challenging Beyer's opinion on this issue, which is longer than Beyer's entire expert report. Defendants raise many specific objections to the opinion, but they fall into two general categories: (1) Beyer is not qualified to testify about how a particular customer uses a kit; and (2) Beyer fails to explain how he generated any of his sales estimates.

Plaintiff's response brief is just as lengthy as defendants' motion, but plaintiff fails to respond directly to most of defendants' criticisms. With respect to the first criticism, plaintiff says that Beyer relied on Dimond's opinions to make determinations that required any expertise. However, it is impossible to tell from either of Beyer's reports the extent to which he relied on Dimond. With respect to the second criticism, plaintiff does not try to

9

defend Beyer's reports. Instead, it relies heavily on a declaration that Beyer prepared with plaintiff's brief in opposition to defendants' motion to strike. By calling this document a "declaration," plaintiff tries to obscure the fact that it is really an untimely supplemental report. I cannot hold defendants accountable for filing late supplemental reports, but look the other way when plaintiff does the same. Because Beyer fails to explain in his reports how he arrived at his "upper bound," "lower bound" or "alternative" estimates, I must grant defendants' motion to strike this aspect of his opinion.

ORDER

IT IS ORDERED that

1. Plaintiff Promega Corporation's motion for leave to file a supplemental report of John Beyer, dkt. #463, is GRANTED.

2. Plaintiff's motion to strike the supplemental report of Jonathan Tomlin, dkt. ## 436 and 450, is GRANTED.

3. The motion filed by defendants Life Technologies Corporation, Applied Biosystems, LLC and Invitrogen IP Holdings, Inc. to exclude testimony of Randall Dimond regarding STR kit use by institution type, dkt. #404, is DENIED.

4. Defendants' motion to exclude the testimony of John Beyer related to his "upper

bound," "lower bound" and "alternative" estimates, dkt. #408, is GRANTED.

Entered this 3d day of February, 2012.

                              BY THE COURT:
                              /s/
                              BARBARA B. CRABB
                              District Judge

11