**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

PROMEGA CORPORATION,

       Plaintiff,

MAX-PLANCK-GESELLSCHAFT ZUR
FORDERUNG DER WISSENSCHAFTEN      Case No.: 10-CV-281
E.V.,

       Involuntary Plaintiff,

   v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC., and
APPLIED BIOSYSTEMS, LLC,

       Defendants.

---

**PLAINTIFF PROMEGA CORPORATION'S OBJECTION AND PROPOSED
REVISIONS TO JURY INSTRUCTIONS AND SPECIAL VERDICT FORM**

---

Now Comes, Promega Corporation, ("Promega") and respectfully submits this Objection

and Proposed Revisions to Jury Instructions and Special Verdict Form.  Without waiving the

positions, arguments, and objections contained in Promega's prior proposed jury instructions and

special verdict forms (Dkt. Nos. 402, 403, 406 and 407) to be submitted to the jury and its

responses to Defendants' proposals (Dkt. No. 451), Promega submits the following objections

and proposed revisions to the instructions provided to the parties by the Court at the February 3,

2012 pre-trial conference.

General Issues Addressed Throughout Instructions

1. **Removal of instructions relating to direct infringement, induced infringement, and**

   **contributory infringement.**   In light of the Court's opinions and orders on all pending

1

matters, Promega will not present claims for direct, induced, and contributory infringement of Claim 12 of the '598 Patent at the trial. The Court's instructions have been modified to reflect that, in a broad sense, the only remaining issues are those related to willfulness and damages.

2. **Clarification in scope of summary judgment opinion on non-permitted fields of use.** Both in the Court's preliminary instruction on "Issues Resolved Before Trial" and damages instruction on the parties' "License Agreement", language is used that Promega believes will confuse the jury to think that the applications the Court has found outside the scope of the license are exclusive. The revisions suggested by Promega are intended to clarify that there may be other uses outside the scope of the license besides those listed by the Court.

3. **Renumbering of special verdict form and corresponding edits.** Because Promega will not present additional issues of direct, induced, and contributory infringement, those matters are removed from the case. The numbering of questions in the special verdict form are, accordingly changed. In addition, Promega has proposed edits to the Court's special verdict form to clarify the items the jury must address.

Introductory Instruction - Specific Revisions

1. **Brief mention of lost profits and royalty determinations in opening instruction.** Promega believes it will assist the jury to know in advance that they will eventually be asked to determine damages for infringing sales. This will help the jury comprehend and process the evidence presented during trial and the different issues that various evidence will address.

2. **Preliminary instruction on willfulness.**  Promega believes that, because willfulness is one of the two broad issues that the trial is intended to resolve (damages being the second), it is important to give the jury at least a brief introduction to the concept in the Court's preliminary instructions.  Promega has added an instruction to that effect below, which it believes will help focus the jury on the specific questions it will be asked to answer at the close of trial.  The source of the added instruction is the Seventh Circuit's model Federal Civil Jury Instructions (2009): 11.1.10-Willful Infringement.

3. **Addition of Profiler Plus ID to list of products subject to Court's summary judgment opinion.**   As mentioned at the pre-trial conference, Profiler Plus ID was inadvertently left off the list of products the order was stipulated to be extended to.  That product has been added to the list noted in the Court's instruction "Issues Resolved Before Trial" below.

<u>Post-Trial Instructions – Specific Issues</u>

1. **The matters of the Court's findings were not included in the post-trial instructions.**  Promega has provided those instructions based on the pre-trial instructions.

2. **Instructions relating to corporate knowledge and employee actions.**  Promega believes that it is important to ensure that the jury understands the full scope of knowledge and actions that are attributable to corporations as a whole in order to make a determination on willfulness.  Because of the fragmented nature of the defendants' business, it is critical that the jury is aware that the corporation is held to know what its employees know, and is responsible for the actions of its employees, whether occurring in one place or many.  Therefore, Promega respectfully requests that the Court include instructions both for "Acts of Employees are Acts of a Corporation" and "Knowledge of

a Corporation", as proposed in Promega's pre-trial filings. For convenience, the authority supporting each instruction is included beneath them.

3. **Willfulness as reckless and appropriate definition.**  With regard to willfulness, the issue of reckless behavior is likely to arise. Accordingly, Promega has included an appropriate recklessness instruction. The two-part willfulness standard from *Seagate* is consistently couched in terms of whether the infringer acted "recklessly".  (*See, e.g.*, Federal Circuit Bar Associated Model Patent Jury Instructions § 3.8, Willful Infringement ("Willfulness requires you to determine by clear and convincing evidence that [alleged infringer] acted recklessly."); *See also In re Seagate Tech., LLC*, 497 f.3D 1360, 1371 (Fed. Cir. 2007) ("[W]e … hold that proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness … 'the civil law generally calls a person reckless who acts … in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." (*quoting Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994))). The definition for recklessness proposed by Promega is taken directly from this Court's standard instruction relating to punitive damages and additional language cited in the Court's summary judgment opinion of November 29, 2011, as indicated below in the proposed instruction.

Damages Instructions – Specific Revisions

In the context of the burden of proof on damages, Promega requests that the Court include language in its damages instructions from Promega's proposed instructions relating to how doubts are resolved in calculating damages generally, as well as in the specific situation where there is a lack of adequate records.  The law is clear that doubts in calculating damages are

4

to be resolved against the *infringing* party, both generally and specifically where those doubts are due to the defendants' lack of adequate records.  Promega believes that without this language in the Court's instructions, other language, for example, from the "General" instruction that "[t]he party seeking damages need not produce evidence that is as exact as the evidence needed to support findings on other questions in the verdict.  Determining damages involves the consideration of many different factors that cannot be measured precisely," (p.5) will be interpreted by the jury to mean that Defendants' lack of records on its permitted sales will inure not to the benefit of Promega, as is required by law. Instead, Defendants will argue that lack of records can be ignored and the jury can estimate permitted sales by whatever means it wishes. The Defendants will use generalities and broad, conceptual arguments.  The language in the Court's instruction, based on generally accepted laws of damages, allows less certain proofs to be adequate for the party proving the *amount of damages due*.  This is intended to ensure the injured party redress for the harms it has suffered, and to prevent Defendants from depriving injured parties of such redress by failing to produce adequate records.  However, without clarifying these concepts to the jury in more specific terms, Promega believes the jury will confuse the fact that because damages need not be proven with precision by the *plaintiff*, that the Defendant need not prove its non-infringing sales with precision.  As this is a fundamental issue in the case, Promega respectfully requests that the jury be instructed accordingly.  Promega proposes that the court issue a separate instruction to the jury to clarify these points, a draft of which is included below and titled "Precision in Calculating Damages Not Required; Doubts Resolved Against Infringer".  All of the language included in this proposed instruction is present throughout Promega's suggested pre-trial instructions, but is collected in one instruction here for

5

clarity.  The authority supporting the proposed language is included beneath the instruction for the Court's convenience.

Other, more specific issues addressed in the Court's damages instructions include:

1.  **Reasonable royalty factors.**  Should the jury need to determine a reasonable royalty for some or all of Defendants' infringing sales, central to that inquiry are issues related to related to: the nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold; the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales; the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention; and any other factors which would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  Accordingly, Promega respectfully requests the Court to include the added factors as indicated in the Court's Reasonable Royalty instruction below.

2.  **Two-supplier market method of establishing that plaintiff would have made sales for lost profits.**  Promega believes that the facts presented in this case will establish that there was a two-supplier market for the accused STR kits during the period of infringement in question.  This is significant as the law recognizes several methods that a plaintiff may use to establish that it would have made the additional sales but for the defendants' infringement, including satisfaction of the *Panduit* factors, *or* showing a two-

6

supplier market during the period of infringement.  (*See, e.g.*, Federal Civil Jury Instructions of the Seventh Circuit (2009): 11.4.3.2 Lost Profits—Two Supplier Market, and the Committee Comment to that instruction ("Where there are only two suppliers in the market for a product, it may be inferred that plaintiff would have made defendant's infringing sales, unless the defendant can demonstrate otherwise" (citing *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983))).  Accordingly, Promega respectfully requests that the Court include the two-supplier market instruction proposed in Promega's pre-trial filings, as well as language clarifying that either of the two methods discussed here can satisfy the first factor of lost profits that Promega would have made additional sales but-for the defendants' infringement, as indicated in the revised instruction below.  The proposed instruction on a two-supplier market is taken directly from the Federal Civil Jury Instructions of the Seventh Circuit (2009): 11.4.3.2 Lost Profits—Two Supplier Market.

Special Verdict – Specific Revisions

1. **Removal of questions 1 and 2 and renumbering.**  As noted above, Promega will not present claims relating to direct, induced, or contributory infringement of Claim 12 of the '598 patent.  Accordingly, questions 1 and 2 have been deleted as they are no longer necessary, and the remaining questions have been renumbered to reflect that change.

2. **Clarification of infringing nature of kits in the Court's original Question No. 3.**
Because the Court has already determined that the accused AmpFℓSTR kits infringe at least one claim of each of the asserted patents, the phrase "by defendants that infringed plaintiff Promega Corporation's patents" will confuse the jury. It implies they jury must first make a determination of which kits are infringing before answering the question of

the total STR kit sales.  Thus, Promega respectfully requests that the Court remove this phrase to avoid this confusion, as indicated in the revised Special Verdict Form below.

3. **Clarification that only kit sales are at issue with respect to the Court's original Question Nos. 3 and 4.**   The Court's original Question Nos. 3 and 4 address the total dollar amount of defendants' "kit sales" of the accused kits.  As all sales at issue are "kit sales", Promega fears that this phrase may confuse the jury into thinking that some sales are "kit" sales and some sales are of a different nature.  Accordingly, Promega would ask the Court to remove the word "kit" from this phrase in Questions 3 and 4 as indicated in the revised Special Verdict Form below.

# I.  <u>INTRODUCTORY INSTRUCTION</u>

Members of the jury, we are about to begin the trial of the case. Before it begins, I will give you some instructions to help you understand how the trial will proceed, how you should evaluate the evidence, and how you should conduct yourselves during the trial.

The party who begins the lawsuit is called the plaintiff. In this action, the plaintiff is Promega Corporation. The parties against whom the suit is brought are called the defendants. In this action, the defendants are Life Technologies Corporation, Applied Biosystems, LLC and Invitrogen IP Holdings, Inc.

This is a patent case involving products that are used in genetic testing. During the trial, the parties will offer testimony to familiarize you with this technology. Plaintiff either owns or has rights to several patents, which are identified by the Patent Office numbers: US Patent No. 5,843,660, U.S Patent No. 6,221,598, U.S. Patent No. 6,479,235, U.S. Patent No. 7,008,771 and U.S. Patent No. Re 37,984. Patents are often referred to by their last three digits. I will call the patents in this case the '660·patent, the '598 patent, the '235 patent, the '771 patent and the '984 patent.

Defendants sell a family of genetic testing kits that they call AmpFISTR® kits. Before trial, I determined that defendants' kits infringe some of the claims in plaintiff's patents. ~~It will be your job to determine whether defendants have induced third parties to infringe the '598 patent and whether defendants have contributed to infringement. In addition, you will have to determine the extent to which defendants had the right to sell infringing kits under a 2006 agreement between the parties. Finally, you will have to determine plaintiff's damages and whether any infringement by defendants was willful.~~

It will be your job to determine if the infringement was willful and to determine the total amount of AMPflSTR kit sales, the number of sales by the defendant that might have been permitted under a 2006 agreement between the parties, profits lost by the plaintiff for infringing sales, and potentially a royalty for some or all of those sales.

After I finish giving you these instructions, we will watch a video that explains the basics of the U.S. patent system, the parts of a patent and how a person obtains a patent.

The case will proceed as follows:

First, plaintiff's counsel will make an opening statement outlining plaintiff's case. Immediately after plaintiff's statement, defendants' counsel will also make an opening statement outlining defendants' case. What is said in opening statements is not evidence; it is simply a guide to help you understand what each party expects the evidence to show.

Second, after the opening statements, the plaintiff will introduce evidence in support of his claim. At the conclusion of the plaintiff's case, the defendants may introduce evidence. The defendants are not required to introduce any evidence or to call any witnesses. If the defendants introduce evidence, the plaintiff may then introduce rebuttal evidence.

Third, after the evidence is presented, the parties will make closing arguments explaining what they believe the evidence has shown and what inferences you should draw from the evidence. What is said in closing argument is not evidence. The plaintiff has the right to give the first closing argument and to make a short rebuttal argument after the defendants' closing argument.

Fourth, I will instruct you on the law that you are to apply in reaching your verdict.

Fifth, you will retire to the jury room and begin your deliberations.

You will hear the term "burden of proof" used during this trial. In simple terms, the phrase "burden of proof" means that the party who makes a claim has the obligation of proving that claim. At the end of the trial, I will instruct you on the proper burden of proof to be applied in this case.

The trial day will run from 9:00a.m. until5:30 p.m. You will have at least an hour for lunch and two additional short breaks, one in the morning and one in the afternoon.

During recesses you should keep in mind the following instructions:

First, do not discuss the case either among yourselves or with anyone else during the course of the trial. The parties to this lawsuit have a right to expect from you that you will keep an open mind throughout the trial. You should not reach a conclusion until you have heard all of the evidence and you have heard the lawyers' closing arguments and my instructions to you on the law, and have retired to deliberate with the other members of the jury. I must warn you, in particular, against commenting about the trial in an e-mail or a blog or Twitter. There have been news accounts recently about cases that have had to be retried because a member of the jury communicated electronically about the case during the trial. You can imagine what this would mean in the cost of a re-trial, the inconvenience to your fellow jurors whose work would have gone for nothing and the stress experienced by the parties.

Second, do not permit any third person to discuss the case in your presence. If anyone tries to talk to you despite your telling him not to, report that fact to the court as soon as you are able. Do not discuss the event with your fellow jurors or discuss with them any other fact that you believe you should bring to the attention of the court.

Third, although it is a normal human tendency to converse with people with whom one is thrown in contact, please do not talk to any of the parties or their attorneys or witnesses. By this I

mean not only do not talk about the case, but do not talk at all, even to pass the time of day. In no other way can all parties be assured of the absolute impartiality they are entitled to expect from you as jurors.

Fourth, do not read about the case in the newspapers, or listen to radio or television broadcasts about the trial. If a newspaper headline catches your eye, do not examine the article further. Media accounts may be inaccurate and may contain matters that are not proper for your consideration. You must base your verdict solely on the evidence produced in court.

Fifth, no matter how interested you may become in the facts of the case, you must not do any independent research, investigation or experimentation. Do not look up materials on the internet or in other sources. Again, you must base your verdict solely on the evidence produced in court.

**Issues Resolved Before Trial**

Before trial, I determined some issues of infringement:

- AmpFISTR COfiler PCR amplification Kit infringes claims 23 and 27 of the '598 Patent and claim 42 of the '984 Patent;

- AmpFISTR Profiler PCR Amplification Kit infringes claims 10,23-24,27 and 33 of the '598 patent and claim 42 of the '984 patent;

- AmpFISTR Identifiler PCR Amplification Kit infringes claims 10, 23-24 and 27 of the '598 patent, claims 18-19 and 21-23 of the '235 Patent, claim 5 of the '771 Patent and claim 42 of the '984 patent;

- AmpFISTR Profiler Plus PCR Amplification Kit infringes claim 42 of the '984 patent;

- <u>AmpFlSTR Profiler Plus ID PCR Amplification Kit infringes claim 42 of the '984 patent;</u>

- AmpFISTR Yfiler PCR Amplification Kit infringes claim 42 of the '984 patent;

- AB Minifiler PCR Amplification Kit infringes claim 42 of the '984 Patent; -

- AB SGM Plus PCR Amplification Kit infringes claim 42 of the '984 Patent;

- AB SEfiler Kit infringes claim 42 of the '984 Patent;

- AB SEfiler Plus Kit infringes claim 42 of the '984 Patent;

- NGM PCR Amplification Kit ( 1000 and 2000) infringes claim 42 of the '984 Patent;

- NGM SElect Kit infringes claim 42 of the '984 Patent;

- Identifiler Plus Kit infringes claim 42 of the '984 Patent, claim 5 of the '771 Patent, claims 18, I 9, 21, 22 and 23 of the '235 Patent, claims I 0, 23, 24, 2 7 and 33 of the '598 Patent;

- Identifiler Direct Kit infringes claim 42 of the '984 Patent, claim 5 of the '771 Patent, claims 18, 19, 21,22 and 23 of the '235 Patent, claims 10, 23, 24,27 and 33 of the '598 Patent;

- AB Green I PCR Amplification Kit infringes claim 42 of the '984 Patent and claims 23 and 27 of the '598 patent;

- Blue PCR Amplification Kit infringes claim 42 of the '984 Patent; and

- COfiler + Profiler Plus Kit infringes claim 42 of the '984 and claims 23 and 27 of the '598 Patent.

In 2006, plaintiff and defendants entered into a license agreement that gave defendants the right to make, use, sell, offer to sell or import the AmpFlSTR® kits in particular fields. I have determined that ~~some of~~ <u>among</u> the uses of the kits sold by defendants, some are not

authorized under that license agreement because those uses are outside the particular fields set forth in that license agreement. These uses ~~are~~ <u>include</u>:

    (1) Chimerism (which involves determining the relative amount present of two different types of DNA);

    (2) Classifying molar specimens (which involves determining whether a mole is present and what type it is);

    (3) Cell line authentication (which involves a determination of whether two cell lines are unique);

    (4) Determination of fetal sex;

    (5) Cancer analysis; and

    (6) Genetic research.

<u>There may be other uses outside the license as well.</u>

**<u>Credibility of Witnesses</u>**

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account many factors, including the witness's opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness's memory; the witness's appearance and manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness's testimony; and the reasonableness of the witness's testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

**Depositions**

During the course of a trial the lawyers will often refer to and read from depositions or video tape of a deposition may be played for you. Depositions are transcripts of testimony taken while the parties are preparing for trial. Deposition testimony is given under oath just like testimony on the trial. You should give it the same consideration you would give it had the witnesses testified here in court.

**Objections**

During the trial, you will hear the lawyers make objections to certain questions or to certain answers of the witnesses. When they do so, it is because they believe the question or answer is legally improper and they want me to rule on it. Do not try to guess why the objection is being made or what the answer would have been if the witness had been allowed to answer it.

If I tell you not to consider a particular statement that has already been made, put that statement out of your mind and remember that you may not refer to it during your deliberations.

**Questions**

During the trial, I may sometimes ask a witness questions. Please do not assume that I have any opinion about the subject matter of my questions.

If you wish to ask a question about something you do not understand, write it down on a separate slip of paper. If, when the lawyers have finished all of their questioning of the witness, the question is still unanswered to your satisfaction, raise your hand, and I will take the written question from you, show it to counsel, and decide whether it is a question that can be asked. If it cannot, I will tell you that. I will try to remember to ask about questions after each witness has testified.

## Notetaking

If you want to take notes, there are notepads and pencils for taking notes next to the jury bench. This does not mean you have to take notes; take them only if you want to and if you think they will help you to recall the evidence during your deliberations. Do not let notetaking interfere with your important duties of listening carefully to all of the evidence and of evaluating the credibility of the witnesses. Keep in mind that just because you have written something down it does not mean that the written note is more accurate than another juror's mental recollection of the same thing. No one of you is the "secretary" for the jury, charged with the responsibility of recording evidence. Each of you is responsible for recalling the testimony and other evidence.

Although you can see that the trial is being reported, you should not expect to be able to use trial transcripts in your deliberations. You will have to rely on your own memories.

## Evidence

Evidence at a trial includes the sworn testimony of the witnesses, exhibits admitted into the record, facts judicially noticed, and facts stipulated by counsel. You may consider only evidence that is admitted into the record.

In deciding the facts of this case, you are not to consider the following as evidence: statements and arguments of the lawyers, questions and objections of the lawyers, testimony that I instruct you to disregard, and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

Evidence may be either direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to

16

either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

## Contradictory or Impeaching Evidence

A witness may be discredited by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony.

If you believe any witness has been discredited, it is up to you to decide how much of the testimony of that witness you believe.

If a witness is shown to have given false testimony knowingly, that is, voluntarily and intentionally, about any important matter, you have a right to distrust the witness's testimony about other matters. You may reject all the testimony of that witness or you may choose to believe some or all of it.

The general rule is that if you find that a witness said something before the trial that is different from what the witness said at trial you are to consider the earlier statements only as an aid in evaluating the truthfulness of the witness's testimony at trial. You cannot consider as evidence in this trial what was said earlier before the trial began.

There is an exception to this general rule for witnesses who are the actual parties in the case. If you find that any of the parties made statements before the trial began that are different from the statements they made at trial, you may consider as evidence in the case whichever statement you find more believable.

## Drawing of Inferences

You are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited solely to what you see and hear as the witnesses testify. You are

17

permitted to draw, from facts you find have been proved, such reasonable conclusions as seem justified in the light of your own experience and common sense.

**Experts**

A person's training and experience may make him or her a true expert in a technical field. The law allows that person to state an opinion here about matters in that particular field. It is up to you to decide whether you believe the expert's testimony and choose to rely upon it. Part of that decision will depend on your judgment about whether the expert's background of training and experience is sufficient for him or her to give the expert opinion that you heard, and whether the expert's opinions are based on sound reasons, judgment, and information.

During the trial, an expert witness may be asked a question based on assumptions that certain facts are true and then asked for his or her opinion based upon that assumption. Such an opinion is of use to you only if the opinion is based on assumed facts that are proven later. If you find that the assumptions stated in the question have not been proven, then you should not give any weight to the answer the expert gave to the question.

**Willful Infringement**

Plaintiff contends that defendant infringed plaintiff's patents willfully.  To prove willful infringement, plaintiff must prove by clear and convincing evidence that (~~Defendant knew~~) it was highly likely that its actions constituted infringement of a valid patent, and defendant either knew of this high likelihood, or it was so apparent that defendant should have known.  (~~"Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true.  This is more demanding than the "preponderance of the evidence" requirement that applies to infringement generally.~~)

18

At the conclusion of the case, I will explain in more detail how you are to decide the issue of willful infringement.

## II.  POST-TRIAL INSTRUCTIONS

**Introduction**

Ladies and Gentlemen of the Jury:

Now that you have heard the evidence and the arguments, I will give you the instructions that will govern your deliberations in the jury room. It is my job to decide what rules of law apply to the case and to explain those rules to you. It is your job to follow the rules, even if you disagree with them or don't understand the reasons for them. You must follow all of the rules; you may not follow some and ignore others.

The decision you reach in the jury room must be unanimous. In other words, you must all agree on the answer to each question.

Your deliberations will be secret. You will never have to explain your verdict to anyone.

If you have formed any idea that I have an opinion about how the case should be decided, disregard that idea. It is your job, not mine, to decide the facts of this case.

The case will be submitted to you in the form of a special verdict consisting of 6 questions. In answering the questions, you should consider only the evidence that has been received at this trial. Do not concern yourselves with whether your answers will be favorable to one side or another, or with what the final result of this lawsuit may be.

Note that certain questions in the verdict are to be answered only if you answer a preceding question in a certain manner. Read the introductory portion of each question very carefully before you undertake to answer it. Do not answer questions needlessly.

**Answers Not Based on Guesswork**

If, after you have discussed the testimony and all other evidence that bears upon a particular question, you find that the evidence is so uncertain or inadequate that you have to

20

guess what the answer should be, then the party having the burden of proof as to that question has not met the required burden of proof. Your answers are not to be based on guesswork or speculation. They are to be based upon credible evidence from which you can find the existence of the facts that the party must prove in order to satisfy the burden of proof on the question under consideration.

**Burden of Proof-Preponderance of the Evidence**

When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true. On Questions ~~Nos. l, 2, 3, 6 and 7~~ Nos. 1, 4 and 5 in the special verdict, plaintiff has the burden to prove the answer by a preponderance of the evidence. On Question ~~No. 4~~ No. 2, defendants have the burden to prove the answer by a preponderance of the evidence. You should base your decision on all of the evidence, regardless which party presented it.

**Burden of Proof-Clear and Convincing**

In answering Question ~~No. 8~~ No. 6, you are instructed that the burden is on plaintiff to convince you to a reasonable certainty by evidence that is clear, satisfactory, and convincing that the answer should be "yes."

~~**Infringement by Defendants' Customers**~~

~~In order to answer Question No. l and Question No.2, you will need to determine whether any defendants' customers infringed claim 12 of the '598 Patent.~~

~~A user infringes a claim if he or she performs every step of that claim, exactly as the step is described in the claim. If the method performed by the accused kit omits any step recited in a claim, users of the accused kit do not infringe that claim.~~

21

Plaintiff does not need to prove users of the accused kits intended to infringe or knew of the patent.

## Active Inducement

Question No. 1 asks whether defendants actively induced infringement with respect to claim 12 of the '598 Patent.

You may answer "yes" only if you find that it is more probable than not that:

1.   Defendants knew of the '598 patent; and

2.   Defendants took active steps to encourage users of the accused kits to use the kits in a manner that infringed claim 12 of the '598 Patent; and

3.   Defendants knew that their acts would cause users of the kits to infringe claim 12 of the '598 Patent or were willfully blind to that possibility.

A person is willfully blind if he (I) subjectively believe that there is a high probability that a fact exists and (2) he takes deliberate actions to avoid learning of that fact.

In order to establish active inducement of infringement, it is not sufficient that customers themselves infringe the claim. Nor is it sufficient that defendants were aware of the acts by customers that allegedly constitute the infringement. Rather, you must find that defendants specifically intended customers to infringe the '598 patent, in order to find inducement of infringement.

## Contributory Infringement

Question No. 2 asks whether defendants contributed to infringement with respect to any of the asserted claims.

You may answer "yes" to this question only if you find that it is more probable than not that:

22

1. ~~Defendants knew of the '598 Patent; and~~

2. ~~Defendants sold or supplied in the United States kits that are capable of performing the method of claim 12 of the '598 Patent; and~~

3. ~~Users of the accused kits infringed claim 12 of the '598 Patent; and~~

4. ~~Defendants knew that the kits were especially made or adapted for a use that would infringe the relevant claim; and~~

5. ~~The kits were not a commonly available item; and~~

6. ~~The kits have no substantial noninfringing uses.~~

**Issues Resolved Before Trial**

Before trial, I determined some issues of infringement:

- AmpFISTR COfiler PCR amplification Kit infringes claims 23 and 27 of the '598 Patent and claim 42 of the '984 Patent;

- AmpFISTR Profiler PCR Amplification Kit infringes claims 10,23-24,27 and 33 of the '598 patent and claim 42 of the '984 patent;

- AmpFISTR Identifiler PCR Amplification Kit infringes claims 10, 23-24 and 27 of the '598 patent, claims 18-19 and 21-23 of the '235 Patent, claim 5 of the '771 Patent and claim 42 of the '984 patent;

- AmpFISTR Profiler Plus PCR Amplification Kit infringes claim 42 of the '984 patent;

- AmpFISTR Profiler Plus ID PCR Amplification Kit infringes claim 42 of the '984 patent;

- AmpFISTR Yfiler PCR Amplification Kit infringes claim 42 of the '984 patent;

- AB Minifiler PCR Amplification Kit infringes claim 42 of the '984 Patent; -

23

- AB SGM Plus PCR Amplification Kit infringes claim 42 of the '984 Patent;

- AB SEfiler Kit infringes claim 42 of the '984 Patent;

- AB SEfiler Plus Kit infringes claim 42 of the '984 Patent;

- NGM PCR Amplification Kit ( 1000 and 2000) infringes claim 42 of the '984 Patent;

- NGM SElect Kit infringes claim 42 of the '984 Patent;

- Identifiler Plus Kit infringes claim 42 of the '984 Patent, claim 5 of the '771 Patent, claims 18, I 9, 21, 22 and 23 of the '235 Patent, claims I 0, 23, 24, 2 7 and 33 of the '598 Patent;

- Identifiler Direct Kit infringes claim 42 of the '984 Patent, claim 5 of the '771 Patent, claims 18, 19, 21,22 and 23 of the '235 Patent, claims 10, 23, 24,27 and 33 of the '598 Patent;

- AB Green I PCR Amplification Kit infringes claim 42 of the '984 Patent and claims 23 and 27 of the '598 patent;

- Blue PCR Amplification Kit infringes claim 42 of the '984 Patent; and

- COfiler + Profiler Plus Kit infringes claim 42 of the '984 and claims 23 and 27 of the '598 Patent.

You are to consider these matters concluded, and must accept without question that determination.

<u>**DAMAGES**</u>

<u>**General**</u>

On the damages questions, the party asking for damages has the burden of convincing you, by the preponderance of the evidence, both that he or she has been injured or damaged and the amount of the damages.

The party seeking damages<u>, here, the Plaintiff, Promega,</u> need not produce evidence that is as exact as the evidence needed to support findings on other questions in the verdict. Determining damages involves the consideration of many different factors that cannot be measured precisely. In determining the damages you must base your answer on evidence that reasonably supports your determination of damages under all of the circumstances of the case. You should award as damages the amount of money that you find fairly and reasonably compensates the named party for his or her injuries.

Do not measure damages by what the lawyers ask for in their arguments. Their opinions as to what damages should be awarded should not influence you unless their opinions are supported by the evidence. It is your job to determine the amount of the damages sustained from the evidence you have seen and heard. Examine that evidence carefully and impartially. Do not add to the damage award or subtract anything from it because of sympathy to one side or because of hostility to one side. Do not make any deductions because of a doubt in your minds about the liability of any of the parties.

<u>**Date Damage Begin**</u>

Damages may be awarded by you for any infringement by defendants of plaintiff's patented invention that occurred on or after August 29, 2006.

**License Agreement**

In 2006, plaintiff and defendants entered into a license agreement that gave defendants the right to make, use, sell, offer to sell or import the AmpFlSTR® kits in particular fields. That agreement authorizes defendants to practice the patents at issue in this case for (1) use in, or preparation for, legal proceedings, or (b) analysis of biological specimens for the identification of individuals.

I have determined that ~~some of~~ among the uses of the kits sold by defendants, some are not authorized under that license agreement because those uses are outside the particular fields set forth in the agreement as the identity of the individual is either already known or irrelevant to the applications at issue. There may be other uses outside the license. ~~These~~ The uses I have already found that are outside the scope of the license ~~are~~ include:

(1) Chimerism (which involves determining the relative amount present of two different types of DNA);

(2) Classifying molar specimens (which involves determining whether a mole is present and what type it is);

(3) Cell line authentication (which involves a determination of whether two cell lines are unique);

(4) Determination of fetal sex;

(5) Cancer analysis; and

(6) Genetic research.

26

I determined that certain sales did occur outside those fields of use, though I have not determined the amount. You will make that determination.

In answering Question No.4 No. 2, you must determine the amount of defendants' kit sales that were authorized by the license agreement.

**Lost profits**

Question No. 6No. 4 asks what profits, if any, plaintiff lost as a result of defendants' infringing sales that were not permitted by the license agreement. In answering this question, you may consider only those sales from Question No. 5 No. 3. Those sales are the infringing sales for purposes of Question 4 and Question 5. that were not permitted by the 2006 license agreement.

To recover lost profits for infringing sales, plaintiff must show that:

1.      There is a reasonable probability that plaintiff would have made additional sales of its own patented products but for defendants' infringing sales of the kits.

2.      The amount of profit plaintiff would have made on those sales. Plaintiff does not need to prove this amount with precision.

One, though not the only way that Plaintiff may establish that it is reasonably probable that it would have made additional sales of the patented product is by proving two things:

1.      Plaintiff and defendant are the only suppliers for the product in the market; and

2.      Plaintiff was capable of making all of the sales made by defendant.

If plaintiff proves these things, it is entitled to recover its lost profits on all of the infringing sales made by defendant.

An alternative way that Plaintiff may establish that it is reasonably probable that it would have made additional sales of its own patented products if defendants had not sold its infringing product by proving the following three things:

1.   There was a demand for defendants' infringing kits;

2.   There was no acceptable, non-infringing substitute for defendants' infringing kits;

3.   Plaintiff was capable of satisfying the demand.

Demand for the patented product can be proven by significant sales of plaintiffs patented product. Demand for the patented product can also be proven by significant sales of defendants' product containing the patented features. However, if you find that defendants generated new or different markets by sales or marketing efforts because of features other than those claimed by plaintiff, the sales of defendants' products cannot establish a demand for the patented product.

An "acceptable, non-infringing substitute" is a product that has the advantages of the patented invention that were important to the purchasers of defendants' kits. If purchasers of defendants' kits were motivated to purchase that product because of features that were available only from that product, then other products are not acceptable substitutes, even if they otherwise competed with plaintiffs and defendants' products.

Plaintiff is only entitled to lost profits for sales it could have actually made. You should consider whether Plaintiff has proven that it had the manufacturing capacity and the marketing capability to make the sales it says it lost. Plaintiff must prove that it was more probable than not that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for the infringement. Plaintiff also must prove that it had the capability to market and sell the additional patented products.

**Reasonable Royalty**

Question ~~No. 7~~ No. 5 asks what amount of money is a reasonable royalty for plaintiff.

Plaintiff should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages. Answer this question only if you find that plaintiff has

28

not proven its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales.

A royalty is a payment made to the owner of a patent by someone else so that he can make, use, sell or import the patented invention. A "reasonable royalty" is the amount plaintiff and defendants would have agreed upon as a royalty for practicing the patented inventions at the time defendants' infringement began.

In determining a reasonable royalty, you should assume that plaintiff would have been willing to allow defendants to make, use, sell and import the patented invention and that defendants would have been willing to pay plaintiff to do so. You should take into account what plaintiffs and defendants' expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. You should assume that both plaintiff and defendants would have believed that plaintiffs patent was valid and infringed. You should also assume that defendants would have been willing to pay, and plaintiff would have been willing to accept, the reasonable royalty they negotiated. Your role is to determine what plaintiff and defendants would have agreed upon if they had negotiated in this manner, not just what either plaintiff or defendants would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

- Royalties that others paid to plaintiff for the patented invention;

- Royalties that defendants paid to others for comparable patents;

- Whether plaintiff had a policy of licensing or not licensing the patents;

- Whether plaintiff and defendants are competitors;

- The duration of the patent and the license, as well as the terms and scope of the license;

- Whether use of the patented invention helps to make sales of other products or services;

- Whether the product made using the patent is commercially successful, as well as its profitability;

- The advantages of using the patented invention over products not covered by the patent;

- The extent of defendants' use of the patented invention and the value of that use to defendants;

-Any royalty amounts that are customary for similar or comparable patented inventions;

- Expert opinions regarding what would be a reasonable royalty.

- The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

- The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales.

- The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

**Precision in Calculating Damages Not Required; Doubts Resolved Against Infringer**

Plaintiff is required to prove the amount of its lost profits to a reasonable probability and may not recover amounts that are speculative.  However, mathematical certainty is not required, and if the reason plaintiff has difficulty in proving the amount of its lost profits is defendant did not maintain adequate records, then you should resolve any doubt as to the amount of lost profits in plaintiff's favor.  It will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result may be only approximate.  When the

<u>amount of damages cannot be ascertained with precision, any doubts regarding the amount must</u>

<u>be resolved against the infringer.</u>

<u>Authority</u>

The first two sentences stating that plaintiff must prove lost profits but doubts due to inadequate records are to be resolved against the defendant are taken directly, without modification, from the Federal Civil Jury Instructions of the Seventh Circuit (2009): 11.4.3 Lost Profits.  The rule that doubts due to inadequate records are to be resolved against the defendant is also clearly supported in the case law (*See, e.g., Story Parchment Co.*, 282 U.S. at 563; *Westinghouse*, 225 U.S. at 620; *DSU Medical Corp.*, 471 F.3d at 1309; *Kaufman*, 926 F.2d at 1140-41; *Gyromat*, 735 F.2d 549; *Paper Converting Machine*, 745 F.2d at 22; *Lam*, 718 F.2d at 1065); *Computing Scale Co. v. Toledo Scale Co.*, 279 F. 648, 673 (7th Cir. 1921) ("And the first fruits of the *Westinghouse* decision should be this: If a manufacturer, knowing of a patent, decides to chance an unlicensed use, he should realize that he may be caught by a final decree on the merits and be ordered to respond accordingly; and, so realizing, he should be held to the duty of keeping separate and accurate records of all his infringing acts; and, on his failure to keep such records, the court, in measuring the damages on account of his trespasses, should resolve all doubts against him").

As to the sentence added regarding evidence showing damages as a matter of just and reasonable inference, *See LAM, Inc.*, 718 F.2d 1065 (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931); *Nickson Industries, Inc. v. Rol Mfg Co.*, 847 F.2d 795, 799 (Fed. Cir. 1988) (agreeing that a "reasonable approximation" is acceptable).

The last sentence regarding resolution of doubts against the infringer more generally is adapted from the Federal Civil Jury Instructions of the Seventh Circuit (2009): 11.4.3 Lost Profits ("Plaintiff does not need to prove this amount with precision, and if there are uncertainties regarding the specific amount of lost profits, you may resolve those uncertainties against Defendant"); *See also* Committee Comment 2, "Once a patentee shows causation, 'the trial court may resolve doubts underlying the precise measurement of damages against the infringer.'" (*quoting Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996)); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931) ("Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts . . . [T]he risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party"); *Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co.*, 225 U.S. 604, 620 (1912) ("On established principles of equity, and on the plainest principles of justice, the guilty trustee cannot take advantage of his own wrong.  The fact that he may lose something of his own is a misfortune which he has brought upon himself."); *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1309, 81 U.S.P.Q.2d 1238, 1250 (Fed. Cir. 2006) ("[T]his court will resolve 'any doubts about the amount … against the infringer.'" (citations omitted); *Kaufman Co., Inc. v. Lantech, Inc.*, 926 F.2d 1136, 1140-41, 17 U.S.P.Q.2d 1828 (Fed. Cir. 1991) ("Any doubts regarding the calculatory precision of the damage amount must be resolved against the infringer . . . . *Lam* and *Gyromat* both represent the pervading principle that doubt in ascertaining appropriate damages comes down against the infringer."); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549

31

(Fed. Cir. 1984); *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22, 223 U.S.P.Q. 591 (Fed. Cir. 1984) ("[F]undamental principles of justice require us to throw the risk of any uncertainty upon the wrongdoer instead of upon the injured party"); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065, 219 U.S.P.Q. 670 (Fed. Cir. 1983) ("When the amount of the damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer"); *Kori Corp. v. Wilco Marsh Buggies*, 761 F.2d 649, 655 (Fed. Cir. 1985) ("Fundamental principles of justice require us to throw any risk of uncertainty upon the wrongdoer rather than upon the injured party."); *Nickson Induustries, Inc. v. Rol Mfg Co.*, 847 F.2d 795, 799 (Fed. Cir. 1988) ("We agree that where it is 'impossible to make a mathematical or approximate apportionment' between infringing and noninfringing items, the infringer must bear the burden and the entire risk."); *Automotive Parts Co. v. Wisconsin Axle Co.*, 81 F.2d 125, 127-28 (6th Cir. 1925) ("The appellant ought to have records of its sales and customers from which the purpose for which the parts were bought could be ascertained . . ."); *American Sterilizer Co. v. Sybron Corp.*, 526 F.2d 542, 548-549 (3rd Cir. 1975) ("[W]here the profits of the infringer attributable to infringement and noninfringement cannot be separated, the law places the loss on the wrongdoer. This same result follows where the infringer fails to keep proper records. . . . The burden of proof in such a case is shifted to the infringer or poor record keeper. . . . Logic dictates that the principles held applicable to patent infringement cases should similarly be held to apply to situations involving patent license agreements" (quotations, citations, and footnote omitted)).

## **Willfulness**

The Court has already determined that the Defendants' kit sales infringed Promega's patents. You must determine if that infringement was willful. Not all infringement is willful. To succeed on its contention that defendants infringed the patent willfully, plaintiff must prove two things by clear and convincing evidence:

1.      There was a high likelihood that defendants' actions constituted infringement of a valid patent. In making this determination, you may not consider defendants' actual state of mind. Instead, you should consider whether defendants' had legitimate or credible defenses to infringement or validity, even if those defenses ultimately were not successful.

2.      Defendants knew of the high likelihood that it was infringing a valid patent, or this likelihood was so apparent that defendants should have known of it. In deciding whether

defendants satisfied the state-of-mind part of the test, you should consider all circumstances bearing on this question.

**Reckless – Defined**

Willfulness may be shown by a showing of recklessness. Acts are reckless when they represent a (~~gross~~) departure from ordinary care in a situation where a high (~~degree~~) likelihood of (~~danger~~) infringement is apparent. If the defendant was in a position in which (~~he~~) they certainly should have known that (~~his~~) their conduct would violate the plaintiff's rights, and proceeded to act in disregard of that knowledge and of the harm or the risk of harm that would result to the plaintiff, then (~~he~~) the defendant acted with reckless disregard for the plaintiff's rights. Where there is culpable intent and deliberate or negligent wrongdoing that is evidence of recklessness.

**Source:** Modified from Standard Jury Instructions–Civil, "Punitive Damages" (Used in cases before the Honorable Barbara B. Crabb, District Judge); Also added is language from the Courts, November 29, 2011 Order, p.31, citing *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,*249 F3d 1341, 1356 (Fed. Cir. 2001).

**Acts of Employees are Acts of a Corporation**

In determining whether Life Technologies knew or should have known something in acting recklessly, you may assume that all acts of Life Technologies' employees acting within the scope of their employment are acts of Life Technologies.

An employee acts within the scope of their employment when they act at least in part with the intent to benefit their employer.

Authority

*Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 969 (N.D. Ill. 2002) ("There can be no doubt… that a corporation acts only through its directors, officers, and agents (citing *Jansen v. Packaging Corp. of Am.,* 123 F.3d 490, 496 (7th Cir.1997) (a corporation acts only through its

agents); 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 30 (rev.ed.1999) … A corporation is therefore liable for the intentional acts of its agents acting within the scope of his authority." (citing *Jansen,* 123 F.3d at 496 (citations omitted); *see also* Restatement (Second) of Agency § 265)).

## Knowledge of a Corporation

In considering what knowledge Life Technologies had or should have had that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent, you may assume that Life Technologies had all knowledge obtained by any of its employees acting within the scope of their employment.

An employee acts within the scope of their employment when they act at least in part with the intent to benefit their employer.

Authority

*United States v. One Parcel of Land Located at 7326 Highway 45 N., Three Lakes, Oneida County, Wis.*, 965 F.2d 311, 316-17 (7th Cir. 1992) ("Where a corporate agent obtains knowledge while acting in the scope of his agency, he presumably reports that knowledge to his corporate principal so the court imputes such knowledge to a corporation (citing W. Fletcher, 3 Corporations § 790 and § 793) … Only knowledge obtained by corporate employees acting within the scope of their employment is imputed to the corporation (citing*, e.g., United States v. Bank of New England, N.A.,* 821 F.2d 844, 856 (1st Cir.1987), *cert. denied,* 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 356 (1987) (discussing general agency principles in the context of corporate criminal liability)) … acting within the scope of employment means 'with intent to benefit the employer.'" (citing *D & S Auto Parts, Inc. v. Schwartz,* 838 F.2d 964, 967 (7th Cir.1988), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988); *accord United States v. Cincotta,* 689 F.2d 238, 241-42 (1st Cir.1982), *cert. denied sub nom. Zero v. United States,* 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982) (acting within the scope of agency defined as acting as authorized and motivated at least in part by an intent to benefit the corporation))).

## Selection of Presiding Juror; Communication with the Judge; Verdict

When you go to the jury room to begin considering the evidence in this case you should first select one of the members of the jury to act as your presiding juror. This person will help to guide your discussions in the jury room.

34

You are free to deliberate in any way you decide or select whomever you like as a presiding juror. When thinking about who should be presiding juror, you may want to consider the role that the presiding juror usually plays. He or she serves as the chairperson during the deliberations and has the responsibility of insuring that all jurors who desire to speak have a chance to do so before any vote. The presiding juror should guide the discussion and encourage all jurors to participate. I encourage you at all times to keep an open mind if you ever disagree or come to conclusions that are different from those of your fellow jurors. Listening carefully and thinking about the other juror's point of view may help you understand that juror's position better or give you a better way to explain why you think your position is correct.

Once you are in the jury room, if you need to communicate with me, the presiding juror will send a written message to me. However, don't tell me how you stand as to your verdict.

As I have mentioned before, the decision you reach must be unanimous; you must all agree.

When you have reached a decision, the presiding juror will sign the verdict form, put a date on it, and all of you will return with the verdict into the courtroom.

## SPECIAL VERDICT FORM

We, the jury, for our special verdict, do find as follows:

~~Question No. 1: Did defendants Life Technologies Corporation, Applied Biosystems, LLC and Invitrogen IP Holdings, Inc. actively induce infringement with respect to claim 12 of the '598 Patent?~~

~~Answer: _____~~

~~(Yes or No)~~

~~Answer Question No. 2.~~

~~Question No. 2: Did defendants contribute to infringement with respect to claim 12 of the '598 patent?~~

~~Answer: _____~~

~~(Yes or No)~~

Answer Question ~~No. 3~~ No. 1.

Question ~~No. 3~~ No. 1: What is the total dollar amount of defendants' ~~kit~~ sales of the accused AmpFlSTR kits ~~by defendants that infringed plaintiff Promega Corporation's patents~~?

36

Answer:  $ _____

Answer Question ~~No. 4~~ No. 2.

Question ~~No. 4~~ No. 2: Of the sales in your answer to Question No. 1, what is the total dollar amount of defendants' ~~kit~~ sales of the accused AmpFlSTR kits that were permitted by the 2006 licensing agreement?

Answer:  $ _____

Answer Question ~~No.5~~ No. 3.

Question ~~No.5~~ No. 3: Subtract the dollar amount in Question No. 2 from the dollar amount in Question No. 1.

Answer:  $ _____

Answer Question ~~No. 6~~ No. 4.

Question ~~No. 6~~ No. 4: What profits, if any, did plaintiff lose as a result of defendants' sales in Question ~~No. 5~~ No. 3?

Answer:  $ _____

Answer Question ~~No.7~~ No. 5.

Question ~~No.7~~ No. 5: For those sales from Question ~~No.5~~ No. 3 for which plaintiff has not proven its entitlement to lost profits, what amount of money is a reasonable royalty for plaintiff?

Answer:  $ _____

Answer Question ~~No. 8~~ No. 6.

Question ~~No. 8~~ No. 6: Was defendants' infringement willful?

Answer: _____

(Yes or No)

38

Dated:  February 5, 2012                    RESPECTFULLY SUBMITTED,


**TROUPIS LAW OFFICE, LLC**


By:    /s/ James R. Troupis
      James R. Troupis, SBN 1005341
      Peter G. Carroll (Admitted *Pro Hac*)
      Stewart W. Karge (Admitted *Pro Hac*)
      Sarah E. Troupis, SBN 1061515
      Brandon M. Lewis, SBN 1086824
      8500 Greenway Blvd., Suite 200
      Middleton, Wisconsin 53562
      ph. 608-807-4096
      jrtroupis@troupislawoffice.com

      *Attorneys for Plaintiff Promega Corporation*