UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

PROMEGA CORPORATION,

    Plaintiff,

MAX-PLANCK-GESELLSCHAFT ZUR
FORDERUNG DER WISSENSCHAFTEN     Case No.: 10-CV-281
E.V.,

    Involuntary Plaintiff,

  v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC., and
APPLIED BIOSYSTEMS, LLC,

    Defendants.

**PLAINTIFF PROMEGA CORPORATION'S SUPPLEMENTAL OBJECTION AND PROPOSED REVISIONS TO JURY INSTRUCTIONS AND SPECIAL VERDICT FORM**

Now Comes, Promega Corporation, ("Promega") and respectfully submits this Supplemental Objection and Proposed Revisions to Jury Instructions and Special Verdict Form. Without waiving the positions, arguments, and objections contained in Promega's prior proposed jury instructions and special verdict forms (Dkt. Nos. 402, 403, 406 and 407) to be submitted to the jury and its responses to Defendants' proposals (Dkt. No. 451), Promega submits the following supplemental objections and proposed revisions, in addition to those submitted previously (Dkt. #505) to the instructions provided to the parties by the Court at the February 3, 2012 pre-trial conference.

1

Instruction on Prior Inconsistent Statements

Promega has submitted a proposed instruction relating to prior inconsistent statements of Daniel Hall. This instruction is taken directly, without modification except for the insertion of the witness' name, from the Seventh Circuit's model instruction on Prior Inconsistent Statements [or Acts] (*See* Federal Civil Jury Instructions of the Seventh Circuit, 1.14 Prior Inconsistent Statements [or Acts]). The second paragraph is shown as deleted as the prior statements heard by the jury were from a deposition where the witness was under oath. Committee Comment (a) to the model instruction specifically states that the limiting instruction in the second paragraph is not to be used in these situations ("A court should not give such a limiting instruction, however, if the prior inconsistent statement was 'given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition,' FED. R. EVID. 801(d)(1)(A), or if the prior statement is considered an admission by a party-opponent under FED. R. EVID. 801(d)(2). These statements are not hearsay and may be used to prove the truth of the matters asserted." Because the examination of Mr. Hall at trial addressed a critical issue in the case (*i.e.*, the defendants' knowledge of the license restrictions), Promega believes that the jury needs to be clear of the implications that result from the fact that his earlier testimony was given under oath.

Instruction Relating to Stipulated Number of Infringing Sales

Promega has submitted a proposed instruction directing the jury to find that the total dollar amount of sales for the purposes of answering the Court's original Question No. 3 (revised Question No. 1) of the special verdict form is $707,618,247, as stipulated to by the parties.

On February 7, 2012, the parties filed a Stipulation Regarding Worldwide Sales of STR Kits (Dkt. #524, attached hereto as Attachment A), setting forth the total dollar amount of sales

for the purpose of answering the Court's original Question No. 3 on the special verdict form as $707,618,247. The purpose of the stipulated number (to remove the need for lengthy testimony and to provide the jury with a set number for the first damages question on the special verdict form) was made clear both by representations made between the parties and to this Court.

In a February 6, 2012 email between the parties, attached hereto as Attachment B, counsel for the defendants represented that "the number we are willing to stipulate to is $707,618,247 to cover sales of the kits in the Court's order (including the additions we stipulated to) less sales to Promega and to ourselves." Clearly, by reference to "sales of the kits in the Court's order", this number was meant to cover *infringing* kits. And, of course, infringing kits, by definition, are those kits satisfying each and every element of at least one asserted patent claim that are either made or sold in the United States.

As further support and to provide context for the true meaning of the stipulation, as represented between the parties in the email attached as Attachment B, are the parties' representations to the Court itself following jury selection on Monday, February 6, 2012. During the course of attempting to clarify how the trial would proceed and how the parties would present their respective cases, this Court stated as follows:

> Okay. All right. So it might be helpful if we started with how this case is going to go forward and what I'm -- I really want to know what dispute the jury is going to be called upon to decide. The plaintiff is going to get up and say that these -- as stipulated -- first of all, "as found by the Court, all of these products infringe the patents." Then the plaintiff is going to say "and our worldwide sales have been stipulated to be this 700 million" or whatever it turns out to be. We figure that our lost profits on sales of 700 million dollars would be "X" and our reasonable royalty on those sales would by "Y," and possibly would make an effort to show willfulness at that stage?

(*See* Attachment C, Excerpt of Stenographic Transcript of First Day of Jury Trial Afternoon Session at p. 1-P-6). After counsel for plaintiff clarified the order of proofs it

intended to show, and what various witnesses might testify to, the Court turned to counsel for the defendants, asking:

> And Mr. Wikstrom, your plan when plaintiff rests?

(*Id.* at 1-P-9 to 1-P-10).  To which counsel for the defendants answered this Court as follows:

> Your Honor, we will defend against willfulness, of course.  And Your Honor, I want to make it clear that by agreeing to stipulating to what the total sales are, I don't mean to reargue any matter that the Court has already decided, but I want to make it clear for the record that by stipulating to that number we're not agreeing to the approach that is set forth in the special verdicts.
>
> But given the way the Court has ruled, we will stipulate to what the total sales should be without -- it would be our position that they're not -- the 700 million are not infringing sales *because we have a license to sell most of those*.  We will then disprove the willfulness through our witnesses who will testify to the contrary what Mr. Troupis is saying.  And then Your Honor, we're going to do the best we can to live with the order of the Court to try to demonstrate the sales that were contemplated under the license, permitted under the license.  I understand you've placed the burden on us to do that.

(*Id.* at 1-P-10) (emphasis added).  Following this discussion, in addressing what testimony Dr. Beyer would be permitted to give at trial, counsel for defendants again made clear they had no objections to the use of the stipulated number for the purpose of answering the first damages question.  During this discussion, in attempting to clarify the extent that Dr. Beyer would be allowed to testify, this Court stated as follows:

> All right.  So Mr. Beyer, Dr. Beyer can talk about what he thinks a reasonable royalty would be; he can talk about the total sales because that will be a stipulated amount; and he can talk about what he thinks lost profits should be.  But he cannot estimate what falls outside the license and he doesn't need to.

(*Id.* at 1-P-13).  No objection or clarification to the approach the parties would take at trial, as outlined by the Court here, was made by defendants at this time.  No contrary position of any kind was taken.  This holds true even throughout the trial, as counsel for the defendants

sought to preclude testimony on certain evidence made irrelevant by the stipulation (with no objection by plaintiff, as this was one of the original purposes of the stipulation). During the plaintiff's adverse examination of Guido Sandulli, counsel met at a sidebar to discuss the use of plaintiff's Exhibit No. 792, a large electronic spreadsheet of data produced by the defendants (*See* Attachment D, Excerpt of Stenographic Transcript of Fourth Day of Jury Trial Afternoon Session at p. 4-B-23 to 4-B-26). During this sidebar, counsel for the defendants explained why they believed the exhibit to be irrelevant as follows:

> Our position on both of those thumb drives would be that they are not relevant to any issue before the jury.
>
> There are two issues of course before the jury -- willfulness and damages. There has been, as the Court is aware, a stipulation as to the total amount of sales of STR kits. The reason for that stipulation was so the plaintiffs would not need to use underlying sales data to prove some overall sales number, which I assume is what they are doing with these spreadsheets. Certainly those overall sales do not go to any claim of willfulness. As I mentioned, they are very large, very lengthy documents, which will take I believe some amount of time to go through.

(*Id.* at 4-B-24). The defendants' representations to this Court noted above make clear that they too intended the stipulated number to answer the first damages question on the special verdict form. Their defense, of course, would be that certain sales do not infringe as they are *permitted under a license*. The total amount of those permitted sales would appropriately be addressed in the second damages question on the special verdict form, and not reduced in any respect from the first number representing total infringing sales.

To take but one example of why the defendants' representations must be interpreted for the purpose of answering the first damages question on the special verdict form, it is instructive to examine their objection to the introduction of plaintiff's Exhibit No. 792. If the stipulation meant anything else, then plaintiff would have no choice but to go through each and every sale in whatever records were produced by the defendants to show not only a total amount, but also any

5

indication of the place of manufacture, who the products were sold to, where the customer is located, and if that be in several places where the item was shipped. This would require careful, thorough, and lengthy examination of those very records that counsel for the defendants indicated "are not relevant to any issue before the jury," among others. Obviously, this cannot be the case. Accordingly, Promega respectfully requests that the Court either include the proposed instruction below titled "Total Dollar Amount of Defendants' Sales", or remove the question from the jury entirely and simply answer the question for them in the special verdict form.

**PROPOSED ADDITIONAL INSTRUCTIONS**

Prior Inconsistent Statements

You may consider statements given by Daniel Hall before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony.

~~With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement [not under oath] [or acted in a manner] that is inconsistent with his testimony here in court, you may consider the earlier statement [or conduct] only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.~~

~~[In considering a prior inconsistent statement[s] [or conduct], you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.]~~


**Source:** Modified from Federal Civil Jury Instructions of the Seventh Circuit, 1.14 Prior Inconsistent Statements [or Acts].

Total Dollar Amount of Defendants' Sales

In answering Question No. 1, you are instructed to find that the total dollar amount of defendants' sales of the accused AmpFlSTR kits is **$707,618,247**, as agreed to by the parties.

Dated:  February 12, 2012                    RESPECTFULLY SUBMITTED,

                                              **TROUPIS LAW OFFICE, LLC**

                                              By:     /s/ James R. Troupis
                                                    James R. Troupis, SBN 1005341
                                                    Peter G. Carroll (Admitted *Pro Hac*)
                                                    Stewart W. Karge (Admitted *Pro Hac*)
                                                    Sarah E. Troupis, SBN 1061515
                                                    Brandon M. Lewis, SBN 1086824
                                                    8500 Greenway Blvd., Suite 200
                                                    Middleton, Wisconsin 53562
                                                    ph. 608-807-4096
                                                    jrtroupis@troupislawoffice.com

                                                    *Attorneys for Plaintiff Promega Corporation*