# EXHIBIT A

## II. POST-TRIAL INSTRUCTIONS

### Introduction

Ladies and Gentlemen of the Jury:

Now that you have heard the evidence and the arguments, I will give you the instructions that will govern your deliberations in the jury room. It is my job to decide what rules of law apply to the case and to explain those rules to you. It is your job to follow the rules, even if you disagree with them or don't understand the reasons for them. You must follow <u>all</u> of the rules; you may not follow some and ignore others.

The decision you reach in the jury room must be unanimous. In other words, you must all agree on the answer to each question.

Your deliberations will be secret. You will never have to explain your verdict to anyone.

If you have formed any idea that I have an opinion about how the case should be decided, disregard that idea. It is your job, not mine, to decide the facts of this case.

The case will be submitted to you in the form of a special verdict consisting of ⎯⎯ 7 questions. In answering the questions, you should consider only the evidence that has been received at this trial. Do not concern yourselves with whether your answers will be favorable to one side or another, or with what the final result of this lawsuit may be.

Note that certain questions in the verdict are to be answered only if you answer a preceding question in a certain manner. Read the introductory portion of each question very carefully before you undertake to answer it. Do not answer questions needlessly.

### Answers Not Based on Guesswork

If, after you have discussed the testimony and all other evidence that bears upon a particular question, you find that the evidence is so uncertain or inadequate that you have to

guess what the answer should be, then the party having the burden of proof as to that question has not met the required burden of proof. Your answers are not to be based on guesswork or speculation. They are to be based upon credible evidence from which you can find the existence of the facts that the party must prove in order to satisfy the burden of proof on the question under consideration.

**Burden of Proof–Preponderance of the Evidence**

When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true. On Questions Nos. ~~1, 2, 3, 6 and 7~~ <u>1-6</u> in the special verdict, plaintiff has the burden to prove the answer by a preponderance of the evidence. <u>In contrast, on Question No. 7, plaintiff has the burden of proving willfulness by clear and convincing evidence, which is a different standard.</u> ~~On Question No.4, defendants have the burden to prove the answer by a preponderance of the evidence.~~ You should base your decision on all of the evidence, regardless which party presented it.

**Burden of Proof–Clear and Convincing**

In answering question ~~8~~ <u>7 on the issue of willful infringement in the special verdict form</u>, you are instructed that the burden is on the plaintiff to convince you ~~to a reasonable certainty by evidence that is clear, satisfactory, and convincing that the answer should be "yes."~~ by <u>"clear and convincing evidence." "Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true</u>.

**~~Infringement by Defendants' Customers~~**

In order to answer Question No. 1 and Question No. 2, you will need to determine whether any defendants' customers infringed claim 12 of the '598 Patent.

A user infringes a claim if he or she performs every step of that claim, exactly as the step is described in the claim. If the method performed by the accused kit omits any step recited in a claim, users of the accused kit do not infringe that claim.

Plaintiff does not need to prove users of the accused kits intended to infringe or knew of the patent.

**Active Inducement**

Question No. 1 asks whether defendants actively induced infringement with respect to claim 12 of the '598 Patent.

You may answer "yes" only if you find that it is more probable than not that:

1. Defendants knew of the '598 patent; and

2. Defendants took active steps to encourage users of the accused kits to use the kits in a manner that infringed claim 12 of the '598 Patent; and

3. Defendants knew that their acts would cause users of the kits to infringe claim 12 of the '598 Patent or were willfully blind to that possibility.

A person is willfully blind if he (1) subjectively believe that there is a high probability that a fact exists and (2) he takes deliberate actions to avoid learning of that fact.

In order to establish active inducement of infringement, it is not sufficient that customers themselves infringe the claim. Nor is it sufficient that defendants were aware of the acts by customers that allegedly constitute the infringement. Rather, you must find that defendants specifically intended customers to infringe the '598 patent, in order to find inducement of infringement.

~~**Contributory Infringement**~~

~~Question No. 2 asks whether defendants contributed to infringement with respect to any of the asserted claims.~~

~~You may answer "yes" to this question only if you find that it is more probable than not that:~~

~~1. Defendants knew of the '598 Patent; and~~

~~2. Defendants sold or supplied in the United States kits that are capable of performing the method of claim 12 of the '598 Patent; and~~

~~3. Users of the accused kits infringed claim 12 of the '598 Patent; and~~

~~4. Defendants knew that the kits were especially made or adapted for a use that would infringe the relevant claim; and~~

~~5. The kits were not a commonly available item; and~~

~~6. The kits have no substantial noninfringing uses.~~

## DAMAGES

### General

On the damages questions, the party asking for damages has the burden of convincing you, by the preponderance of the evidence, both that he or she has been injured or damaged and the amount of the damages.

The party seeking damages need not produce evidence that is as exact as the evidence needed to support findings on other questions in the verdict. Determining damages involves the consideration of many different factors that cannot be measured precisely. In determining the damages you must base your answer on evidence that reasonably supports your determination of damages under all of the circumstances of the case. You should award as damages the amount of money that you find fairly and reasonably compensates the named party for his or her injuries.

Do not measure damages by what the lawyers ask for in their arguments. Their opinions as to what damages should be awarded should not influence you unless their opinions are supported by the evidence. It is your job to determine the amount of the damages sustained from the evidence you have seen and heard. Examine that evidence carefully and impartially. Do not add to the damage award or subtract anything from it because of sympathy to one side or because of hostility to one side. Do not make any deductions because of a doubt in your minds about the liability of any of the parties.

### Date Damage Begin

Damages may be awarded by you for any infringement by defendants of plaintiff's patented invention that occurred on or after August 29, 2006.

**Only Infringement of United States Patent Is At Issue**

Only kits made, used, or sold in the United States, or imported into the United States are at issue in this case. Worldwide sales are not at issue. Instead, only kits that plaintiff proves were made, used, or sold in the United State, or imported into the United States, as opposed to worldwide, may be considered.

**License Agreement**

~~In 2006, plaintiff and defendants entered into a license agreement that gave defendants the right to make, use, sell, offer to sell or import the AmpFlSTR® kits in particular fields. That agreement authorizes defendants to practice the patents at issue in this case for (1) use in, or preparation for, legal proceedings, or (b) analysis of biological specimens for the identification of individuals.~~

The 2006 Cross License Agreement states that Promega granted Life a license under the Promega patents "to make, have made, import, export, use, offer to sell, sell, and have sold Licensed Products solely in the Genetic Identity Field." The cross license defines the Genetic Identity Field as "Forensics and Human Identity Applications and Paternity Applications."

The phrase "Forensics and Human Identity Applications" is further defined as:

> any analysis, based on the measurement of the length of polynucleotide sequence containing a tandem repeat, of human genetic material for (a) use in, or in preparation for, legal proceedings, or (b) analysis of biological specimens for identification of individuals. Forensics and Human Identity Applications do not include parentage determinations (except in cases of sexual assault investigation) or tissue typing.

> Population databasing for use in legal proceedings is also within the meaning of "Forensics and Human Identity Applications."

The phrase "Paternity Applications" is defined as: "any analysis, based on the measurement of the length of a polynucleotide sequence containing a tandem repeat, of

<u>human genetic material for parentage determination, except in cases of sexual assault investigations."</u>

<u>In addition,</u> I have determined that some of the uses of the kits sold by defendants are not authorized under that license agreement because those uses are outside the particular fields set forth in the agreement. These uses are:

(1) Chimerism (which involves determining the relative amount present of two different types of DNA);

(2) Classifying molar specimens (which involves determining whether a mole is present and what type it is);

(3) Cell line authentication (which involves a determination of whether two cell lines are unique);

(4) Determination of fetal sex;

(5) Cancer analysis; and

(6) Genetic research.

In answering Question No. 4–2, you must determine the amount of defendants' kit sales that were authorized by the license agreement.

**Two Possible Types Of Damages–Lost Profits Or Reasonable Royalty**

<u>There are two types of damages that Promega may be entitled to recover: lost profits or a reasonable royalty.</u>

<u>Lost profits consist of any actual reduction in business profits Promega suffered as a result of Life's unauthorized sales to customers who used the AmpFℓSTR® kits outside the scope of the 2006 cross license.  A reasonable royalty is defined as the amount the patent owner and someone wanting to use the patented invention would agree upon as a fee for use of the invention.  I will describe shortly what Promega must prove to recover either type of damages.</u>

<u>Promega is entitled to recover no less than a reasonable royalty for each AmpFℓSTR® kit that was made, used, sold or imported in the United States without authority and that were used by a customer outside the scope of the 2006 license agreement, even if Promega cannot prove that it suffered lost profits in connection with that sale.</u>

**Lost profits**[1]

Question No. <u>5</u> ~~6~~ asks what profits <u>on its STR kits</u>, if any, plaintiff lost <u>in the United States</u> as a result of defendants' infringing sales <u>in the United States</u> that were not ~~permitted~~ <u>authorized</u> by the license agreement.  In answering this question, you may consider only those sales from Question No.~~5~~ <u>3</u> that were not ~~permitted~~ <u>authorized</u> by the 2006 license agreement.

To recover lost profits for infringing sales <u>in the United States</u>, plaintiff must show that:

1. There is a reasonable probability that plaintiff would have made additional sales of its own patented products but for defendants' infringing sales of the kits.

2. The amount of profit plaintiff would have made on those sales.  Plaintiff ~~does not need~~ <u>must</u> ~~to~~ prove this amount with <u>reasonable probability but not absolute</u> precision.

---

[1] Life maintains that its Proposed Instructions 5.5.1-5.5.7 (Dkt. No. 392) should be used in place of the Court's proposed instruction.  However, should the Court decline to reconsider its rejection of those instructions, Life proposes the following modifications.

Plaintiff may establish that it is reasonably probable that it would have made additional sales of its own patented products <u>in the United States</u> if defendants had not sold its infringing product by proving the following three things:

1. There was a demand for defendants' infringing kits;

2. There was no acceptable, non-infringing substitute for defendants' infringing kits;

3. Plaintiff was capable of satisfying the demand.

Demand for the patented product can be proven by significant sales of plaintiff's patented product. Demand for the patented product can also be proven by significant sales of defendants' product containing the patented features. <u>The patented features must provide the basis for the demand, not other features.</u> However, if you find that defendants generated new or different markets by sales or marketing efforts because of features other than those claimed by plaintiff, the sales of defendants' products cannot establish a demand for the patented product.

An "acceptable, non-infringing substitute" is a product that has the advantages of the patented invention that were important to the purchasers of defendants' kits. <u>An acceptable non-infringing substitute does not need to have been actually produced and sold during the damages period. For example, an acceptable non-infringing substitute can be an alternative product that was not on the market but that was nevertheless available during the damages period.</u> If purchasers of defendants' kits were motivated to purchase that product because of features that were available only from that product, then other products are not acceptable substitutes, even if they otherwise competed with plaintiff's and defendants' products.

Plaintiff is only entitled to lost profits for sales it could have actually made. You should consider whether Plaintiff has proven that it had the manufacturing capacity and the marketing capability to make the sales it says it lost. Plaintiff must prove that it was more probable than not

that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for the infringement. Plaintiff also must prove that it had the capability to market and sell the additional patented products.

**Reasonable Royalty**

Question No. ~~7~~ 5 asks what amount of money is a reasonable royalty for plaintiff.

Plaintiff should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages. Answer this question only if you find that plaintiff has not proven its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales. Again, in determining a reasonable royalty, you may consider only those sales <u>in the United States</u> from Question No. ~~5~~ 2 that were not permitted by the 2006 license agreement.

A royalty is a payment made to the owner of a patent by someone else so that he can make, use, sell or import the patented invention. A "reasonable royalty" is the amount plaintiff and defendants would have agreed upon as a royalty for practicing the patented inventions at the time defendants' infringement began.

In determining a reasonable royalty, you should assume that plaintiff would have been willing to allow defendants to make, use, sell and import the patented invention and that defendants would have been willing to pay plaintiff to do so. You should take into account what plaintiff's and defendants' expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. You should assume that both plaintiff and defendants would have believed that plaintiff's patent was valid and infringed. You should also assume that defendants would have been willing to pay, and plaintiff would have been willing to accept, the reasonable royalty they negotiated. Your role is to determine what plaintiff and defendants

would have agreed upon if they had negotiated in this manner, not just what either plaintiff or defendants would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

- Royalties that others paid to plaintiff for the patented invention;

- Royalties that defendants paid to others for comparable patents;

- Whether plaintiff had a policy of licensing or not licensing the patents;

- Whether plaintiff and defendants are competitors;

- The duration of the patent and the license, as well as the terms and scope of the license;

- Whether use of the patented invention helps to make sales of other products or services;

- Whether the product made using the patent is commercially successful, as well as its profitability;

- The advantages of using the patented invention over products not covered by the patent;

- The extent of defendants' use of the patented invention and the value of that use to defendants;

- Any royalty amounts that are customary for similar or comparable patented inventions;

- Expert opinions regarding what would be a reasonable royalty.

**Willfulness**

Not all infringement is willful. To succeed on its contention that defendants infringed the patent willfully before this lawsuit was filed on May 26, 2010, plaintiff must prove two things by clear and convincing evidence:

1. There was a high likelihood that defendants' actions constituted infringement in the United States of a valid United States patent. In making this determination, you may not consider defendants' actual state of mind. Instead, you should consider whether defendants' had

<u>objectively</u> legitimate or credible <u>reasons for believing that they were acting within the scope of the license even if the reasons were later determined to be wrong</u><s>defenses to infringement or validity, even if those defenses ultimately were not successful</s>. <u>Only if you conclude that defendants' defenses were objectively unreasonable, do you need to consider the second part of this test.</u>

   2. Defendants knew of the high likelihood that it was infringing a valid patent, or this likelihood was so apparent that defendants should have known of it. In deciding whether defendants satisfied the state-of-mind part of the test, you should consider all circumstances bearing on this question.

**Selection of Presiding Juror; Communication with the Judge; Verdict**

   When you go to the jury room to begin considering the evidence in this case you should first select one of the members of the jury to act as your presiding juror. This person will help to guide your discussions in the jury room.

   You are free to deliberate in any way you decide or select whomever you like as a presiding juror. When thinking about who should be presiding juror, you may want to consider the role that the presiding juror usually plays. He or she serves as the chairperson during the deliberations and has the responsibility of insuring that all jurors who desire to speak have a chance to do so before any vote. The presiding juror should guide the discussion and encourage all jurors to participate. I encourage you at all times to keep an open mind if you ever disagree or come to conclusions that are different from those of your fellow jurors. Listening carefully and thinking about the other juror's point of view may help you understand that juror's position better or give you a better way to explain why you think your position is correct.

Once you are in the jury room, if you need to communicate with me, the presiding juror will send a written message to me. However, don't tell me how you stand as to your verdict.

As I have mentioned before, the decision you reach must be unanimous; you must all agree.

When you have reached a decision, the presiding juror will sign the verdict form, put a date on it, and all of you will return with the verdict into the courtroom.

**SPECIAL VERDICT FORM**

We, the jury, for our special verdict, do find as follows:

~~Question No. 1: Did defendants Life Technologies Corporation, Applied Biosystems, LLC and Invitrogen IP Holdings, Inc. actively induce infringement with respect to claim 12 of the '598 Patent?~~

~~Answer:_____~~

~~(Yes or No)~~

~~Answer Question No. 2.~~

~~Question No. 2: Did defendants contribute to infringement with respect to claim 12 of the '598 patent?~~

~~Answer:_____~~

~~(Yes or No)~~

Answer Question ~~No. 3~~ No. 1.

Question ~~No. 3~~ No. 1: What is the total dollar amount of STR kit that were made used or sold in the United States, or imported into the United States ~~sales~~ by defendants that ~~infringed~~ plaintiff Promega Corporation~~'s~~ has proven by a preponderance of the evidence ~~patents~~?

Answer: $_____

<u>If the answer to this question is $0 (zero dollars), do not answer any of the following questions.</u>

Answer Question ~~No.4~~ <u>No. 2</u>.

Question ~~No. 4~~ <u>No. 2</u>: Of the sales in your answer to Question No. 1, what is the total dollar amount of defendants' kit sales that were ~~permitted~~ <u>authorized</u> by the 2006 licensing agreement?

Answer: $_____

Answer Question ~~No. 5~~ <u>No. 3</u>.

Question ~~No. 5~~ <u>No. 3</u>: Subtract the dollar amount in Question No.2 from the dollar amount in Question No. 1.

Answer: $_____

<u>Answer Question No. 4.</u>

<u>Question No. 4: Has plaintiff proven by a preponderance of the evidence that it is entitled to lost profits on sales of its STR kits??</u>

<u>Answer:_____</u>

<u>(Yes or No)</u>

<u>If you answered "Yes" to this question, proceed to Question 5. If you answered "No" to this Question, skip to Question 6.</u>

Answer Question ~~No. 6~~ No. 5.

Question ~~No. 6~~ No. 5: What is the total dollar amount of profits on sales of Promega's STR kits~~, if any, did~~ that plaintiff lost ~~lose~~ as a result of defendants' sales in Question ~~No. 5~~ No. 3?

Answer: $_____

Answer Question ~~No.7~~ No. 6.

Question ~~No. 7~~ No. 6: ~~For those sales from~~ If you answered Question ~~No.5~~ No. 4 "No," what ~~for which plaintiff has not proven its entitlement to lost profits, what amount of money is~~ a reasonable royalty ~~for plaintiff~~ rate has Promega proven by a preponderance of the evidence it is entitled to for the sales in Question 3?

Answer: $_____

Answer Question ~~No. 8~~ No. 7.

Question ~~No. 8~~ No. 7: Has plaintiff proven by clear and convincing evidence that ~~Was~~ defendants' infringement was willful?

Answer: _____
(Yes or No)

_____

Presiding Juror

Madison, Wisconsin

Dated this day \_\_\_ of February, 2012