## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

PROMEGA CORPORATION,

       Plaintiff,

MAX-PLANCK-GESELLSCHAFT ZUR
FORDERUNG DER WISSENSCHAFTEN       Case No.: 10-CV-281
E.V.,

       Involuntary Plaintiff,

   v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC., and
APPLIED BIOSYSTEMS, LLC,

       Defendants.

## PLAINTIFF PROMEGA CORPORATION'S OBJECTION AND PROPOSED REVISIONS TO JURY INSTRUCTIONS AND SPECIAL VERDICT FORM

Now Comes, Promega Corporation, ("Promega") and respectfully submits this Objection and Proposed Revisions to Jury Instructions and Special Verdict Form. Without waiving the positions, arguments, and objections contained in any of Promega's prior proposed jury instructions and special verdict forms or Objections and Proposed Revisions to Jury Instructions and Special Verdict Form, Promega submits the following objections and proposed revisions to the instructions provided to the parties by the Court at the February 3, 2012 pre-trial conference.

## II.   POST-TRIAL INSTRUCTIONS

**Introduction**

Ladies and Gentlemen of the Jury:

Now that you have heard the evidence and the arguments, I will give you the instructions that will govern your deliberations in the jury room. It is my job to decide what rules of law apply to the case and to explain those rules to you. It is your job to follow the rules, even if you disagree with them or don't understand the reasons for them. You must follow all of the rules; you may not follow some and ignore others.

The decision you reach in the jury room must be unanimous. In other words, you must all agree on the answer to each question.

Your deliberations will be secret. You will never have to explain your verdict to anyone.

If you have formed any idea that I have an opinion about how the case should be decided, disregard that idea. It is your job, not mine, to decide the facts of this case.

The case will be submitted to you in the form of a special verdict consisting of 6 questions. In answering the questions, you should consider only the evidence that has been received at this trial. Do not concern yourselves with whether your answers will be favorable to one side or another, or with what the final result of this lawsuit may be.

Note that certain questions in the verdict are to be answered only if you answer a preceding question in a certain manner. Read the introductory portion of each question very carefully before you undertake to answer it. Do not answer questions needlessly.

**Answers Not Based on Guesswork**

If, after you have discussed the testimony and all other evidence that bears upon a particular question, you find that the evidence is so uncertain or inadequate that you have to

2

guess what the answer should be, then the party having the burden of proof as to that question has not met the required burden of proof. Your answers are not to be based on guesswork or speculation. They are to be based upon credible evidence from which you can find the existence of the facts that the party must prove in order to satisfy the burden of proof on the question under consideration.

## Burden of Proof-Preponderance of the Evidence

When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true. On Questions ~~Nos. 1, 2, 3, 6 and 7~~ Nos. 1, 4 and 5 in the special verdict, plaintiff has the burden to prove the answer by a preponderance of the evidence. On Question ~~No. 4~~ No. 2, defendants have the burden to prove the answer by a preponderance of the evidence. You should base your decision on all of the evidence, regardless which party presented it.

## Burden of Proof-Clear and Convincing

In answering Question ~~No. 8~~ No. 6, you are instructed that the burden is on plaintiff to convince you to a reasonable certainty by evidence that is clear, ~~satisfactory,~~ and convincing that the answer should be "yes."

## ~~Infringement by Defendants' Customers~~

~~In order to answer Question No. 1 and Question No.2, you will need to determine whether any defendants' customers infringed claim 12 of the '598 Patent.~~

~~A user infringes a claim if he or she performs every step of that claim, exactly as the step is described in the claim. If the method performed by the accused kit omits any step recited in a claim, users of the accused kit do not infringe that claim.~~

Plaintiff does not need to prove users of the accused kits intended to infringe or knew of the patent.

**Active Inducement**

Question No. 1 asks whether defendants actively induced infringement with respect to claim 12 of the '598 Patent.

You may answer "yes" only if you find that it is more probable than not that:

1.   Defendants knew of the '598 patent; and

2.   Defendants took active steps to encourage users of the accused kits to use the kits in a manner that infringed claim 12 of the '598 Patent; and

3.   Defendants knew that their acts would cause users of the kits to infringe claim 12 of the '598 Patent or were willfully blind to that possibility.

A person is willfully blind if he (I) subjectively believe that there is a high probability that a fact exists and (2) he takes deliberate actions to avoid learning of that fact.

In order to establish active inducement of infringement, it is not sufficient that customers themselves infringe the claim. Nor is it sufficient that defendants were aware of the acts by customers that allegedly constitute the infringement. Rather, you must find that defendants specifically intended customers to infringe the '598 patent, in order to find inducement of infringement.

**Contributory Infringement**

Question No. 2 asks whether defendants contributed to infringement with respect to any of the asserted claims.

You may answer "yes" to this question only if you find that it is more probable than not that:

4

1. ~~Defendants knew of the '598 Patent; and~~

2. ~~Defendants sold or supplied in the United States kits that are capable of performing the method of claim 12 of the '598 Patent; and~~

3. ~~Users of the accused kits infringed claim 12 of the '598 Patent; and~~

4. ~~Defendants knew that the kits were especially made or adapted for a use that would infringe the relevant claim; and~~

5. ~~The kits were not a commonly available item; and~~

6. ~~The kits have no substantial noninfringing uses.~~

**Issues Resolved Before Trial**

Before trial, I determined some issues of infringement:

- AmpFlSTR COfiler PCR amplification Kit infringes claims 23 and 27 of the '598 Patent and claim 42 of the '984 Patent;

- AmpFlSTR Profiler PCR Amplification Kit infringes claims 10,23-24,27 and 33 of the '598 patent and claim 42 of the '984 patent;

- AmpFlSTR Identifiler PCR Amplification Kit infringes claims 10, 23-24 and 27 of the '598 patent, claims 18-19 and 21-23 of the '235 Patent, claim 5 of the '771 Patent and claim 42 of the '984 patent;

- AmpFlSTR Profiler Plus PCR Amplification Kit infringes claim 42 of the '984 patent;

- AmpFlSTR Profiler Plus ID PCR Amplification Kit infringes claim 42 of the '984 patent;

- AmpFlSTR Yfiler PCR Amplification Kit infringes claim 42 of the '984 patent;

- AB Minifiler PCR Amplification Kit infringes claim 42 of the '984 Patent; -

5

- AB SGM Plus PCR Amplification Kit infringes claim 42 of the '984 Patent;

- AB SEfiler Kit infringes claim 42 of the '984 Patent;

- AB SEfiler Plus Kit infringes claim 42 of the '984 Patent;

- NGM PCR Amplification Kit ( 1000 and 2000) infringes claim 42 of the '984 Patent;

- NGM SElect Kit infringes claim 42 of the '984 Patent;

- Identifiler Plus Kit infringes claim 42 of the '984 Patent, claim 5 of the '771 Patent, claims 18, I 9, 21, 22 and 23 of the '235 Patent, claims I 0, 23, 24, 2 7 and 33 of the '598 Patent;

- Identifiler Direct Kit infringes claim 42 of the '984 Patent, claim 5 of the '771 Patent, claims 18, 19, 21,22 and 23 of the '235 Patent, claims 10, 23, 24,27 and 33 of the '598 Patent;

- AB Green I PCR Amplification Kit infringes claim 42 of the '984 Patent and claims 23 and 27 of the '598 patent;

- Blue PCR Amplification Kit infringes claim 42 of the '984 Patent; and

- COfiler + Profiler Plus Kit infringes claim 42 of the '984 and claims 23 and 27 of the '598 Patent.

You are to consider these matters concluded, and must accept without question that determination.

## DAMAGES

### General

On the damages questions, the party asking for damages has the burden of convincing you, by the preponderance of the evidence, both that he or she has been injured or damaged and the amount of the damages.

The party seeking damages, here, Plaintiff, need not produce evidence that is as exact as the evidence needed to support findings on other questions in the verdict. Determining damages involves the consideration of many different factors that cannot be measured precisely. In determining the damages you must base your answer on evidence that reasonably supports your determination of damages under all of the circumstances of the case. You should award as damages the amount of money that you find fairly and reasonably compensates the named party for his or her injuries.

Do not measure damages by what the lawyers ask for in their arguments. Their opinions as to what damages should be awarded should not influence you unless their opinions are supported by the evidence. It is your job to determine the amount of the damages sustained from the evidence you have seen and heard. Examine that evidence carefully and impartially. Do not add to the damage award or subtract anything from it because of sympathy to one side or because of hostility to one side. Do not make any deductions because of a doubt in your minds about the liability of any of the parties.

### Date Damage Begin

Damages may be awarded by you for any infringement by defendants of plaintiff's patented invention that occurred on or after August 29, 2006.

**License Agreement**

In 2006, plaintiff and defendants entered into a license agreement that gave defendants the right to make, use, sell, offer to sell or import the AmpFlSTR® kits in particular fields. That agreement authorizes defendants to practice the patents at issue in this case for (1) use in, or preparation for, legal proceedings, or ~~(b)~~ (2) analysis of biological specimens for the identification of individuals~~.~~, and (3) paternity determination.

I have determined that ~~some of~~ among the uses of the kits sold by defendants, some are not ~~authorized~~ permitted under that license agreement because those uses are outside the particular fields set forth in the agreement as the identity of the individual is either already known or irrelevant to the applications at issue. There may be other uses outside the license. ~~These~~ The uses I have already found that are outside the scope of the license ~~are~~ include:

(1) Chimerism (which involves determining the relative amount present of two different types of DNA);

(2) Classifying molar specimens (which involves determining whether a mole is present and what type it is);

(3) Cell line authentication (which involves a determination of whether two cell lines are unique);

(4) Determination of fetal sex;

(5) Cancer analysis~~; and~~

(6) Genetic research~~.~~;

(7) Forensic Training, Teaching and Research;

8

(8) Maternal Cell Contamination; and

(9) Sample tracking.

In answering Question ~~No.4~~ No. 2, you must determine the amount of defendants' kit sales that were ~~authorized~~ permitted by the license agreement.

**Lost profits**

Question ~~No. 6~~No. 4 asks what profits, if any, plaintiff lost as a result of defendants' infringing sales that were not permitted by the license agreement. In answering this question, you may consider only those sales from Question ~~No. 5~~ No. 3. Those sales are the infringing sales for purposes of Question 4 and Question 5. ~~that were not permitted by the 2006 license agreement.~~

To recover lost profits for infringing sales, plaintiff must show that:

1.      There is a reasonable probability that plaintiff would have made additional sales of its own patented products but for defendants' infringing sales of the kits.

2.      The amount of profit plaintiff would have made on those sales. Plaintiff does not need to prove this amount with precision.

One, though not the only way that Plaintiff may establish that it is reasonably probable that it would have made additional sales of the patented product is by proving two things:

1.      Plaintiff and defendant are the only suppliers for the product in the market; and

2.      Plaintiff was capable of making all of the sales made by defendant.

If plaintiff proves these things, it is entitled to recover its lost profits on all of the infringing sales made by defendant.

<u>An alternative way that</u> Plaintiff may establish that it is reasonably probable that it would have made additional sales of its own patented products if defendants had not sold its infringing product by proving the following three things:

1.   There was a demand for defendants' infringing kits;

2.   There was no acceptable, non-infringing substitute for defendants' infringing kits;

3.   Plaintiff was capable of satisfying the demand.

Demand for the patented product can be proven by significant sales of plaintiffs patented product. Demand for the patented product can also be proven by significant sales of defendants' product containing the patented features. However, if you find that defendants generated new or different markets by sales or marketing efforts because of features other than those claimed by plaintiff, the sales of defendants' products cannot establish a demand for the patented product.

An "acceptable, non-infringing substitute" is a product that has the advantages of the patented invention that were important to the purchasers of defendants' kits. If purchasers of defendants' kits were motivated to purchase that product because of features that were available only from that product, then other products are not acceptable substitutes, even if they otherwise competed with plaintiffs and defendants' products.

Plaintiff is only entitled to lost profits for sales it could have actually made. You should consider whether Plaintiff has proven that it had the manufacturing capacity and the marketing capability to make the sales it says it lost. Plaintiff must prove that it was more probable than not that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for the infringement. Plaintiff also must prove that it had the capability to market and sell the additional patented products.

**Reasonable Royalty**

Question No. 7 No. 5 asks what amount of money is a reasonable royalty for plaintiff.

Plaintiff should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages. Answer this question only if you find that plaintiff has not proven its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales.

A royalty is a payment made to the owner of a patent by someone else so that he can make, use, sell or import the patented invention. A "reasonable royalty" is the amount plaintiff and defendants would have agreed upon as a royalty for practicing the patented inventions at the time defendants' infringement began.

In determining a reasonable royalty, you should assume that plaintiff would have been willing to allow defendants to make, use, sell and import the patented invention and that defendants would have been willing to pay plaintiff to do so. You should take into account what plaintiffs and defendants' expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. You should assume that both plaintiff and defendants would have believed that plaintiffs patent was valid and infringed. You should also assume that defendants would have been willing to pay, and plaintiff would have been willing to accept, the reasonable royalty they negotiated. Your role is to determine what plaintiff and defendants would have agreed upon if they had negotiated in this manner, not just what either plaintiff or defendants would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

- Royalties that others paid to plaintiff for the patented invention;

11

- Royalties that defendants paid to others for comparable patents;

- Whether plaintiff had a policy of licensing or not licensing the patents;

- Whether plaintiff and defendants are competitors;

- The duration of the patent and the license, as well as the terms and scope of the license;

- Whether use of the patented invention helps to make sales of other products or services;

- Whether the product made using the patent is commercially successful, as well as its profitability;

- The advantages of using the patented invention over products not covered by the patent;

- The extent of defendants' use of the patented invention and the value of that use to defendants;

-Any royalty amounts that are customary for similar or comparable patented inventions;

- Expert opinions regarding what would be a reasonable royalty.

- The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

- The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales.

- The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

**Precision in Calculating Damages Not Required; Doubts Resolved Against Infringer**

Plaintiff is required to prove the amount of its lost profits to a reasonable probability and may not recover amounts that are speculative.  However, mathematical certainty is not required,

and if the reason plaintiff has difficulty in proving the amount of its lost profits is defendant did not maintain adequate records, then you should resolve any doubt as to the amount of lost profits in plaintiff's favor.  It will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result may be only approximate.  When the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer.


Authority

The first two sentences stating that plaintiff must prove lost profits but doubts due to inadequate records are to be resolved against the defendant are taken directly, without modification, from the Federal Civil Jury Instructions of the Seventh Circuit (2009): 11.4.3 Lost Profits.  The rule that doubts due to inadequate records are to be resolved against the defendant is also clearly supported in the case law (*See, e.g., Story Parchment Co.*, 282 U.S. at 563; *Westinghouse*, 225 U.S. at 620; *DSU Medical Corp.*, 471 F.3d at 1309; *Kaufman*, 926 F.2d at 1140-41; *Gyromat*, 735 F.2d 549; *Paper Converting Machine*, 745 F.2d at 22; *Lam*, 718 F.2d at 1065); *Computing Scale Co. v. Toledo Scale Co.*, 279 F. 648, 673 (7th Cir. 1921) ("And the first fruits of the *Westinghouse* decision should be this: If a manufacturer, knowing of a patent, decides to chance an unlicensed use, he should realize that he may be caught by a final decree on the merits and be ordered to respond accordingly; and, so realizing, he should be held to the duty of keeping separate and accurate records of all his infringing acts; and, on his failure to keep such records, the court, in measuring the damages on account of his trespasses, should resolve all doubts against him").

As to the sentence added regarding evidence showing damages as a matter of just and reasonable inference, *See LAM, Inc.*, 718 F.2d 1065 (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931); *Nickson Industries, Inc. v. Rol Mfg Co.*, 847 F.2d 795, 799 (Fed. Cir. 1988) (agreeing that a "reasonable approximation" is acceptable).

The last sentence regarding resolution of doubts against the infringer more generally is adapted from the Federal Civil Jury Instructions of the Seventh Circuit (2009): 11.4.3 Lost Profits ("Plaintiff does not need to prove this amount with precision, and if there are uncertainties regarding the specific amount of lost profits, you may resolve those uncertainties against Defendant"); *See also* Committee Comment 2, "Once a patentee shows causation, 'the trial court may resolve doubts underlying the precise measurement of damages against the infringer.'" (*quoting Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996)); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931) ("Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts . . . [T]he risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party"); *Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co.*, 225 U.S. 604, 620 (1912) ("On established principles of equity, and on the plainest principles of justice, the guilty trustee cannot take advantage of his own wrong.  The fact that he may lose something of his own is a

13

misfortune which he has brought upon himself."); *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1309, 81 U.S.P.Q.2d 1238, 1250 (Fed. Cir. 2006) ("[T]his court will resolve 'any doubts about the amount … against the infringer.'" (citations omitted); *Kaufman Co., Inc. v. Lantech, Inc.*, 926 F.2d 1136, 1140-41, 17 U.S.P.Q.2d 1828 (Fed. Cir. 1991) ("Any doubts regarding the calculatory precision of the damage amount must be resolved against the infringer . . . . *Lam* and *Gyromat* both represent the pervading principle that doubt in ascertaining appropriate damages comes down against the infringer."); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549 (Fed. Cir. 1984); *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22, 223 U.S.P.Q. 591 (Fed. Cir. 1984) ("[F]undamental principles of justice require us to throw the risk of any uncertainty upon the wrongdoer instead of upon the injured party"); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065, 219 U.S.P.Q. 670 (Fed. Cir. 1983) ("When the amount of the damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer"); *Kori Corp. v. Wilco Marsh Buggies*, 761 F.2d 649, 655 (Fed. Cir. 1985) ("Fundamental principles of justice require us to throw any risk of uncertainty upon the wrongdoer rather than upon the injured party."); *Nickson Induustries, Inc. v. Rol Mfg Co.*, 847 F.2d 795, 799 (Fed. Cir. 1988) ("We agree that where it is 'impossible to make a mathematical or approximate apportionment' between infringing and noninfringing items, the infringer must bear the burden and the entire risk."); *Automotive Parts Co. v. Wisconsin Axle Co.*, 81 F.2d 125, 127-28 (6th Cir. 1925) ("The appellant ought to have records of its sales and customers from which the purpose for which the parts were bought could be ascertained . . ."); *American Sterilizer Co. v. Sybron Corp.*, 526 F.2d 542, 548-549 (3rd Cir. 1975) ("[W]here the profits of the infringer attributable to infringement and noninfringement cannot be separated, the law places the loss on the wrongdoer. This same result follows where the infringer fails to keep proper records. . . . The burden of proof in such a case is shifted to the infringer or poor record keeper. . . . Logic dictates that the principles held applicable to patent infringement cases should similarly be held to apply to situations involving patent license agreements" (quotations, citations, and footnote omitted)).

### **Willfulness**

The Court has already determined that the Defendants' kit sales infringed Promega's patents. You must determine if that infringement was willful. Not all infringement is willful. To succeed on its contention that defendants infringed the patent willfully, plaintiff must prove two things by clear and convincing evidence:

1.       There was a high likelihood that defendants' actions constituted infringement of a valid patent. In making this determination, you may not consider defendants' actual state of mind. Instead, you should consider whether defendants' had legitimate or credible defenses to infringement or validity, even if those defenses ultimately were not successful.

2.      Defendants knew of the high likelihood that it was infringing a valid patent, or this likelihood was so apparent that defendants should have known of it. In deciding whether defendants satisfied the state-of-mind part of the test, you should consider all circumstances bearing on this question.

**Reckless – Defined**

Willfulness may be shown by a showing of recklessness. Acts are reckless when they represent a (~~gross~~) departure from ordinary care in a situation where a high (~~degree~~) likelihood of (~~danger~~) infringement is apparent.  If the defendant was in a position in which (~~he~~) they certainly should have known that (~~his~~) their conduct would violate the plaintiff's rights, and proceeded to act in disregard of that knowledge and of the harm or the risk of harm that would result to the plaintiff, then (~~he~~) the defendant acted with reckless disregard for the plaintiff's rights.  Where there is culpable intent and deliberate or negligent wrongdoing that is evidence of recklessness.

**Source:**  Modified from Standard Jury Instructions–Civil, "Punitive Damages" (Used in cases before the Honorable Barbara B. Crabb, District Judge); Also added is language from the Courts, November 29, 2011 Order, p.31, citing *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,249 F3d 1341, 1356 (Fed. Cir. 2001).

**Acts of Employees are Acts of a Corporation**

In determining whether Life Technologies knew or should have known something in acting recklessly, you may assume that all acts of Life Technologies' employees acting within the scope of their employment are acts of Life Technologies.

An employee acts within the scope of their employment when they act at least in part with the intent to benefit their employer.

Authority

*Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 969 (N.D. Ill. 2002) ("There can be no doubt… that a corporation acts only through its directors, officers, and agents (citing *Jansen v. Packaging Corp. of Am.,* 123 F.3d 490, 496 (7th Cir.1997) (a corporation acts only through its agents); 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 30 (rev.ed.1999) …  A corporation is therefore liable for the intentional acts of its agents acting within the scope of his authority." (citing *Jansen,* 123 F.3d at 496 (citations omitted); *see also* Restatement (Second) of Agency § 265)).


## **Knowledge of a Corporation**

In considering what knowledge Life Technologies had or should have had that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent, you may assume that Life Technologies had all knowledge obtained by any of its employees acting within the scope of their employment.

An employee acts within the scope of their employment when they act at least in part with the intent to benefit their employer.


Authority

*United States v. One Parcel of Land Located at 7326 Highway 45 N., Three Lakes, Oneida County, Wis.*, 965 F.2d 311, 316-17 (7th Cir. 1992) ("Where a corporate agent obtains knowledge while acting in the scope of his agency, he presumably reports that knowledge to his corporate principal so the court imputes such knowledge to a corporation (citing W. Fletcher, 3 Corporations § 790 and § 793) … Only knowledge obtained by corporate employees acting within the scope of their employment is imputed to the corporation (citing*, e.g., United States v. Bank of New England, N.A.,* 821 F.2d 844, 856 (1st Cir.1987), *cert. denied,* 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 356 (1987) (discussing general agency principles in the context of corporate criminal liability)) … acting within the scope of employment means 'with intent to benefit the employer.'" (citing *D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964, 967 (7th Cir.1988), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988); *accord United States v. Cincotta,* 689 F.2d 238, 241-42 (1st Cir.1982), *cert. denied sub nom. Zero v. United States,* 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982) (acting within the scope of agency defined as acting as authorized and motivated at least in part by an intent to benefit the corporation))).

**Prior Inconsistent Statements**

<u>You may consider statements given by Daniel Hall before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony.</u>

~~With respect to other witnesses, the law is different.  If you decide that, before the trial, one of these witnesses made a statement [not under oath] [or acted in a manner] that is inconsistent with his testimony here in court, you may consider the earlier statement [or conduct] only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.~~

~~[In considering a prior inconsistent statement[s] [or conduct], you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.]~~

**Source:**  Modified from Federal Civil Jury Instructions of the Seventh Circuit, 1.14 Prior Inconsistent Statements [or Acts].

**<u>Selection of Presiding Juror; Communication with the Judge; Verdict</u>**

When you go to the jury room to begin considering the evidence in this case you should first select one of the members of the jury to act as your presiding juror. This person will help to guide your discussions in the jury room.

You are free to deliberate in any way you decide or select whomever you like as a presiding juror. When thinking about who should be presiding juror, you may want to consider the role that the presiding juror usually plays. He or she serves as the chairperson during the deliberations and has the responsibility of insuring that all jurors who desire to speak have a chance to do so before any vote. The presiding juror should guide the discussion and encourage all jurors to participate. I encourage you at all times to keep an open mind if you ever disagree or come to conclusions that are different from those of your fellow jurors. Listening carefully and thinking about the other juror's point of view may help you understand that juror's position better or give you a better way to explain why you think your position is correct.

Once you are in the jury room, if you need to communicate with me, the presiding juror will send a written message to me. However, don't tell me how you stand as to your verdict.

As I have mentioned before, the decision you reach must be unanimous; you must all agree.

When you have reached a decision, the presiding juror will sign the verdict form, put a date on it, and all of you will return with the verdict into the courtroom.

**SPECIAL VERDICT FORM**

We, the jury, for our special verdict, do find as follows:

Question No. 1: ~~What is the total dollar amount of kit sales by defendants that infringed plaintiff Promega Corporation's patents?~~ What is the total dollar amount of Defendants' sales of STR kits that were a) made, used or sold within the United States or b) assembled by Defendants outside the United States with a substantial portion of the components of such kits supplied by Defendants from the United States

Answer: _____

Answer Question ~~No. 4~~ No. 2

Question ~~No.4~~ No. 2: ~~Of the sales in your answer to Question No. 1, what is the total dollar amount of defendant's kit sales that were permitted by the 2006 licensing agreement?~~ Of the sales in your answer to Question No. 1, what is the total dollar amount of defendants' ~~kit~~ sales of ~~the accused AMPF1STR~~ STR kits that were permitted by the 2006 licensing agreement?

Answer: $_____

Answer Question ~~No. 5~~ No. 3

Question ~~No. 5~~ No. 3: Subtract the dollar amount in Question No. 2 from the dollar amount in Question No. 1.

Answer:  $_____

Question ~~No. 6~~ No. 4

Question ~~No. 6~~ No. 5:     What profits, if any, did plaintiff lose as a result of defendants' sales in Question No. 3?

Answer:  $_____

20

Answer Question ~~No. 7~~ No. 5

Question ~~No. 7~~ No. 6: For those sales from Question ~~No. 5~~ No. 3 for which plaintiff has not proven entitlement to lost profits, what amount of money is a reasonable royalty for plaintiff?

Answer:  $_____

Answer Question ~~No. 8~~ No. 6

Question ~~No. 8~~ No. 6: Was defendants' infringement willful?

Answer:  _____

(Yes or No)

Dated:  February 14, 2012             RESPECTFULLY SUBMITTED,


**TROUPIS LAW OFFICE, LLC**


By:   /s/ James R. Troupis
      James R. Troupis, SBN 1005341
      Peter G. Carroll (Admitted *Pro Hac)*
      Stewart W. Karge (Admitted *Pro Hac)*
      Sarah E. Troupis, SBN 1061515
      Brandon M. Lewis, SBN 1086824
      8500 Greenway Blvd., Suite 200
      Middleton, Wisconsin 53562
      ph. 608-807-4096
      jrtroupis@troupislawoffice.com

      *Attorneys for Plaintiff Promega Corporation*

22