## II. POST-TRIAL INSTRUCTIONS

### Introduction

Ladies and Gentlemen of the Jury:

Now that you have heard the evidence and the arguments, I will give you the instructions that will govern your deliberations in the jury room. It is my job to decide what rules of law apply to the case and to explain those rules to you. It is your job to follow the rules, even if you disagree with them or don't understand the reasons for them. You must follow all of the rules; you may not follow some and ignore others.

The decision you reach in the jury room must be unanimous. In other words, you must all agree on the answer to each question.

Your deliberations will be secret. You will never have to explain your verdict to anyone.

If you have formed any idea that I have an opinion about how the case should be decided, disregard that idea. It is your job, not mine, to decide the facts of this case.

The case will be submitted to you in the form of a special verdict consisting of 7 questions. In answering the questions, you should consider only the evidence that has been received at this trial. Do not concern yourselves with whether your answers will be favorable to one side or another, or with what the final result of this lawsuit may be.

Note that certain questions in the verdict are to be answered only if you answer a preceding question in a certain manner. Read the introductory portion of each question very carefully before you undertake to answer it. Do not answer questions needlessly.

### Answers Not Based on Guesswork

If, after you have discussed the testimony and all other evidence that bears upon a particular question, you find that the evidence is so uncertain or inadequate that you have

to guess what the answer should be, then the party having the burden of proof as to that question has not met the required burden of proof. Your answers are not to be based on guesswork or speculation. They are to be based upon credible evidence from which you can find the existence of the facts that the party must prove in order to satisfy the burden of proof on the question under consideration.

### Burden of Proof—Preponderance of the Evidence

When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true. On Questions Nos. 2, 5 and 6 in the special verdict, plaintiff has the burden to prove the answer by a preponderance of the evidence. On Question No. 3, defendants have the burden to prove the answer by a preponderance of the evidence. You should base your decision on all of the evidence, regardless which party presented it.

### Burden of Proof—Clear and Convincing

In answering Question No. 7, the burden is on plaintiff to convince you to a reasonable certainty by evidence that is clear and convincing that the answer should be "yes."

# DAMAGES

## General

On the damages questions, the party asking for damages has the burden of convincing you, by the preponderance of the evidence, both that it has been injured or damaged and the amount of the damages.

The party seeking damages need not produce evidence that is as exact as the evidence needed to support findings on other questions in the verdict. Determining damages involves the consideration of many different factors that cannot be measured precisely. In determining the damages you must base your answer on evidence that reasonably supports your determination of damages under all of the circumstances of the case. You should award as damages the amount of money that you find fairly and reasonably compensates the named party for his or her injuries.

Do not measure damages by what the lawyers ask for in their arguments. Their opinions as to what damages should be awarded should not influence you unless their opinions are supported by the evidence. It is your job to determine the amount of the damages sustained from the evidence you have seen and heard. Examine that evidence carefully and impartially. Do not add to the damage award or subtract anything from it because of sympathy to one side or because of hostility to one side. Do not make any deductions because of a doubt in your minds about the liability of any of the parties.

## Infringement

I have found previously that all the STR kits that defendants sold infringed plaintiff's patents.

### Date Damages Began

You may award damages for any infringement by defendants of plaintiff's patented invention that you find occurred on or after August 29, 2006 through January 2012.

### Question No. 1.

As you can see from the verdict, the court has answered Question No. 1 because the parties have stipulated that the answer to this question is $707,618,247.

### Question No. 2.

Question No. 2 asks you to determine the total dollar value of the defendants' United States sales of STR kits. "United States sales" include all kits made, used, offered for sale, sold within the United States or imported into the United States, as well as kits made outside the United States where a substantial portion of the components are supplied from the United States.

### License Agreement

In 2006, plaintiff and defendants entered into a license agreement that gave defendants the right to make, use, sell, offer to sell or import the STR kits in particular fields. That agreement permits defendants to practice the patents at issue in this case for (1) use in, or preparation for, legal proceedings or (2) analysis of biological specimens for the identification of individuals and for paternity determinations. "Use in, or preparation for" legal proceedings includes ongoing training of forensic laboratory employees and population studies undertaken to increase the accuracy of DNA matches.

I have determined that some of the uses of the kits sold by defendants are not permitted under that license agreement because those uses are outside the particular fields

set forth in the agreement. These uses are:

(1) Chimerism (which involves determining the relative amount present of two different types of DNA);

(2) Classifying molar specimens (which involves determining whether a mole is present and what type it is);

(3) Cell line authentication (which involves a determination of whether two cell lines are unique);

(4) Determination of fetal sex;

(5) Cancer analysis;

(6) Genetic research;

(7) Non-casework-related forensic applications such as general research in forensics or teaching and training of persons not employed in a forensic laboratory;

(8) Maternal cell contamination; and

(9) Sample tracking.

In answering Question No. 3, you must determine the dollar amount of defendants'

kit sales that were permitted by the license agreement.

### Question No. 4

Question No. 4 asks you merely to subtract your answer in Question No. 3 from the answer in Question No. 2.

### Question No. 5 - Lost Profits

Question No. 5 asks what profits, if any, plaintiff lost as a result of defendants' infringing sales that were not permitted by the license agreement. In answering this question, you may consider only those sales from Question No. 4.

To recover lost profits for infringing sales, plaintiff must show that:

1. There is a reasonable probability that plaintiff would have made additional sales of its own patented products but for defendants' infringing sales of the kits.
2. The amount of profit plaintiff would have made on those sales. Plaintiff does not need to prove this amount with precision.

Plaintiff can recover lost profits if it can establish that it is reasonably probable that it would have made additional sales of its own patented products if defendants had not sold their infringing products. To do this, it must prove the following two things:

1. Plaintiff and defendant are the only suppliers for the product in the market; and
2. Plaintiff was capable of making all of the sales made by defendants.

Alternatively, plaintiff can recover lost profits if it can establish that it is reasonably

probable that it would have made additional sales of its own patented products if defendants had not sold its infringing product. To do so, it must prove the following three things:

1. There was a demand for defendants' infringing kits;
2. There was no acceptable, non-infringing substitute for defendants' infringing kits;
3. Plaintiff was capable of making all of the sales made by defendant.

Demand for the patented product can be proven by significant sales of defendants' product containing the patented features. However, if you find that defendants generated new or different markets by sales or marketing efforts because of features other than those claimed by plaintiff, the sales of defendants' products cannot establish a demand for the patented product.

An "acceptable, non-infringing substitute" is a product that has the advantages of the patented invention that were important to the purchasers of defendants' kits. If purchasers of defendants' kits were motivated to purchase that product because of features that were available only from that product, then the other products are not acceptable substitutes, even if they otherwise competed with plaintiff's and defendants' products.

Plaintiff is entitled to lost profits only for sales it could have actually made. You should consider whether plaintiff has proven that it had the manufacturing capacity and the marketing capability to make the sales it says it lost. Plaintiff must prove that it was more probable than not that it could have made the additional products it says it could have sold but for the infringement or that it could have had someone else make the additional products for it. Plaintiff also must prove that it had the capability to market and sell the additional patented products.

### Reasonable Royalty

Question No. 6 asks what amount of money is a reasonable royalty for plaintiff.

Plaintiff should be awarded a reasonable royalty for all infringing United States sales (as that term has been defined for you in these instructions) for which it has not been awarded lost profits damages. Do not answer this question if you have found that plaintiff has proven its entire claim for lost profits. Answer it only if you find that plaintiff has not proven all or any part of its claim for lost profits. Again, in determining a reasonable royalty, you may consider only those sales from Question No. 4 that were not permitted by the 2006 license agreement.

A royalty is a payment made to the owner of a patent by someone else so that he can make, use, sell or import the patented invention. A "reasonable royalty" is the amount plaintiff and defendants would have agreed upon as a royalty for practicing the patented inventions at the time defendants' infringement began.

In determining a reasonable royalty, you should assume that plaintiff would have been willing to allow defendants to make, use, sell and import the patented invention and that defendants would have been willing to pay plaintiff to do so. You should take into account what plaintiff's and defendants' expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. You should assume that both plaintiff and defendants would have believed that plaintiff's patent was valid and infringed. You should also assume that defendants would have been willing to pay, and plaintiff would have been willing to accept, the reasonable royalty they negotiated. Your role is to determine what plaintiff and defendants would have agreed upon if they had negotiated in this manner, not just what either side would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

8

- Royalties that others paid to plaintiff for the patented invention;
- Royalties that defendants paid to others for comparable patents;
- Whether plaintiff had a policy of licensing or not licensing the patents;
- Whether plaintiff and defendants are competitors;
- The duration of the patent and the license, as well as the terms and scope of the license;
- Whether use of the patented invention helps to make sales of other products or services;
- Whether the product made using the patent is commercially successful, as well as its profitability;
- The advantages of using the patented invention over products not covered by the patent;
- The extent of defendants' use of the patented invention and the value of that use to defendants;
- Any royalty amounts that are customary for similar or comparable patented inventions;
- Expert opinions regarding what would be a reasonable royalty.

### Willfulness

Not all breaches of a contract are willful. To succeed on its contention that defendants breached the licensing agreement willfully, plaintiff must prove two things by clear and convincing evidence:

1. There was a high likelihood that defendants' actions would breach the parties' licensing agreement. In making this determination, you may not consider defendants' actual state of mind. Instead, you should consider whether defendants had objectively legitimate or credible defenses for their actions, even if those defenses ultimately were not successful. Only if you find that the defenses were not objectively legitimate or credible, do you need to consider the second showing that plaintiff must make.

2. Defendants knew of the high likelihood that they were breaching the licensing agreement or this likelihood was so apparent that defendants should have known of it. In deciding whether defendants satisfied the state-of-mind part of the test, you should consider all circumstances bearing on this question.

### Selection of Presiding Juror; Communication with the Judge; Verdict

When you go to the jury room to begin considering the evidence in this case you should first select one of the members of the jury to act as your presiding juror. This person will help to guide your discussions in the jury room.

You are free to deliberate in any way you decide or select whomever you like as a presiding juror. When thinking about who should be presiding juror, you may want to consider the role that the presiding juror usually plays. He or she serves as the chairperson during the deliberations and has the responsibility of insuring that all jurors who desire to speak have a chance to do so before any vote. The presiding juror should guide the discussion and encourage all jurors to participate. I encourage you at all times to keep an open mind if you ever disagree or come to conclusions that are different from those of your fellow jurors. Listening carefully and thinking about the other juror's point of view may help you understand that juror's position better or give you a better way to explain why you think your position is correct.

Once you are in the jury room, if you need to communicate with me, the presiding juror will send a written message to me. However, don't tell me how you stand as to your verdict.

As I have mentioned before, the decision you reach must be unanimous; you must all agree.

When you have reached a decision, the presiding juror will sign the verdict form, put

10

a date on it, and all of you will return with the verdict into the courtroom.