IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PROMEGA CORPORATION,

                              OPINION and ORDER

               Plaintiff,

        and                            10-cv-281-bbc

MAX-PLANCK-GESELLSCHAFT zur
FORDERUNG der WISSENSCHAFTEN E.V.,

               Involuntary Plaintiff,

        v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC. and
APPLIED BIOSYSTEMS, LLC,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Promega Corporation sued defendants Life Technologies Corporation,
Applied Biosystems, LLC and Invitrogen IP Holdings, Inc. for infringing and inducing
infringement of five patents related to the copying of sequences of a DNA strand.  The
action grew out of a licensing agreement between the parties under which defendants Life
Technologies and Applied Biosystems could sell plaintiff's patented products within certain
permitted fields; plaintiff alleged that defendants were making, using and selling products
into fields such as clinical diagnostics, clinical research and research markets, which were not
covered by the licensing agreement.  A jury found in plaintiff's favor and awarded more than

$50 million in damages.  Dkt. #567.

Various motions from both sides are now before the court.  Plaintiff seeks enhanced damages, attorney fees, costs and a permanent injunction.  Dkt. ##593, 594, 599 and 601. Defendants argue that they are entitled to judgment in their favor, both because they proved their equitable defenses of estoppel and laches and because plaintiff failed as a matter of law to prove infringement under either of the theories it asserted at trial.  In the alternative, they ask for various limitations on plaintiff's damages and for a new trial.  Dkt. ##578, 580, 582, 584, 586 and 588.

Although I am persuaded that defendants failed to prove their equitable defenses, I agree with them that they are entitled to judgment as a matter of law under Fed. R. Civ. P. 50 because plaintiff failed to prove infringement under 35 U.S.C. § 271(a) or (f)(1), the only two theories plaintiff is asserting.   The parties agree that plaintiff's evidence at trial relied on the assumption that *all* of the accused products defendants sold during the relevant time frame (between August 29, 2006 and the end of January 2012) were made in the United States, imported into the United States or made with a substantial portion of components from the United States, as required by § 271(a) and (f)(1).  Because plaintiff failed to submit admissible evidence at trial showing that all the sales at issue satisfied one or more of these requirements, I cannot sustain the verdict.   In addition, plaintiff failed to show that defendants engaged in active inducement, which is a separate requirement of § 271(f)(1). Accordingly, I am granting defendants' Rule 50 motion and directing the clerk of court to enter judgment in their favor.

OPINION

## I.  EQUITABLE DEFENSES

Defendants seek judgment on their equitable defenses (and counterclaims) of estoppel and laches, which must be decided by the court.  Agfa Corp. v. Creo Products Inc., 451 F.3d 1366, 1375 (Fed Cir. 2006).  Before trial, I questioned defendants' failure to raise these defenses at summary judgment, but I concluded that the defenses were not waived, in accordance with circuit law.  Dkt. #486 at 2-3 (citing Diversey Lever, Inc. v. Ecolab, Inc., 191 F.3d 1350 (Fed. Cir. 1999), and Pandrol USA, LP v. Airboss Railway Products, Inc., 320 F.3d 1354 (Fed. Cir. 2003)).  I did not hold a separate trial on the defenses because defendants represented to the court that all of their evidence related to the defenses would be presented during the jury trial.  Dkt. #520 at 2.  Defendants have not altered that position now, but both sides have submitted briefs on the question whether the evidence at trial proved that plaintiffs' infringement claims should be dismissed under one or both defenses.

### A.  Equitable Estoppel

To prevail on their estoppel defense, defendants must prove three elements:  (1) plaintiff engaged in "misleading conduct" that led defendants to believe reasonably that plaintiff did not intend to enforce the patents against defendants; (2) defendants relied on that conduct; and (3) defendants would be materially prejudiced if the plaintiff were permitted to proceed with its charge of infringement.  Aspex Eyewear Inc. v. Clariti Eyewear,

3

Inc., 605 F.3d 1305, 1310 (Fed. Cir. 2010). Because I conclude that defendants have failed to prove the first element, I need not consider the other two.

Defendants do not argue that plaintiff made any misleading statements to them. Rather, defendants say that plaintiff misled them by failing to object to their allegedly illegal sales even though it knew that defendants were infringing by making sales that were not authorized under the terms of the parties' 2006 license.

A patentee's inaction may constitute misleading conduct, but it "must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned. . . . In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years. " A.C. Aukerman Co. v. R.L. Chaides Construction Co., 960 F.2d 1020, 1042 (Fed. Cir. 1992). See also Aspex Eyewear, 605 F.3d at1310 (finding estoppel when plaintiff failed to take action against defendant after accusing it of infringement); ABB Robotics, Inc. v. GMFanuc Robotics Corp., 52 F.3d 1062, 1064 (Fed. Cir. 1995) (objection of infringement by parent company followed by silence); Hottel Corp. v. Seaman Corp., 833 F.2d 1570, 1574 (Fed. Cir.1987) ("In the cases that have applied intentionally misleading silence in the patent infringement context, a patentee threatened immediate and vigorous enforcement of its patent right but then did nothing for an unreasonably long time."). In this case, defendants cite no evidence that plaintiff's inaction was preceded by a threat to sue or an accusation of infringement.

Defendants rely on a nonpatent case in which the court found that a contractor was

equitably estopped from suing the Secretary of the Navy for failing to submit orders by mail rather than electronically, even though the contract at issue required mail delivery.  Mabus v. General Dynamics C4 Systems, Inc., 633 F.3d 1356, 1361-63 (Fed. Cir. 2011).  In that case, the court concluded that the contractor had misled the Navy by accepting 13 electronically delivered orders before refusing later orders submitted in the same way. Defendants argue that the situation in this case is similar because plaintiff continued accepting royalty payments under the licensing agreement even though plaintiff sold kits that its customers used for purposes not permitted by the licensing agreement.

Even if I assume that accepting royalty payments for unlicensed sales could be a ground for estoppel, defendants' reliance on Mabus is misplaced because they have failed to meet their burden to show that plaintiff *knew* it was accepting payments for unlicensed sales. Randall Dimond, plaintiff's vice president, testified that he was not aware that defendants were selling outside the licensed fields until the fall of 2009, only a few months before plaintiff filed this lawsuit.  Tr. Trans., dkt. #544, at 18.  Defendants cite no statements from plaintiff showing that it was aware that defendants were failing to limit the use of its kits to licensed purposes.  Rather, they ask the court to infer plaintiff's knowledge from various pieces of evidence, such as testimony that plaintiff and defendant Life Technologies both had representatives on a committee that discussed Life's use of kits for cell line authentication (a non-licensed use),  testimony from one of defendants' employees that "customers" told "us" that plaintiff told the customers that defendants' Identifiler kit was "overkill," Ortuno Dep., dkt. #348, at 144, and testimony from one of defendants' experts

in this case that he had used defendants' unlicensed kits.  Even if I assume that this evidence is admissible, it is simply too speculative to prove that plaintiff misled defendants into reasonably believing that it would not enforce its rights under the patent.  Accordingly, I conclude that defendants have failed to prove their equitable estoppel defense and counterclaim.


B.  <u>Laches</u>

To prevail on their laches defense and counterclaim, defendants must prove that plaintiff "delayed filing suit for an unreasonable and inexcusable length of time from the time it knew or reasonably should have known of its claim" and the delay prejudiced defendants.  <u>Hearing Components, Inc. v. Shure Inc.</u>, 600 F.3d 1357, 1375 (Fed. Cir. 2010). Again, this defense fails because defendants have not shown that, before filing this lawsuit, plaintiff knew or should have known for an unreasonable amount of time that defendants were infringing its patent.  Defendants cite no case in which a court concluded that a party was entitled to a laches defense under similar circumstances.  Accordingly, I am dismissing this defense as well.


II.  MOTION FOR JUDGMENT AS A MATTER OF LAW

At summary judgment, I concluded that various kits defendants sold infringed one or more claims of the five patents at issue in this case.  Dkt. #345.  The issue at trial was whether defendants had engaged in particular behavior that violated any provisions of the

patent statute.  That issue was less straightforward than in some patent infringement cases because defendants claimed that many of their kits were assembled and sold outside the United States.  Generally, foreign sales are outside the scope of the patent statute.

Plaintiff relied on two theories of infringement at trial.  First, it argued that defendants sold accused products that included components supplied from the United States, in violation of 35 U.S.C. § 271(f)(1).  Second, it argued that the accused products were manufactured in or imported into the United States, in violation of 35 U.S.C. § 271(a).  The jury found that all of the accused products defendants sold during the relevant time frame satisfied the requirements for one or both of these provisions.

In their renewed motion under Fed. R. Civ. P. 50(b), defendants argue that the evidence plaintiff presented was not legally sufficient to sustain the jury's verdict under either theory.  When reviewing a motion filed under Rule 50, the court must consider "the record as a whole to determine whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." Clarett v. Roberts, 657 F.3d 664, 674 (7th Cir. 2011).  See also Koito Manufacturing Co. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1148 (Fed. Cir. 2004) (regional circuit law applies to standard under Rule 50 motions).  Because this standard was not met for either of plaintiff's theories of infringement, I am granting defendants' motion.


A.  35 U.S.C. § 271(f)(1)

Under § 271(f)(1),

[w]hoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

Defendants argue that plaintiff failed to prove that a "substantial portion of the components" of the accused products was supplied from the United States, that defendants "actively induce[d]" the combination of components or that they did so "in a manner that would infringe the patent if such combination occurred within the United States." I will consider each of these contentions in turn.

1. Substantial portion of components

Neither side attempts to provide a comprehensive interpretation of the meaning of the word "substantial." However, defendants argue that, even when the evidence is considered in the light most favorable to plaintiff, it showed at most that *one* component of all the accused products, a polymerase, was supplied from the United States and that a single component is not a "substantial portion" as a matter of law. Although defendants do not deny that plaintiff adduced evidence that *some* of the accused products include two components from the United States, defendants say that does not help plaintiff because plaintiff did not attempt to quantify the sales of those accused products that included at least two components from the United States. Rather, plaintiff adduced evidence only as to defendants' *total* worldwide sales, so defendants are entitled to judgment as a matter of

8

law unless all of those sales fall under § 271(a) or (f)(1).

Plaintiff does not dispute defendants' last point, so I consider that to be conceded. However, plaintiff says that defendants' interpretation of § 271(f)(1) is wrong (because a single component may be "substantial") and their view of the facts is wrong as well (because a reasonable jury could find that at least two components of all of the accused products came from the United States). In addition, defendants say that plaintiff waived any argument that one component is not substantial by failing to raise it in a motion under Fed. R. Civ. P. 50(a).

a. Waiver

I disagree that defendants waived an argument regarding the proper interpretation of § 271(f)(1). In their Rule 50(a) motion, defendants argued that

> the statute requires that [plaintiff] prove a substantial portion of the components of the patented invention. I would submit, Your Honor, that for the Identifiler Kit that [plaintiff] went through the bill of materials on, there is evidence that could go to the jury for that kit. But [plaintiff] base[s] [its] entire 271(f)(1) analysis on all the remaining kits on the fact that they contained Taq DNA polymerases and that does not meet the burden of showing all or a substantial portion of the components as to those other kits.

Tr. Trans., dkt. #572, at 74. That was sufficient to put plaintiff on notice of defendants' position that a single component (the polymerase) is not a "substantial portion" of components, which is all that defendants were required to do. Extreme Networks, Inc. v. Enterasys Networks, Inc., 2008 WL 4756498, *1 (W.D. Wis. 2008) (Rule 50(a) motion "must be specific enough to give notice to the plaintiff of the hole in its case so that it can

9

attempt to put in more evidence while there is still an opportunity to do so"); see also Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n.5 (2008) ("motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury").

Plaintiff points out that defendants did not cite case law when making their Rule 50(a) motion, but I have never interpreted the rule to impose such an exacting burden on a party and plaintiff cites no authority to support that view.  If plaintiff had additional evidence that the accused products included multiple domestic components, defendants' Rule 50(a) motion was fair warning that plaintiff should come forward with that evidence before submitting its case to the jury.  Failing to cite case law does not rob the other side of an opportunity to fill the hole in its case.  Case law citations might have persuaded plaintiff of the *necessity* of presenting additional evidence, but it was not defendants' burden to convince plaintiff to try harder, only to give it a chance to do so.  Further, courts are not obligated to ignore controlling law simply because the parties fail to cite it, Elder v. Holloway, 510 U.S. 510 (1994); In re Aqua Dots Products Liability Litigation, 654 F.3d 748, 752 (7th Cir. 2011), so it would make little sense to prohibit parties from supporting their positions with additional authority in a Rule 50(b) motion.

b.  Is a single component sufficient?

With respect to the merits, plaintiff acknowledges that § 271(f)(1) consistently uses the plural term "components."  However, it argues that each use of "components" in the

provision is referring to the components of the invention as a whole rather than the components from the United States. For example, plaintiff says that it makes more sense to read the phrase "where such components are uncombined in whole or in part" as a reference to the components of all of the invention rather than just the part or parts that come from the United States because, otherwise, "[o]ne could avoid infringement under 271(f)(1) by simply combining those components of the patented invention that are to be supplied from the United States prior to shipment." Plt.'s Br., dkt. #616, at 17.

Plaintiff's reading is plausible if one reads § 271(f)(1) in isolation, but it becomes less so when viewed in conjunction with the similarly worded § 271(f)(2):

> Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f)(2).

Like § 271(f)(1), § 271(f)(2) targets products that may be manufactured and sold overseas, but include parts from the United States. For the purpose of this case, the primary difference is that § 271(f)(2) extends to "any component" of the invention rather than "all or a substantial portion of the components." (Plaintiff did not argue at trial that defendants' sales violated § 271(f)(2), presumably because it did not believe it could prove that any component was "especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use," which

is an additional element in § 271(f)(2).)

Similarly to § 271(f)(1), § 271(f)(2) uses the phrase "where such component is uncombined in whole or in part."  In that instance, the reference to the singular "component" must be to a component that is "supplied in or from the United States" rather than to the invention as a whole because § 271(f) does not apply to single component inventions.  Further, because § 271(f)(1) employs the same phrasing as § 271(f)(2) ("where such components are uncombined in whole or in part"), it follows that the term "such components" in § 271(f)(1) refers to the components from the United States as well.  Nken v. Holder, 556 U.S. 418, 426 (2009) ("[S]tatutory interpretation turns on 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole'") (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)).

As defendants point out, this conclusion is supported by the case law.  In Microsoft Corp. v. AT&T Corp., 550 U.S. 437, 454 n.16 (2007), the Supreme Court discussed § 271(f)(1) and (2), concluding that "the two paragraphs differ, among other things, on the quantity of components that must be 'supplie[d] . . . from the United States' for liability to attach."  Because § (f)(2) applies to a single component, the Court's statement that § (f)(1) and § (f)(2) "differ . . . on the quantity" of components,  suggests that § (f)(1) requires that more than one component must come from the United States.  More generally, the  Court concluded that it was improper to use policy concerns about "loopholes" to justify broad interpretations of the patent statute, both because any "loophole" in the statute "is properly left for Congress to consider, and to close if it finds such action warranted," id. at 457, and

12

because of the presumption that "our patent law operates only domestically and does not extend to foreign activities," so that any provision extending the patent law's reach into foreign territory must be construed narrowly. Id. at 455 (internal quotations omitted and alterations).  Thus, even if plaintiff is correct that it would be easier for competitors to avoid infringement under a narrow interpretation, that is not a ground for expanding the reach of the statute.

Defendants cite two other federal cases in which a court concluded that § 271(f)(1) did not extend to inventions that include only one component from the United States: Ormco Corp. v. Align Technology, Inc., 609 F. Supp. 2d 1057, 1073 (C.D. Cal. 2009); Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., No. 95 CIV 8833, 2001 WL 1263299, at *4 (S.D.N.Y. Oct. 19, 2001).  Plaintiff cites no authority to the contrary. Accordingly, I conclude that a single component is not sufficient to satisfy § 271(f)(1).

Even if § 271(f)(1) did not require multiple components to come from the United States in all cases, it seems unlikely that one component could constitute a "substantial" portion in this case when plaintiff does not dispute defendants' position that the accused products are made up of no fewer than five components. Dkt. #581 at 8. Although plaintiff points to testimony that the polymerase is a "major" component of the accused products, dkt. #558, at 45-46, it does not quantify "major" or otherwise explain what it means.

c.  Is there sufficient evidence of multiple components?

Alternatively, plaintiff argues that a reasonable jury could find that all of the accused

products include two or more components from the United States.  (Because defendants do,

I will assume that two components are a substantial portion.)  First, plaintiff cites Dimond's

answer of "no" to the question, "Has anyone at Life Technologies ever contradicted the

comment that Dr. Moehle made to you that these products are made or their components

are made in the United States?"  Tr. Trans., dkt. #555, at 61.  However, because the

question assumes various facts, Dimond's one-word answer establishes nothing.   As

defendants point out, counsel's question is referring to earlier testimony by Dimond that,

"[a]t the time of that agreement [the 2006 cross license], I was informed by Dr. Moehle [an

employee of defendants] that all of their products were made in the United States." Tr.

Trans., dkt. #545, at 27.  Even if I assume that Moehle has personal knowledge of where

defendants' products were made, Dimond's testimony is unhelpful, both because it is so

vague, referring generally to "products" rather than particular components, and because it

is irrelevant where defendants made their components when the parties entered their

agreement in 2006.  Particularly because Sandulli testified that multiple components of the

accused products have been manufactured in the United Kingdom in recent years, Tr.

Trans., dkt. #558, at 38-46, Dimond's vague testimony cannot carry the day for plaintiff.

Second, plaintiff relies on the designated deposition testimony of Michelle Shepherd,

another employee of defendants, who said that "[c]omponents of the kits are manufactured

in" the United States. Dkt. #551-1, at 129.  When asked to specify which components, she

said, "[t]he allelic ladders."  Id.  However, it is not reasonable to infer from this testimony

that all of the accused products defendants sold worldwide since 2006 included allelic

14

ladders.   Again, Shepherd's testimony is vague; she does not provide any time frame.  This is a problem in light of Sandulli's more specific testimony that defendants manufactured allelic ladders in the United States in the past, but no longer do so.  Tr. Trans., dkt. #558, at 46.  In addition, Shepherd did not testify that all of the accused kits included allelic ladders.  Rather, when asked about the origins of a kit ordered in Germany, she said that she was "only able to speak to the U.S. shipping and manufacturing," dkt. #551-1 at 130, so it is impossible to infer from her testimony anything about the origin of components in kits shipped outside the United States.  I conclude that plaintiff failed as a matter of law to prove that all of the accused products from 2006 to 2012 included a "substantial portion" of components from the United States.

2.  Actively induce

Defendants argue that plaintiff failed to meet the element of active inducement for two reasons:  (1) plaintiff did not adduce evidence regarding inducement of a third party; and (2) plaintiff did not adduce evidence that defendants "shipped components for assembly abroad with the intention of subverting the U.S. patent laws or otherwise culpably encouraged acts that would be acts of infringement if they occurred in the United States."  Dfts.'s Br., dkt. #581.  The second argument was not included in defendants' Rule 50(a) motion and it is not developed in the Rule 50(b) motion, so the argument is waived.

Plaintiff does not argue that defendants waived the first argument except to say that defendants cite new cases in their Rule 50(b) motion. (Although plaintiff does argue that

15

defendants failed to ask for an instruction regarding active inducement, that argument is relevant only to defendants' motion for a new trial under Fed. R. Civ. P. 59.)  As I explained above, I do not read Rule 50 as prohibiting parties from buttressing their arguments with supplemental authority in their renewed motions for judgment as a matter of law.  In their Rule 50(a) motion, defendants stated that

> [t]here's no specific acts or circumstances from which the jury could infer that defendants actively induced a third party to assemble or use the kits in a manner that would have infringed if done in the United States.  The statute requires that they be—one element is that in such a manner as to actively induce the combination of such components outside the United States in a manner that would infringe the patent if such combination occurred within the United States and so you can't induce yourself to do that.

Tr. Trans., dkt. #572, at 74.  That was sufficient to preserve the issue.

The parties agree that plaintiff did not present any evidence at trial that defendants induced another party to combine any components outside the United States in an infringing manner.  Rather, defendants did all the combining themselves.  Thus, the question is whether the term "actively induce" requires the involvement of a third party or whether defendants may "induce" themselves under the statute.

Because the ordinary meaning of the word "induce" is to influence or persuade, http://www.merriam-webster.com/dictionary/induce, it makes little sense in common parlance to say that someone "induced himself" to perform a particular action.  The more natural reading of the word is that it involves an action taken with respect to a third party, encouraging another to do something.  As defendants point out, this is consistent with the way the Court of Appeals for the Federal Circuit has used the term in the context of 35

16

U.S.C. § 271(b).  <u>DSU Medical Corp. v. JMS Co., Ltd.</u>, 471 F.3d 1293, 1305 (Fed. Cir. 2006) ("[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement."); <u>Manville Sales Corp. v. Paramount Systems, Inc.</u>, 917 F.2d 544, 553 (Fed Cir. 1990) ("It must be established that the defendant possessed specific intent to encourage another's infringement."); <u>Water Technologies Corp. v. Calco, Ltd.</u>, 850 F.2d 660, 668 (Fed. Cir. 1988) ("[A] person infringes [under § 271(b)] by actively and knowingly aiding and abetting another's direct infringement.").

Plaintiff does not deny that "active inducement" under § 271(b) requires the involvement of a third party.  It simply says in a footnote that the cases defendants cite "are not on point" because they did not involve the interpretation of § 271(f)(1).  Plt.'s Br., dkt. #616, at 8 n.6.  This is true, but not helpful.  Courts generally assume that the same phrase in the same statute means the same thing.  <u>Powerex Corp. v. Reliant Energy Services, Inc.</u>, 551 U.S. 224, 232 (2007) ("A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning.").  Although that canon is not without its exceptions, defendants cite both legislative history and controlling case law supporting the view that the phrase "active inducement" means the same thing in both §§ 271(b) and 271(f)(1).  <u>Liquid Dynamics Corp. v. Vaughan Co., Inc.</u>, 449 F.3d 1209, 1222 (Fed. Cir. 2006) (applying § 271(b) standard for active inducement in case brought under § 271(f)(1)); Section–by–Section Analysis of H.R. 6286, Patent Law Amendments Act of 1984," Congressional Record, Oct. 1, 1984, H10525–26 ("The term 'actively induce' is drawn from existing subsection 271(b)

of the patent law, which provides that whoever actively induces patent infringement is liable as an infringer.").

As it did with respect to its interpretation of "substantial portion," plaintiff argues that it would create an undesirable loophole in the statute to construe "actively induce" as requiring a third party. This is plaintiff's strongest argument. As plaintiff points out, when defendants made their Rule 50(a) motion, I expressed doubt "that Congress intended to leave a loophole for anybody who did its own combinations of components outside the borders of the country." Tr. Trans., dkt. #572, at 75. Although I still believe it makes little sense to prohibit a party from supplying another with components while permitting the party to supply itself, I am persuaded that the loophole is not one that a court is empowered to close.

As I noted above, the Supreme Court has admonished lower courts not to engage in "dynamic judicial interpretation" of § 271(f) in order to avoid perceived loopholes. Microsoft, 550 U.S. at 457. In particular, the Court said that courts should keep in mind the particular problem § 271(f) was intended to address:

> Section 271(f) was a direct response to a gap in our patent law revealed by this Court's Deepsouth [Packing Co. v. Laitram Corp., 406 U.S. 518(1972),] decision. See supra, at 1752, and n. 3. The facts of that case were undeniably at the fore when § 271(f) was in the congressional hopper. In Deepsouth, the items exported were kits containing all the physical, readily assemblable parts of a shrimp deveining machine (not an intangible set of instructions), and those parts themselves (not foreign-made copies of them) *would be combined abroad by foreign buyers*. Having attended to the gap made evident in Deepsouth, Congress did not address other arguable gaps.

Id. at 457-58 (emphasis added). Because the facts of Deepsouth involved inducement of

a third party, this counsels against a broader interpretation of § 271(f) that would include other factual scenarios, even if policy considerations suggest that the statute should apply regardless what party is combining the components overseas.

I cannot accept plaintiff's interpretation of § 271(f)(1) in the face of all the reasons not to.  These include the facts of <u>Deepsouth,</u> the Supreme Court's instruction to construe § 271(f) narrowly, the Federal Circuit's interpretation of the relevant phrase, the legislative history of § 271(f), the canon to interpret the same words in the same way and the ordinary meaning of the word "induce."  It is particularly telling that plaintiff fails to address in its brief any of the reasons undermining its position.  It may well be that Congress would have chosen its words differently had it contemplated the loophole it left open, but courts must apply statutes as they are written, not as the court believes they should have been written. Thus, plaintiff's failure to adduce any evidence that it induced the actions of a third party is a second and independent reason for concluding that plaintiff failed as a matter of law to prove its claim under § 271(f)(1).

3.  <u>In a manner that would infringe the patent</u>

Defendants' final argument under § 271(f) is that their combination of components could not render them liable for violating that provision because their assembly of the accused products was permitted under the license agreement.  Certain *sales* fell outside the scope of the agreement, but § 271(f)(1) does not address sales, only assembly.

I agree with plaintiff that defendants waived this argument by failing to present it in

19

their Rule 50(a) motion.  Defendants say that they preserved this issue by quoting the relevant language in the statute and arguing that plaintiff failed to satisfy it, but that is not sufficient because it fails to identify the particular problem.  Extreme Networks, 2008 WL 4756498 at *1 ("Defendant cannot preserve all possible arguments simply by listing the elements of a claim and arguing generally that the plaintiff did not meet them.").  However, because I have concluded that plaintiff failed to meet the elements that a "substantial portion" of the components came from the United States and that defendants "actively induced" the combination of those components, defendants' waiver of another element does not change the result.

## B.  35 U.S.C. § 271(a)

Alternatively, plaintiff argues that all of defendants' sales violated § 271(a), which provides:  "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  In particular, plaintiff says that the jury could have found that all of the accused products are made in or imported into the United States.

With respect to § 271(a), plaintiff relies entirely on Shepherd's testimony.  However, she admitted she did not know where all the kits were made.  Tr. Trans., dkt. #551-1, at 129 ("I'm not certain there—all of these varieties of AmpFLSTR kits are assembled in Foster City [California]. They may be assembled in Warrington [the United Kingdom].").  And, as

20

noted above, she admitted she did not know whether foreign orders came through the United States.  Id.  ("I'm only able to speak to the U.S. shipping and manufacturing.").  Accordingly, even if the jury were to ignore all the evidence that many of the accused products are not made in or imported into the United States, it could not find reasonably from Shepherd's testimony that all of defendants' sales infringed under § 271(a).

Plaintiff has failed to point to evidence that would sustain a finding that all of the accused products defendants sold between August 2006 and January 2012 would meet the requirements of § 271(a) or (f)(1).  Because plaintiff did not adduce evidence regarding defendants' sales of any subset of products that would meet those requirements, defendants are entitled to judgment as a matter of law.  In addition, because plaintiff did not seek a new trial on damages in the event the court reached this conclusion, that issue is waived.

ORDER

IT IS ORDERED that

1.  The equitable defenses and counterclaims filed by defendants Life Technologies Corporation, Applied Biosystems, LLC and Invitrogen IP Holdings, Inc. are DISMISSED for defendants' failure to prove these defenses and counterclaims.

2.  Defendants' motion for judgment as matter of law regarding 35 U.S.C. § 271(a) and (f)(1), dkt. #580, is GRANTED.

3.   The following motions are DENIED as moot:   (a) defendants' motion for judgment as a matter of law on lost profits calculations, dkt. #578; (b) defendants' motions

for a new trial, dkt. ##580, 582, 584 and 586; (c) defendants' motion for judgment as a matter of law on nonwillfulness, dkt. #588; (d) plaintiff Promega Corporation's motion for an "exceptional case" finding under 36 U.S.C. § 285, dkt. #594; (e) plaintiff's motion for enhanced damages, dkt. #599; (f) plaintiff's motion for a permanent injunction, dkt. #601; and (f) plaintiff's bill of costs.  Dkt. #593.

     4.  The clerk of court is directed to enter judgment in favor of defendants and close this case.

     Entered this 12th day of September, 2012.

                        BY THE COURT:
                        /s/
                        BARBARA B. CRABB
                        District Judge