**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| PROMEGA CORPORATION, | |
| Plaintiff, | |
| MAX-PLANCK-GESELLSCHAFT ZUR FORDERUNG DER WISSENSCHAFTEN E.V., | No. 10-CV-281-BBC |
| Involuntary Plaintiff, | |
| v. | |
| LIFE TECHNOLOGIES CORPORATION, INVITROGEN IP HOLDINGS, INC., and APPLIED BIOSYSTEMS, LLC, | |
| Defendants. | |

**PROMEGA CORPORATION'S OPENING BRIEF**
**ON STRUCTURE OF REMAND PROCEEDINGS**

## I.   INTRODUCTION

This case is on remand to this Court from the Federal Circuit for a determination of damages due to infringement by defendants Life Technologies Corporation, Invitrogen IP Holdings, Inc. and Applied Biosystems, LLC (collectively "Life") of U.S. Patent No. RE 37,984 (the "Tautz patent").   Following a lengthy trial, the jury awarded Promega $52 million in damages for Life's infringement of the Tautz patent and four other patents (the "Promega patents").   Subsequently, this Court granted JMOL in Life's favor.  The court of appeals reversed the grant of JMOL, finding substantial evidence that Life is liable for infringement of the Tautz patent under both 35 U.S.C. § 271(a) and 35 U.S.C. § 271(f)(1).   It also invalidated the asserted claims of the Promega patents for lack of enablement.   "Since the challenged claims of four of the five asserted patents on which the jury based its damages verdict are invalid," the Federal Circuit vacated the jury's damages award and "remand[ed] to the district court to determine damages due to LifeTech's infringement of the Tautz patent."   *Promega Corp. v. Life Techs. Corp.*, 773 F.3d 1338, 1358 (Fed. Cir. 2014).

The jury's $52 million damages award should be reinstated.   Doing otherwise would require a new jury, the Court, and the parties to repeat the identical exercise—a lengthy damages trial—to no purpose.   Nothing in the Federal Circuit's remand requires a *new trial* on damages. Rather, the remand instructs "the district court to determine damages" resulting from Life's infringement of the Tautz patent, taking into account the fact that the Promega patents have been invalidated.   *Id.*   That task can be accomplished easily without resorting to the extreme of a new trial.   The record and original judgment make clear that *all* of Life's 17 accused STR genetic testing kits infringe the Tautz patent, and it is well-established that "infringement of even a single claim entitles a patentee to damages."   *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d

1225, 1236 (Fed. Cir. 2005) (affirming denial of new trial despite JMOL of non-infringement on some claims because other claims were still infringed and therefore the damages award would not change). That Life infringes one patent rather than five has no impact on the size of the $52 million damages award as it would if, for example, only *some* of Life's kits infringed the Tautz patent.

Life may contend that under a 1996 license agreement it has broader rights to the Tautz patent than it had to the Promega patents. That meritless argument cannot alter Life's damages liability. This Court already concluded the argument was "simply wrong," and the Federal Circuit later found that Life had waived any argument about the scope of its rights under the 1996 agreement by raising the issue belatedly on appeal. Both this Court and the Federal Circuit also rejected Life's separate argument that it was erroneously required to bear the burden of proving licensed sales under a different 2006 cross license between the parties.

Promega filed several post-trial motions that were denied as moot when the Court granted JMOL to Life. Now that the grant of JMOL has been vacated, the Court should take up Promega's post-trial motions seeking an exceptional case finding (and an attendant award of attorney fees), enhanced damages for willful infringement, and costs. As we explain, some re-briefing will be required on these post-trial motions as a result of intervening changes in the law.

Finally, the prior damages period ran from August 2006 through January 2012. The Court should order an accounting with a limited discovery period so that Promega can quantify the extent to which Life has continued to infringe the Tautz patent during the post-verdict period.

- 2 -

## II.     LITIGATION BACKGROUND

### A.     The Patents And The Accused Products

Promega filed this suit alleging that Life's AmpFlSTR kits infringe five patents:  the Tautz patent and U.S. Patent Nos. 5,843,660, 6,221,598, 6,479,235, and 7,008,771 (the Promega patents).  The patents relate to the analysis of short tandem repeat ("STR") loci in DNA samples.  The patented technology has numerous important uses, including for forensic work, paternity determinations, and diverse clinical and research applications.   The Tautz patent relates specifically to kits and methods for examining polymorphisms in DNA samples.  It was the first patent application to describe STR loci and is considered a foundational patent in STR technology.  *See* Trial Tr. vol. 2-B at 5 (dkt. #543) and vol. 2-C at 49 (dkt. #527).

The accused Life STR kits are used for amplifying and analyzing STR loci from DNA samples.  Promega accused a total of 17 Life STR kits of infringement.  *See* dkt. 573 (Feb. 23, 2012 Judgment).  All 17 of the Life kits were alleged and ultimately found to infringe claim 42 of the Tautz patent.  *Id*.

### B.     The Court's Summary Judgment Decision

On November 29, 2011, this Court granted Promega summary judgment of direct infringement, holding that Life infringed claim 42 of the Tautz patent with *all* of its kits and certain claims of the Promega patents with some of the same kits.  With respect to the Tautz patent, the Court noted that "[a]lthough plaintiff asserted in its opening brief that the accused products meet all of the elements of the asserted claims in the [Tautz] patent, defendants did not challenge this assertion in their opposition brief regarding noninfringement of this patent." 11/29/2011 Opinion and Order, dkt. #345, at 26 ("Summ. J. Op.").  As a result, the Court granted Promega "summary judgment with respect to infringement of the [Tautz] patent."  *Id*.  On

- 3 -

February 1, 2012, the parties entered into a stipulation extending the Court's summary judgment of infringement of the Tautz patent to certain additional Life STR kits.  *See* 2/1/2012 Joint Stipulation to Expand Summ. J. Ruling, dkt. #485, at 1-2.[1]

In the course of granting Promega summary judgment of direct infringement of the Tautz patent, the Court rejected Life's noninfringement defense based on the purported narrow scope of a 1996 agreement that grants Promega an exclusive license to the Tautz patent.  Life argued that Promega's rights under the 1996 license agreement "do[] not include the 'research market' and that all of [Life's] sales fall within that exception."  Summ. J. Op. at 25; *see also* Dfts.' Br. in Opp'n to Promega's Summ. J. Mot., dkt. #253 at 31 ("Because Promega does not have rights to the Tautz patent in the RESEARCH MARKET, Promega cannot sustain a claim of infringement with respect to the Tautz patent against Defendants for AmpFlSTR kit sales.").  The Court rejected that argument, holding that Life was "simply wrong" that the 1996 license agreement "excludes the 'research market' generally."  Summ. J. Op at 25.  According to the Court, Life had "identif[ied] no reason to believe that any of [its] sales fall outside the" fields exclusively licensed to Promega in the 1996 agreement.  *Id.*  The Court likewise rejected Life's request to stay a ruling on infringement pending the outcome of an arbitration proceeding initiated by Life, which Life contended might result in Promega losing its rights to the Tautz patent.  *Id.* at 25-26.[2]

The Court also resolved a dispute concerning the scope of the 2006 cross license between Promega and defendant Applied Biosystems (now a wholly owned subsidiary of Life).  As the Court's summary judgment order explained, "[t]he parties dispute whether several kinds of

---

[1] A full list of the infringing Life kits can be found in the Court's February 23, 2013 pre-JMOL Judgment.  *See* dkt. #573.

[2] While Promega's appeal was pending, the parties separately engaged in arbitration of issues related to the 1996 license agreement.  The arbitration concluded in 2014.  Life did not ultimately pursue an argument that Promega should lose any of its rights to the Tautz patent, let alone all of them.

applications performed by the accused products sold by defendants fall within the scope of the license agreement[.] … Defendants argue that their kits fall within the scope of the license because they perform an 'analysis of biological specimens for the identification of individuals.' … However … it is clear from the plain language of the license and the undisputed facts that the kits in dispute do not perform an analysis 'for the identification of individuals' [since] [i]t is undisputed that the identity of the individual is either already known or irrelevant to the applications at issue." *Id.* at 23. The summary judgment order on the scope of the 2006 cross license was further refined by the Court's oral ruling at the outset of trial that forensic research, education, and training are outside the scope of the license. *See* 2/6/12 Trial Tr., vol. 1-P, dkt. #521 at 18:24-19:18.

The parties cross-moved for summary judgment on the validity of the Promega patents at summary judgment, and the Court sided with Promega. Life did not (and has never) challenged the validity of the Tautz patent.

## C.   Jury Trial, Verdict, And Judgment

In February 2012, the Court held a two-week jury trial. The jury was tasked with assessing damages for Life's infringement of the Tautz and Promega patents, and determining whether Life's infringement was willful. The parties stipulated that Life had made $707,618,247 in "total worldwide sales of STR kits" during the damages period. *See* Special Verdict, dkt. #567, at 1; *see also* dkt. #485 (Stipulation). The jury found that "all of LifeTech's worldwide sales were attributable to infringing acts in the United States" and that "ten percent of those sales were for unlicensed uses." *Promega Corp.*, 773 F.3d at 1345; Special Verdict, dkt. #567, at 2 (Question Nos. 2-4, finding all sales infringing and $70,761,825 unlicensed). Based on testimony from Promega's chief financial officer that Promega's gross margin on its STR

products during the relevant period was 73.5%, the jury awarded Promega lost profit damages of $52,009,941.  Special Verdict, dkt. #567, at 3; 2/9/2012 Trial Tr., vol. 4-C, dkt. #534, at 80 (L. Francis testimony).  The jury also returned a verdict of willful infringement.  Special Verdict, dkt. #567, at 4.  The Court entered judgment on the verdict on February 23, 2012.  Dkt. #573.

### D.    Post-Verdict Proceedings

On September 13, 2012, the Court granted Life's motion for JMOL on damages because the Court concluded that Promega had failed to show that all sales of Life's kits infringed under 35 U.S.C. § 271(a) or (f).  9/13/2012 Opinion and Order, dkt. #684 ("JMOL Op.").  With respect to § 271(f)(1), the Court's ruling was based on two legal conclusions:  (*i*) supplying a single component (as opposed to two or more components) from the United States never gives rise to § 271(f)(1) liability; and (*ii*) infringement under that section requires the inducement of a third party, such that a company can avoid liability by shipping components overseas for assembly by its own foreign subsidiaries or employees.  *Id*. at 10-13, 15-19.  Based on its JMOL decision, the Court vacated its summary judgment findings of infringement and the jury's verdict on damages and willfulness, denied as moot a number of other post-trial motions filed by both parties, and entered judgment for Life.  *See id*. at 21-22; dkt. #685 (Amended Judgment).  Following the grant of Life's JMOL motion, Promega filed motions seeking various forms of relief, all of which were denied on April 22, 2013.  4/22/2013 Opinion and Order, dkt. #770.

### E.    The Federal Circuit Decision

The parties cross-appealed to the Federal Circuit.  The court of appeals held the asserted claims of the Promega patents (which at that point had expired) invalid for lack of enablement.  *Promega Corp.*, 773 F.3d at 1350.  Because Life has never challenged the validity of the Tautz patent, the court of appeals next reviewed this Court's grant of Life's JMOL motion.

Turning first to § 271(f)(1), the Federal Circuit held that "substantial evidence supports the jury's finding that LifeTech's activities infringe the Tautz patent under a proper understanding of that statutory provision." *Promega Corp.*, 773 F.3d at 1351. The court held that no third party involvement is required "to actively induce the combination" of components under the statute. *Id.* at 1351-53.[3] It also held that "a party may be liable under § 271(f)(1) for supplying or causing to be supplied a single component for combination outside the United States," and that "based on the facts of this particular case … substantial evidence supports the jury's verdict that LifeTech is liable for infringement under § 271(f)(1) for shipping the *Taq* polymerase component of its accused genetic testing kits to its United Kingdom facility." *Id.* at 1353.[4] The court of appeals also noted that "whether LifeTech exhibited the necessary knowledge and intent to combine the *Taq* polymerase with the remaining components of its genetic testing kits 'in a manner that would infringe' the Tautz patent if that combination occurred within the United States is not contested and is presumed." *Id.* at 1356. Accordingly, there was "substantial evidence in the record to support the jury's finding that LifeTech is liable for infringement under 35 U.S.C. § 271(f)(1)." *Id.*

The Federal Circuit next addressed Life's infringement of the Tautz patent under § 271(a), noting both Life's admission of infringement under that section and the evidence of infringement Promega presented to the jury. *See id.* at 1356-57. "Based on LifeTech's own admissions, which are supported by evidence in the record, we conclude that LifeTech's kits made, used, or sold in the United States infringe the Tautz patent under 35 U.S.C. § 271(a)." *Id.* at 1357. Accordingly, *all* of Life's STR kit sales were found to infringe under § 271(f) or (a), or

---

[3] Chief Judge Prost dissented on this point. *See Promega Corp.*, 773 F.3d at 1358.

[4] The Federal Circuit noted that "LifeTech either purchases *Taq* polymerase from a third-party in the United States or produces *Taq* polymerase itself in an Austin, Texas facility." *Promega Corp.*, 773 F.3d at 1356 n.15.

both. "Because substantial evidence supports the jury's finding that LifeTech's accused kits infringe the Tautz patent under both § 271(a) and § 271(f)(1), we reverse the district court's grant of LifeTech's motion for JMOL of noninfringement of the Tautz patent." *Id*.

The Federal Circuit also affirmed this Court's finding that the 2006 cross license between Promega and defendant Applied Biosystems does *not* cover its STR kits for use "by universities and other parties for any purpose related to forensic research, education and training." *Id*. ("We are not persuaded by LifeTech's creative interpretation of the 2006 Cross License."). The court of appeals additionally held that Life had waived any argument that "it has broader licensing rights to the Tautz patent based on" the same 1996 agreement which this Court found did not provide Life a noninfringement defense at summary judgment. *Id*. at 1357 n.16 (refusing to "consider this untimely argument," which Life raised on appeal for the first time in its reply brief). Finally, the court noted it had "considered all other arguments presented by the parties and f[ound] them unpersuasive." *Id*. at 1358.

The Federal Circuit vacated the jury's damages award because "the challenged claims of four of the five asserted patents on which the jury based its damages verdict are invalid" and "remand[ed] to the district court to determine damages due to LifeTech's infringement of the Tautz patent." *Id*.

## III.   ARGUMENT

### A.   The Jury's Damages Award Should Be Reinstated

The jury awarded Promega $52,009,941 in lost profit damages for Life's sales of infringing STR kits during the damages period, which ran from August 2006 through January 2012. Special Verdict, dkt. #567, at 1, 3. The jury's damages award should be reinstated. There is no need to determine damages again for infringement of the Tautz patent during the period

addressed at trial.  The jury already did so, and nothing prohibits this Court from reinstating the verdict.  To do otherwise would waste judicial resources, render the jury's work a pointless endeavor, and require a new jury to needlessly repeat the exercise.

The flaw this Court perceived with the damages verdict was that Promega "relied on two theories of infringement at trial"—§§ 271(a) and (f)(1)—but that "the evidence plaintiff presented was not legally sufficient to sustain the jury's verdict under either theory."  JMOL Op., dkt. #684, at 7.  Under the Federal Circuit's decision, there was no flaw in Promega's damages theory.  Promega proved infringement under both theories it pressed at trial and the jury properly awarded damages for "'all kits made, used, offered for sale, sold within the United States or imported into the United States, as well as kits made outside the United States where a substantial portion of the components are supplied from the United States.'"  *Promega Corp.*, 773 F.3d at 1345 (quoting jury instructions on damages, dkt. #566, at 4).

In light of its rulings, the Federal Circuit remanded to this Court with instructions to "determine damages due to LifeTech's infringement of the Tautz patent," noting that "four of the five asserted patents on which the jury based its damages verdict are invalid."  *Promega Corp.*, 773 F.3d at 1358.  The Court can easily make that determination on the existing record without resort to a new trial.  The pre-JMOL judgment (dkt. #573) made clear that every accused Life STR kit—17 in all—infringes claim 42 of the Tautz patent.  Indeed, Life's JMOL motion on § 271(f) acknowledged that "[a]ll 17 of the accused kits were held to infringe claim 42 of the '984 [Tautz] patent."  Mem. in Supp. of Dfts.' Rule 50(b) Mot. on § 271(f), dkt. #581, at 7.

The fact that Life's STR kits infringe only the Tautz patent, rather than in some instances the Tautz patent *and* the Promega patents,[5] does not alter the amount of damages awarded by the jury for Life's infringement in the two-supplier STR kit market.  The jury awarded lost profits

_____

[5] Ten of the 17 accused Life kits were found to infringe only the Tautz patent.  *See* dkt. #573.

- 9 -

based on the fact that every unlicensed Life STR kit was an infringing kit.  The size of the damages award did not depend on the number of patents or claims infringed.  "After all, infringement of even a single claim entitles a patentee to damages."  *CollegeNet*, 418 F.3d at 1236.  In *CollegeNet*, the district court granted summary judgment of infringement of certain patent claims and a jury later found infringement of other dependent claims in the same patent.  *Id*. at 1229, 1236.  The accused infringer appealed both the district court's summary judgment decision and its refusal to grant a new trial on the dependent claims that the jury found infringed.  The Federal Circuit affirmed the district court's grant of summary judgment.  *Id*. at 1236.  As for the appeal of the jury's finding of infringement of the dependent claims, "there [was] no reason … to reach th[e] argument."  *Id*.  That is because "even if the district court had concluded that the infringement verdicts on [the dependent claims] were against the clear weight of the evidence, the damages awarded on the [] patent would still stand," because infringement of a single claim was sufficient to support the damages verdict.

The same is true here.  Because every Life kit infringed the Tautz patent in the two-supplier market for STR kits, the invalidation of the Promega patents has no impact on the jury's lost profits damages verdict.  *See also TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1312 (Fed. Cir. 2008) (affirming damages award despite partial reversal of infringement judgment because all of the accused devices infringed other claims for which infringement was affirmed on appeal); *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1374 (Fed. Cir. 2002) ("Because we affirm the judgment of infringement of claims 1-4 and 12, we need not review the [district] court's ultimate conclusion regarding infringement of claim 13.  Bridgewood has already been held to be an infringer, and infringement of another claim does not

increase its liability."). Accordingly, a second trial on damages for the period from August 2006 through January 2012 is unnecessary. The Court should reinstate the jury's damages verdict.[6]

### B.    Life Waived Any Argument On The Scope Of The 1996 License Agreement

During the March 31, 2015 post-remand status conference, Life indicated it may seek to raise arguments related to the scope of the 1996 agreement that grants Promega an exclusive license to the Tautz patent. Any such argument has been waived.

At summary judgment, Life argued that Promega's "rights under the [Tautz] patent derive from a 1996 license that does not include the 'research market' and that all of defendants' sales fall within that exception." Summ. J. Op., dkt. #345, at 25. Under the heading, "Direct infringement of the [Tautz] patent: scope of the 1996 license," the Court rejected that argument. *See id*. ("Defendants are simply wrong when they say that the [1996] agreement excludes the 'research market' generally and they identify no reason to believe that any of their sales fall outside the" fields exclusively licensed to Promega). Life filed no post-trial motion on this issue nor any other issue related to the 1996 agreement.

On appeal, Life belatedly attempted to revive an argument about the scope of the 1996 agreement. It argued in its appellate reply brief that it "has broader license rights under the Tautz patent than under the (invalid) Promega patents" because "[u]nder the parties' 1996 License, Life retained rights in the basic research field" including "for cell line authentication and a host of other uses." Dfts.-Appellants' Reply Br. and Cross Appeal Resp. ("Life Appeal Reply Br."), CAFC dkt. #43, at 7-8. According to Life, the "bottom line" was that under its reading of the 1996 agreement "its infringement exposure would have been much reduced had the Promega

---

[6] The Federal Circuit's denial of Promega's petition for panel rehearing is not to the contrary. The Federal Circuit has cautioned that "[c]ourts normally do not respond to petitions for rehearing and it would be a mistake to conclude that a court's non-response to an argument made in a rehearing petition necessarily means that the court has rejected that argument on the merits." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1479 (Fed. Cir. 1998).

patents been recognized as invalid." *Id*. at 8-9. The Federal Circuit shut the door on this argument: "In its Reply Brief, LifeTech argued for the first time that it has broader licensing rights to the Tautz patent based on a 1996 agreement. We will not consider this untimely argument." *Promega Corp.*, 773 F.3d at 1357 n.16 (citing Life Appeal Reply Br. at 8).

The court of appeals' refusal to entertain Life's arguments based on the 1996 agreement was amply justified. A declaration from the Federal Circuit that expanded Life's licensing rights to the Tautz patent would have expanded the scope of this Court's judgment by giving Life broader protection against liability for future infringement than it enjoyed under the original judgment. As such, Life's argument should have been raised in its opening appeal brief, where it raised its arguments regarding the scope of the 2006 cross license. The Federal Circuit properly found waiver. *See Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) ("An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived."). As a result, Life is prohibited from raising arguments about the scope of the 1996 agreement or its purported "broader licensing rights to the Tautz patent" under that agreement.

### C. The Federal Circuit Affirmed This Court's Ruling Regarding Life's Burden To Prove The Quantum Of Licensed Sales

After trial, Life filed a Rule 59(a) Motion for New Trial on the Quantum of Unauthorized Sales Based on the Erroneous Allocation of Burden of Proof (dkt. #582), and a derivative Rule 59(a) Motion for New Trial Based on the Aggregate of Errors and Failures of Proof (dkt. #586). This Court denied both motions as moot when it granted Life JMOL. Neither Rule 59(a) motion need be considered now, however, because the Federal Circuit subsequently rejected the burden of proof argument that served as the predicate for Life's motions.

- 12 -

1.      **Procedural History**

At summary judgment, this Court resolved the scope of Life's 2006 cross license grant, finding that it did not include the right to sell into certain disputed fields that did not "perform an analysis 'for the identification of individuals.'"  Summ. J. Op., dkt. #345, at 22-25.  The Court subsequently asked for briefing on the damages issue of who held the burden to establish "how defendants' customers use the accused products," in order to determine whether each sale was within the previously determined scope of Life's license.  1/31/12 Order, dkt. #483, at 2.  After briefing (*see* dkt. #492 and #493), the Court correctly found that "it [would] be defendants' burden to show that a particular sale was protected by the license agreement."  *See* 2/3/12 Opinion & Order, dkt. #498 at 1-6; *see also* Fed. R. Civ. P. 8(c)(1) (listing "license" as an affirmative defense); *Intel Corp. v. ITC*, 946 F.2d 821, 828 (Fed. Cir. 1991) (party raising an affirmative defense bears the burden of proof).[7]

At trial, the jury found that Life had proved that 90% of its sales were licensed.  *See* Special Verdict, dkt. #567, at 2 (Answers to Question Nos. 2 & 3).  Life filed Rule 59(a) new trial motions regarding the Court's allocation of the burden of proof (dkt. #582), and a series of alleged errors purportedly stemming from that decision (dkt. #586).  In its September 13, 2012 Order granting judgment for Life, this Court denied both motions as moot.  JMOL Op., dkt. #684, at 21-22.

Life pressed its burden of proof argument on appeal.  In its Notice of Appeal (dkt. #686), Life specifically appealed from this Court's Order that placed the burden on it to show the

---

[7]  In reaching this conclusion, the Court noted that "[i]t was defendants, not plaintiff, who determined how defendants would sell their products.  Placing the burden on the patent owner would require the owner to undergo intensive investigations to police the license and would give infringers an incentive to keep poor records or no records on their sales in an attempt to hide their infringing activities.  If defendants have the burden, they have every incentive to keep their records detailed and clear."  *Id.* at 5.

amount of licensed sales.  *See id*. at 2 (appealing from "the February 3, 2012 Order Regarding Miscellaneous Motions (Docket No. 498)").   In opposing Promega's cross-appeal, Life contended the allegedly erroneous allocation of the burden of proof was an alternative ground prohibiting reinstatement of the jury's verdict.  *See* Life Appeal Reply Br. at 31-34 (Section I.D., titled "The jury verdict additionally cannot be reinstated because Life was improperly required to bear the burden to prove licensed sales.").  Life also raised its derivative "aggregate of errors" argument, claiming that "[t]he district court's erroneous decision on [the burden] issue had a cascade effect that led to a series of additional legal errors, most notably the exclusion of key testimony."  *Id*. at 31 n.8.  Separate from its argument that an improper allocation of the burden prevented reinstatement of the jury verdict, Life also asked the court of appeals to "clarify the proper allocation of the burden" in the event of a remand.  *Id*. at 34.  Promega responded to Life's arguments, and advised the Federal Circuit that if it "agree[d] with Promega on both Section 271(f)(1) interpretive questions" (which turned out to be the case), it would then need to address the burden issue, and "should reject Life's position."  Reply Br. of Plf.-Cross Appellant Promega Corp., CAFC dkt. #47, at 26-30.

As requested by Promega, the Federal Circuit rejected Life's argument and left this Court's burden ruling intact, noting that it "[had] considered all other arguments presented by the parties and [found] them unpersuasive."  *Promega Corp.*, 773 F.3d at 1358.  The *only* reason the court of appeals gave for vacating the jury's damages verdict was because "the challenged claims of four of the five asserted patents on which the jury based its damages verdict are invalid."  *Id*.  Despite having asked the court to reverse this Court's decision on the burden issue in the event of a remand, Life did not raise the argument again in its rehearing petition.

### 2.    The Federal Circuit's Mandate Precludes Re-Litigation of Life's Burden of Proof Motions

The "mandate rule forecloses reconsideration of issues implicitly or explicitly decided on appeal." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1364 (Fed. Cir. 2008).  Specifically, "[u]nless remanded by [the] court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." *Engel Indus.*, 166 F.3d at 1383 (citations omitted).

The Federal Circuit decided the issue of whether Life properly bore the burden to prove licensed sales, finding that it did.  Life appealed from this Court's order ruling on the burden of proof issue; pressed the burden issue in opposition to Promega's cross-appeal as a reason the jury verdict could not be reinstated; and asked the Federal Circuit to "clarify" the burden issue if it ordered a remand.  Promega was required to devote substantial attention to Life's argument in its appellate reply brief, and likewise advised the Federal Circuit of the need to address the issue in the event it reversed both aspects of this Court's § 271(f) ruling.  Fully apprised of the parties' positions and the impact of the burden issue on any remand proceeding, the Federal Circuit declined to overturn this Court's ruling, deemed Life's argument "unpersuasive," and explained the only reason for vacating the damages verdict was because of the invalidation of the asserted claims of the Promega Patents—*not* because of any improper allocation of the burden of proof to Life.  *Promega Corp.*, 773 F.3d at 1358.

Moreover, it is implausible to believe that the Federal Circuit would have ignored such a fundamental issue, presented and briefed by both parties, and simply remanded the case without addressing it at all.  And as with the many other issues addressed in this memorandum, nothing about this Court's ruling on the burden to prove licensed sales was dependent on the specific

- 15 -

patents or claims asserted, and it is not altered in any way by the Federal Circuit's invalidation of the Promega Patents.

Accordingly, the substance of both of Life's Rule 59(a) motions—on the allocation of the burden of proof and a purported "aggregate of errors" stemming therefrom—were disposed of by the Federal Circuit. The burden issue was squarely within the scope of the judgment Life appealed from, it was briefed and decided on appeal, and was not "explicitly reserved or remanded." *Engel Indus.*, 166 F.3d at 1383. It has thus been "removed from the district court's jurisdiction," *id.* at 1382, and cannot prevent reinstatement of the original damages verdict.[8]

### D.     Promega's Post-Trial Motions And Bill Of Costs

Promega filed three post-trial motions and a bill of costs, all of which were denied as moot when the Court granted JMOL in Life's favor. JMOL Op., dkt. #684, at 21-22. Specifically, Promega sought an exceptional case finding under 35 U.S.C. § 285 (dkt. #594); enhanced damages (dkt. #599), a permanent injunction (dkt. #601), and costs (dkt. #593). The Court should entertain re-briefing on the exceptional case issue because intervening authority has significantly lowered the standard and burden for proving a case exceptional. Turning to Promega's enhanced damages motion, the parties should brief the initial objective component of the willfulness inquiry in light of intervening authority allocating that task to the court, rather than the jury. As for the subjective component of willfulness, the jury's verdict on that score should be reinstated, and Life's motions for JMOL or a new trial on willfulness should be denied. Promega also should be awarded its costs, and pre- and post-judgment interest. Finally, Promega no longer seeks a permanent injunction and withdraws its motion for injunctive relief.

---

[8] In its opening brief on the structure of the remand proceedings, Life may raise other arguments regarding reinstatement of the jury's damages verdict or other related issues. Promega reserves the right to address any such issues in its response brief.

### 1.   Promega's Exceptional Case Motion Should Be Re-Briefed in Light of Intervening Authority Lowering the Relevant Standard and Burden

"A district court has discretion to award reasonable attorney fees to a prevailing party in a patent case if the court determines that the case is 'exceptional.'" *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012) (citing 35 U.S.C. § 285). The Court should entertain re-briefing on Promega's exceptional case motion under 35 U.S.C. § 285. Since the parties briefed the issue post-trial, the standard for finding a case exceptional was lowered significantly by the Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). Before *Octane Fitness*, a case could be deemed exceptional in only "limited circumstances," based on a finding of "litigation-related misconduct of an independently sanctionable magnitude" or a determination "that the litigation was both 'brought in subjective bad faith' and 'objectively baseless.'" *Id*. at 1752, 1756. The Supreme Court rejected this standard as "overly rigid," "too restrictive," and "so demanding that it would appear to render § 285 largely superfluous." *Id*. at 1756-58. An exceptional case is now one that merely "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 1756.

Moreover, a party no longer must establish its entitlement to fees by clear and convincing evidence. "[N]othing in § 285 justifies such a high standard of proof." *Id*. at 1758. The statute "imposes no specific evidentiary burden, much less such a high one." *Id*. The correct standard of proof is a preponderance of the evidence. *Id*.; *cf., e.g.*, Life's Combined Mem. in Opp'n to Promega's Mot. for Enhanced Damages and Mot. for Exceptional Case Finding, dkt. #628, at 6 (relying on clear and convincing evidence standard and arguing that a "finding of exceptional case … is available only in extreme circumstances").

Given the significant change in the law governing exceptional case findings under § 285, the Court should permit the parties to re-brief the issue under the correct standard and burden of proof.  *See, e.g., Checkpoint Sys.*, *Inc. v. All-Tag Sec. S.A.*, No. 2012-1085, 572 F. App'x 988, 989 (Fed. Cir. Sept. 4, 2014) (vacating and remanding district court's ruling on attorney fees for consideration in light of *Octane Fitness*); *Site Update Solutions, LLC v. Accor N. Am., Inc.*, No. 2013-1458, 556 F. App'x 962 (Fed. Cir. May 14, 2014) (same).

> **2.     The Jury's Subjective Willful Infringement Verdict Should Be Reinstated, the Parties Should Submit Briefing on the Objective Component of Willfulness and Promega's Enhanced Damages Motion, and Life's Motions for JMOL or a New Trial on Willfulness Should Be Denied**

The jury returned a verdict of willful infringement.  *See* Special Verdict, dkt. #567, at 4 (Question No. 7).  "A finding of willful infringement allows an award of enhanced damages under 35 U.S.C. § 284."  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012).  Under current law, a willfulness finding involves a two-step inquiry.  To "establish willful infringement, 'a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.'"  *Id.* (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).  "Once the 'threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk … was either known or so obvious that it should have been known to the accused infringer.'"  *Bard*, 682 F.3d at 1005 (quoting *Seagate*).  The threshold objective prong generally revolves around whether an accused infringer's "defense or noninfringement theory was 'reasonable.'"  *Id.* at 1006 (citation omitted).

Shortly after the parties' post-trial motions were fully briefed, the Federal Circuit decided *Bard*.[9] That case holds that "the objective determination of recklessness, even though predicated on underlying mixed questions of law and fact, is best decided by the judge as a question of law subject to *de novo* review." *Id*. at 1006-07. Thus, under the objective prong "the judge remains the final arbiter of whether [a] defense was reasonable." *Id*. at 1007. Because the objective prong of willfulness is now a matter for the judge, not the jury, the Court should entertain briefing on whether Life's defenses related to the Tautz patent were objectively reasonable, and if they were not, whether to award enhanced damages.[10]

It remains the province of the jury to decide the subjective prong of willfulness. *See id*. at 1008. The jury's finding of subjective willfulness—that the risk of infringement was either known or so obvious that it should have been known to Life—should stand. In its JMOL and new trial motion on non-willfulness, Life devoted scant attention to the subjective willfulness prong. *See* Mem. in Supp. of Dfts.' Rule 50(b) Mot. for JMOL Regarding Non-Willfulness and Alt. Rule 59(a) Mot. for New Trial ("Non-Willfulness JMOL"), dkt. #589, at 20-23. Life never challenged the validity of the Tautz patent. Life asserted a half-hearted license defense to the Tautz patent based on the 1996 agreement—a position this Court deemed "simply wrong." Summ. J. Op. at 25. On infringement, the Court found that Life "did not challenge" Promega's assertion that its accused STR kits "meet all of the elements of the asserted claims in the [Tautz]

---

[9] The parties submitted supplemental authority letters on *Bard* (dkt. #682, dkt. #683), but the enhanced damages issue was subsequently mooted by the Court's award of JMOL to Life.

[10] Although *Bard* is binding precedent, Promega reserves the right to challenge existing precedent relating to enhanced damages and willfulness at the appropriate time, including without limitation the right to argue that willfulness is not a prerequisite to enhancement of damages under § 284; the two-part *Seagate* standard should not apply to findings of willfulness; all aspects of willfulness should be determined by the jury; willfulness should be governed by a preponderance of the evidence standard; and litigation-inspired defenses cannot defeat a finding of willfulness for earlier infringement.

patent." *Id*. at 26.   The Court also rejected Life's 2006 cross license defense, finding the question "clear" based on "the plain language of the license and the undisputed facts."   Summ J. Op. at 23.   Life later contended that the 2006 cross license "covers STR kits used by universities and other parties for any purpose related to forensic research, education and training."   *Promega Corp.*, 773 F.3d at 1357.   That "creative interpretation" was squarely rejected by both this Court and the Federal Circuit because it "contradicts the express language of the agreement."   *Id*. at 1357-58 ("As the district court summarized in its oral ruling, 'defendants want [the 2006 Cross License] to apply to every research project going on in the world that had anything to do with genetics, no.   No.   Doesn't work.'")   (alteration in original, citation omitted).

        As a result, the few arguments on the willfulness subjective prong that Life *did* make in its JMOL motion mostly rehash the disputed testimony of its own interested witnesses.   *See* Non-Willfulness JMOL at 21-22.   That is "the type of evidence [courts] generally disregard when reviewing" motions for post-trial relief "because it is neither uncontradicted … nor does it come from disinterested witnesses."   *Davis v. Wis. Dep't of Corr.*, 445 F.3d 971, 978 (7th Cir. 2006). On a motion for JMOL, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (a "court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses") (citation omitted).

        Accordingly, the Court can review the parties' existing briefing on Life's non-willfulness JMOL motion as it relates to the subjective component of willfulness and readily conclude that the jury's subjective willfulness verdict should stand.   Likewise, Life's cursory plea for a new

trial on willfulness under Rule 59(a) is easily dismissed upon review of the parties' existing briefing on Life's motion.  *See Davis*, 445 F.3d at 979 ("A new trial should be granted 'only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.") (citation omitted). New briefing should be ordered only on whether Life's defenses to infringement of the Tautz patent were objectively reasonable and whether damages should be enhanced.

### 3.    Promega Is Entitled to Its Costs as the Prevailing Party

The Court should order Life to refund Promega's prior payment of costs, and permit Promega to submit an updated bill of costs at the conclusion of any additional proceedings. Federal Rule of Civil Procedure 54(d)(1) instructs that "costs—other than attorney's fees— should be allowed to the prevailing party."  "When a party obtains substantial relief, it 'prevails,' for purposes of the rule providing for an award of costs … even if it does not win on every claim."  10 Fed. Prac. & Proc. Civ. § 2667 (3d ed.) (citing *U.S. Fidelity and Guar. Co. v. Shorenstein Realty Servs., L.P.*, 803 F. Supp. 2d 920 (N.D. Ill. 2011)).

Pursuant to Rule 54, Promega filed a bill of costs following the Court's initial entry of judgment on the jury verdict, for $200,966.13.  *See* dkt. #593.  Life filed objections on April 12, 2012 (dkt. #612), and Promega replied on April 23, 2012 (dkt. #625).  In its JMOL Order granting judgment for Life, the Court denied Promega's bill of costs as moot.  *See* dkt. #684 at 22.  Having succeeded on its JMOL motion, Life proceeded to file its own bill of costs as the prevailing party on May 22, 2013, for $58,191.99.  *See* dkt. #776.  On July 10, 2013, the Court ordered that Promega pay those costs, *see* dkt. #778, which Promega did.

The Federal Circuit's reversal of the Court's grant of JMOL restores "prevailing party" status to Promega.  That, in turn, requires the Court to vacate the costs previously awarded to

Life.  *See, e.g., Furman v. Cirrito*, 782 F.2d 353, 355 (2d Cir. 1986) ("When a district court judgment is reversed or substantially modified on appeal, any costs awarded to the previously prevailing party are automatically vacated.") (citing 10 Fed. Prac. & Proc. Civ. § 2668 at 213-14; *Berner v. British Commonwealth Pac. Airlines, Ltd.*, 362 F.2d 799, 800 (2d Cir. 1966); *Am. Infra-Red Radiant Co. v. Lambert Indus., Inc.*, 41 F.R.D. 161, 162 (D. Minn. 1966)).  This is true despite the fact that the Federal Circuit invalidated the asserted claims of the expired Promega Patents, since the result of the appellate decision necessarily entails an award of damages to Promega for Life's infringement of the Tautz patent.  *See, e.g.*, 10 Fed. Prac. & Proc. Civ. § 2667 (3d ed.) (collecting cases).

Whether or not the Court reinstates the jury's damages verdict (as Promega suggests), or ultimately awards Promega some other amount of damages, it is still the "prevailing party" for purposes of awarding costs under Rule 54.  *See*, *e.g.*, *id.* (citing *Rice v. Sunrise Express, Inc.*, 237 F. Supp. 2d 962 (N.D. Ind. 2002) ("[p]laintiff employee was the prevailing party … for the purpose of Rule 54(d), even though plaintiff recovered a damage award of only $700, and not the full amount of damages sought, because plaintiff was the judgment winner and prevailed on the central issue in her lawsuit, which was a substantial part of the litigation.")).  Accordingly, the Court should vacate Life's award of costs, and order that it refund the amount paid by Promega, with interest from the date of payment.

The Federal Circuit's decision additionally entitles Promega to costs as the prevailing party.  *See, e.g., Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 149 F. Supp. 2d 394, 396 (N.D. Ill. 2001) (noting that "Rule 54(d) creates a presumption favoring the award of costs [to the prevailing party], which is difficult to overcome") (citing *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997)); *see also Smart v. Local 702 Int'l Bhd. of Elec. Workers*,

573 F.3d 523, 525 (7th Cir. 2009) ("We remanded one of the claims against the defendant union to the district court for further proceedings. In light of this action, the district court now must revisit the matter of costs and enter a new determination.") (citations omitted).   Promega proposes it submit an updated bill of costs at the conclusion of any additional proceedings, which the Court could address at that time.

### 4.    Promega Is Entitled to Pre-judgment and Post-judgment Interest

Promega is entitled to pre-judgment and post-judgment interest on damages awarded for Life's infringement.   "Under 35 U.S.C. § 284, prejudgment interest ensures adequate compensation for the infringement … [and] compensates the patent owner for the use of its money between the date of injury and the date of judgment." *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996) (citations omitted).   "Prejudgment interest should *ordinarily* be awarded absent some justification for withholding such award," *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 23 (Fed. Cir. 1984) (emphasis in original) (citations omitted),[11] and "may be assessed by the district court after damages have been found," *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983).

Under 28 U.S.C. § 1961, post-judgment interest "shall be allowed on any money judgment in a civil case," and "serves to further compensate a winning plaintiff from the time of a judgment until payment is made." *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1348 (Fed. Cir. 1999).   Where, as here, "the court of appeals remands to the district court to determine the amount of a damages award … the district court is free to award post-judgment interest …

---

[11] This is true "in both lost profits and royalties cases." *Mendenhall v. Barber-Greene Co.*, No. 80 C 6747, 1990 WL 156519, at *2 (N.D. Ill. Oct. 5, 1990) (citing *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 556 (Fed. Cir. 1984) and *G.M. v. Devex Corp.*, 461 U.S. 648, 657 (1983)).

[as of] the date damages were meaningfully ascertained." *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activities*, 518 F.3d 1013, 1018-19 (9th Cir. 2008).

Promega is thus entitled to pre-judgment and post-judgment interest on the damages award. Because the amount of interest may depend on how the Court proceeds, Promega asks that it be permitted to present interest calculations at the conclusion of the current proceedings.[12]

### E. Promega Is Entitled To Post-Verdict Discovery And An Accounting For Post-Verdict Sales

After it resolves all outstanding issues related to the previous litigation and verdict, Promega asks that the Court order an accounting for any post-January 2012 sales that infringe the Tautz patent and set a limited period for discovery. The prior damages period ran from August 29, 2006 through the end of January 2012. *See* Special Verdict, Question No. 1 (Dkt. #567 at 1). Promega is entitled to discovery to quantify the extent to which Life has continued to sell STR kits into unlicensed applications since January 2012. Thus, Promega asks that the Court set a limited discovery period of up to six months so it can ascertain the nature of Life's sales post-verdict and seek supplemental damages for infringing sales during that period.

## IV.   CONCLUSION

Promega respectfully requests that the Court:

1.   Reinstate the jury's damages verdict of $52,009,941 for the period from August 29, 2006 through January 2012;

---

[12] *See*, *e.g.*, *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 703 (9th Cir. 1996) (determining the point from which interest should run after remand, where multiple judgments are involved, "'requires an inquiry into the nature of the initial judgment, the action of the appellate court, the subsequent events upon remand, and the relationship between the first judgment and the modified judgment.'" (citation omitted)).

2.     Reject any attempt by Life to raise arguments about the scope of the 1996 license agreement;

3.     Deny Life's Rule 59(a) Motion for New Trial on the Quantum of Unauthorized Sales Based on the Erroneous Allocation of Burden of Proof (Dkt. #582), and related Rule 59(a) Motion for New Trial Based on the Aggregate of Errors and Failures of Proof (Dkt. #586);

4.     Entertain new briefing on whether this is an "exceptional case" in light of intervening changes in the law;

5.     Entertain new briefing on whether Life's defenses to infringement of the Tautz patent were objectively reasonable and whether damages should be enhanced, and deny Life's JMOL and new trial motions (dkt. #589) as they relate to the jury's subjective willfulness finding.

6.     Vacate Life's award of costs and order that it refund the amount paid by Promega, with interest from the date of payment, and permit Promega to file an updated bill of costs and seek pre-judgment and post-judgment interest at the conclusion of any additional proceedings; and

7.     Set a limited period for discovery directed to Life's post-January 2012 sales activity, to be followed by an accounting for any sales that infringe the Tautz patent as necessary.

Dated:  May 1, 2015

Respectfully submitted,

By:  */s/ David L. Anstaett*
    John S. Skilton
    jskilton@perkinscoie.com

Thomas G. Saunders
Thomas.Saunders@wilmerhale.com

    David J. Harth
    dharth@perkinscoie.com

**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

    David L. Anstaett
    danstaett@perkinscoie.com
    Anne M. Readel
    areadel@perkinscoie.com
    Brandon M. Lewis
    blewis@perkinscoie.com

    **PERKINS COIE LLP**
    1 East Main Street, Suite 201
    Madison, WI 53703
    Telephone: (608) 663-7460
    Facsimile:  (608) 663-7499

    *Attorneys for Plaintiff Promega*
    *Corporation*