UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

PROMEGA CORPORATION,

     Plaintiff,

MAX-PLANCK-GESELLSCHAFT ZUR
FORDERUNG DER WISSENSCHAFTEN
E.V.,

     Involuntary Plaintiff,

         v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC., and
APPLIED BIOSYSTEMS, LLC,

     Defendants.

Case No.: 10-CV-281

**DEFENDANTS' RESPONSE TO PROMEGA CORPORATION'S OPENING BRIEF
REGARDING SCOPE OF REMAND**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.    This Court Should Reject Promega's Request To Reinstate The $52 Million
      Verdict ................................................................................................................... 2

II.   Reinstating The Verdict Would Improperly Grant Promega A Windfall Because A
      New Trial Is Necessary And Fair ......................................................................... 4

III.  Promega's Attempt To Avoid The Merits By Arguing Waiver Should Be Rejected ......... 7

      A.    The Federal Circuit's Footnote Was Not A Waiver Finding ................................. 9

      B.    Life Was Not Obligated To Seek Appellate Review Of The Court's
            Summary Judgment Ruling ................................................................................. 10

      C.    The Court's Prior Summary Judgment Ruling Does Not Require It To
            Ignore Promega's Limited Rights In The Tautz Patent ...................................... 12

IV.   The Federal Circuit Did Not Silently Conclude That It Was Life's Burden To
      Prove Promega's Standing For Each Sale ........................................................... 15

V.    Promega's Proposals For Further Proceedings Are Premature And Unsupported
      By Law ................................................................................................................ 17

      A.    Promega's Requests For Costs And Rebriefing On The Exceptional Case
            Issue Are Premature ........................................................................................... 17

      B.    The Jury's Willfulness Finding Cannot Be Restored .......................................... 19

      C.    Promega's Request For Supplemental Damages Should Be Rejected ................. 20

CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bankers Trust Co. v. Bethlehem Steel Corp.*,
  761 F.2d 943 (3d Cir. 1985) ..................................................................... 3

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
  576 F.3d 1348 (Fed. Cir. 2009) ................................................................ 3

*Graefenhain v. Pabst Brewing Co.*,
  870 F.2d 1198 (7th Cir. 1989) .............................................................. 1, 3

*Jordan v. Duff & Phelps, Inc.*
  815 F.2d 429 (7th Cir. 1987) ................................................................. 11

*Lawndale Nat. Bank, Under Trust No. 4846 v. Am. Cas. Co. of Reading, Pa.*,
  489 F.2d 1384 (7th Cir. 1973) ............................................................... 19

*Mars, Inc. v. Coin Acceptors, Inc.*,
  527 F.3d 1359 (Fed. Cir. 2008) ................................................................ 8

*Maryland v. Baldwin*,
  112 U.S. 490 (1884) ................................................................................ 19

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) ........................................................................... 17

*Pandrol USA, LP v. Airboss Ry. Prods.*,
  320 F.3d 1354 (Fed. Cir. 2003) ................................................................ 8

*Pepper v. US*,
  131 S. Ct. 1229 (2011) ........................................................................... 14

*Promega Corp. v. Life Tech Corp.*,
  773 F.3d 1338 (Fed. Cir. 2014) ................................................................ 9

*Republican Party of Minnesota v. White*,
  416 F.3d 738 (8th Cir. 2005) .................................................................... 3

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) (en banc) .................................................. 8

*Ruiz v. A.B. Chance Co.*,
  234 F.3d 654 (Fed. Cir. 2000) ................................................................ 18

*Schering Corp. v. Illinois Antibiotics Co.,*
   89 F.3d 357 (7th Cir. 1996) ........................................................................ 11

*Sicom Sys. v. Agilent Techs., Inc.,*
   427 F.3d 971 (Fed. Cir. 2005) ................................................................. 7, 15

*Sikorsky Aircraft Corp. v. US,*
   773 F.3d 1315 (Fed. Cir. 2014) .................................................................. 11

*Silicon Graphics, Inc. v. ATI Techs., Inc.,*
   569 F.Supp.2d 819 (W.D.Wis. 2008) ........................................................ 18

*Spine Solutions v. Medtronic SofamorDanek USA*
   620 F.3d 1305 (Fed. Cir. 2010) .................................................................... 8

*Transamerica Ins. Co. v. South,*
   125 F.3d 392 (7th Cir. 1997) ...................................................................... 11

*United States v. Iriarte,*
   166 F.2d 800 (1st Cir. 1948) ......................................................................... 3

*United States v. Mazak,*
   789 F.2d 580 (7th Cir. 1986) ...................................................................... 15

*United States v. Workman,*
   617 F.2d 48 (4th Cir. 1980) .......................................................................... 3

*US v. Young,*
   66 F.3d 830 (7th Cir. 1995) ........................................................................... 2

*Vojdani v. Pharmsan Labs, Inc.,*
   741 F.3d 777 (7th Cir. 2013) ...................................................................... 15

**Statutes**

Fed. R. Civ. P. 49 ............................................................................................... 15

## INTRODUCTION

Promega's primary argument on the structure of remand is that the verdict should be reinstated lest the Court "waste judicial resources, render the jury's work a pointless endeavor, and require a new jury to needlessly repeat the exercise." Dkt. No. 798 at 9. Promega ignores the Federal Circuit's refusal to reinstate the verdict in the face of the very same arguments and its mandate directing this Court to resolve damages for the Tautz patent anew. It also ignores the general rule that, upon remand, "the case goes back to the trial court and there stands for determination of the issues presented as though they had not been determined before." *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1207 (7th Cir. 1989). Promega also ignores that it has fewer enforceable rights in the Tautz patent than it did in the now-invalid Promega patents. Promega further ignores that, because it has field-limited license rights in the Tautz patent, it bears the burden to prove that the accused sales fall within a covered field. The verdict cannot be reinstated.

This Court should also reject Promega's suggestion that it would be easier to reinstate the verdict. This is a false hope. Reinstatement of the verdict would not lead to more efficient resolution of this matter because Promega's proposal carries with it extensive additional proceedings:

- A six month discovery period regarding entirely new activities and new sales that have occurred since January 2012.
- New proceedings on supplemental damages.
- New briefing on the exceptional case issue.
- New briefing on willfulness.

Although Promega does not acknowledge this, a new trial on at least the issues of damages and willfulness would be needed even if the verdict is reinstated.

Promega unwisely suggests that the Court undertake these proceedings based on the record and assumptions that applied when the Promega patents were still valid.  In fact, this is now a completely different case than the one the parties originally tried to a jury over three years ago.  While the four Promega patents were previously the focus of the parties' litigation efforts, the focus of the case is now solely on the Tautz patent.  In these circumstances, the Court should not, as Promega requests, conduct new proceedings on damages, willfulness, costs, and exceptional case that are pre-infected with a false assumption that Promega has broad exclusionary rights in the Tautz patent and with the wrong burden of proof.  Indeed, such costly and extensive proceedings will inevitably lead to a result that everyone should know will be wrong on the merits.

Extensive additional litigation for the purpose of arriving at a result that would be wrong on the merits is not, as Promega contends, a recipe for simplification.  It is a recipe for confusion and yet additional litigation.  The Court should not reinstate the verdict.  It should follow the Federal Circuit's mandate and initiate new proceedings for the purpose of determining damages due to the Tautz patent based on a proper understanding of Promega's limited exclusive rights in that patent.

## ARGUMENT

### I.      This Court Should Reject Promega's Request To Reinstate The $52 Million Verdict

Promega asks this Court to reinstate the $52 million verdict that the Federal Circuit vacated.  Dkt. No. 798 at 1 ("The jury's $52 million damages award should be reinstated.").  There is no basis to defy the Federal Circuit's mandate expressly *vacating* the verdict and directing this Court to determine the damages attributable to the Tautz patent anew.  *US v. Young*, 66 F.3d 830, 835-36 (7th Cir. 1995) ("the 'mandate rule' requires the district court to adhere to our commands on remand."); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576

2

F.3d 1348, 1356 (Fed. Cir. 2009) ("The mandate rule requires that the district court follow an appellate decree as the law of the case.").

The general rule is that on remand the trial court should resolve afresh the remanded issues as though there had been no prior determinations:

> The general rule is that upon a reversal and remand for further consistent proceedings the case goes back to the trial court and there stands for ***determination of the issues presented as though they had not been determined before***, pursuant, of course, to the principles of law enunciated in the appellate court's opinion which must be taken as the law of the case at the new trial.

*Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1207 (7th Cir. 1989) (*quoting United States v. Iriarte*, 166 F.2d 800, 803 (1st Cir. 1948)) (emphasis-in-original).[1]

This principle is applied after a remand not only in the Seventh Circuit, but across the country.  *See, e.g., Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 950 (3d Cir. 1985) ("[U]pon a reversal and remand for further consistent proceedings, the case goes back to the trial court and there stands for a new determination of the issues presented as though they had not been determined before…"); *United States v. Workman*, 617 F.2d 48, 51 (4th Cir. 1980) (same); *Republican Party of Minnesota v. White*, 416 F.3d 738, 745 (8th Cir. 2005) (same).

Given that the Federal Circuit vacated the jury verdict and remanded for a new computation of damages because four of five patents were invalidated, it would ignore the teaching of *Graefenhain* and violate the mandate rule for this Court to reinstate the verdict.  This is particularly true because Promega specifically argued for reinstatement of the verdict on the same grounds and the Federal Circuit unambiguously refused to reinstate the verdict—instead remanding for a new adjudication of damages without consideration of the four invalid Promega patents.

---

[1] Emphasis supplied unless otherwise specified.

3

## II.   Reinstating The Verdict Would Improperly Grant Promega A Windfall Because A New Trial Is Necessary And Fair

Not only does the Federal Circuit mandate require a new trial, but it is necessary and fair notwithstanding Promega's arguments.

A new trial is necessary and fair because the fact that four out of the five patents have been invalidated reshapes the litigation and changes the way the parties will now try their dispute. None of the patents that were developed at Promega are valid. Promega will not be able to trumpet the value of its home-grown patents. Indeed, with four of the patents eliminated, Promega's trial themes will have to be different. Indeed, Promega can no longer claim "it owned the patents. It could do whatever it chose," Dkt. No. 522 [Trial Tr. Vol. 2-A] at 12:2-3, or that Life "violated our patents all over the world; all of those products, all those claims," *id.* at 12:16-17.[2] The only patent left in this case—the Tautz patent—is not even Promega's patent. Rather, it is a patent that originated at the Max-Planck Institute in Germany and that was originally licensed by Life's predecessor in interest. Life continues to hold substantial exclusive and non-exclusive rights in the Tautz patent.

Simply put, a five patent infringement trial is very different than a one patent infringement trial involving a patent in-licensed by both the plaintiff and the defendant. It goes without saying that both parties would have tried a very different case if the four Promega patents had not been treated as incontestably valid.

Most notably, Promega's patent rights are narrower for the Tautz patent than the Promega patents. This means that Promega is not entitled to pursue the same amount of damages in the new trial as it did in the original trial. According to Promega, because "every Life kit infringed

---

[2] In addition to the U.S. patents being held invalid, all of Promega's European patents have been revoked.

the Tautz patent in the two-supplier market for STR kits, the invalidation of the Promega patents has no impact on the jury's lost profits damages verdict." Dkt. No. 798 at 10. This argument (already rejected by the Federal Circuit) ignores a key indisputable fact: Promega has fewer exclusive rights in the Tautz patent than it does the Promega patents.

As Life explained in greater detail in its opening brief, pursuant to the 1996 License agreement, the only fields Promega received an exclusive license to are the "HUMAN GENETIC IDENTITY MARKET and the HUMAN CLINICAL MARKET." *See* Dkt. No. 233-47 [License Agreement (Exh. 11)] at 2; *id.* § 7.1. These markets are limited in scope. The "HUMAN GENETIC IDENTITY MARKET" is limited to ███████████████████ ████████████████ *See* Dkt. No. 233-47 [License Agreement (Exh. 11)] § 1.13. Likewise, the "HUMAN CLINICAL MARKET" is restricted to █████████████████████████ ████████████████████████ *Id.* § 1.14.

Given this, Promega's assertion that "every Life kit infringed the Tautz patent" is off-base. Every Life kit could not possibly have infringed the Tautz patent because Promega does not have standing to sue for infringement of the Tautz patent across the full range of applications for which Life STR kits are bought and sold. For instance, as Life demonstrated in its opening brief, cell line authentication finds application in fields that have nothing to do with Promega's exclusive fields of human genetic identity or human medical treatment or diagnosis. *See* Dkt. No. 796 at 11-13. This is clear from Promega's own breakdown of the market that it presented at trial. As shown in the following excerpt from one of Promega's trial exhibits, cell line authentication and research are different markets than the clinical diagnosis, forensic, and paternity markets:

Exhibit 1:  STR Kit Use Breakdown By Institution Type

|      | Institution | Forensic | Paternity | Clinical Diagnosis | Research | Cell Authentication |
|------|-------------|----------|-----------|--------------------|----------|---------------------|
| a    | Unversities (US & International) | Minimal | Minimal | X | X | X |
| b    | Private Hospitals | | Minimal | X | X | X |
| c(i) | Government, overall | X | X | X | X | X |

Dkt. No. 797, Exh. 3 [Plaintiffs' Trial Exh. No. 341]; Dkt. No. 530 [Trial Tr. Vol. 3-A] at 16:11-17:18 ("The left-hand side is just the list of institutions; then forensic uses; paternity testing uses; clinical diagnosis; research, and of course cell authentication, which is really a part of the research market.").  While Promega will now undoubtedly attempt to conflate these markets, the foregoing shows that there are distinct markets where Life sells kits for which Promega does not hold exclusionary rights and have standing to sue.

Promega never denies in its brief that Research Genetics granted Promega only limited exclusive rights in the Tautz patent, which are lesser than its rights in the Promega patents. Likewise, Promega does not suggest that all of Life's kits were sold into Promega's exclusive fields of use.  Rather, Promega's sole response is an incorrect argument (addressed *infra*) that the issue has been waived.  Promega's silence on the substance of Life's arguments is particularly striking because this is a known issue.  As Life explained in its opening brief, Promega's limited rights in the Tautz patent were the basis of Life's 2012 declaratory judgment action in the Southern District of California.  Dkt. No. 796 at 13-14.  Life's complaint in that action spelled out in detail why Promega had only limited rights in the Tautz patent and why Life's Authentifiler™ kits—designed for cell line authentication—did not infringe because they were marketed and sold for fields outside of Promega's exclusive rights in the Tautz patent.  *See* Dkt.

No. 797, Exh. 4 [Life Complaint] ¶¶ 14-21.  Promega did not contend that these sales were into a field exclusive to it.

As another example of why the remand trial will be different, **Promega** bears the burden of proving it has exclusive rights in the field for each kit sold by Life for these Tautz-only remand proceedings—whether they are for pre-2012 damages or the "supplemental damages" Promega seeks from 2012 to the present.  This is because it is an essential element of Promega's infringement claim based on the Tautz patent to prove that it had the right to assert that patent in the proper field for each sale that it alleges is an infringement.  *Sicom Sys. v. Agilent Techs., Inc.,* 427 F.3d 971, 976 (Fed. Cir. 2005) ("The party bringing the action bears the burden of establishing that it has standing.").  By contrast, Promega had no such burden for the (now-invalid) Promega patents it owns.  This is a fundamental—and highly consequential—distinction between the original trial and the remand trial.

In sum, the new damages proceedings required by the Federal Circuit's mandate are necessary and fair.  Promega's arguments to the contrary should be rejected.

### III.    Promega's Attempt To Avoid The Merits By Arguing Waiver Should Be Rejected

As Promega acknowledges in its brief, during the March 31, 2015 status conference Life made clear that it planned to rely on Promega's limited rights in the Tautz patent to reduce its exposure in the remand retrial.  Dkt. No. 798 at 11.  Life's position was bolstered by its 2012 declaratory judgment action where Promega tacitly conceded that its rights in the Tautz patent are limited.

It is therefore noteworthy that Promega's brief devotes only one short section to its limited rights in the Tautz patent.  *See id.* at 11-12.  And it is even more noteworthy that Promega's sole response is to allege waiver, not to assert (which would be unsupportable) that it in fact has the same rights in the Tautz patents as it does in the Promega patents.

7

Promega's case for waiver, however, is dubious.  As a threshold matter, Promega's limited enforceable rights in the Tautz patent in specific fields serve as a limit on Promega's standing and thus is a matter of this Court's subject matter jurisdiction.  *Mars, Inc. v. Coin Acceptors, Inc.,* 527 F.3d 1359, 1367 (Fed. Cir. 2008) ("Only a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit; a non-exclusive licensee does not.").  Promega is seeking lost profits for sales in fields in which it does not even have enforceable rights.  *See Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1551, 1553 (Fed. Cir. 1995) (en banc) ("The grant of a bare license to sell an invention in a specified territory, even if it is the only license granted by the patentee, does not provide **standing** without the grant of a right to exclude others.").

It is doubtful that waiver could even conceptually apply to whether this Court has jurisdiction to provide Promega with the relief it seeks in fields in which it does ***not*** have standing.  The Federal Circuit has explained that a lack of standing by the patentee is unwaivable when the plaintiff does not have enforceable rights to collect damages for patent infringement.  *Spine Solutions v. Medtronic SofamorDanek USA,* 620 F.3d 1305, 1319 (Fed. Cir. 2010) ("Under Article III of the Constitution, 'standing...is jurisdictional and not subject to waiver.'") (*quoting Pandrol USA, LP v. Airboss Ry. Prods.*, 320 F.3d 1354, 1367 (Fed. Cir. 2003)).

Regardless of whether waiver is even possible on these facts, Promega's waiver theory is flawed.  The Federal Circuit did not find a waiver, the scope of Promega's rights in the Tautz patent was not even properly within the scope of the appeal, and there is no basis to find a waiver based on the summary judgment proceedings in this Court.

### A.      The Federal Circuit's Footnote Was Not A Waiver Finding

Pointing to a footnote in the Federal Circuit's opinion, Promega contends that the Federal Circuit "shut the door" on Life's argument that it has more limited rights to assert the Tautz patent than it did the Promega patents it owns.  *See* Dkt. No. 798 at 11-12.  This is meritless.

The Federal Circuit's mandate instructed this Court to hold remand proceedings to determine the damages attributable to the Tautz patent.  This alone carries with it an implicit determination that the issue of Life's limited damages in the Tautz patent has not been waived.

Promega's reliance on the footnote is also flawed because it confuses **Promega's** exclusive rights and thus standing to assert the Tautz patent in particular fields with the scope of **Life's** non-exclusive rights in the Tautz patent.  The issue now before this Court is the limits of **Promega's** standing to assert the Tautz patent in particular fields.  The footnote refers to **Life's** non-exclusive licensing rights in the Tautz patent.  *Promega Corp. v. Life Tech Corp.*, 773 F.3d 1338, 1357 n.16 (Fed. Cir. 2014) ("In its Reply Brief, LifeTech argued for the first time that it has broader licensing rights to the Tautz patent based on a 1996 agreement.").  In short, the relied upon footnote addresses a different issue than that now presented to this Court.

Moreover, as Life noted in its opening brief, the Federal Circuit's reference to timeliness in a footnote of its opinion is unexplained.  *See* Dkt. No. 796 at 14-16.  Although the footnote related to Life's non-exclusive rights in the 1996 Cross License, it nonetheless appears in a section of the Federal Circuit's opinion that relates to the 2006 Cross License.  Life was not seeking appellate review of the 1996 Cross License.  The sole reason the 1996 Cross License was mentioned in the appeal process was to respond to Promega's argument in its cross-appeal opening brief that the jury's verdict should stand even if the Promega patents were invalidated. *See id.* at 15.

There is no waiver analysis in the Federal Circuit's opinion and that word is not even mentioned.  Ultimately, of course, the Federal Circuit refused to reinstate the verdict in the face of Promega's repeated argument that the verdict should be unaffected by the invalidation of the Promega patents.

When the context surrounding the Federal Circuit's footnote is considered, it becomes clear that it would be inappropriate for the Court to rely on it as a waiver of a meritorious position.  This is especially true because the Federal Circuit's footnote addresses a different issue (Life's non-exclusive rights) than the issue for the remand proceeding (Promega's lack of standing in fields where it has no exclusive rights).

**B.      Life Was Not Obligated To Seek Appellate Review Of The Court's Summary Judgment Ruling**

Promega contends that it is appropriate to treat the Federal Circuit's footnote regarding *Life's* non-exclusive rights as a broad waiver finding regarding ***Promega's*** standing to sue in non-exclusive fields.  Promega relies on the fact that Life did not seek appellate review of the Court's summary judgment decision regarding the 1996 Cross License.  *See* Dkt. No. 345 [Summary Judgment Ruling] at 25.  According to Promega, because Life failed to raise this issue in its opening appellate brief, it is supposedly waived.  *See* Dkt. No. 798 at 11-12.  This version of Promega's waiver theory is also without merit.

Promega's waiver argument not only ignores the non-waivability of patent standing, but it also ignores that, on the question of patent infringement, Life was the ***appellee***.  An appellee has no duty to make all alternative arguments to support the judgment it receives and the failure to include all such arguments should not constitute a waiver:

10

> We certainly agree that the failure of an *appellee* to have raised all possible alternative grounds for affirming the district court's original decision, unlike an appellant's failure to raise all possible grounds for reversal, should not operate as a waiver. The urging of alternative grounds for affirmance is a privilege rather than a duty.

*Transamerica Ins. Co. v. South*, 125 F.3d 392, 399 (7th Cir. 1997) (*quoting Schering Corp. v. Illinois Antibiotics Co.,* 89 F.3d 357, 358 (7th Cir. 1996)).

Life was appellee and could not have properly appealed the scope of Promega's rights to assert the Tautz patent. This Court's JMOL ruling held that Promega recovered nothing on its infringement claim. An appeal finding that, for particular sales, Promega did not have the necessary rights would at most be an alternative ground to support the take-nothing judgment entered by this Court.

It would be improper for Life to have appealed this standing issue because it would not have expanded the judgment in Life's favor. *See Jordan v. Duff & Phelps, Inc.,* 815 F.2d 429, 439 (7th Cir. 1987) ("A party may support a judgment in its favor with any argument preserved in the district court. Cross-appeals for the sole purpose of making an argument in support of the judgment are worse than unnecessary."); *Sikorsky Aircraft Corp. v. US*, 773 F.3d 1315, 1320 n.5 (Fed. Cir. 2014) ("This cross-appeal was improper because it merely presented an alternative ground for affirming the trial court."). The limits of Promega's standing are not part of Life's declaratory judgment claim to vindicate its license defense. Rather, they negate an element of Promega's affirmative claim for infringement.

Although Promega contends that Life nonetheless should have appealed because a ruling in its favor would have given it "broader protection against liability for future infringement," Dkt. No. 798 at 12, this argument ignores that Promega had the burden to prove it had the necessary rights and ignores other key facts. At the time of appeal, the four Promega patents that

had been the focus of the trial proceedings were still valid.  This Court had previously ruled at the summary judgment stage that they were not invalid.  *See* Dkt. No. 345 at 32.  But because Promega holds broader exclusionary rights in the now-invalid Promega patents than the Tautz patent, the limits to Promega's rights in the Tautz patent had no practical impact at trial.  But those limits plainly now impact the scope of Promega's damages demand and reduce Life's potential liability.

Promega's limited rights in the Tautz patent was not an issue on appeal and only became relevant on remand after a trilogy of contingent appellate events actually occurred: (1) Promega cross-appealing to reverse the district court's JMOL on damages, (2) Promega having success on its cross appeal, and (3) Life successfully establishing the invalidity of the Promega patents on appeal.  Faced with these contingencies—and because Life had achieved complete victory on damages at the JMOL stage—it would not have made any sense (and it would also have been improper) for Life to appeal the Court's ruling on the 1996 Cross License.  Indeed, while Promega now asserts that such an appeal would have been jurisdictionally permissible, Promega would, in all likelihood, have objected to such an appeal.

In sum, this argument was an alternative argument to support the judgment, not an appealable issue in its own right.  There is no waiver—even if standing could be waived.

### C.    The Court's Prior Summary Judgment Ruling Does Not Require It To Ignore Promega's Limited Rights In The Tautz Patent

Promega's brief notes that the Court previously addressed at the summary judgment stage arguments by Life regarding the scope of rights allocated under the 1996 Cross License.  *See* Dkt. No. 798 at 11.  Notably, however, Promega does not defend on the merits the Court's decision on this issue.  It simply relies on its waiver argument.  In fact, the issue of Promega's

12

limited rights in the Tautz patent was never effectively joined, and it certainly was not presented with the focus that has resulted from the invalidation of the Promega patents.

When the parties previously presented their arguments for summary judgment, the focus of the case was the four Promega patents—not the Tautz patent. The 1996 Cross License arose solely in response to Promega's motion for summary judgment of infringement of the Tautz patent. *See* Dkt. No. 253 at 31-32. While Life made clear that "Promega Is Asserting Rights It Does Not Have In The Tautz Patent," because the Promega patents were still on the table, there was no discussion of the different scope of exclusive rights that Promega held in the Tautz patent relative to the Promega patents. *Id.* Promega, for its part, responded to this entire issue solely in a footnote in its reply brief. *See* Dkt No. 280 at 39 n.35. Effectively conceding that there was a legitimate standing issue, Promega failed to document the scope of its ***exclusive*** rights in the Tautz patent. *Id.* Rather, Promega's footnote complained that Life had misstated the scope of its own rights in the Tautz patent. This, of course, is different from ***Promega's*** exclusive rights, and Promega thus sidestepped the standing issue that Life originally raised. *Id.*

Against this backdrop, the contours of the Court's summary judgment ruling were necessarily limited, and the ruling certainly did not address the issue with an eye towards the present-day status of the case. In its summary judgment order, the Court described Life's argument as a "standing" argument and acknowledged that Promega's exclusive rights in the Tautz patent were limited to the human genetic identity market and human clinical market. The Court, however, concluded that Life had provided no reason to believe that any of its sales fell outside these two markets. *See* Dkt. No. 345 at 25. The Court arrived at this conclusion without an analysis of the limited scope of the human genetic identity market and human clinical market. At the time, because the Promega patents were still valid, the decision had no impact on the case,

13

and was ultimately not appealed for the reasons mentioned above, including that this Court had entered judgment for Life. *See supra* pp. 10-13.

Now, however, these issues are to be reviewed afresh for all the reasons identified above, including the general rule that it makes sense to consider the remanded issue as though it had not been previously litigated. At this point, the limited scope of Promega's exclusive rights in the Tautz patent is a much more important issue in the case because the overlap with the Promega patents is gone. It is the sole subject of the Federal Circuit's mandate on remand. Life has presented additional evidence, including from trial, establishing that Promega's rights in the Tautz patent are limited, and has further documented precisely why not all of its sales could have been in Promega's exclusive markets. *See* Dkt. No. 796 at 11-13. Promega, for its part, does not dispute that it holds fewer exclusive rights in the Tautz patent, and cannot credibly contend that all of Life's sales are within its exclusive zones given its admissions at trial.[3]

While Promega may contend that the Court's prior ruling should be broadly enforced as the law of the case, when there is a general appeal remand on an issue, that doctrine does not apply because the issue is to be adjudicated anew. *See Pepper v. US,* 131 S. Ct. 1229 (2011) (finding that law of the case doctrine did not apply to a general remand). This is consistent with the general rule that, upon remand, the remanded issues are litigated as though they had not been determined before.

---

[3] Promega acknowledged at trial that cell line authentication is a general technique that allows researchers to confirm that cells they are studying are pure and not contaminated with other types of cells. *See* Dkt. No. 522 [Trial Tr. Vol. 2-A] at 9:19-10:19. For instance, Promega's Chief Technical Officer, Randall Dimond, testified at trial that research is "a very broad endeavor" and that cell line authentication has found use in research fields as wide ranging as cell biology and the anthropological study of human remains. *See* Dkt. No. 527 [Trial Tr. Vol. 2-C] at 63:19-64:24. Likewise, at trial, Promega did not contend that all university research activity is "clinical research" solely within Promega's exclusive rights. *See, e.g.*, Dkt. No. 530 [Trial Tr. Vol. 3-A] at 14:21-15:2 ("Universities' main activity, other than general teaching, is research and so those are the activities that predominantly go on there.").

14

Moreover, even if it were to apply, the "doctrine of law of the case is flexible….It will not be enforced where doing so would produce an injustice." *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir. 1986); *cf. Vojdani v. Pharmsan Labs, Inc*., 741 F.3d 777, 783 (7th Cir. 2013) ("Even if NeuroScience had waived under Rule 49 its right to special verdict questions on modification, a district court has broad discretion to relieve a party of waivers of issues, claims, or defenses so long as the other party is given sufficient notice." (citation omitted)).  Here, an injustice would clearly result if the Court were to rigidly apply its summary judgment ruling, and the Court should not do so given the changed liability landscape and the Federal Circuit's mandate.

## IV.   The Federal Circuit Did Not Silently Conclude That It Was Life's Burden To Prove Promega's Standing For Each Sale

Promega's argument that the Federal Circuit rejected Life's burden of proof position is at best confused.  Specifically, Promega confuses *its* obligation to prove that it has the necessary exclusive rights in the Tautz patent to sue for patent infringement for each disputed sale with *Life's* affirmative defense that it is licensed in fields in which Promega has the right to sue for infringement.

As explained above, Promega has the burden to prove that it has the exclusive patent rights in the proper technical field for each disputed sale.  *Sicom Systems, Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005) (the party asserting it has standing to sue for patent infringement because it holds exclusive license rights bears the burden of proving it has such rights for the disputed sales).  This Court has never found otherwise and this has never been a disputed issue in this litigation.  There is thus no waiver.

Promega's argument that Life waived its position concerning the burden to prove licensed sales thus fails from the start because that is different from the field-limits on Promega's

15

standing to sue.  A plaintiff having sufficient exclusive rights to have standing to sue is very different from a defendant having license rights to nullify a patent infringement claim.  The Court should not accept Promega's invitation to confuse them.

Promega's argument also fails because it is logically flawed.  In response to Promega's request that the Federal Circuit reinstate the verdict, Life argued that this Court improperly placed the burden on Life to prove licensed sales and that this was an ***alternative*** reason why the verdict could not be reinstated.  Exh. 8 [Life Technology Corporation's Reply Brief and Cross Appeal Response, Federal Circuit Court of Appeals No. 2013-1011, dated October 10, 2013] at 31 ("There is an additional, independent reason why the jury verdict cannot be reinstated.").

Promega itself acknowledges that Life's burden argument was centrally premised on the contingency that the Federal Circuit would otherwise reinstate the verdict.  Dkt. No. 798 at 15 (Life "pressed the burden issue in opposition to Promega's cross-appeal as a reason the jury verdict could not be reinstated").  This is true.  Life asked the Court to reach this issue if it were to reinstate the verdict.  Of course, the Federal Circuit rejected Promega's request to reinstate the verdict.   It thus makes perfect sense that the Federal Circuit did not reach this issue because the contingency (reinstatement) did not arise.

Life also argued to the Federal Circuit that guidance on the burden issue would be helpful on remand.  However, appeal courts have broad discretion whether to reach an issue merely to provide guidance on remand and such a practice is by no means routine.  Promega argues that the Federal Circuit impliedly rejected Life's alternative burden argument when it stated that "other arguments" not specifically addressed were deemed unpersuasive.   This is wrong-headed because Life prevailed in vacating the verdict so there was no need for the Federal Circuit to reach the burden argument.

16

## V.      Promega's Proposals For Further Proceedings Are Premature And Unsupported By Law

### A.      Promega's Requests For Costs And Rebriefing On The Exceptional Case Issue Are Premature

Promega contends that the Court should now entertain new briefing on its exceptional case motion in view of the Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014).  *See* Dkt. No. 798 at 17-18.  Promega further contends that it should be awarded costs.  These requests are both premature.

This case has not even proceeded to the point where the issues of exceptional case, enhanced damages, and costs are ripe.[4]  For a party to be entitled to enhanced damages and costs, it must be the prevailing party.  The Federal Circuit has invalidated the four Promega patents, and has remanded this matter for a new determination of damages based solely on the Tautz patent.  Depending on the outcome of subsequent proceedings pursuant to this mandate, Promega may not achieve ***any*** relief from this action.  Further, as Life explained in its opening brief, even if the Court reinstates the jury verdict, there are five outstanding Life JMOL motions that have yet to be decided.  *See* Dkt. Nos. 578, 582, 584, 586, 588.  The Court's decisions on these motions could limit, if not eliminate, Promega's right to relief.  Thus, regardless of how this case proceeds, it has not yet reached the stage where Promega may lay claim to being the prevailing party and requesting enhanced damages and costs.

In any event, the facts as they currently stand make clear that re-briefing on Promega's exceptional case motion would not be a good use of the parties' and Court's time.  It is already clear that, even if the jury verdict is reinstated, Promega still will not be entitled to enhanced

---

[4] Likewise, Promega's entitlement to pre-judgment and post-judgment interest, as Promega appears to acknowledge, is speculative and need not be reached now.  *See* Dkt. No. 798 at 24 ("the amount of interest may depend on how the Court proceeds").

damages or costs because neither party will have truly prevailed over the other.[5]  *See, e.g.*, *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 569 F.Supp.2d 819, 833 (W.D.Wis. 2008) (Crabb, J.) ("Fees and costs are awarded only to prevailing parties; in this suit neither side prevailed.").

Here, Life successfully invalidated the four Promega patents that were the focal point of the trial proceedings.  While Promega will no doubt attempt to downplay the invalidation of its homegrown patent portfolio, it previously characterized its patents as "extraordinarily valuable." Dkt. No. 522 at 11:4-5 ("But Promega had an extraordinarily valuable item, its patents."). Further, by invalidating these patents, Life is now free to sell its STR kits in a wider range of markets without fear of suit from Promega and there is no liability for past sales in the uncovered fields, which is a valuable commercial benefit.  When the impact of damages Promega may be able to obtain from Life is measured against the impact of the invalidation of the Promega patents, it cannot be said that Promega was the prevailing party here.  And, even if Promega is declared the prevailing party, the extent of its victory is so slim when measured against Life's successes that Promega should not be awarded enhanced damages or costs anyway.  *See Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 670 (Fed. Cir. 2000) ("The district court did not err in refusing to award costs, for neither party prevailed sufficiently to require an award of costs and make a decision not to do so an abuse of discretion.").

For the foregoing reasons, Life respectfully submits that the proper course is to conduct further proceedings pursuant to the Federal Circuit's mandate, and then consider the issues of exceptional case and costs at the conclusion of those proceedings.

---

[5] Of course, as noted above, the possibility still exists that Promega will not obtain any relief from Life, in which case Life would be the prevailing party.

### B.    The Jury's Willfulness Finding Cannot Be Restored

Promega presumes that the jury's willful infringement verdict is still intact. Promega Opening Brief at 20 ("the jury's subjective willfulness verdict should stand"). This presumption is misplaced.

This Court vacated the jury's willful infringement verdict based on its JMOL ruling of non-infringement. Dkt. No. 684, at 21-22; Dkt. No. 685 (Amended Judgment). The Federal Circuit did ***not*** restore that willfulness verdict despite Promega's request. So, there is no extant willful infringement verdict.

Moreover, there is no valid basis to restore the willful infringement verdict, especially when that verdict turned on the centerpiece of Promega's trial story, the value of its own patents. The verdict form did not specify which patents were found willfully infringed. A general verdict such as this cannot stand when the jury was instructed that four invalid patents were valid and infringed. *See Lawndale Nat. Bank, Under Trust No. 4846 v. Am. Cas. Co. of Reading, Pa.*, 489 F.2d 1384, 1388-89 (7th Cir. 1973) ("[The verdict's] generality prevents us from perceiving upon which plea [the jury] found. If, therefore, upon any one issue error was committed, either in the admission of evidence, or in the charge of the court, the verdict cannot be upheld, for it may be that by that evidence the jury were controlled under the instructions given.")(quoting *Maryland v. Baldwin*, 112 U.S. 490, 493 (1884)).

There is no reason to presume the jury based its willful infringement finding on the Tautz patent. *Id*. ("[I]t is impossible to say whether the verdict was based on the … defense that should have been stricken or the … defense that was properly submitted to the jury."). The Federal Circuit properly rejected Promega's request for it to reinstate the willfulness verdict.

Finally, before this Court could reinstate the willfulness verdict based on the original trial record, it would have to resolve Life's JMOL and new trial motions challenging that verdict,

which were deemed moot based on this Court's JMOL ruling.  Those arguments are not moot now that Promega presumes that its willfulness verdict is intact.  Given the changed circumstances, if this Court were to reinstate that willfulness verdict, it should allow Life to re-brief its motions challenging the willful infringement verdict to include the changed circumstances documented in this briefing.

### C.    Promega's Request For Supplemental Damages Should Be Rejected

Promega's request for supplemental damages appears to assume that determining what damages are due for the alleged infringement of the Tautz patent from 2012 to the present is clerical.  It is not.  As explained above, determining what damages are due requires new proceedings to resolve numerous factual and legal questions that are different from those presented by the record in the original trial.  This includes the limits on Promega's enforceable rights, the burden of proof, entirely new fact patterns for sales that were not at issue in the original trial, the number of patents at issue, and all of the issues identified by Life in its post-verdict motions that were deemed moot prior to the appeal.

### CONCLUSION

For the foregoing reasons, the Court should not reinstate the verdict, but should implement the Federal Circuit's mandate and initiate proceedings so that damages tied specifically to the Tautz patent can be determined afresh.

Dated:  May 15, 2015

Respectfully submitted,

_____/s/ Michael J. Modl_____

Michael J. Modl
Andrew J. Clarkowski
Steven M. Streck
Axley Brynelson, LLP
2 E. Mifflin Street, Suite 200
Madison, WI 53703
Ph: 608-283-6705
mmodl@axley.com
aclarkowski@axley.com
sstreck@axley.com

Edward R. Reines (Admitted *pro hac vice*)
Derek C. Walter (Admitted *pro hac vice*)
Weil, Gotshal & Manges, LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Ph: 650-802-3000
edward.reines@weil.com
derek.walter@weil.com

Carter G. Phillips (Admitted *pro hac vice*)
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005
Ph: 202-736-8000
cphillips@sidley.com