**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| PROMEGA CORPORATION,<br><br>Plaintiff,<br><br>MAX-PLANCK-GESELLSCHAFT ZUR FORDERUNG DER WISSENSCHAFTEN E.V.,<br><br>Involuntary Plaintiff,<br><br>v.<br><br>LIFE TECHNOLOGIES CORPORATION, INVITROGEN IP HOLDINGS, INC., and APPLIED BIOSYSTEMS, LLC,<br><br>Defendants. | No. 10-CV-281-BBC |

**PROMEGA CORPORATION'S RESPONSE BRIEF ON STRUCTURE OF
REMAND PROCEEDINGS**

**I.     INTRODUCTION**

This Court should reinstate the jury's $52 million damages verdict. The Federal Circuit remanded for "the district court to determine damages due to LifeTech's infringement of the Tautz patent" in light of its conclusion that "four of the five asserted patents on which the jury based its damages verdict are invalid." *Promega Corp. v. Life Techs. Corp.*, 773 F.3d 1338, 1358 (Fed. Cir. 2014). As Promega explained in its opening brief, the Court can accomplish this task easily based on the substantial portions of the jury verdict and original judgment that did not depend on the invalidated patents. By contrast, a new trial would only consume substantial Court and party resources and require a new jury to repeat determinations that were already made after a full trial.

Life offers no compelling grounds for a new trial. Its lone substantive argument against reinstatement is that under its interpretation of the scope of a 1996 license agreement, Promega lacks standing to sue for infringement of the Tautz patent in all but "a few narrow fields." Life's strained interpretation of the 1996 agreement is meritless. But its more immediate problem is that it has comprehensively waived its argument about the 1996 agreement's scope. This Court rejected Life's argument on summary judgment, Life did not challenge that ruling in its opening appeal brief when it raised its other arguments seeking to expand its licensing rights, the Federal Circuit held that Life waived its appeal of the issue when it failed to raise it until its reply brief, and the mandate rule now prevents the issue from being revisited on remand. Life's heavy reliance on this argument to avoid reinstatement of the damages verdict is misplaced.

Life also "reports" that it "plans" to file a certiorari petition and thereafter seek a stay of these proceedings until the petition is decided. But Life has not yet actually carried out any of these plans. No certiorari petition has been filed and no stay motion is pending. Promega will

1

respond when and if Life moves for a stay. In the meantime, Life's future plans provide no basis for refusing to reinstate the jury's damages verdict.

Finally, Life contends that if the Court reinstates the damages verdict, then it must also decide five of Life's post-trial motions that remain outstanding. In fact, only three remain to be decided. The other two identified by Life involve issues related to the burden to prove licensed sales that were argued on appeal and are encompassed by the Federal Circuit's mandate, barring further consideration on remand.

## II. ARGUMENT

### A. The Federal Circuit's Remand Instructions Do Not Require A New Trial And Are Consistent With Reinstating The Jury's Damages Verdict

Life argues that the "Federal Circuit expressly ordered the jury's verdict 'vacate[d],' not as Promega encourages, reinstated," and insists that the appeals court "directed this Court on remand to determine the damages specific to the lone remaining Tautz patent." Dfts.' Opening Br. Regarding Scope of Remand Pursuant to the Court's April 17, 2015 Order ("Life's Br."), dkt. #796, at 1-2. That is true as far as it goes, but it does not speak to the question at hand: Whether this Court must conduct a *new trial* on damages, or may instead reinstate the jury's damages verdict based on the existing record consistent with the Federal Circuit's remand instructions. It can plainly do the latter.

In remanding the case, the court of appeals stated that "[s]ince the challenged claims of four of the five asserted patents on which the jury based its damages verdict are invalid, we vacate the jury's damages award." *Promega Corp.*, 773 F.3d at 1358. It did not, however, order a new trial on damages. Instead, it "remand[ed] to the district court to determine damages due to LifeTech's infringement of the Tautz patent." *Id*. As Promega explained in its opening brief, dkt. #798 at 8-11, the existing record and the unaffected portions of the original verdict and

judgment make clear that every accused Life STR kit infringes the Tautz patent, so the invalidity of the Promega patents does not alter the jury's $52 million damages verdict. As a result, there is no sound basis for requiring a do-over of the previous trial. Doing so would needlessly consume judicial resources and waste the valuable time of a new set of jurors. Nothing in the Federal Circuit's remand instructions dictates such a fruitless and nonsensical exercise. As explained next, neither does Life's argument concerning the scope of the 1996 license agreement.

> **B.  Life's Argument Against Reinstating The Damages Verdict Based On The 1996 License Agreement Has Been Rejected By This Court, Was Waived On Appeal, And Cannot Be Revisited Consistent With The Mandate Rule**

Life's sole substantive argument against reinstating the jury's damages verdict is based on the 1996 license agreement that grants Promega exclusive rights to the Tautz patent. According to Life, although Promega had broad rights to the now-invalidated Promega patents, under the 1996 agreement "Promega has standing to assert the Tautz patent in just a few narrow fields." Life's Br. at 2. Thus, Life argues, under the 1996 agreement "the damages flowing from" the Tautz patent "are necessarily lesser than the damages that Promega sought based on the now-invalid Promega patents," and as a result "the Court cannot reinstate the damages award." *Id*. at 9; *see also id*. at 11 (Section II.B. heading) ("The jury awarded damages for sales in fields where Promega does not have standing to assert the Tautz patent."). Specifically, Life contends that under the 1996 agreement Promega does not have standing to assert the Tautz patent for certain cell line authentication applications to the extent they occur in "the research market" or are used for "basic research" or "pure research activities." *Id*. at 12-13.

Life's interpretation of the 1996 agreement, based as it is on a handful of carefully truncated snippets from the license, is unsupportable on the merits. For example, in arguing that Promega's rights to the Tautz patent do not encompass cell line authentication as used "in

- 3 -

numerous research activities," Life contends that "Promega's exclusive rights in the 'HUMAN CLINICAL MARKET' are restricted to 'developing, validating, and/or providing information for HUMAN medical treatment or diagnosis.'" Life Br. at 11 (quoting 1996 license agreement at § 1.14). This argument boils down the 1996 agreement's broad, paragraph-long definition of the HUMAN CLINICAL MARKET to a dozen words. Remarkably, it ignores the definition's very next sentence: "This market includes (but is not limited to) *research and development*, casework, and database use or development." *See* dkt. #233-47 (1996 license agreement) at § 1.14 (emphasis added). Life also devotes a paragraph to arguing that a settlement of unrelated litigation on a non-accused product supports its interpretation of the 1996 agreement. *See* Life Br. at 14. Nothing of the sort can be inferred. "'[T]here are reasons for parties to settle that are wholly unrelated to the substance and issues involved in the litigation.'" *Fisher v. Kelly*, 105 F.3d 350, 353 (7th Cir. 1997) (citation omitted).

Nevertheless, for the reasons explained below, the Court need not—indeed, cannot—reach the substance of Life's argument about the scope of the 1996 agreement. Accordingly, Life has identified no genuine obstacle to reinstating the jury's damages verdict.

*First*, Life's argument merely rehashes one it made, and lost, on summary judgment when this Court rejected Life's standing defense based on the purportedly narrow scope of the 1996 license agreement. In its summary judgment order, the Court considered Life's argument that Promega "lacks standing to sue for infringement" because its "rights under the [Tautz] patent derive from a 1996 license that does not include the 'research market' and that all of defendants' sales fall within that exception." *See* dkt. #345, at 25. The Court rejected that argument, finding that "[d]efendants are simply wrong when they say that the agreement

excludes the 'research market' generally and they identify no reason to believe that any of their sales fall outside" the fields of use exclusively licensed to Promega. *Id.*

In its brief, Life recites the procedural history of the case but glosses over the Court's summary judgment ruling on the scope of the 1996 license agreement. *See* Life Br. at 4 (noting only that the Court "made a series of rulings regarding licensing issues" at summary judgment). The Court's summary judgment decision is not so easily side-stepped. Life filed no post-trial motion contending that the Court erred when it interpreted the scope of the 1996 agreement and rejected Life's standing defense. It is far too late now for Life to attempt to revive an issue it lost on summary judgment.

*Second*, Life appealed from the Court's summary judgment order, *see* dkt. #686, and expressly challenged this Court's other licensing decisions in its opening appellate brief, but only raised its argument regarding the scope of the 1996 agreement for the first time in its appellate reply brief. As a result, the Federal Circuit explicitly refused to "consider th[e] untimely argument" that Life "has broader licensing rights to the Tautz patent based on a 1996 agreement." *Promega Corp.*, 773 F.3d at 1357 n.16. In its brief in this Court, Life contends this was not a waiver finding, while simultaneously taking the court of appeals to task for its "unexplained and unsupported" refusal to consider Life's argument on the scope of the 1996 license. Life Br. at 14. But it is unclear what further explanation or support Life expected from the Federal Circuit. Courts routinely deem issues raised for the first time in a reply brief waived, and the Federal Circuit is no exception. *See, e.g., Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1240 n.16 (Fed. Cir. 2008) (refusing to consider argument made for first time in reply brief because "it has been waived"); *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1355 (Fed. Cir. 2003) (party "waived" new trial argument "by failing to raise it in its opening

brief"); *see also Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011) ("[I]t is well-established that arguments raised for the first time in the reply brief are waived.").

Life also contends that it had no cause to raise the 1996 license issue on appeal because "this Court had entered judgment in favor of *Life* on" §§ 271(a) and (f) and therefore a "finding by the appeal court that Promega never had the right to assert the Tautz patent outside exclusive fields would not have changed the relief that Life had received." Life Br. at 15-16 (emphasis in original). This argument is flawed on multiple levels. Initially, it cannot be squared with the fact that Life *did* appeal licensing issues to the Federal Circuit notwithstanding that it purportedly "prevailed on liability totally." *Id*. at 16. On appeal, Life "challenge[d] the district court's finding that it is not licensed to practice the patents-in-suit under the 2006 Cross License." *Promega Corp.*, 773 F.3d at 1345; *see also id*. at 1357 ("We are not persuaded by LifeTech's creative interpretation of the 2006 Cross License."). Life thus raised issues regarding the scope of the 2006 Cross License in its opening appellate brief because it recognized that securing a more favorable interpretation of the license would expand the relief it had been granted by providing additional protection against liability for future infringement. *See, e.g.*, Life's Opening Appeal Br., CAFC dkt. #33, at 2-3 (arguing that jurisdiction over Life's 2006 Cross License counterclaim was proper because it "seeks relief broader than the denial of Promega's claims of patent infringement in this case" and would result in "a license to practice the asserted patents as a whole, for current and future products").

For reasons of its own, however, Life declined to raise arguments regarding the 1996 license until its reply brief, which resulted in waiver. As explained in Promega's opening brief, dkt. #798 at 12, had Life timely raised its argument on the scope of the 1996 license in the Federal Circuit and prevailed, it would have enjoyed broader protection against liability for

future infringement of the Tautz patent than it enjoyed under this Court's judgment.[1] Life's argument therefore needed to be raised as part of its affirmative appeal. Life's argument that there "was no appeal issue to waive" is plainly wrong. Life Br. at 16.

Life only compounds its problems by arguing that, even when it belatedly raised the argument in its appellate reply brief, "Life was not seeking appellate review of the 1996 license." Life Br. at 15; *see also* Life Pet. for Panel Reh'g and Reg'h En Banc, CAFC dkt. #71, at 13 ("Life did not identify its broader rights in Tautz to have this Court review any decision by the District Court."). If that is the case, then Life certainly has forfeited any challenge to this Court's interpretation of the 1996 agreement.[2]

*Third*, reconsideration on remand of Life's argument on the scope of the 1996 agreement is in any event barred by the mandate rule. The "mandate rule precludes reconsideration of any issue within the scope of the judgment appealed from—*not merely those issues actually raised*." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008) (emphasis added). Life appealed from this Court's summary judgment decision, in which the Court rejected Life's argument on the scope of the 1996 license agreement. *See* dkt. #686 at 2 (Life's notice of appeal from, *inter alia*, the Court's November 29, 2011 summary judgment memorandum and order). Even if Life were correct that it did not raise on appeal—and waive—its challenge to this Court's ruling on the scope of the 1996 license (and it is not), the failure to raise such a challenge after appealing this Court's summary judgment order would mean that this Court's ruling on the scope

---

[1] This is particularly true given that this Court found that 10 of Life's 17 accused STR kits infringe only the Tautz patent, not the Promega patents. *See* dkt. #573.

[2] Moreover, even apart from the timing of Life's argument, Life failed to develop its argument in any detail or even include all the relevant pages of the pertinent license in the Federal Circuit appendix. That echoes Life's cursory, two-paragraph treatment of the argument when it was first raised on summary judgment. Dfts.' Br. in Opp'n to Promega's Summ. J. Mot., dkt. #253, at 31-32.

of the 1996 license "became a part of [the Federal Circuit's] mandate." *Amado*, 517 F.3d at 1360. As such, "the mandate rule operates as a bar to the district court's reconsideration of" Life's defense based on the 1996 license. *Id.*; *see also Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) ("Unless remanded by this Court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication."). Were it otherwise, Life could "present [its] appeals in a piecemeal and repeated fashion," which "would lead to the untenable result that 'a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who has argued and lost.'" *Engel Indus.*, 166 F.3d at 1382-83 (citation omitted) (noting that an appellant must "fully set forth its attack on the judgment below"). As a result, the mandate rule bars reconsideration on remand of Life's defense based on the purported narrow scope of the 1996 license agreement.[3]

In summary, this Court rejected Life's argument concerning the scope of the 1996 license agreement at summary judgment; Life waived the argument on appeal by failing to raise it in its opening brief; and the mandate rule now bars reconsideration of Life's argument on remand. The 1996 license agreement is thus no obstacle to reinstating the jury's $52 million damages

---

[3] In its brief Life twice mentions the fact that Promega's petition for panel rehearing seeking reinstatement of the jury's damages verdict was denied by the Federal Circuit without comment. *See* Life Br. at 7-8. Because "[c]ourts normally do not respond to petitions for rehearing [] it would be a mistake to conclude that a court's non-response to an argument made in a rehearing petition necessarily means that the court has rejected that argument on the merits." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1479 (Fed. Cir. 1998). Indeed, any contrary conclusion would provide yet *another* reason for rejecting Life's argument concerning the 1996 license agreement, as it filed its own unsuccessful panel rehearing petition asking the Federal Circuit to "remove[] or clarif[y]" its "mistaken footnote" finding waiver of Life's argument on the scope of the 1996 agreement. Life's Pet. for Panel Rehearing and Rehearing En Banc, CAFC dkt. #71, at 12.

verdict.  It cannot belatedly "reshape[] the liability landscape," as Life wrongly contends.  Life Br. at 2.[4]

### C. Life's "Plan" To Seek Certiorari And A Stay Should Not Stall This Case

Life also says that it "plans to file a petition for Supreme Court review" of the Federal Circuit's decision, and once it does so it "plans to request that this Court stay the remand proceedings."  Life Br. at 8.  In other words, as of now Life has neither filed a certiorari petition nor moved for a stay in this Court.  Life also did not move for a stay of the Federal Circuit's mandate pending the filing of a certiorari petition.  *See* Fed. R. App. P. 41(d)(2)(A), (C) (party seeking stay pending petition for certiorari "must show that the certiorari petition would present a substantial question and that there is good cause for a stay" and the "court may require a bond or other security as a condition to granting or continuing a stay of the mandate").

In its papers in this Court, Life has certainly not attempted to satisfy the standards for obtaining a stay.  If Life files a petition for certiorari, and if Life then moves for a stay in this Court, Promega will respond at that time.

---

[4] If the Court permits Life to retry the damages case, Promega reserves the right to contend that judicial estoppel precludes Life's current argument on the scope of the 1996 license agreement because it directly contradicts the position Life took and prevailed on in the arbitration ordered by this Court.  During the arbitration, Life argued that all of the same sales supporting the jury verdict were made into fields exclusively licensed to Promega under the Tautz patent.  The arbitration Panel relied on this position to award Life more than $15 million based on its conclusion that Life was entitled to a percentage of Promega's Tautz sublicensing revenue in the exclusive fields.  Now that its interests have changed, however, Life contends that the jury "awarded damages for sales *outside* [Promega's] two exclusive fields." Life Br. at 11 (emphasis added).  Life's attempt to "play fast and loose with the courts" and reduce its liability exposure in one proceeding while maximizing recovery in another based on diametrically opposed litigation positions is exactly the type of conduct the doctrine of judicial estoppel is intended to prevent. *See New Hampshire v. Maine*, 532 U.S. 742, 749-751 (2001).

### D. Life's Post-Trial Motions Are Either Moot Or Can Be Resolved After The Jury Verdict Is Reinstated

Life identifies five post-trial motions it contends remain to be decided in the event the jury verdict is reinstated. *See* Life Br. at 16. For the reasons explained in Promega's opening brief (at 12-16), Life is wrong with respect to its new trial motions on the allocation of the burden to prove licensed sales (dkt. #582) and a purported "aggregate of errors" stemming from that decision (dkt. #586). Life appealed from the Court's burden of proof order, *see* dkt. #686 (appealing from dkt. #498), and argued the burden issue and the related "cascade" of "additional legal errors" on appeal. *See* Dfts. Appellants' Reply and Cross Appeal Resp. Br., CAFC dkt. #43, at 31-34 & n.8. The Federal Circuit found Life's arguments "unpersuasive." *Promega Corp.*, 773 F.3d at 1358. The issues Life raised in its new trial motions fell "within the scope of the appealed judgment" and "are deemed incorporated within the mandate and thus are precluded from further adjudication." *Engel Indus.*, 166 F.3d at 1383.

In its opening brief (at 18-21), Promega also addressed the appropriate disposition of the parties' post-trial motions on willful infringement, including Life's motion for judgment as a matter of law or a new trial on willfulness (dkt. #588). That leaves two post-trial motions filed by Life: a motion seeking JMOL or a new trial on lost profits (dkt. #578) and a motion for a new trial or amendment of the judgment based on royalties previously paid (dkt. #584). Promega agrees that these two post-trial motions remain to be decided after the damages verdict is reinstated, and suggests that the parties each submit short (*e.g.*, 10-page) supplemental briefs updating their respective arguments.

### III. CONCLUSION

For all the reasons discussed above and in its opening brief, Promega respectfully requests that the Court reinstate the jury's damages verdict and order the other relief requested in

the conclusion of Promega's opening brief (at 24-25). Promega additionally requests that the parties be permitted to file 10-page supplemental briefs on Life's pending post-trial motions on lost profits and royalties previously paid.

Dated: May 15, 2015

Thomas G. Saunders
Thomas.Saunders@wilmerhale.com

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

Respectfully submitted,

By: */s/ David L. Anstaett*
John S. Skilton
jskilton@perkinscoie.com
David J. Harth
dharth@perkinscoie.com
David L. Anstaett
danstaett@perkinscoie.com
Anne M. Readel
areadel@perkinscoie.com
Brandon M. Lewis
blewis@perkinscoie.com

**PERKINS COIE LLP**
1 East Main Street, Suite 201
Madison, WI 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499

*Attorneys for Plaintiff Promega Corporation*